**GUTRIDE SAFIER LLP**
SETH A. SAFIER (State Bar No. 197427)
seth@gutridesafier.com
MARIE MCCRARY (State Bar No. 262670)
marie@gutridesafier.com
TODD KENNEDY (State Bar No. 250267)
todd@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

KALI BACKER (admitted *pro hac vice*)
kali@gutridesafier.com
4450 Arapahoe Ave., Suite 100
Boulder, Colorado 80303
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| BRANDON BRISKIN on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SHOPIFY INC. and SHOPIFY (USA), INC.,<br><br>Defendants. | CASE NO. 4:21-cv-06269-PJH<br><br>**PLAINTIFF'S OPPOSITION TO SHOPIFY (USA) INC.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Date: February 3, 2022<br>Time: 1:30 p.m.<br>Judge: Hon. Phyllis Hamilton |

# TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 2

III. LEGAL STANDARD ..... 3

IV. ARGUMENT ..... 4

A. The Court Has Personal Jurisdiction Over Shopify USA. ..... 4

1. Shopify USA purposefully directed its activities toward the forum. ..... 4

2. Plaintiff's claims arise from Defendants' contact with California. ..... 7

3. It is reasonable to exercise jurisdiction over Shopify USA in California. ..... 7

B. The FAC Gives Defendants Adequate Notice Pursuant to Rule 8. ..... 8

C. Plaintiff Did Not Consent to Defendants' Tortious Conduct. ..... 9

D. Plaintiff States a Claim Under § 631(A). ..... 10

E. Plaintiff States a Claim Under § 635. ..... 10

F. Plaintiff States a Claim For Privacy Violations Under The California Constitution and California Common Law Intrusion Upon Seclusion. ..... 11

G. Plaintiff States a Claim Under § 502. ..... 11

H. Plaintiff States a Claim Under The UCL. ..... 13

1. Unlawful: Plaintiff alleges claims under the UCL based on Defendant's unlawful conduct. ..... 13

2. Fraud: Plaintiff alleges claims under the UCL based on Defendants' deceptive conduct. ..... 14

3. Unfair: Plaintiff alleges claims under the UCL based on Defendants' unfair conduct. ..... 15

4. The right of publicity claims are no longer at issue. ..... 18

V. CONCLUSION ..... 18

## TABLE OF AUTHORITIES

**Cases**

*Adobe Sys. v. Blue Source Grp. Inc.*, 125 F. Supp. 3d 945, 964–66 (N.D. Cal. 2015) ... 9

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ... 3

*Baton v. Ledger SAS*, 2021 U.S. Dist. LEXIS 215793 (N.D. Cal. Nov. 8, 2021) ... 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ... 3, 8

*Bergstein v. Parmar*, 2014 WL 12586073 at *3–4 (C.D. Cal. June 23, 2014) ... 5

*Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) ... 8

*Bravo v. Cty. of San Diego*, 2014 U.S. Dist. LEXIS 17584, at *1 (N.D. Cal. Feb. 10, 2014) ... 9

*Calder v. Jones*, 465 U.S. 783, 789–90 (1984) ... 4

*College Source, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076–77 (9th Cir. 2011) ... 4

*Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 255 (2011) ... 14

*Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006) ... 14

*Doe v. Successfulmatch.com*, 70 F. Supp.3d 1066, 1080–81 (N.D. Cal. 2014) ... 15

*Drum v. San Fernando Valley Bar Ass'n*, 106 Cal. Rptr. 3d 46, 53–54 (2010) ... 15, 16

*Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007) ... 8

*Facebook, Inc. v. ConnectU LLC*, 489 F. Supp. 2d 1087, 1091 (N.D. Cal. 2007) ... 12

*Foley v. Bates*, 2007 U.S. Dist. LEXIS 27390, at *11 (N.D. Cal. Mar. 30, 2007) ... 9

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003) ... 4

*Heller v. NBCUniversal, Inc.*,
2016 U.S. Dist. LEXIS 195031, at *9 (C.D. Cal. Mar. 30, 2016) ........ 8

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272, 285–97 (2009) ........ 11

*Hernandez v. Path, Inc.*,
2012 U.S. Dist. LEXIS 151035, at *13–14 (N.D. Cal. Oct. 17, 2012) ........ 11, 12

*HiQ Labs, Inc. v. LinkedIn Corp.*,
938 F. 3d 985, 1001 (9th Cir. 2019) ........ 5

*In re Adobe Sys. Privacy Litig.*,
66 F. Supp. 3d 1197, 1231 (N.D. Cal. 2014) ........ 14

*In re Carrier IQ, Inc., Privacy Litig.*,
78 F.Supp.3d at 1084 ........ 11

*In re Facebook Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ 10, 15

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d at 844 ........ 17

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040, 1073 (N.D. Cal. 2012) ........ 17

*In re Nexus 6P Prods. Liab. Litig.*,
2018 U.S. Dist. LEXIS 23622, at *14–15 (N.D. Cal. Feb. 12, 2018) ........ 8

*Kasky v. Nike, Inc.*,
45 P.3d 243, 249 (Cal. 2002) ........ 13

*Lukis v. Whitepages, Inc.*,
454 F. Supp. 3d 746 (N.D. Ill. 2020) ........ 5

*Matera v. Google, Inc.*,
2016 U.S. Dist. LEXIS 107918, at *59–60 (N.D. Cal. August 12, 2016) ........ 16

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
647 F.3d 1218, 1228 (9th Cir. 2011) ........ 4, 5

*McCoy v. Alphabet, Inc.*,
2021 U.S. Dist. LEXIS 24180, at *29–30 ........ 17

*McKell v. Wash. Mut., Inc.*,
49 Cal. Rptr. 3d 227, 240 (2006) ........ 17

*Munning v. Gap, Inc.*,
2016 U.S. Dist. LEXIS 149886, *9 (N.D. Cal. Oct. 28, 2016) ........ 8

