JACOB M. HEATH (SBN 238959)
jheath@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone: +1 650 614 7400
Facsimile: +1 650 614 7401

THOMAS FU (SBN 325209)
tfu@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017-5855
Telephone: +1 213 629 2020
Facsimile: +1 213 612 2499

ARAVIND SWAMINATHAN (admitted *pro hac vice*)
aswaminathan@orrick.com
NICOLE M. TADANO (admitted *pro hac vice*)
ntadano@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
701 5th Avenue, Suite 5600
Seattle, WA 98104-7097
Telephone: +1 206 839 4300
Facsimile: +1 206 839 4301

Attorneys for Defendants,
Shopify Inc. and Shopify (USA) Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

Brandon Briskin, on behalf of himself and those similarly situated,

Plaintiffs,

v.

Shopify Inc. and Shopify (USA) Inc.,

Defendants.

Case No. 4:21-cv-06269-PJH

**DEFENDANT SHOPIFY INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

Date: February 3, 2022
Time: 1:30 p.m.
Location: Courtroom 3, 3rd Floor
1301 Clay Street
Oakland, California

Judge: The Honorable Phyllis J. Hamilton

## TABLE OF CONTENTS


**Page**

I. ARGUMENT ....- 3 -

A. The FAC Fails To Distinguish Among Defendants In Violation Of Rule 8....- 3 -

B. This Court Lacks Jurisdiction Over Shopify Inc....- 3 -

1. *This Court lacks general jurisdiction over Shopify Inc.* ....- 3 -

2. *This Court lacks specific jurisdiction over Shopify Inc.* ....- 3 -

3. *There is no basis for granting jurisdictional discovery.* ....- 6 -

C. The FAC Fails To State A Claim Against Shopify Inc....- 7 -

1. *The FAC's allegations regarding consent are plainly false.* ....- 7 -

2. *The FAC fails to state an eavesdropping claim under Penal Code Section 631(a).* ....- 9 -

a. The FAC fails to state a claim under either clause of Section 631(a), because it fails to plead facts showing that Shopify Inc. was a third party to Plaintiff's communications. ....- 9 -

b. The FAC fails to allege a violation of Section 631(a)'s first clause, because it fails to allege a wiretap of a telephone line....- 10 -

c. The FAC fails to allege a violation of Section 631(a)'s second clause because it fails to plead facts showing that Shopify Inc. read the "contents" of any message....- 10 -

3. *The FAC fails to state a claim under Penal Code Section 635.* ....- 11 -

a. The Section 635 claim fails because code is not a "device" within the meaning of the California Invasion of Privacy Act. ....- 11 -

b. The Section 635 claim fails because the FAC fails to allege facts showing that Shopify Inc.'s code was "primarily or exclusively designed" for eavesdropping....- 13 -

4. *The FAC fails to state a claim for invasion of privacy and intrusion upon seclusion because it does not allege facts showing that Shopify Inc. committed an "egregious" or "highly offensive" privacy intrusion.* ....- 13 -

5. *The FAC fails to state a Penal Code Section 502 claim, because it fails to allege facts showing that Shopify Inc. accessed Plaintiff's iPhone "without permission."* ....- 15 -

6. *The FAC fails to state a claim under the UCL.* ....- 15 -

a. The FAC fails to state a claim for an "unlawful" practice. ....- 15 -

b. The FAC fails to state a claim for a "fraudulent" practice. ....- 15 -

c. The FAC fails to state a claim for an "unfair" practice. ....- 15 -

7. *The FAC fails to state a claim for right of publicity.* ....- 15 -

## TABLE OF CONTENTS
(continued)

**Page**

II. CONCLUSION ........................................................ - 15 -

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 13

*Austin v. Budget Rental Car, Inc.*,
2020 WL 8614183 (N.D. Cal. 2020) ........ 1

*Bacilio v. City of Los Angeles*,
28 Cal. App. 5th 717 (2018) ........ 12

*Ballard v. Savage*,
65 F.3d 1495 (9th Cir. 1995) ........ 5

*Baton v. Ledger SAS*,
2021 WL 5226315 (N.D. Cal. 2021) ........ *passim*

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ........ 10

*Caces-Tiamson v. Equifax*,
2020 WL 1322889 (N.D. Cal. 2020) ........ 3

*In re Carrier IQ, Inc., Privacy Litig.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ........ 11

*Cisco Sys., Inc. v. Dexon Computer, Inc.*,
2021 WL 2207343 (N.D. Cal. 2021) ........ 5

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) ........ 12

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011) ........ 14

*Freeman v. Gonzales*,
444 F.3d 1031 (9th Cir. 2006) ........ 11

*In re Google, Inc. Privacy Policy Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ........ 14

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ........ 9, 11

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........ 14

*Lucent Techs., Inc. v. Bd. of Equalization*,
241 Cal. App. 4th 19 (2015)........................................................................................ 12

*Lukis v. Whitepages, Inc.*,
454 F. Supp. 3d 746 (N.D. Ill. 2020) ............................................................................ 4

*Mavrix Photo v. Inc. v. Brand Techs., Inc.*,
647 F.3d 1218 (9th Cir. 2011).......................................................................................... 4

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. 2019).......................................................................... 9, 11

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ................................................................................................. 12

*Silver v. Stripe, Inc.*,
2021 WL 3191752 (N.D. Cal. 2021).......................................................................... 8, 15