*Myers v. Bennett Law Offices*,
238 F.3d 1068, 1075 (9th Cir. 2001) ........ 7

*Nguyen v. Barnes & Noble, Inc.*,
763 F. 3d 1171, 1175–6 (9th Cir. 2014) ....................9

*Picot v. Weston*,
780 F.3d 1206, 1212 (9th Cir. 2015); ....................7

*Ranza v. Nike, Inc.*,
793 F.3d 1059, 1068 (9th Cir. 2015) ....................3, 4

*Ribas v. Clark*,
696 P.2d 637, 640 (1985) ....................16

*Rivera v. Peri & Sons Farms, Inc.*,
735 F.3d 892, 902 (9th Cir. 2013) ....................9

*Rovai v. Select Portfolio Servicing, LLC*,
2018 U.S. Dist. LEXIS 107764, at *47 (S.D. Cal. June 27, 2018)....................17

*Rovan v. Select Serving, LLC*,
2018 U.S. Dist. LEXIS 107764, at *45 ....................15

*S.D. v. Hytto Ltd.*,
2019 WL 8333519, at *2–8 (N.D. Cal. May 15, 2019)....................5

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797, 800 (9th Cir. 2004) ....................3

*Sher v. Johnson*,
911 F.2d 1357, 1364 (9th Cir. 1990) ....................7

*Silver v. Stripe, Inc.*,
2021 U.S. Dist. LEXIS 141090, at *17–*18 (N.D. Cal. July 28, 2021)....................9, 11

*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*,
17 Cal.4th 553, 561–62 (1998)....................13

*Tivoli LLC v. Targetti Sankey S.P.A.*,
2015 U.S. Dist. LEXIS 189660, at *9 (C.D. Cal. Feb. 3, 2015)....................8

*Usher v. City of Los Angeles*,
828 F.2d 556, 561 (9th Cir. 1987) ....................3

*Weingand v. Harland Fin. Sols., Inc.*,
2012 U.S. Dist. LEXIS 84844, at *15–16 (N.D. Cal. June 19, 2012)....................12

*WhatsApp Inc. v. NSO Grp. Techs., Ltd.*,
472 F. Supp. 3d 649, 661–62 (N.D. Cal. 2020)....................5, 6

*Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*,
433 F.3d 1199, 1205–06 (9th Cir. 2006) ....................4

**Statutes**

Cal. Pen. Code § 631(a)....................10

18 U.S.C. § 2511(1)(A). ....................................................................................................10

## I. INTRODUCTION

Few types of information are more private than a person's finances. The question at the heart of this case is whether Defendants Shopify Inc. ("Shopify") and Shopify (USA) Payments, Inc. ("Shopify USA") (collectively "Defendants") can secretly track and collect intimate details about consumers' financial transactions, aggregate those details into profiles, and share the information with their own merchants and third parties to consumers' detriment. Defendants accomplish this surreptitious data collection by concealing their presence on merchants' websites with embedded software. When consumers begin the checkout process on a merchant's website, like IABMFG, for example, they go to a payment form that appears to belong to the merchant, and, as a result, believe they are communicating only with the merchant. In reality, however, Defendants generate the payment form and use it to intercept consumers' information to send directly to their own servers.

Because Defendants do not ask for permission from the outset, consumers have no idea what happens to their data. Behind the scenes, Defendants use it to build individual profiles and provide analysis on transactions to their merchants, thereby allowing them to profit from their unlawful conduct. Those merchants, in turn, use the information to prejudge consumers, including refusing to do business with some consumers entirely. Defendants also share consumer data with third parties, like Stripe, Inc., that also build their own consumer profiles. Because Defendants remain hidden at all points in the transaction, they deprive consumers of the right to opt out of the collection, use, and disclosure of their own data—a right protected under California law.

Given the lengths to which Defendants have exploited consumer data, it should come as no surprise that they launch a litany of defenses. They claim the Court lacks personal jurisdiction over them, even though Defendants subjected themselves to this forum by committing intentional acts that targeted California consumers. Defendants also rely on three policies—two of which were not even posted on websites Plaintiff viewed—to contend that Plaintiff consented to their conduct. But these are unenforceable browsewrap policies.

Defendants' other arguments are equally flawed. Plaintiff states a claim under Cal. Penal Code § 502 because Defendants accessed his data by sending him software code that caused his

device to send his private information to Defendants. Plaintiff also plausibly alleges claims for all three types of Unfair Competition Law (UCL) claims. For these reasons, the Court should deny Shopify USA's motion.

## II. BACKGROUND

Defendants run an e-commerce platform that provides payment processing services to millions of merchants across the internet. First Amended Complaint (FAC) ¶ 17. Defendants embed their software into merchants' websites. *Id*. When a consumer begins the checkout process with one of Shopify's merchant customers, the software makes it appear that the consumer communicates directly with the merchant. *Id*. at ¶¶ 1–2, 4, 18–28, 75. But, in reality, it sends no information to the merchant. *Id*. Rather, Defendants' software generates the payment form and directs to themselves all information entered into it. *Id*. Defendants also install cookies on users' browsers that track consumers' transactions across the Shopify merchant network. *Id*. ¶¶ 31-33. Defendants do not inform consumers about any of this conduct. Because they conceal their involvement by omitting their branding from the payment forms, Defendants collect—without permission— sensitive private information, including consumers' full names, addresses, email addresses, credit card numbers, IP addresses, the items purchased, and geolocation. FAC ¶¶ 2–3, 33, 74.