*Sims v. Opportunity Fin., LLC*,
2021 WL 1391565 (N.D. Cal. 2021)................................................................................ 8

*Slack Techs., Inc. v. Phoji, Inc.*,
2020 WL 4701174 (N.D. Cal. 2020)................................................................................ 6

*Smith v. United States Dep't of Agric.*,
2016 WL 4179786 (N.D. Cal. 2016)................................................................................ 6

*Svenson v. Google Inc.*,
65 F. Supp. 3d 717 (N.D. Cal. 2014) .................................................................. 2, 10, 11

*Vendavo, Inc. v. Price f(x) AG*,
2018 WL 1456697 (N.D. Cal. 2018)................................................................................ 1

*Walden v. Fiore*,
571 U.S. 277 (2014) ....................................................................................................... 4

*Wolfe v. Strankman*,
392 F.3d 358 (9th Cir. 2004).......................................................................................... 6

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014)........................................................................................ 10

**Statutes**

Cal. Penal Code § 502 ........................................................................................... 3, 15

Cal. Penal Code § 631 ..................................................................................... 2, 9, 10, 11

Cal. Penal Code § 635 .................................................................................... 2, 11, 12, 13

**Rules**

Fed. R. Civ. P. 8 .......... 3, 7

Fed. R. Civ. P. 12(b)(6) .......... 7

**Other Authorities**

Equifax, *What is a Credit Report and What Does it Include?*, https://www.equifax.com/personal/education/credit/report/what-is-a-credit-report-and-what-does-it-include (last visited Jan. 18, 2022) .......... 14

The Opposition to Shopify Inc.'s Motion to Dismiss ("Inc. Opp."), and the arguments it incorporates from the Opposition to Shopify (USA) Inc.'s Motion to Dismiss ("USA Opp."), is a bundle of misdirection and mischaracterizations. But this Court need not wade through all (or even most) of them to conclude that the First Amended Complaint ("FAC") must be dismissed in its entirety. At bottom, the Oppositions leave unchallenged many of the key points for dismissal made in Shopify Inc.'s Motion to Dismiss ("Shopify Inc. MTD"), or incorporated there by reference from Shopify (USA) Inc.'s Motion to Dismiss ("Shopify USA MTD"). The Oppositions obfuscate the remainder of the arguments, often in reliance on theories this District has already rejected. Not least, the Oppositions obscure that they ask this Court to bless a claim (already repudiated at the pleading stage in this District) that every credit card transaction and website on the internet is a crime and grounds for suit in California.

As an initial matter, the Oppositions do not even attempt to distinguish the directly on-point cases cited in Shopify USA's MTD which hold that where "defendants are separate corporate entities[] and perform separate roles," pleading as to defendants as a collective "is insufficient." *Austin v. Budget Rental Car, Inc.*, 2020 WL 8614183, at *2 (N.D. Cal. 2020), *cited at* Shopify USA MTD § IV.A. And they freely admit that the FAC's "repeated[] refer[ence]" to the fictitious entity "'Shopify' which is defined to include both Defendants," was intentional and not something they intend to remedy. USA Opp. 8; *see also* ECF No. 36-2 (proposed Second Amended Complaint which maintains the use of fictitious "Shopify" to lump together Shopify Inc., Shopify USA, and a new, third defendant, Shopify Payments (USA) Inc.). Instead, they simply assert that this lumping-together is permissible, either because group pleading is acceptable generally, or because Shopify Inc. and Shopify (USA) Inc. ("Shopify USA") are corporate affiliates. *Id.* But the caselaw says otherwise. *See, e.g.*, *Vendavo, Inc. v. Price f(x) AG*, 2018 WL 1456697, at *4 (N.D. Cal. 2018) (dismissing complaint that "d[id] not distinguish" between two affiliated companies for failing to provide the requisite "specificity" to which each defendant was entitled). Indeed, the FAC does not even attempt to allege that Shopify Inc. and Shopify USA are alter egos such that they can be treated legally as a single entity. Accordingly, each is separately entitled to know what it

supposedly did to violate the law. The FAC does not provide that notice, and thus should be dismissed.

Nor does the FAC plead facts establishing personal jurisdiction over Shopify Inc.—a failure which is particularly pronounced after *Baton v. Ledger SAS*, 2021 WL 5226315 (N.D. Cal. 2021). The Oppositions (rightly) make no argument that this Court has general jurisdiction over Shopify Inc. The Oppositions admit that their theory of specific jurisdiction is premised on the fact that, of the "millions of merchants across the internet" whose websites are powered by Shopify Inc., *id.* at 2, the one Plaintiff happened to make a purchase from was one of the "80,000 merchants"—or less than 8% of the total—that is in California, *id.* at 7. And they concede that *Baton* stands for the proposition that there is no specific jurisdiction simply because the claim happens to arise out of the small percentage (in *Baton*, 7%) of a defendant's worldwide business that happens to "derive[] … from California." Inc. Opp. 7. Stated simply, the Oppositions offer nothing to rebut Shopify Inc.'s observation that the FAC alleges no facts demonstrating that Plaintiff's claims arise out of acts that Shopify Inc. directed "towards California in any way distinct from the rest of the world." Shopify Inc. MTD at 8.