Once Defendants collect the data, they can decipher what data emanates from California because they have consumers' billing addresses and geolocations. *Id*. If they wanted, they could end their intrusion there and disregard the data. Instead, Defendants take additional steps to use data from California and make it profitable for themselves and their merchants. One of the ways they do so is by compiling the data into individualized profiles. *Id*. ¶¶ 6, 33–38. Defendants share information within the profiles with their merchants. *Id*. The information is valuable to the merchants because they provide insights into consumers' creditworthiness before the transaction is final. *Id*. When a consumer from California makes a purchase, Defendants use the consumer's data to provide their merchants with an "analysis" of the order that cross-references the details of the new transaction with the consumer's purchase history to identify potential areas of fraud. FAC, ¶ 36. Some indicators Defendants flag for their merchants include: the location of the IP address

used to place the order, the distance of the shipping address from the IP address, whether the billing ZIP code "matches the credit card's registered address," and whether "[c]haracteristics of [the] order are similar to non-fraudulent orders observed in the past." *Id*. The analysis is a powerful tool; it gives Shopify merchants an advantage over retailers who do not use Defendants' services and the ability to reject the transaction altogether. *Id*. ¶¶ 36–38.

In addition to building profiles and analyzing their data, Defendants also use Californians' data by sharing it with other non-merchant third-parties, such as Stripe and MaxMind, who, in turn, use the data to feed their own profiles on users. *Id*. ¶¶ 39–40. Through these collective actions, Defendants directly target and exploit the California market.

Shopify USA is a wholly owned subsidiary of Shopify. ECF 30-9 ¶ 2. It is registered to do business in California and a quarter of its employees are located in California. *See* FAC ¶ 10; ECF 30-9, ¶ 7. Despite Defendants' assertions otherwise, Shopify identifies Shopify USA as a processor of user data. *See* Declaration of Kali Backer (Backer Decl.), ¶ 2, Ex. 1.

## III. LEGAL STANDARD

"Where, as here, the defendant's motion [to dismiss for lack of personal jurisdiction] is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand" it. *Ranza v. Nike, Inc*., 793 F.3d 1059, 1068 (9th Cir. 2015) (citation omitted). The Court must accept Plaintiff's uncontroverted allegations as true, and resolve any factual disputes in conflicting affidavits in the plaintiff's favor. *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 800 (9th Cir. 2004).

To survive a Rule 12(b)(6) motion, the claimant must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court must accept all factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). This is not akin to a "probability requirement." *Id.*

## IV. ARGUMENT

### A. The Court Has Personal Jurisdiction Over Shopify USA.

California's long-arm statute permits the exercise of personal jurisdiction to the fullest extent allowed by the Due Process Clause. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd*., 328 F.3d 1122, 1129 (9th Cir. 2003). Jurisdiction comports with due process when the defendant has minimum contacts with the state. *Ranza*, 793 F.3d at 1068. For cases involving tortious conduct, such as here, the Ninth Circuit uses the following test to determine whether a non-resident defendant is subject to specific personal jurisdiction: (1) the non-resident defendant must purposefully direct his activities toward the forum; (2) the claim must arise out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., be reasonable. *Mavrix Photo, Inc. v. Brand Techs., Inc.,* 647 F.3d 1218, 1228 (9th Cir. 2011).

Plaintiff bears the burden of proving the first two prongs. *Id*. If Plaintiff succeeds, the burden shifts to Defendants to "set forth a compelling case that the exercise of jurisdiction would not be reasonable." *Id. at* 1212. Shopify USA's brief focuses exclusively on purposeful direction, so the last two factors are not in serious dispute. *See* ECF 30 at 14–15.

#### 1. *Shopify USA purposefully directed its activities toward the forum.*

The "purposeful direction" element is straightforward. All it requires is a showing that defendants (1) committed an intentional act, (2) expressly aimed at the forum state, (3) caused harm that the defendant knew was likely to be suffered in the forum state. *See Calder v. Jones*, 465 U.S. 783, 789–90 (1984). The inquiry focuses on "where the consequences of a defendant's actions were felt, rather than where the actions occurred." *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1205–06 (9th Cir. 2006). Thus, jurisdiction is proper even if the defendant's "only contact with the forum state is the purposeful direction of a foreign act having effect in the forum state." *See College Source, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076–77 (9th Cir. 2011) (internal citation omitted).

In *Mavrix Photo,* the Ninth Circuit considered when tortious conduct on a nationally accessible website is expressly aimed at a particular forum. It explained that the "maintenance of a

passive website alone cannot satisfy the express aiming prong." *Mavrix Photo, Inc.*, 647 F. 3d at 1229. But, "operating even a passive website in conjunction with 'something more' — conduct directly targeting the forum — is sufficient." *Id.* A defendant does "something more" when a defendant "specifically targeted" consumers in a state, *Rio Properties, Inc. v. Rio Intern. Interlink*, 284 F. 3d 1007, 1020 (9th Cir. 2002), or when a defendant exploits the state market for its own commercial gain, *Mavrix Photo*, 647 F. 3d at 1229. Defendants did both.