Finally, the Oppositions ignore several flaws in the merits of each of the FAC's claims. As to **Penal Code § 631**, they concede that the FAC fails to state a claim under the first clause (for wiretapping), Inc. Opp. 17, n.5, and with respect to the second clause, they manufacture a distinction—already rejected by *Svenson v. Google Inc.*, 65 F. Supp. 3d 717, 729 (N.D. Cal. 2014)—that information submitted by the user means, by definition, that it is "content" under CIPA. As to **Penal Code § 635**, the Oppositions do not dispute that to qualify as a "device" under the statute, a contraption must be capable of being "manufacture[d]," "assemble[d]," "transport[ed]," and "import[ed]." And they do not dispute that none of those things can be done to computer code. (Nor do the Oppositions dispute that their reading of Section 635 would outlaw essentially every credit card transaction, whether online or in a physical store, and mark nearly every smart device in existence one designed primarily for wiretapping.) As to **Invasion of Privacy**, the Oppositions maintain categorically that those claims cannot be dismissed at the pleading stage—but do not dispute that Shopify Inc.'s MTD cited numerous cases doing exactly

that. Similarly, as to **Penal Code § 502**, the Oppositions do not dispute that under the cases identified in Shopify Inc.'s MTD the claim must be dismissed (they simply urge the Court to ignore them). And as to the **UCL**, too, the Oppositions do not dispute that Judge Gonzales Rogers recently rejected materially identical allegations brought by Plaintiff's counsel; indeed, their UCL discussion does not even *acknowledge* that decision, much less attempt to distinguish it. Finally, as to the **Right of Publicity**, the Oppositions concede that the claims must be dismissed.

As explained in more detail below, those are not nearly the only defects with the FAC requiring dismissal. But they are, alone, more than sufficient to demonstrate that the FAC cannot proceed. This Court should dismiss the FAC in its entirety.

## I. ARGUMENT

### A. The FAC Fails To Distinguish Among Defendants In Violation Of Rule 8.

For the reasons stated in Shopify USA's MTD Reply § I.A, the FAC must be dismissed because it fails to differentiate between Shopify Inc. and Shopify USA as required by Rule 8.

### B. This Court Lacks Jurisdiction Over Shopify Inc.

#### 1. *This Court lacks general jurisdiction over Shopify Inc.*

The Oppositions do not dispute—and thus, concede—that this Court lacks general jurisdiction over Shopify Inc. *See* Inc. Opp. 5.

#### 2. *This Court lacks specific jurisdiction over Shopify Inc.*

All agree that specific jurisdiction exists only when (1) the defendant "purposefully direct[s] his activities" toward the state or its residents; and (2) the claim before the court "arises out of or relates to the defendant's forum-related activities." *Caces-Tiamson v. Equifax*, 2020 WL 1322889, at *3 (N.D. Cal. 2020); *see* Inc. Opp. 5. Here, the FAC fails to allege any facts to establish those prerequisites as to Shopify Inc.

The Oppositions concede that purposeful direction exists only if the FAC alleges facts showing (1) an "intentional act" on the part of Shopify Inc. "(2) expressly aimed at the forum state, (3) causing harm that [Shopify Inc.] knows is likely to be suffered in the forum state." Inc. Opp. 5. With the backdrop that Judge Chen just decided this issue as to Shopify Inc. and Shopify USA in *Baton v. Ledger SAS*, 2021 WL 5226315 (N.D. Cal. 2021), the Oppositions manufacture two

theories for how Shopify Inc. supposedly satisfied those elements here, neither of which has any support in the law: First, they say that Shopify Inc. "specifically targeted" consumers in California. Inc. Opp. at 6. Second, they say that Shopify Inc. "exploit[ed] the [California] market for its own commercial gain." *Id.* (citing *Mavrix Photo v. Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (holding that "something more" than operating a nationwide website is required to establish specific jurisdiction)). Neither withstands scrutiny.

**Specific targeting.** The law is clear that specific jurisdiction "cannot be based on the mere fact that a company provides services to customers nationwide, including but not limited to California." *Baton*, 2021 WL 5226315, at *6. Rather, specific jurisdiction only exists when, as a result of "the defendant's own choice," it "specifically target[s] California" such "that California-residents [a]re uniquely harmed … more than anyone else." *Id.* at *7. The Oppositions themselves explain why Shopify Inc. did no such thing here: As they admit, Shopify Inc. does not control "where [its merchants] sell their products" or "who necessarily interacts with [the] payment forms" that form the basis of Plaintiff's claims. Inc. Opp. 8. Said otherwise, Shopify Inc. offered its services "nationwide and globally," *id.* at *6, and it was IABMFG (not Shopify Inc.) that chose to make its online store accessible in California, and Plaintiff (not Shopify Inc.) who chose to reach out from California to that online store and initiate his purchase.[1]

This basic fact distinguishes the only case the Oppositions marshal in response, *Lukis v. Whitepages, Inc.*, 454 F. Supp. 3d 746 (N.D. Ill. 2020). Inc. Opp. 6-7. In *Lukis*, the defendant "engaged in repeated, intentional conduct directed at Illinois" because it "searche[d] for and obtain[ed]" information about the plaintiffs from "databases operated by state and local governments in Illinois." 454 F. Supp. 3d at 758. The "contacts" with Illinois were thus entirely