This case is nearly identical to *Lukis v. Whitepages, Inc.*, 454 F. Supp. 3d 746 (N.D. Ill. 2020). There, the plaintiff alleged that Whitepages "knowingly searches for and obtains private and public records regarding Illinois residents", "profiles them in free previews", and "sells monthly subscriptions for background reports that it prepares from those records." 454 F. Supp. at 757. The court held the "actions qualify as the kind of 'intentional contacts… with [Illinois]' required for the exercise of specific jurisdiction." *Id.*

Here, just as in *Lukis*, Defendants knowingly obtained data from California residents through the software code they embedded in their merchants' websites.[1] FAC ¶¶ 1–5, 18–34. They knew they acquired data from California because they collected consumers' geolocations and billing addresses. *Id.* ¶¶ 7, 33, 36, 74. But they did much more than simply collect data through their code. Rather, Defendants voluntarily took additional steps to make use of the data behind the scenes, while knowing the data originated from California. In doing so, they targeted Californians for their own profit. As in *Lukis*, Defendants compiled the data into individualized profiles. FAC ¶ 35-36. They then leveraged their ability to synthesize the data by giving their merchants an "analysis" of the details of the particular transaction and how it compares to the consumers' purchase history. *Id*. The value in the analysis is due to Defendants' aggregation of data. No single merchant could create such an analysis on their own. Only Defendants can provide such insights

---

[1] Purposefully embedding code on consumers' devices to collect and compile their personal financial information is an intentional act. *See HiQ Labs, Inc. v. LinkedIn Corp.*, 938 F. 3d 985, 1001 (9th Cir. 2019) (analogizing a CFAA cause of action to a digital "breaking and entering" and a "trespass" offense); *WhatsApp Inc. v. NSO Grp. Techs., Ltd.*, 472 F. Supp. 3d 649, 661–62 (N.D. Cal. 2020) (sending code to servers and accessing them without authorization was an intentional act); *S.D. v. Hytto Ltd.*, 2019 WL 8333519, at *2–8 (N.D. Cal. May 15, 2019) (wiretapping is an intentional act); *Bergstein v. Parmar*, 2014 WL 12586073 at *3–4 (C.D. Cal. June 23, 2014) (recording telephone conversations is an intentional act).

because they track consumers' transactions across their entire merchant network. These direct uses of Californians' data caused injuries that occurred in California, including the invasion of privacy. *Id*. at ¶¶ 78–80, 87–9, 97, 109–112.

Shopify USA argues the merits of Plaintiff's claims and asserts that all of this is irrelevant because "Shopify USA is not responsible for handling customer data." ECF 30 at 15. But Shopify's own documents call that assertion into question. The same Privacy Statement that Shopify USA submits in support of its Motion to Dismiss includes a hyperlink to its statement regarding Shopify's subprocessors of customer personal data. *See* Ex. E to Heath Decl. (ECF 30-6). That document explains that Shopify USA processes customer personal data from its platform to "provid[e] and improv[e] the Shopify platform and other related services." Backer Decl., Ex. 1. Thus, at a minimum, Shopify USA's representation that it is "not responsible for handling customer data" does not appear to be the full truth; otherwise, Shopify is mispresenting that Shopify USA processes personal data. Either way, the Court should ignore Shopify USA's contention because "the court resolves conflicts in affidavits in plaintiff's favor." *WhatsApp Inc.*, 472 F. Supp. 3d at 670.

Defendants' sole basis for resisting jurisdiction is *Baton v. Ledger SAS*, 2021 U.S. Dist. LEXIS 215793 (N.D. Cal. Nov. 8, 2021). But none of the facts asserted here were at issue in that case. In *Baton*, the plaintiff argued that the court had specific jurisdiction over Defendants because one of their merchants, Ledger, derived 7% of its business from California. *Id*. at *15–16. The court refused to graft Ledger's contacts with California onto Shopify or Shopify USA because the "contacts must be the defendant's own choice." *Id*. Here, by contrast, Plaintiff alleges that Shopify USA had direct contacts with California through the code it sent to users, its collection of Californians' data, its creation of profiles about Californians and use of the data. These allegations subject Shopify USA to this Court's jurisdiction.

Defendants also suggest that this case is akin to a prototypical "stream of commerce" case because they distributed their software to third-parties who ultimately controlled who could access it. ECF 29 at 17. That analogy misses a key point. While it may be true that Defendants' merchants determine where they sell their products and who necessarily interacts with Defendants' payment

forms, Defendants control everything that happens to the data on the back-end after they collect it. Even though they know they are collecting data from Californians, they chose to do more with the data anyway. They compile it, cross-reference it, and use it to build individualized profiles. In doing so, Defendants purposefully directed their conduct at California. Subjecting Defendants to jurisdiction is proper under such circumstances.

**2. *Plaintiff's claims arise from Defendants' contact with California.***

To demonstrate that its claims "arise out" of forum-related activities, a "Plaintiff[] must show that [it] would not have suffered an injury 'but for' [the Defendant's] forum related conduct." *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075 (9th Cir. 2001). Here, Plaintiff's injuries arise from the fact that Defendants hid their presence on IABMFG's site and sent code to his device, which enabled them to collect his data and profile him without his consent. *See* ECF 17 at ¶¶ 53, 77, 84–5, 96–8, 103–8, 116–17, 124–33, 144, 153. As such, Plaintiff's claims are directly tied to Defendants' contact with California.

**3. *It is reasonable to exercise jurisdiction over Shopify USA in California.***

The final element assesses whether it is reasonable to exercise jurisdiction over the defendant. Unlike the other two prongs, the burden of persuasion lies with the defendant. Only when a defendant makes "a ***compelling case*** that the exercise of jurisdiction would not be reasonable" is it possible to defeat jurisdiction on this basis. *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015); *see also Sher v. Johnson*, 911 F.2d 1357, 1364 (9th Cir. 1990) (once court finds purposeful availment, it must presume that jurisdiction would be reasonable).