---

[1] Considering the converse scenario, where a Plaintiff lived in a state other than California, demonstrates why this theory of specific jurisdiction fails. If Shopify Inc.'s acts had been identical, but Plaintiff had happened to live in Oregon instead of California, the sole California "specific targeting" theory articulated by the Oppositions—*i.e.*, that Shopify Inc. "obtained data from California residents," Inc. Opp. 6—would be destroyed (as the data would now have come from Oregon residents, not California ones). But that means that the Oppositions' jurisdictional theory depends, at its core, on Plaintiff's presence in California—which runs headlong into *Walden v. Fiore*, 571 U.S. 277 (2014), which admonishes that "the plaintiff cannot be the only link between the defendant and the forum." *Id.* at 285.

independent of any action or choice made by the plaintiffs, but rather resulted solely from the *defendant's own* decision to specifically target databases maintained by the governments of that state. *See id.* at 753-54. The opposite is true here. Unlike *Lukis*—where the *defendant's act alone* created the contact with the forum state—here it is impossible for the relevant connection with California to exist absent *both* IABMFG independently choosing the sell its products in California, *and* the consumer independently choosing to engage in the transaction from California.

Moreover, there is no allegation that Defendants engaged in the complained of activities with respect to California residents only, as distinct from other individuals throughout the nation and world. That failure is critical, as it puts this case squarely within the analysis and conclusion reached by *Baton*, and, for example, *Cisco Sys., Inc. v. Dexon Computer, Inc.*, 2021 WL 2207343, *3 (N.D. Cal. 2021). Both cases hold that a defendant does not "purposefully direct its activities at the forum state merely by directing those activities at a person who happens to reside in the forum state, even if the defendant knows the person resides there." *Id.*; *Baton*, 2021 WL 5226315, at *8. Put simply, there are no allegations that any of the activities engaged in by Defendants targeted California residents specifically, and this theory fails.

**Exploiting the California market.** The Oppositions, too, explain why the argument that Shopify Inc. "exploit[ed] the [California] market" fails. While the Oppositions recount a hodgepodge of acts that Shopify Inc. supposedly undertook in California, they ultimately admit that none of these have anything to do with the FAC's claims. As the Oppositions themselves put it: "Plaintiff's injuries arise from the fact that Defendants hid their presence on IABMFG's site and sent code to his device." Inc. Opp. 8. Whether Shopify Inc. "opened a store in Los Angeles," *id.* at 7, for instance, is wholly irrelevant from a jurisdictional perspective—as there is no basis for concluding that the FAC's claims would not have arisen "but for" that store opening, *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995).

Moreover, much of the Oppositions' argument—particularly their assertion that "Shopify [Inc.] had over 80,000 merchants in California with 10,000 in Los Angeles," Inc. Opp. 7—simply ignores *Baton*'s recent admonition that a company does not purposefully direct acts into California "based on the mere fact that [it] provides services to customers [merchants] nationwide," even if

some of those customers (or merchants) happen to be located in California. 2021 WL 5226315, at *6. The Oppositions attempt to sidestep that holding, arguing that all *Baton* did was "refuse[] to graft Ledger's [a merchant's] contacts with California onto Shopify Inc." Inc. Opp. 7. But that is flatly untrue. *Baton* found jurisdiction lacking not just over Shopify Inc. (and Shopify USA), but also over Ledger (i.e., the merchant), even though Ledger "solicit[ed] customers in the United States and California" and "7.03% of Ledger's worldwide revenue comes from California." 2021 WL 5226315, at *9. Shopify Inc. is in the same position here as Ledger was in *Baton*: Just as Ledger did not purposefully direct acts at California by offering its wares to customers worldwide, even if 7% of them happened to live in California, Shopify Inc. does not purposefully direct acts at California by offering its services to merchants worldwide, even if less than 8% of them (80,000 merchants out of the "millions" worldwide, *see* Inc. Opp. 2, 7) happen to reside in California.

3. *There is no basis for granting jurisdictional discovery.*

In a footnote, Plaintiff asks that if this Court "determine[s] a more satisfactory showing of facts is necessary" that he be allowed to take jurisdictional discovery from Shopify Inc. Inc. Opp. 9, n.3. But jurisdictional discovery is unwarranted where "it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction." *Slack Techs., Inc. v. Phoji, Inc.*, 2020 WL 4701174, at *7 (N.D. Cal. 2020). One classic example of circumstances where jurisdictional discovery is futile is where the "allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004); *see Smith v. United States Dep't of Agric.*, 2016 WL 4179786, at *5 (N.D. Cal. 2016) (explaining that "jurisdictional discovery" is disallowed where the defendant makes a "facial jurisdictional challenge"). In such a case, it is "immaterial" whether the allegations in the complaint are true or false—because jurisdiction is lacking either way—and so jurisdictional discovery accomplishes nothing. *Smith*, 2016 WL 4179786, at *5.

That is exactly the case here given the FAC fails to invoke jurisdiction, even accepting all of its jurisdictional allegations as true. Both Shopify Inc.'s MTD and its reply accept, for argument's sake, the jurisdictional facts alleged in the FAC, and explain why those alleged facts are still facially insufficient, as a matter of law, to establish personal jurisdiction. Nor do the

Oppositions dispute any of the factual predicates for Shopify Inc.'s jurisdictional arguments.[2] Jurisdictional discovery from Shopify Inc. would thus accomplish nothing: Even if it proved up every fact alleged in the FAC or asserted in the Oppositions, there would still be no basis for exercising jurisdiction over Shopify Inc.