Here, Defendants failed to make *any* case, let alone a *compelling* case, that jurisdiction here is not reasonable since neither of their briefs even mentions this prong. Even if they had made an effort to address this point, Defendants cannot meet their burden for the reasons set forth in Plaintiff's Opposition to Shopify Inc.'s Motion to Dismiss (Pl. Opp. Br.) and incorporates those arguments herein. *See* Pl. Opp. Br. § IV(A)(3).[2]

[2] Plaintiff makes these arguments based on the evidence available to him without discovery. Should the Court determine a more satisfactory showing of facts is necessary, Plaintiff requests leave to take jurisdictional discovery, and, specifically, depose both of the Defendants and leave to serve the discovery requests attached as Ex. 3 to the Backer Decl. in addition to merits discovery

**B. The FAC Gives Defendants Adequate Notice Pursuant to Rule 8.**

Rule 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The statement need only give the defendant "fair notice of the claim and the grounds upon which it rests." *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007). Defendants argue that the FAC does not satisfy Rule 8 because it "fails to provide either Shopify Inc. or Shopify USA with sufficient notice as to the claims against each entity." ECF 30 at 7. But, "[g]roup pleading is not fatal to a complaint if the complaint still gives defendants fair notice of the claims against them." *Tivoli LLC v. Targetti Sankey S.P.A.*, 2015 U.S. Dist. LEXIS 189660, at *9 (C.D. Cal. Feb. 3, 2015). Indeed, when defendants are related entities who acted in concert "it is entirely possible that the allegations of wrongdoing are intended to include each and every entity defendant." *Id.* at *11; *see also Munning v. Gap, Inc.*, 2016 U.S. Dist. LEXIS 149886, *9 (N.D. Cal. Oct. 28, 2016)("because the Defendants all share a parent-subsidiary relationship with The Gap Inc. as the parent company and because all the Defendants are represented by the same counsel, frustration of notice of the claims to each defendant is unlikely."); *Heller v. NBCUniversal, Inc.*, 2016 U.S. Dist. LEXIS 195031, at *9 (C.D. Cal. Mar. 30, 2016) (finding no violation of Rule 8 because the plaintiff alleged " that each of the twelve Defendants 'was responsible for the publication of the false, unprivileged statements'").

Here, the FAC puts Defendants on notice of exactly which claims are asserted against each entity: all of them. The FAC alleges that Defendants acted in concert to collect, use, and share user data that they acquired without consent. The claims repeatedly refer to "Shopify" which is defined to include both Defendants. FAC ¶ 11. Given that Defendants' respective Motion to Dismiss briefs each address every claim, there is not any real dispute that both Defendants have notice of the claims at issue against them. *See* ECF 29 and 30. Moreover, Defendants concede that they are related entities who could have acted in concert. Shopify USA is the wholly owned subsidiary of Shopify (USA) Holdings, Inc., which, in turn, is the wholly owned subsidiary of Shopify Inc. ECF

---

should the case proceed. *See Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008); *In re Nexus 6P Prods. Liab. Litig.*, 2018 U.S. Dist. LEXIS 23622, at *14–15 (N.D. Cal. Feb. 12, 2018).

12; ECF 30-9, ¶ 2.

The cases that Defendants rely upon do not support their position. *Adobe Sys. Inc*., for example, held that the complaint did not violate Rule 8 when it grouped the defendants together. *See Adobe Sys. v. Blue Source Grp. Inc.*, 125 F. Supp. 3d 945, 964–66 (N.D. Cal. 2015). *Bravo* involved "many defendants" – not just two as is the case here. *See Bravo v. Cty. of San Diego*, 2014 U.S. Dist. LEXIS 17584, at *1 (N.D. Cal. Feb. 10, 2014). Similarly, *Foley* involved five unrelated defendants, some were parties against whom the plaintiff clearly could not state a claim, such as the California Superior Court for the County of Alameda and the Northern District of California. *Foley v. Bates*, 2007 U.S. Dist. LEXIS 27390, at *11 (N.D. Cal. Mar. 30, 2007). Defendants' Rule 8 argument is without merit.

### C. Plaintiff Did Not Consent to Defendants' Tortious Conduct.

Defendants argue that Plaintiff consented to their conduct by virtue of a policy posted on IABMFG's checkout pages and two policies on Shopify's website. ECF 29 at 8–12; ECF 30 at 10. This defense is not viable for a number of reasons, as discussed in Plaintiff's Opposition to Shopify Inc.'s Motion to Dismiss. *See* Pl. Opp. Br. § IV(C). First, the Court need not consider this defense because it is a merits inquiry. *Rivera v. Peri & Sons Farms, Inc*., 735 F.3d 892, 902 (9th Cir. 2013). Second, Defendants did not authenticate the policies and the checkout pages, and, most notably, failed to establish that the policies and checkout pages (Exs. A–F, J to Jacob Heath Declaration) were posted at the time of Plaintiff's purchase in 2019. Third, none of the policies relate to Shopify USA's conduct. Fourth, the policies are unenforceable browsewrap policies that do not give sufficient notice, especially considering IABMFG posted a completely different privacy policy on its homepage and merchandise pages. *See Nguyen v. Barnes & Noble, Inc*., 763 F. 3d 1171, 1175–6 (9th Cir. 2014); *see also* FAC ¶ 54; Backer Decl., Ex 2. And, finally, the policies' terms do not encompass Plaintiff's claims. *See Silver v. Stripe, Inc.*, 2021 U.S. Dist. LEXIS 141090, at *17–*18 (N.D. Cal. July 28, 2021). Nothing in the policies addresses Defendants' use of consumer data to develop individualized profiles, disclosure of the data, and the particular kinds of data collected. These reasons apply with equal force to Shopify USA's consent defense.

**D. Plaintiff States a Claim Under § 631(A).**

CIPA prohibits any person from using electronic means to "learn the contents or meaning" of any "communication" "without consent" or in an "unauthorized manner." Cal. Pen. Code § 631(a). Courts perform the same analysis for both the federal Wiretap Act and CIPA. *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 606–07 (9th Cir. 2020). The Wiretap Act makes liable any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). "Contents" is defined as "includ[ing] any information concerning the substance, purport, or meaning of that communication." *Id*. § 2510(8).