### C. The FAC Fails To State A Claim Against Shopify Inc.[3]

#### 1. *The FAC's allegations regarding consent are plainly false.*

The Opposition doubles down on the FAC's assertion—which is not contained in the original Complaint—that "on information and belief," IABMFG "modified its website" "after Plaintiff's transactions with IABMFG" to link to the Privacy Policy that forms the basis of Shopify Inc.'s consent argument. *Compare* FAC ¶ 54, *with* Compl. ¶ 52. As Shopify Inc.'s MTD explained (at §§ II, IV.C.1), the FAC provides no fact to support it—because the allegation is false. And the documents since submitted with Defendants' Opposition To Plaintiff's Motion For Leave To Amend, ECF No. 39-4, demonstrate that there is a wealth of evidence that contradicts that "information and belief" allegation. *Compare* Heath Decl. Exs. A-D *with* FAC ¶¶ 21, 24. Specifically, they explain that IABMFG's Privacy Policy and the link to it on the IABMFG checkout page were generated using a Shopify Inc.-supplied template that was "made available to

---

[2] This provides yet another reason why jurisdictional discovery is inappropriate here. As Judge Chen recently explained in denying plaintiffs jurisdictional discovery as to either Shopify Inc. or Shopify USA in *Baton*, "where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery." *Baton*, 2021 WL 5226315, at *12. Here, the Oppositions do not offer *anything*—much less, something more than "bare allegations"—that contradicts the specific denials made in Shopify Inc.'s declaration.

[3] Shopify Inc.'s MTD addressed, in full, why each of the FAC's claims must be dismissed under Rule 12(b)(6). Shopify USA's MTD cross-referenced those arguments as appropriate, since, as explained therein, Shopify USA has nothing to do with the acts or claims alleged in this case. The Oppositions, however, departed from that organization without logical explanation—dividing up the arguments across the two briefs such that the Shopify Inc. Opp. addressed Claims 1-4, and the Shopify USA Opp. addressed Claims 5-7. That organization effectively treats both entities as interchangeable, just as the pleadings do in violation of Rule 8. *See supra* § I.A.

Notwithstanding that the Oppositions fail to address Shopify Inc.'s arguments with respect to Shopify Inc., and Shopify USA's arguments with respect to Shopify USA, for ease of comparison and the Court's convenience, Shopify Inc.'s and Shopify USA's replies mirror the organization employed in the Oppositions. Shopify Inc. and Shopify USA maintain that Shopify USA has no relation to the FAC's substantive allegations and claims—and, notwithstanding organization designed to ease the Court's review, that it is Plaintiff's obligation to be clear regarding which claims and arguments pertain to Shopify Inc. and which pertain to Shopify USA.

merchants [only] prior to April 30, 2018." ECF No. 39-4. It is thus clear, contrary to the Opposition's assertion, why the FAC omits any factual support for Plaintiff's "information and belief" allegation. Because all evidence demonstrates that the material portions of the IABMFG checkout page have not changed since April 2018 at the latest—well before Plaintiff's alleged June 2019 purchase. *See id.* Regardless, the "information and belief" allegation may be disregarded given it lacks any factual support whatsoever. *Sims v. Opportunity Fin., LLC*, 2021 WL 1391565, at *8 (N.D. Cal. 2021) (Hamilton, J.).

The rest of the Oppositions' arguments regarding consent are easily disposed. The Oppositions argue that consent cannot be considered at this stage because it is "a defense" that "Defendants have the burden to establish." *See* Inc. Opp. 10. However, that contention is patently wrong, explained by all the caselaw cited in Shopify Inc.'s MTD showing that courts can and do consider consent at this stage as to each of Plaintiff's claims because it is "an element" of those claims. *See* Shopify Inc. MTD at 8-10. And, it bears repeating, Plaintiff's own pleadings incorporate the documents establishing his consent. Shopify Inc. MTD § II.

The Oppositions also attempt to distinguish *Stripe* on the grounds that it supposedly involved "sign-in wrap," while this case involves "browsewrap." Inc. Opp. 12. That argument misconstrues the governing law. The operative question, regardless of whether a website involves "sign-in wrap" or "browsewrap," is whether a reasonably prudent user would have been on inquiry notice of the terms. *Silver v. Stripe, Inc.*, 2021 WL 3191752, at *3 (N.D. Cal. 2021). And as Shopify Inc.'s MTD (at 11-12) explained—block quoting *Stripe* at length—all of the reasons that decision gave for finding inquiry notice apply here; e.g., the link was in a bright blue font against a white background, was presented three times, was located immediately next to the continue/checkout button, and was near the amount of the final order total.[4] Finally, the Oppositions' argument that the Shopify Inc. Privacy Policy and Terms of Service are irrelevant because they are referenced with URLs in the IABMFG Privacy Statement, instead of copied into that document in toto, similarly lacks any basis, and the Oppositions cite no case that has held as

[4] Plaintiff is presumably aware that his identical legal theory was attempted and declined in this District mere months ago; he retained the exact same counsel that asserted it, and lost, in *Stripe*.

much.

At the end of the day, Plaintiff was presented *three times* with the IABMFG Privacy Policy, which fully disclosed Shopify Inc.'s role in his transaction. That alone negates all causes of action pled, and requires dismissal of the entire FAC.