Plaintiff alleges a violation of CIPA. Plaintiff alleges that he input information on website forms that he intended to transmit to the merchant, such as IABMFG. FAC ¶¶ 1–2, 18–28, 51–3. That information was a communication intended for the merchant to instruct the merchant on how to process the payment and where to send the goods. Plaintiff alleges that the information was in transit to the merchant when Defendants intercepted the communication. *Id*. Defendants therefore intercepted a communication while it was in transit, in violation of § 631.

None of Defendants' arguments have any merit for the reasons set forth in Plaintiff's Opposition to Shopify Inc.'s Motion to Dismiss. *See* Pl. Opp. Br. § IV(D). Specifically, Defendants qualify as third-parties for liability purposes under § 631, and Plaintiff adequately alleges that Defendants intercepted the contents of his communications since Defendants intercepted information Plaintiff input himself. Accordingly, dismissal of Plaintiff's claim under § 631 is not warranted.

**E. Plaintiff States a Claim Under § 635.**

Section 635 provides that "[e]very person who … possesses … or furnishes to another any device which is primarily or exclusively designed or intended for eavesdropping … shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500) …." Cal. Penal Code § 635 (emphasis added). Courts have likewise concluded that software or computer code constitutes a "device" under this statute. *See Revitch v. New Moosejaw, LLC*, 2019 U.S. Dist. LEXIS 186955, *7–8 (N.D. Cal. Oct. 23, 2019) (code is a device under § 635); *see also In re*

*Carrier IQ, Inc., Privacy Litig.*, 78 F.Supp.3d at 1084 (finding software to be a "device" under the Wiretap Act). Here, Plaintiff alleges that Defendants' computer code is a device that was "designed to intercept, collect, transmit, receive, track, analyze, and sell [] private information." FAC ¶ 73. As explained in Plaintiff's Opposition to Shopify Inc.'s Motion to Dismiss, Defendants' effort to circumvent the cases deeming software code as "device" is unavailing. *See* Pl. Opp. Br. § IV(E). Additionally, Plaintiff plainly alleges that the software code was designed to eavesdrop and intercept communications. Those allegations suffice to state a claim under § 635.

### F. Plaintiff States a Claim For Privacy Violations Under The California Constitution and California Common Law Intrusion Upon Seclusion.

Claims for privacy violations under the California Constitution and common law intrusion upon seclusion consist of two key elements: (1) there must be "reasonable expectation of privacy", and (2) the intrusion must be "highly offensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 606. *See also Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 285–97 (2009). As explained in Plaintiff's Opposition to Shopify Inc.'s Motion to Dismiss, the only element Defendants dispute is whether the conduct is "highly offensive." *See* Pl. Opp. Br. § IV(F). But that is "an issue that cannot be resolved at the pleading stage." *Id.* Further, the sheer scale of the data collected and Defendants' aggregation of that data demonstrate that their intrusion into California consumers' privacy is, in fact, highly offensive. *Silver*, 2021 U.S. Dist. LEXIS 141090, at *18.

### G. Plaintiff States a Claim Under § 502.

Plaintiff alleges that Defendants accessed Plaintiff's data (i.e., his private information) without permission, in violation of Cal. Penal Code § 502 by installing software code and cookies that enabled them to collect his data and track his activity across the Internet. FAC ¶¶ 1–5, 18–34, 44–48, 114–18. Judge Yvonne Gonzalez Rogers upheld a similar claim in *Hernandez v. Path, Inc.*, 2012 U.S. Dist. LEXIS 151035, at *13–14 (N.D. Cal. Oct. 17, 2012). Just as in this case, the plaintiff in *Hernandez* alleged that the defendant's app "accessed the putative class members' mobile devices and uploaded to its servers the class members' personally identifiable information" and shared the information with third parties. *Id.* at *1. Plaintiff accordingly states a claim under § 502.

Defendants argue that a person "may only be subjected to liability for acting 'without permission' under Section 502 if they "access[ ] or us[e] a computer, computer network, or website in a manner that overcomes technical or code-based barriers." ECF 29 at 21; ECF 30 at 13. However, Defendants base this assertion on outlier cases. *Id*. Most courts have declined to follow these opinions because the language of the statute does not impose such a requirement. *See e.g.*, *Hernandez*, U.S. Dist. LEXIS 151035, at *13–14; *Weingand v. Harland Fin. Sols., Inc.*, 2012 U.S. Dist. LEXIS 84844, at *15–16 (N.D. Cal. June 19, 2012); *Facebook, Inc. v. ConnectU LLC*, 489 F. Supp. 2d 1087, 1091 (N.D. Cal. 2007).

The Ninth Circuit's holding in *United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2016) also calls the "technical barrier" requirement into question.[3] There, the court held that a defendant could violate the statute by "logging into a database with a valid password and subsequently taking, copying, or using the information in the database improperly." *Id*. This interpretation better comports with the language of the statute, as it imposes liability when a person "knowingly accesses" a device and "without permission takes, copies, or makes use of data." Cal. Penal Code § 502. That is what Plaintiff alleges occurred here. Defendants accessed his data by sending him software code that caused his device to send Defendants his private information. FAC ¶¶ 1–5, 18–34, 44–48, 114–18. They also made use of the data by developing an individualized profile and providing analysis to their merchants. *Id*. ¶¶ 35–36. As explained in Plaintiff's Opposition to Shopify Inc.'s Motion to Dismiss, Defendants never had Plaintiff's consent to take or use his data. *See* Pl. Opp. Br. § IV(C). Dismissal is accordingly inappropriate.

---

[3] Even if the Ninth Circuit had imposed such a requirement, Plaintiff alleges that Defendants' software overcame his browser's encrypted connection with IABMFG. *See e.g.*, FAC ¶ 52.