2. *The FAC fails to state an eavesdropping claim under Penal Code Section 631(a).*

a. <u>The FAC fails to state a claim under either clause of Section 631(a), because it fails to plead facts showing that Shopify Inc. was a third party to Plaintiff's communications.</u>

The Oppositions do not dispute that under *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021), where one company provides software services to another, and thus acts merely as "an extension of" that other company, it cannot be liable under Section 631. *See* Inc. Opp. 16-17. Instead, they argue that *Noom* "is distinguishable," and that this case is more like *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *1 (N.D. Cal. 2019), because Shopify Inc. does not "collect and store the data for the sole use by IABMFG, but instead uses the data for [its] own commercial purposes"—namely sharing it with "Stripe" and "MaxMind." *Id.* at 17. The Oppositions get the legal principle right—the operative question is whether Shopify Inc. is acting for its own purposes or its merchant's—but the application wrong. To the extent Shopify Inc. shares information with Stripe and MaxMind, the FAC itself does not allege that it does so "independent" of its relationship with IABMFG for Shopify Inc.'s own purposes, as opposed to at IABMFG's direction and for its benefit. Hence, the FAC's allegations require the conclusion that Shopify Inc. still is "an extension" of IABMFG. Indeed, as Plaintiff himself has put it in detail, this sharing is specified in a "separate contract" that the "Shopify [Inc.] merchant" enters, which "discusses how users' personal information is shared with Stripe" and MaxMind. ECF No. 36-2 at ¶ 15. Because the actions described in the FAC are thus not independent of IABMFG, but rather for its benefit and pursuant to its contractual directives, Shopify Inc. acts merely as an "extension" of IABMFG, and not as a third party that can be held liable under Section 631(a).[5]

[5] The Oppositions' assertion that "Defendants admit that they were not the intended recipient of Plaintiffs' communications," Inc. Opp. 16, is entirely false. Shopify's MTD pointed out (at 12-13) that "the FAC concedes that IABMFG was the intended recipient of Plaintiff's information," which

b. The FAC fails to allege a violation of Section 631(a)'s first clause, because it fails to allege a wiretap of a telephone line.

The Oppositions concede that the FAC does not state a claim under Section 631(a)'s first clause, *see* Inc. Opp. 17, n.5, so those portions of the FAC, *see, e.g.*, FAC ¶ 77, must be dismissed.

c. The FAC fails to allege a violation of Section 631(a)'s second clause because it fails to plead facts showing that Shopify Inc. read the "contents" of any message.

As Shopify Inc.'s MTD (at § IV.C.2.c) explained, courts have held—without qualification—that "names, mailing addresses, phone numbers, billing information" are not the "content" of a communication.[6] *Svenson v. Google Inc.*, 65 F. Supp. 3d 717, 729 (N.D. Cal. 2014); *see also, e.g.*, *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) ("[U]ser names, passwords, and geographic location information are not content."); *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1104 (9th Cir. 2014). The Oppositions do not dispute that all of the information alleged to be at issue here—*i.e.*, "name, delivery address, billing address, phone number, and credit card number, expiration date, and CVV code" provided "to complete the checkout process," (*see* FAC ¶ 52)—falls within those categories. *See* Inc. Opp. 18-19. Instead, in keeping with the theme, they attempt to draw a distinction that another court has already rejected. Plaintiffs argue that the information here is "content" because it was "directly input by the user," as opposed to "automatically generated." Inc. Opp. 18. But *Svenson* itself rejected exactly that argument, explaining that "this Court does not read *Zynga* so narrowly to mean that only automatically generated data may constitute record information." 65 F. Supp. 3d at 729. *Svenson* went on to emphasize that data like "name, email address, Google account name, home city and state, zip code, and in some instances telephone number" is exactly the "type of information that the Ninth Circuit recognized as record information in *Zynga*," and that "[n]umerous courts in this district likewise have characterized such information as record information" as well, whether user inputted or

---

is fatal to the Section 631(a) claim. Because Shopify Inc. is alleged to have merely acted as an extension of IABMFG, if IABMFG was an intended recipient, then Shopify Inc. was too.

[6] The Oppositions' suggestion that "Defendants concede[] section 631 applies to electronic communications under the second clause," Inc. Opp. 17, n.5, is designed only to mislead. The operative question is whether the information at issue here qualifies as a communication in the first place. This supposed concession gets Plaintiff nothing.

automatically generated. *Id.*

The Oppositions' fallback argument—that all of the precedent just discussed is distinguishable because it was decided "under the Stored Communications Act" and not Cal. Penal Code § 631(a), *see* Inc. Opp. 19—is similarly foreclosed by precedent. The Stored Communications Act "incorporates the Wiretap Act's definition of 'contents,'" *Svenson*, 65 F. Supp. 3d at 728, and "[t]he 'contents' of a communication under CIPA and the federal Wiretap Act are the same." *Noom*, 533 F. Supp. 3d at 833. The cases above apply with full force to bar the FAC's Section 631(a) claim.

3. *The FAC fails to state a claim under Penal Code Section 635.*

a. The Section 635 claim fails because code is not a "device" within the meaning of the California Invasion of Privacy Act.

The Oppositions' argument that software code is not a "device" under Section 635 misleads in multiple ways.