### H. Plaintiff States a Claim Under The UCL.

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." (§ 17200.) The scope of the UCL is "broad." *Kasky v. Nike, Inc.*, 45 P.3d 243, 249 (Cal. 2002). Plaintiff has alleged claims under all three prongs.

#### 1. *Unlawful: Plaintiff alleges claims under the UCL based on Defendant's unlawful conduct.*

Section 17200's "unlawful" prong "borrows violations of other laws ... and makes those unlawful practices actionable under the UCL." *Klein v. Chevron U.S.A., Inc.*, 137 Cal. Rptr. 3d 293, 326–27 (2012) (internal quotations omitted). "[V]irtually any law or regulation—federal or state, statutory or common law—can serve as [a] predicate for a ... [section] 17200 'unlawful' violation." *Id.* (internal quotations omitted). This includes statutes that do not have their own private right of action. *See Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal.4th 553, 561–62 (1998) (rejecting argument that plaintiff should not be permitted to bring a claim under the UCL for a violation of a statute that did not have a private right of action).

Plaintiff alleges that Defendants violated a number of statutes and therefore states a claim. FAC ¶ 130. As explained above and in Plaintiff's Opposition to Shopify's Motion to Dismiss, Plaintiff plausibly alleges violations of Cal. Penal Code §§ 631 and 635. *See* Pl. Opp. Br. § IV(D) and (E). Plaintiff also pleads violations of CalOPPA. CalOPPA requires a commercial website or online service "that collects personally identifiable information through the internet about individual consumers residing in California who use or visit its commercial website or online service" to "conspicuously post its privacy policy on its website or in the case of the operator of an online service, make that policy available in accordance with paragraph (5) of subdivision (b) of Section 22577."

Here, Defendants are online service providers that collect personally identifiable information and therefore fall within the ambit of CalOPPA. FAC ¶¶ 17–33, 44, 73–75. The FAC alleges that Defendants deliberately hide their involvement in processing consumers' payments. FAC ¶ 45. The FAC also alleges that "[c]onsumers visiting Shopify merchants' webpages are not required to view (through a link or otherwise), let alone agree to, Shopify's Terms of Service or

Privacy Policy." FAC ¶ 48. Given that Plaintiff did not know that he was transacting with Defendants, let alone the terms of their privacy policy, Plaintiff has alleged that Defendants failed to conspicuously post their privacy policy. *Id.* ¶ 54. Even so, Defendants have failed to demonstrate how their policy qualifies as "conspicuously posted" or how the policy satisfies Section 22577(b)'s requirements. Dismissal, accordingly, is improper at this stage.

Finally, Defendants argue that Plaintiff's UCL claim fails to the extent it is based on the CCPA because the CCPA does not provide a private right of action. The California Supreme Court, however, recognizes that violations of statutes that do not include their own private right of actions can serve as a basis for an unlawful UCL claim. *See Stop Youth Addiction, Inc.*, 17 Cal.4th at 561–62. Plaintiff states a claim under the UCL for unlawful conduct.

**2. *Fraud: Plaintiff alleges claims under the UCL based on Defendants' deceptive conduct.***

Omissions are actionable under the UCL when the omission is "contrary to a representation actually made by the defendant, or an omission of a fact that defendant was obliged to disclose." *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006). A duty to disclose arises "when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff" and "when the defendant actively conceals a material fact from the plaintiff." *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 255 (2011) (emphasis added).

Defendants had a duty to disclose their interception, collection, tracking, use, and disclosure of Plaintiff's private information. These facts are material because a "reasonable [consumer] would deem it important in determining how to act in the transaction at issue." *Collins*, 202 Cal. App. 4th at 255. *See also In re Adobe Sys. Privacy Litig.*, 66 F. Supp. 3d 1197, 1231 (N.D. Cal. 2014) (finding Adobe had a duty to disclose "that its security practices were not up to industry standards"). The FAC further alleges that this information was material to Plaintiff's purchases since he "would not have entered into financial transactions involving Shopify" or "purchased products from IABMFG" had he known that Defendants would "track[] him across potentially hundreds of thousands, if not millions, of websites;" "collect, store, analyze, and/or transfer his private information;" and make his private information "available to potentially

millions of merchants." FAC ¶¶ 56–58. These allegations are sufficient to establish materiality. *See Doe v. Successfulmatch.com*, 70 F. Supp.3d 1066, 1080–81 (N.D. Cal. 2014) (finding that "information was material to Plaintiffs' purchases of Defendant's services since they would not have purchased memberships if they had 'known that their information was to be available on all of the websites... affiliated with PositiveSingles.com at any given time.'")

The FAC alleges that Defendants had exclusive knowledge of these material facts that were not known or reasonably accessible to Plaintiff and that Defendants actively concealed these material facts. FAC ¶¶ 41, 43, 124, 128. Plaintiff did not know about Defendants' involvement in the transactions. *Id*. Nor could he because they actively hid their role by designing their payment forms to look as if they belonged to the merchant, not Defendants. FAC ¶¶ 4, 80. These facts are more than sufficient to withstand dismissal.

**3. *Unfair: Plaintiff alleges claims under the UCL based on Defendants' unfair conduct.***

Courts use three different tests to determine whether a practice is "unfair": (1) the tethering test, (2) the balancing test, and (3) the FTC test. *See Drum v. San Fernando Valley Bar Ass'n*, 106 Cal. Rptr. 3d 46, 53–54 (2010). Plaintiff alleges unfair practices under each of these tests.

The tethering test evaluates whether an alleged practice violates public policy "tethered to specific constitutional, statutory, or regulatory provisions." *Drum*, 106 Cal. Rptr. 3d at 53–54. Allegations establishing an actual statutory violation are not necessary; rather, allegations establishing that a defendant's conduct "offends an established public policy" will suffice. *See Rovan v. Select Serving, LLC*, 2018 U.S. Dist. LEXIS 107764, at *45.