First, the Oppositions suggest that courts have "concluded that software or computer code constitutes a 'device' under this statute." Inc. Opp. 19. But neither case they cite—*Revitch* and *In re Carrier IQ, Inc., Privacy Litig.*—actually issued such a holding. *Revitch* did not interpret the statute at all, but rather erroneously viewed the question as a factual one that it was required to "assume the truth of" in Plaintiff's favor "[a]t the pleading stage." 2019 WL 5485330, at *3. Doing so is inconsistent with well-established precedent that statutory interpretation is a legal question, appropriate for resolution on a motion to dismiss. *See Freeman v. Gonzales*, 444 F.3d 1031, 1037 (9th Cir. 2006) (The "proper definition" of a statutory term is a "[p]urely legal question[.]"); *see also* Shopify Inc. MTD n.4. And *In re Carrier IQ, Inc., Privacy Litig.*, involved wholly different arguments, and was under a different statute with different text, context, and history. *See* 78 F. Supp. 3d 1051, 1084-87 (N.D. Cal. 2015) (interpreting federal statute in light of, *e.g.*, the Senate Judiciary Committee report and letters to Senator Franken—none of which bear on the interpretation of Section 635). Perhaps unsurprisingly, the Oppositions cite nothing to support the proposition that the definition at issue in *In re Carrier IQ* has any relevance here.

Next, the Oppositions simply misrepresent Shopify Inc.'s argument, saying that it "amounts

to asking this Court to find that because software code did not exist at the time the statute was implemented in 1967" it is not governed by CIPA, and then devotes the rest of its discussion to attacking that strawman. Inc. Opp. 20. But Shopify Inc.'s position is emphatically not that CIPA does not apply to any technologies created after 1967. Rather, its argument is simply that every usual indicator of statutory meaning—text, context, history, and the rule of lenity—makes clear that Section 635 uses the term "device" in a way that cannot be applied to computer code. *See* Shopify Inc. MTD 16-17.

The Oppositions address none of those indicia of statutory meaning, but instead skip straight to arguing that, because CIPA was enacted to "giv[e] greater protection to privacy interests," when a court is "faced with two possible interpretations of CIPA" it must pick "the interpretation that provides the greatest privacy protection." Inc. Opp. 20. But that runs afoul of the well-established rule that courts are "bound by a statute's plain text," *Lucent Techs., Inc. v. Bd. of Equalization*, 241 Cal. App. 4th 19, 38 (2015), and may resort to "other aids, such as the statute's purpose" only where "the text of the statute does not speak to the question," *Bacilio v. City of Los Angeles*, 28 Cal. App. 5th 717, 724-25 (2018). What is more, the limitless principle advanced by the Oppositions—that regardless of what its text says, Section 635 must always be given the more expansive reading—is contradicted by the very cases they cite. As those decisions recognized, CIPA is a "coherent statutory scheme" with clearly defined limits—which courts do not transgress even if it would be more protective of privacy. *See Flanagan v. Flanagan*, 27 Cal. 4th 766, 776 (2002) (citing *Ribas v. Clark*, 38 Cal. 3d 355, 360-361 (1985)). For instance, courts have recognized that CIPA was passed with the specific goal of "protect[ing] against the intentional, nonconsensual recording of telephone conversations," and so it acts to bar only recording or eavesdropping of the conversation itself, "not later dissemination" or "secondhand repetition" of its contents (even though prohibiting that, too, surely would have given greater privacy protection). *Id.* at 775.

The Oppositions' attempt to characterize Section 635 as a boundless prohibition that must grow broader at every turn fails. Per the statute's text, the Legislature made the choice to outlaw only those things that could be (among other things) "manufacture[d]," "assemble[d]," "transport[ed]," or "import[ed]." Because one cannot do any of those things to intangible code, the

FAC—which is based only on such code—does not state a claim under Section 635.

b. <u>The Section 635 claim fails because the FAC fails to allege facts showing that Shopify Inc.'s code was "primarily or exclusively designed" for eavesdropping.</u>

The Oppositions assert that because the FAC alleges that Shopify Inc.'s code is "designed to enable Shopify[ Inc.]'s computer network to intercept … communications" that conclusively establishes that the code was "primarily or exclusively" designed for eavesdropping. Inc. Opp. 21 (quoting FAC ¶ 4). But Shopify Inc.'s MTD already explained why that allegation is insufficient: It is nothing more than a "legal conclusion couched as a factual allegation"—i.e., a "threadbare recital[] of the elements of [Plaintiff's] cause of action"—which "will not do" even at the motion to dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Oppositions similarly fail in their attempt to evade the FAC's admission that the purpose of Shopify Inc.'s code "is to facilitate payments." Inc. Opp. 21. According to the Oppositions, "[w]hat one does with a communication after it" has been recorded is irrelevant to whether the purpose was "primarily" to eavesdrop. *Id.* But, as Shopify Inc.'s MTD explained (at § IV.C.3.b)—and the Oppositions do not dispute—if that is correct, then a criminal violation occurs every time any consumer makes a credit card purchase, whether online or in a physical store, since the consumer's information is always sent to a payment processor. The Oppositions offer no theory for why the Legislature would have meant to outlaw all such routine commercial transactions—or why, in a statute targeted only at devices with specific purposes, the Legislature would have meant for courts to disregard the purpose to which the device was being put. Nor do they grapple with the fact that their reading—which would apply to any device that sends information (for any purpose) to an entity not specifically known to the user—would render illegal almost every cellphone, smart device, and computer connected to the internet (all of which do so routinely for wholly benign purposes). Because the FAC's Section 635 claim is based on an untenable reading of the statute, it fails and must be dismissed.

4. *The FAC fails to state a claim for invasion of privacy and intrusion upon seclusion because it does not allege facts showing that Shopify Inc. committed an "egregious" or "highly offensive" privacy intrusion.*

In defense of the FAC's invasion of privacy claims, the Oppositions primarily argue that

"whether an intrusion is 'highly offensive' is one that cannot be resolved at the pleading stage." Inc. Opp. 22. But that simply ignores the cases cited in Shopify Inc.'s MTD doing just that. *See, e.g.*, *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (dismissing invasion of privacy claims because "Plaintiffs have failed to establish that Defendant's conduct 'amounts to a serious invasion' of the protected privacy interest"); *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) (dismissing intrusion on seclusion claims because "Plaintiffs' allegations do not plausibly rise to the level of intrusion necessary to establish an intrusion claim"); *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 993 (2011) (sustaining demurrer of invasion of privacy claims because "the conduct of which [plaintiff] complains does not meet the standard of 'highly offensive'").[7]

So, the Oppositions fall back to simply insisting that the acts alleged here are "undoubtedly offensive." Inc. Opp. 22. But the Oppositions fail to grapple with (indeed, they do not cite the relevant case law at all) the rule that "routine commercial behavior"— even behavior that involves "obtaining" and "using" a "plaintiff's address without his knowledge or permission"—does not rise to the level required to state a privacy claim. *Folgelstrom*, 195 Cal. App. 4th at 992. As a result, the Oppositions cite *nothing* in the FAC which could even purportedly distinguish the acts alleged here from routine commercial transactions, as required to state a claim. *See* Inc. Opp. § IV.F (including no cites to the FAC). Indeed, much of the Oppositions' argument on this score is premised on the—entirely unsupported—assertion that what Shopify Inc. is accused of here is "akin to" unlawfully accessing a "credit report." Inc. Opp. 22-23. But whereas a credit report contains "[i]dentifying information," like "Social Security Number" and "date of birth,"; "[c]redit account information," like "types of accounts (for example, a credit card, mortgage, student loan, or vehicle loan), the date those accounts were opened, [the] credit limit or loan amount, account balanced, and [the] payment history"; "[b]ankruptcies;" and "[c]ollections accounts,"[8] it is undisputed that

[7] The Oppositions' assertion that "Defendants concede that Plaintiff alleges he had a reasonable expectation of privacy" is demonstrably false. Shopify Inc.'s MTD (at 9) specifically explained that the FAC's allegations affirmatively negated any "expectation of privacy."

[8] Equifax, *What is a Credit Report and What Does it Include?*, https://www.equifax.com/personal/education/credit/report/what-is-a-credit-report-and-what-does-it-include (last visited Jan. 20, 2022).

Shopify Inc. collects ***none of those things***. The FAC does not allege otherwise (nor could it).

The Oppositions' argument—from its assertion that these claims categorically cannot be dismissed, to its failure to engage with the "routine" nature of the acts alleged, to its spurious analogy to a credit report—fails through and through. The privacy claims must be dismissed.

5. *The FAC fails to state a Penal Code Section 502 claim, because it fails to allege facts showing that Shopify Inc. accessed Plaintiff's iPhone "without permission."*

For the reasons given in Shopify USA's MTD Reply § I.C.5, the Oppositions fail to show that the FAC alleges facts showing that Shopify Inc. overcame a technical or code-based barrier to access Plaintiff's device, and hence that Shopify Inc. acted "without permission" as defined in (and required under) Section 502. Accordingly, the FAC's claim under statute must be dismissed.

6. *The FAC fails to state a claim under the UCL.*

a. <u>The FAC fails to state a claim for an "unlawful" practice.</u>

For the reasons given in Shopify USA's MTD Reply § I.C.6.a, the Oppositions fail to show that the FAC alleges facts establishing a predicate statutory violation as required to state a claim for an "unlawful" practice under the UCL. Accordingly, that claim must be dismissed.

b. <u>The FAC fails to state a claim for a "fraudulent" practice.</u>

For the reasons given in Shopify USA's MTD Reply § I.C.6.b, the Oppositions fail—and indeed, do not event attempt—to distinguish the FAC's allegations regarding its UCL "fraudulent" claim from those recently rejected in *Stripe*. Accordingly, that claim must be dismissed.

c. <u>The FAC fails to state a claim for an "unfair" practice.</u>

For the reasons given in Shopify USA's MTD Reply § I.C.6.c, the Oppositions' attempt to belatedly bolster the threadbare and conclusory allegations regarding the FAC's "unfair" UCL claim fail. Accordingly, that claim must be dismissed.

7. *The FAC fails to state a claim for right of publicity.*

The Oppositions concede that FAC has failed to state a claim for right of publicity, so those claims must be dismissed. *See* USA Opp. at 18.

## II. CONCLUSION

Shopify Inc. respectfully requests that the Court dismiss the FAC.

Dated: January 21, 2021

Respectfully Submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Jacob M. Heath*
JACOB M. HEATH
THOMAS FU
Attorneys for Defendants
Shopify (USA), Inc. and Shopify Inc.