Here, Plaintiff plausibly alleges that Defendants have committed actual violations of CalOPPA, as discussed above. *See supra* § IV(H)(1). Those allegations establish that Defendants' practices violate the public policy underlying those statues.

Even if the Court finds that the FAC does not allege actual violations, Plaintiff's allegations still pass muster under the tethering test since Defendants' conduct violates the public policy underlying those statutes. The Wiretap Act was enacted to prevent the acquisition of the contents of a message by an unauthorized third-party or "an unseen auditor." *In re Facebook Internet*

*Tracking Litig.*, 956 F.3d at 608. *See also Matera v. Google, Inc.*, 2016 U.S. Dist. LEXIS 107918, at *59–60 (N.D. Cal. August 12, 2016) (discussing a similar legislative intent for CIPA). The public policy behind CIPA is likewise "aimed at one aspect of the privacy problem—eavesdropping, or the secret monitoring of conversations by third parties." *Ribas v. Clark*, 696 P.2d 637, 640 (1985). That is exactly what occurred here. Defendants surreptitiously—without consumers' consent or any disclosure of its involvement—acquired Plaintiff's private financial information and disseminated that information to third parties and merchants. Such conduct offends the exact policy underlying these statutes. *See Matera*, 2016 U.S. Dist. LEXIS 107918, at *59–60 (the legislative intent of CIPA is "to protect the right of privacy of the people in this state" and is intended to be broader than the protections against eavesdropping); Cal. Civil Code § 1798.100, *et seq* (requiring businesses to make disclosures about the information it collects and the purposes for which it is used).

The second test—the balancing test—asks whether the alleged practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim. *See Drum*, 106 Cal. Rptr. 3d at 53–54. The balancing test is similar to the FTC test. The FTC test provides that a practice is unfair if (1) the consumer injury is substantial; (2) it is not outweighed by any countervailing benefits; and (3) consumers could not reasonably have avoided the injury. *Id*.

Defendants' conduct results in substantial injuries to consumers. Because consumers have no ability to opt out of their cookies, Defendants become omnipresent in all transactions consumers have with its millions of merchant customers. FAC ¶¶ 5, 31–35, 45–48. Defendants then share the sensitive data with third parties such as MaxMind and Stripe to create a risk profile that it then reshares with merchants. FAC ¶ 40. Defendants become a leaky faucet, sharing data over which they then lose control with no conceivable end to the amount of time that consumer's data will be shared with other third-parties, both known and unknown. Defendants are able to amass huge amounts of data about a single consumer because it follows the consumer through the Shopify network of merchants. *Id.*, ¶¶ 31, 35. Shopify merchant customers, in turn, use the

information to assess the creditworthiness of consumers. FAC ¶ 37. A risk profile could very well result in a denial of a transactions. *Id*.

The resulting harm is not outweighed by any countervailing utility. Defendants represent that they collect and use the data for fraud prevention purposes. *See* FAC ¶ 36. While fraud prevention may be a noble goal, it does not outweigh the surreptitious theft of millions of consumers' financial data, nor spying on consumers' activity across the internet. Indeed, nothing prevents Defendants from engaging in their fraud prevention efforts *so long as they ask for permission first*. Without taking that necessary (and relatively simple) step, Defendants infringe consumers' fundamental privacy rights on a mass scale. For that reason, the law recognizes that there is no corresponding benefit under the balancing test when a defendant violates consumers' right to privacy. *See McCoy v. Alphabet, Inc.,* 2021 U.S. Dist. LEXIS 24180, at *29–30 (court cannot say that the "benefit of collecting information outweighs harm to privacy rights"); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1073 (N.D. Cal. 2012) ("However, at this juncture the Court cannot say that Apple's practices are not injurious to consumers, or that any benefit to consumers outweighs the harm."); *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d at 844 ("The Court cannot say, as a matter of law, that the utility of the Google Assistant necessarily outweighs the harm from false accepts."). Finally, the injury could not have been avoided because Defendants conceal themselves in the transaction, leaving users with no meaningful way to avoid having their information intercepted, aggregated, and shared. FAC ¶¶ 4–10, 12, 27–36, 40–42, 179, 188–89. Therefore, Plaintiff has alleged a violation of the unfair prong of the UCL under each of the tests.

Even so, dismissal of the UCL claim would be improper since whether a practice is unfair "is one of fact which requires a review of the evidence" and "thus cannot usually be" determined on the pleadings. *McKell v. Wash. Mut., Inc.*, 49 Cal. Rptr. 3d 227, 240 (2006); *see also Rovai v. Select Portfolio Servicing, LLC*, 2018 U.S. Dist. LEXIS 107764, at *47 (S.D. Cal. June 27, 2018) ("The balancing test should not be a particularly difficult test to satisfy at the motion to dismiss stage").

**4. *The right of publicity claims are no longer at issue.***

On December 30, 2021, Plaintiff moved for leave to file a Second Amended Complaint, which among other things, removed the two right of publicity claims. ECF 36. As a result, those claims are no longer at issue, and, thus, there is no need to address those claims.

## V. CONCLUSION

For the foregoing reasons, the Court should deny Shopify (USA) Inc.'s Motion to Dismiss.

Dated: January 7, 2022

**GUTRIDE SAFIER LLP**

*<u>/s/ Seth Safier /s/</u>*

SETH A. SAFIER (State Bar No. 197427)
seth@gutridesafier.com
MARIE MCCRARY (State Bar No. 262670)
marie@gutridesafier.com
TODD KENNEDY (State Bar No. 250267)
todd@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

KALI BACKER (admitted *pro hac vice*)
kali@gutridesafier.com
4450 Arapahoe Ave., Suite 100
Boulder, Colorado 80303
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiff*