JACOB M. HEATH (SBN 238959)
jheath@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone: +1 650 614 7400
Facsimile: +1 650 614 7401

THOMAS FU (SBN 325209)
tfu@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017-5855
Telephone: +1 213 629 2020
Facsimile: +1 213 612 2499

ARAVIND SWAMINATHAN (admitted *pro hac vice*)
aswaminathan@orrick.com
NICOLE M. TADANO (admitted *pro hac vice*)
ntadano@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
701 5th Avenue, Suite 5600
Seattle, WA 98104-7097
Telephone: +1 206 839 4300
Facsimile: +1 206 839 4301

Attorneys for Defendants,
Shopify Inc. and Shopify (USA) Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| Brandon Briskin, on behalf of himself and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Shopify Inc. and Shopify (USA) Inc.,<br><br>Defendants. | Case No. 4:21-cv-06269-PJH<br><br>**DEFENDANT SHOPIFY INC.'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>Date: April 28, 2022<br>Time: 1:30 p.m.<br>Location: Courtroom 3, 3rd Floor<br>1301 Clay Street<br>Oakland, California<br><br>Judge: The Honorable Phyllis J. Hamilton |

## NOTICE OF MOTION TO DISMISS

**PLEASE TAKE NOTICE** that on April 28, 2022 at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 3 (3rd Floor) of the above-entitled court, located at 1301 Clay Street, Oakland, California 94612, defendant Shopify Inc. will, and hereby does, move the Court under Federal Rules of Civil Procedure 8, 12(b)(2) and 12(b)(6) for an order dismissing the Second Amended Class Action Complaint ("SAC") (ECF No. 44) of Plaintiff Brandon Briskin. This motion is based on this notice, the concurrently filed memorandum of points and authorities, and all other facts the court may or should take notice of, all files, records, and proceedings in this case, and any oral argument the Court may entertain.

**STATEMENT OF RELIEF SOUGHT (CIVIL L.R. 7-2(B)(3)).** Shopify Inc. seeks an Order pursuant to Federal Rule of Civil Procedure 8(a)(2) for failure to provide adequate notice of the claims against it, or in the alternative, pursuant to Federal Rule 12(b)(2) for lack of personal jurisdiction, or in the further alternative, Federal Rule of Civil Procedure 12(b)(6) dismissing the SAC for failure to state a claim upon which relief can be granted.

Dated: February 17, 2022

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Jacob M. Heath*
JACOB M. HEATH
THOMAS FU
Attorneys for Defendants
Shopify (USA), Inc. and Shopify Inc.

## TABLE OF CONTENTS

**Page**


NOTICE OF MOTION TO DISMISS ........ - 1 -

I. STATEMENT OF ISSUES TO BE DECIDED (CIVIL L.R. 7-4(A)(3)) ........ - 2 -

II. SUMMARY OF RELEVANT FACTS ........ - 2 -

III. LEGAL STANDARD ........ - 6 -

IV. LEGAL ARGUMENT ........ - 7 -

A. The SAC Fails Under Rule 8 Because It Fails to Distinguish Among Defendants ........ - 7 -

B. This Court Lacks Jurisdiction Over Shopify Inc. ........ - 7 -

1. *This Court lacks general jurisdiction over Shopify Inc.* ........ - 7 -

2. *This Court lacks specific jurisdiction over Shopify Inc.* ........ - 8 -

C. The SAC Fails to State a Claim Against Shopify Inc. ........ - 10 -

1. *The SAC fails to state any claim because it pleads facts showing that Plaintiff consented to any data collection.* ........ - 10 -

2. *The SAC fails to state an eavesdropping claim under Penal Code Section 631(a).* ........ - 13 -

a. The SAC fails to state a claim under either clause of Section 631(a), because it fails to plead facts showing that Shopify Inc. was a third party to Plaintiff's communications. ........ - 14 -

b. The SAC fails to allege a violation of Section 631(a)'s first clause, because it fails to allege a wiretap of a telephone line. ........ - 15 -

c. The SAC fails to allege a violation of Section 631(a)'s second clause because it fails to plead facts showing that Shopify Inc. read the "contents" of any message. ........ - 15 -

3. *The SAC fails to state a claim under Penal Code Section 635.* ........ - 16 -

a. The Section 635 claim fails because code is not a "device" within the meaning of the California Invasion of Privacy Act. ........ - 17 -

b. The Section 635 claim fails because the SAC fails to allege facts showing that Shopify Inc.'s code was "primarily or exclusively designed" for eavesdropping ........ - 18 -

4. *The SAC fails to state a claim for invasion of privacy and intrusion upon seclusion because it does not allege facts showing that Shopify Inc. committed an "egregious" or "highly offensive" privacy intrusion.* ........ - 20 -

5. *The SAC fails to state a Penal Code Section 502 claim, because it fails to allege facts showing that Shopify Inc. accessed Plaintiff's iPhone "without permission."* ........ - 21 -

6. *The SAC fails to state a claim under the UCL.* ........ - 23 -

a. The SAC fails to state a claim for an "unlawful" practice. ........ - 23 -

b. The SAC fails to state a claim for a "fraudulent" practice........- 24 -
c. The SAC fails to state a claim for an "unfair" practice............- 25 -
V. CONCLUSION........................................................- 25 -

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allen v. Quicken Loans Inc.*,
2018 WL 5874088 (D.N.J. 2018) ... 14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... *passim*

*Baton v. Ledger*,
2021 WL 5226315 (N.D. Cal. 2021) ... 7, 8, 9, 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ... 7, 12, 13

*Berryman v. Merit Prop. Mgmt., Inc.*,
152 Cal. App. 4th 1544 (2007) ... 24

*Ballard v. Savage*,
65 F.3d 1495 (9th Cir. 1995) ... 9

*Bravo v. Cnty. of San Diego*,
2014 WL 555195 (N.D. Cal. 2014) ... 6

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ... 15, 16

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ... 11

*Caces-Tiamson v. Equifax*,
2020 WL 1322889 (N.D. Cal. 2020) ... 8

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) ... 11

*In re Century Aluminum Co. Sec., Litig.*,
729 F.3d 1104 (9th Cir. 2013) ... 20

*CFPB v. Universal Debt & Payment Sols., LLC*,
2015 WL 11439178 (N.D. Ga. 2015) ... 19

*Chevron Corp. v. Donziger*,
2013 WL 4536808 (N.D. Cal. 2013) ... 16

*Cisco Sys., Inc. v. Dexon Computer, Inc.*,
2021 WL 2207343 (N.D. Cal. 2021) ... 8

*Cohen v. Casper Sleep Inc.*,
2018 WL 3392877 (S.D.N.Y. 2018) .......... 19

*Consolidation Coal Co. v. Fed. Mine Safety & Health Review Comm'n*,
136 F.3d 819 (D.C. Cir. 1998) .......... 17

*De Vries v. Regents of Univ. of Cal.*,
6 Cal. App. 5th 574 (2016) .......... 17

*DeGeorge v. U.S. Dist. Court*,
219 F.3d 930 (9th Cir. 2000) .......... 17

*Dohrmann v. Intuit, Inc.*,
823 F. App'x 482 (9th Cir. 2020) .......... 11

*Dole Food Co. v. Watts*,
303 F.3d 1104 (9th Cir. 2002) .......... 8

*In re Facebook Priv. Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011) .......... 22

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 14

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011) .......... 21

*Freeman v. Gonzales*,
444 F.3d 1031 (9th Cir. 2006) .......... 17

*In re Google Android Consumer Priv. Litig.*,
2013 WL 1283236 (N.D. Cal. 2013) .......... 21

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 14, 15, 20

*In re Google, Inc. Privacy Policy Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) .......... 20

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......... 14

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) .......... 20

*In re iPhone Application Litig.*,
2011 WL 4403963 (N.D. Cal. 2011) .......... 22

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......... 16

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005)........................................................................................ 2

*Leocal v. Ashcroft*,
543 U.S. 1 (2004)......................................................................................................... 18

*LiMandri v. Judkins*,
52 Cal. App. 4th 326 (1997)......................................................................................... 24

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ................................................................ 20, 21

*Lucent Techs., Inc. v. Bd. of Equalization*,
241 Cal. App. 4th 19 (2015)......................................................................................... 18

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
647 F.3d 1218 (9th Cir. 2011)........................................................................................ 7

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014)...................................................................................... 11

*Pebble Beach Co. v. Caddy*,
453 F.3d 1151 (9th Cir. 2006)........................................................................................ 6

*People v. Robles*,
5 P.3d 176 (Cal. 2000) ................................................................................................. 18

*In re Pharmatrak, Inc.*,
329 F.3d 9 (1st Cir. 2003) ............................................................................................ 21

*Schlegel v. Wells Fargo Bank, NA*,
720 F.3d 1204 (9th Cir. 2013)...................................................................................... 17

*Silver v. Stripe Inc.*,
2021 WL 3191752 (N.D. Cal. 2021)....................................................................... *passim*

*Sims v. Opportunity Fin., LLC*,
2021 WL 1391565 (N.D. Cal. 2021)............................................................................ 12

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) ......................................................................... 10

*Soo Park v. Thompson*,
851 F.3d 910 (9th Cir. 2017)........................................................................................ 12

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001)........................................................................................ 15

*Stewart v. Screen Gems-EMI Music, Inc.*,
81 F. Supp. 3d 938 (N.D. Cal. 2015) ............................................................................. 6

*Svenson v. Google Inc.*,
65 F. Supp. 3d 717 (N.D. Cal. 2014) .......... 16

*Terpin v. AT&T Mobility, LLC*,
2020 WL 5369410 (C.D. Cal. 2020) .......... 24

*United States v. Schweihs*,
569 F.2d 965 (5th Cir. 1978) .......... 18

*Verizon v. FCC*,
740 F.3d 623 (D.C. Cir. 2014) .......... 15

*Walden v. Fiore*,
571 U.S. 277 (2014) .......... 9

*Warden v. Kahn*,
99 Cal. App. 3d 805 (1979) .......... 14

*In re Zynga Privacy Litig.*,
750 F. 3d 1098 (9th Cir. 2014) .......... 15, 16

**Statutes**

Cal. Bus. & Prof. Code § 1427 .......... 23

Cal. Bus. & Prof. Code § 17200 .......... 23

Cal. Bus. & Prof. Code § 22575 .......... 23, 24

Cal. Civ. Code § 1798.150(c) .......... 23

1990 Cal. Legis. Serv. 696, § 2 .......... 17

Cal. Penal Code § 502 .......... *passim*

Cal. Penal Code § 631 .......... *passim*

Cal. Penal Code § 635 .......... *passim*

Cal. Penal Code § 637 .......... 23

**Rules**

Fed. R. Civ. P. 8 .......... 1, 2, 6, 7

Fed. R. Civ. P. 12(b)(2) .......... 1, 2, 6

Fed. R. Civ. P. 12(b)(6) .......... *passim*

**Other Authorities**

*History of Digital Recording*, https://recording-history.org/history-of-digital-recording ........ 16

https://cand.uscourts.gov ........ 22

https://pacer.uscourts.gov/privacy ........ 22

https://www.iambecoming.com/4572025/checkouts/5a9f0424b4812fc7195441a3ff49d5b1 ........ 3

https://www.iambecoming.com/4572025/checkouts/5a9f0424b4812fc7195441a3ff49d5b1?previous_step=shipping_method&step=payment_method ........ 3

https://www.iambecoming.com/4572025/checkouts/5a9f0424b4812fc7195441a3ff49d5b1?previous_step=contact_information&step=shipping_method ........ 4

Webster's Third New International Dictionary of the English Language Unabridged 618 (2002) ........ 16

The Second Amended Complaint ("SAC") alleges that routine processing of commercial transactions on the internet is a crime. Several, in fact. When a customer pays with a credit card—whether in a physical store or online—the payment information is typically sent to a payment processor (not processed by the merchant), and then in turn to other entities. The SAC asserts, however, that because Plaintiff's credit card information for an online transaction was transmitted to Shopify Inc. for processing, rather than directly to the merchant who sold him athletic apparel, Shopify Inc. violated California's Constitution, various statutes, and the common law.

Plaintiff has pled those claims three times.[1] The SAC suffers the same four, independent fatal defects as the first two Complaints: First, the SAC still fails to distinguish between—and hence to provide adequate notice to—the separate entities Shopify Inc., Shopify (USA) Inc. ("Shopify USA"), and Shopify Payments (USA) Inc. ("Shopify Payments").[2] Instead of stating plainly what acts each defendant is accused of committing, the SAC directs *all* its substantive allegations at a fictitious amalgam it calls "Shopify," attributing singular actions that logically can't be committed by multiple actors to the group "***and/or***" non-party Stripe, Inc. *See, e.g.*, SAC ¶ 41. Second, this Court lacks personal jurisdiction over Shopify Inc. Third, Plaintiff's consent to the complained-of acts is fatal to all of his claims as pled. Despite his protestations that he was wholly unaware that his information would be transmitted to Shopify Inc., the webpages the SAC features prominently disclose that fact. And fourth, each claim independently fails to state a claim for relief

---

[1] The SAC makes few revisions to the First Amended Complaint. Aside from wedging new defendant Shopify Payments into two clauses, and dropping two baseless causes of action entirely, all of the SAC's substantive changes can be found in paragraphs 10-17.

[2] A brief note on organization. As alluded to above, although this case involves three separate defendants (Shopify Inc., Shopify USA, and Shopify Payments), the SAC's allegations fail to distinguish between those three different companies as required by Rule 8. *See infra* § IV.A. For the Court's convenience, rather than having each defendant repeat duplicative arguments explaining why those "Shopify" allegations fail, Shopify Inc., Shopify USA, and Shopify Payments have adopted the following organizational scheme for their motions to dismiss: As to Rule 8, Shopify USA—the initial entity that Plaintiff wrongly attempted to lump in with Shopify Inc.—explains why the SAC must be dismissed as to all defendants for failure to distinguish between the three separate defendants; and Shopify Inc. and Shopify Payments will cross reference that argument. As to Rule 12(b)(2), each defendant separately addresses why this Court lacks jurisdiction over it (because jurisdiction is the only respect in which the SAC pleads separate facts as to each defendant). And as to Rule 12(b)(6), Shopify Inc., the only entity with even a possible relationship to Plaintiff's substantive allegations, addresses why the SAC fails to state a claim, even if every reference to "Shopify" were read as "Shopify Inc.," and Shopify USA and Shopify Payments will cross reference that argument.

on the merits: **Penal Code § 631** does not apply, because the SAC does not allege that Shopify Inc. "taps" or learns the "contents" of any communication, but that it processes purely transactional data for its merchants at their request. **Penal Code § 635** does not apply, because the SAC does not allege that Shopify Inc. manufactured a "device" "primarily" for eavesdropping, but rather software to conduct lawful sales transactions. No **right to privacy** is at issue here because the SAC alleges only standard commercial transactions, unquestionably insufficient under the "egregious breach of the social norms" standard. **Penal Code § 502** does not apply, because the SAC does not allege that Shopify Inc. overcame any code-based barrier to access a computer, only that it used routine cookies that are fully disclosed and easily prevented or deleted by those who wish to do so. And the **Unfair Competition Law** does not apply for similar reasons: the SAC alleges only that Shopify Inc. engaged in standard commercial transactions, the details of which are disclosed to the consumer in full, which are not unlawful, unfair, or fraudulent. The SAC should be dismissed.

## I. STATEMENT OF ISSUES TO BE DECIDED (CIVIL L.R. 7-4(a)(3))

Shopify Inc. seeks Rule 8 dismissal for failure to plead facts showing that Shopify Inc. caused Plaintiff's alleged harm, Rule 12(b)(2) dismissal for lack of personal jurisdiction, and Rule 12(b)(6) dismissal for failure to state a claim.

## II. SUMMARY OF RELEVANT FACTS

The SAC alleges that in June 2019, Plaintiff purchased fitness apparel from IABMFG, a Shopify Inc. merchant, through IABMFG's website. SAC ¶ 57. In the course of that purchase, the SAC alleges Plaintiff was presented with the checkout screen reproduced at SAC ¶ 28 (**Fig. 1**). SAC ¶ 58. In providing these reproductions of IABMFG's current website, the SAC incorporates those webpages by reference, and the Court is permitted to consider their full context. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).




**Figure 1**




**Figure 2**

The image at SAC ¶ 28 is cropped so as to omit the portion of the screen below the "Continue to shipping" and "Return to cart" buttons, which presents shoppers with links to IABMFG's Refund Policy, Privacy Policy, and Terms of Service (**Fig. 2**). *See* Heath Decl., Ex. A (red box added).[3]

The same pages from which the SAC provides screenshots demonstrates that, in the course of checking out, consumers are provided with other links to IABMFG's Privacy Policy as well. For instance, the SAC alleges that after completing the above checkout screen (**Fig. 1**), Plaintiff was "required to provide his private information in order to complete the checkout process," SAC ¶ 59, on a screen like the one below (**Fig. 3**), SAC ¶ 31. As above, the full version of that screen (**Fig. 4**) includes a link to IABMFG's Privacy Policy. *See* Heath Decl., Ex. B (red box added).[4]

[3] *Available at* https://www.iambecoming.com/4572025/checkouts/5a9f0424b4812fc7195441a3ff49d5b1.

[4] *Available at* https://www.iambecoming.com/4572025/checkouts/5a9f0424b4812fc7195441a3ff49d5b1?previous_step=shipping_method&step=payment_method.




**Figure 3**




**Figure 4**

When selecting the method for shipping his purchases, there too IABMFG's website presents a link to the Privacy Policy. (**Fig. 5**). *See* Heath Decl., Ex. C (red box added).[5]




**Figure 5**

In short, the website the SAC relies on links to IABMFG's Privacy Policy for consumers at least three times (*see* **Figs. 2, 4, 5**) in the course of checkout, each situated in a distinct blue color, just under the buttons that Plaintiff was required to click on in order to advance with his purchase.

---

[5] *Available at* https://www.iambecoming.com/4572025/checkouts/5a9f0424b4812fc7195441a3ff49d5b1?previous_step=contact_information&step=shipping_method

Despite providing and relying on these screenshots and incorporating the webpages by reference, the SAC alleges "on information and belief" that "[a]t some point . . . after Plaintiff's transaction with IABMFG—the company modified its website" and that "Plaintiff never saw" the links to the Privacy Policy that clearly appear on the uncropped pages imaged in the SAC. SAC ¶ 61.

IABMFG's Privacy Policy linked on those pages the SAC provides in cropped form discloses (among other things) that IABMFG's online store is "hosted on Shopify Inc.," an "e-commerce platform that allows [merchants] to sell [their] products and services" online." Indeed, the Privacy Policy has an entire section dedicated to Shopify Inc. and its role, where it explains that a consumer's data is "stored through Shopify [Inc.]'s data storage, databases, and the general Shopify application," and that if a customer chooses certain payment methods, Shopify Inc. will "store[] [the consumer's] credit card data" for "only as long as is necessary to complete [the] purchase transaction," at which point the "purchase transaction information is deleted." IABMFG's Privacy Policy further directs readers to Shopify Inc.'s own Terms of Service and Privacy Statement in case they have additional questions about Shopify Inc.'s involvement, Heath Decl., Ex. D (emphasis added):

> ***SECTION 4 - SHOPIFY***
> ***Our store is hosted on Shopify Inc.*** They provide us with the online e-commerce platform that allows us to sell our products and services to you.
> ***Your data is stored through Shopify's data storage, databases, and the general Shopify application***. They store your data on a secure server behind a firewall.
>
> Payment:
> ***If you choose a direct payment gateway to complete your purchase, then Shopify stores your credit card data***. It is encrypted through the Payment Card Industry Data Security Standard (PCI-DSS). ***Your purchase transaction data is stored only as long as is necessary to complete your purchase transaction. After that is complete, your purchase transaction information is deleted.***
> All direct payment gateways adhere to the standards set by PCI-DSS as managed by the PCI Security Standards Council, which is a joint effort of brands like Visa, MasterCard, American Express and Discover.
> PCI-DSS requirements help ensure the secure handling of credit card information by our store and its service providers.
> ***For more insight, you may also want to read Shopify's Terms of Service (https://www.shopify.com/legal/terms) or Privacy Statement (https://www.shopify.com/legal/privacy)***.

Shopify Inc.'s own Privacy Statement, in turn, contains more detailed disclosures about what data it processes and how. It included a plainly worded explanation of how Shopify Inc.

handled consumer data, covering topics including: "[w]hy we process your information," "[w]here we send your information," "[y]our rights over your information," and "[h]ow we use 'cookies' and other tracking technologies." Heath Decl., Ex. E. This last category includes a link to Shopify Inc.'s Cookie Policy, which provided more detail on every cookie that Shopify Inc. used, including name, function, and duration. Heath Decl., Ex. F.

The SAC nevertheless claims that Plaintiff "was not aware" that when he "submitted the form containing his private information to complete the checkout process, his private information was sent to Shopify[] [Inc.]'s computer network, where it was stored, analyzed, and processed." SAC ¶ 60. The SAC also asserts that Plaintiff "was not aware" that Shopify Inc. would "install[] of a tracking cookie … on his smartphone." *Id.* The SAC alleges that "[h]ad [Plaintiff] known that Shopify [Inc.] would collect, store, analyze, and/or transfer his private information," he "would not have purchased products from IABMFG." SAC ¶ 64. In acknowledging the presence of disclosures of Shopify's involvement, the SAC claims that, nevertheless, "Plaintiff never saw nor agreed" to those "privacy disclosures on the IABMFG website." SAC ¶ 61.

On these bases, Plaintiff filed this lawsuit accusing Shopify Inc. of committing crimes and torts for processing his purchase information and utilizing routine cookies in exactly the manner those disclosures said it would.

## III. LEGAL STANDARD

A motion to dismiss under Rule 8 is decided solely on the face of the complaint. A complaint survives such a motion only if it provides each "defendant[] fair notice of the claims against [it]." *Bravo v. Cnty. of San Diego*, 2014 WL 555195, at *2 (N.D. Cal. 2014). "[L]umping together multiple defendants in one broad allegation fails to satisfy [this] notice requirement." *Id.*

A motion to dismiss under Rule 12(b)(2) is not limited to the pleadings and "may consider extrinsic evidence … including affidavits submitted by the parties." *Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 951 (N.D. Cal. 2015). The plaintiff bears the burden of establishing personal jurisdiction. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).

A motion to dismiss under Rule 12(b)(6) is resolved solely on the face of the complaint. To survive a motion under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted

as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[L]abels and conclusions, and a formulaic recitation of the elements" of claims will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## IV. LEGAL ARGUMENT

### A. The SAC Fails Under Rule 8 Because It Fails to Distinguish Among Defendants.

As explained in detail in Shopify USA's Motion to Dismiss ("Shopify USA MTD"), the SAC must be dismissed because, by combining Shopify Inc., Shopify USA, and Shopify Payments into a fictitious single entity that it defines as "Shopify," the SAC fails to provide Shopify Inc., Shopify USA, or Shopify Payments with sufficient notice of the claims against it, as required by Rule 8. *See* Shopify USA MTD § IV.A.

### B. This Court Lacks Jurisdiction Over Shopify Inc.

#### 1. *This Court lacks general jurisdiction over Shopify Inc.*

A corporation is subject to general jurisdiction in California only if it is incorporated in California, if its principal place of business is in California, or if its contacts with California are so "exceptional" as "to approximate physical presence in California." *Baton v. Ledger*, 2021 WL 5226315, at *3-*4 (N.D. Cal. 2021) (dismissing Shopify Inc. and Shopify USA for lack of jurisdiction). None of those bases applies here. As the SAC concedes, Shopify Inc. is incorporated in Canada, not California, and its principal place of business is in Ottawa, Canada. SAC ¶ 9. So California is neither of the two "paradigm bases for general jurisdiction" over Shopify Inc. *Baton*, 2021 WL 5226315, at *3. And the SAC does not—and cannot—assert that Shopify Inc. has "exceptional" contacts with California. Shopify Inc. "has no offices or staff in California, is not registered to do business in the state, has no registered agent for service of process, and pays no state [income] taxes." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1225 (9th Cir. 2011) (finding no general jurisdiction for that reason); *see* Heath Decl., Ex. G ¶¶ 5-6.[6] There is thus no basis for asserting general jurisdiction over Shopify Inc.

---

[6] Exhibits G and H to the Heath Declaration are sworn declarations by employees of Shopify Inc. and Shopify USA, which were recently submitted in *Baton v. Ledger*, No. 21-cv-2470, ECF. No. 56-1 (N.D. Cal.) (executed and filed July 26, 2021). The facts in those declarations cited here remain accurate.

2. *This Court lacks specific jurisdiction over Shopify Inc.*

Specific jurisdiction exists only where the complaint alleges facts showing (1) the defendant "purposefully direct[s] his activities" toward the state or its residents; and (2) the claim before the court "arises out of or relates to the defendant's forum-related activities." *Caces-Tiamson v. Equifax*, 2020 WL 1322889, at *3 (N.D. Cal. 2020). The SAC advances two jurisdictional theories as to Shopify Inc., neither of which satisfies both necessary elements. The first theory of specific jurisdiction alleges facts targeting the fictional amalgam "Shopify," but fails to establish that "Shopify" purposefully directed any relevant acts at California. The second theory of specific jurisdiction, which targets "Shopify Inc." specifically, alleges facts that sound more like purposeful direction than the first, but have no relation to Plaintiff's claims. Because neither theory alleges that Plaintiff's claims arise out of acts purposefully directed at the forum—but rather at most that Plaintiff's claims arise out of forum-agnostic acts (the first category) and that Shopify Inc. undertook California-related acts wholly unrelated to Plaintiff's claims (the second category)—the SAC fails to establish specific jurisdiction. *See Baton*, 2021 WL 5226315, at *11 ("[B]ecause Plaintiffs fail to show (1) that the Shopify, Inc. "purposefully directed" their activities towards California, and (2) that their claims "arise out of" Shopify [Inc.]'s forum-related activities demonstrate, the Court concludes that it lacks specific jurisdiction over Shopify Inc.").

**Claim-related but forum-agnostic allegations about "Shopify."** All of the allegations as to the fictitious "Shopify" (even if "Shopify" were everywhere construed to mean "Shopify Inc.") fail to establish that Shopify Inc. purposefully directed any act at California. To satisfy the purposeful-direction requirement, the SAC must plead facts showing an (1) "intentional act" on the part of Shopify Inc. "(2) expressly aimed at the forum state, (3) causing harm that [Shopify Inc.] knows is likely to be suffered in the forum state." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). This District has recently made plain that purposeful direction to California cannot stand "on the mere fact that [Shopify Inc.] provides services to customers [merchants] nationwide," even if some of those customers happen to be located in California. *Baton*, 2021 WL 5226315, at *6; *see also Cisco Sys., Inc. v. Dexon Computer, Inc.*, 2021 WL 2207343, *3 (N.D. Cal. 2021) (A defendant does not "purposefully direct its activities at the forum state merely by directing those

activities at a person who happens to reside in the forum state, even if the defendant knows the person resides there."). Rather, purposeful direction exists only when, as a result of "the defendant's own choice," it "specifically target[s] California" such "that California-residents [a]re uniquely harmed … more than anyone else." *Baton*, 2021 WL 5226315, at *7.

Yet, that is all the SAC alleges. The SAC relies merely on the allegation that "Shopify" provides its software to "millions" of merchants around the world, operating "millions of websites," one of whom happens to be IABMFG (who in turn sold goods to Plaintiff in California), and that IABMFG obtained and "integrate[d]" that software into its own universally accessible website. *See, e.g.*, SAC ¶¶ 1-2, 6-7. That is not purposeful direction. Indeed, Plaintiff himself has conceded that Shopify Inc. does not control "where [its merchants] sell their products" or "who necessarily interacts with [the] payment forms" that form the basis of Plaintiff's claims. ECF No. 37 at 8. Said otherwise, it was not Shopify Inc., but IAMBFG, that chose to make its online store accessible in California; and not Shopify Inc., but Plaintiff himself, who chose to reach out from California to that online store and initiate his purchase. What the SAC describes is not Shopify Inc. making its "own choice" to "specifically target[] California" as distinct from anywhere else in the world, as the standard requires, but rather Shopify Inc. offering its services "nationwide and globally," with *others* taking acts to create the relevant connection with California, which is insufficient to establish purposeful direction. *Baton*, 2021 WL 5226315, at *6.[7]

**Claim-unrelated forum-contact allegations specific to Shopify Inc.** While more closely tied to California, the SAC's allegations regarding Shopify Inc.'s contacts with California plainly do not give rise to Plaintiff's claims. A claim "arises out of" a forum-state contact only if it would not exist "but for" the contact. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). Almost everything the SAC says about "Shopify Inc."—*e.g.*, that it "opened a physical store located in Los

[7] A hypothetical helps illustrate why the SAC's theory of jurisdiction fails. Consider the converse scenario where a Plaintiff lived in a state other than California; say Oregon. If Shopify Inc.'s acts had been identical, Plaintiff's theory of jurisdiction— that Shopify Inc. obtained data from California residents—would be destroyed (as the data would now have come from Oregon residents, not California ones). That means that jurisdictional theory depends, at its core, on *Plaintiff's* presence in California—which runs headlong into *Walden v. Fiore*, 571 U.S. 277 (2014), which admonishes that "the plaintiff cannot be the only link between the defendant and the forum." *Id.* at 285.

Angeles"—fails that test, as it is has nothing to do with Plaintiff's purchase on IABMFG's website, and the SAC does not allege otherwise. *See* SAC ¶¶ 11-13. Moreover, the Shopify Inc.-specific allegations—particularly the assertion that "Shopify Inc. had over 80,000 merchants in California, with 10,000 located in the Los Angeles area," SAC ¶ 12—simply ignores the well-established principle that a company does not purposefully direct acts into California "based on the mere fact that [it] provides services to customers nationwide," even if some of those customers happen to be located in California. 2021 WL 5226315, at *6. Applying that rule, Judge Chen recently held that a company that makes it business available to customers worldwide does not purposefully direct acts at California, even if 7% of its customers happened to reside in California. *Id.* at *9. The same conclusion governs here: Shopify Inc. does not purposefully direct acts at California by offering its services to merchants worldwide, even if less than 8% of them (80,000 merchants out of the "millions" worldwide, *see* SAC ¶¶ 7, 12) happen to reside in California.

### C. The SAC Fails to State a Claim Against Shopify Inc.

The SAC also must be dismissed in its entirety as to Shopify Inc. under Rule 12(b)(6) because the SAC itself (along with IABMFG webpages incorporated by reference therein, *see supra* § II) makes clear that Plaintiff consented to any data collection, which defeats each of Plaintiff's claims. Additionally, independent of the issue of consent, each of the SAC's claims—under (1) Section 631; (2) Section 635; (3) the California constitution or common law; (4) Section 502; (5) the Unfair Competition Law; and (6) the right of publicity—all fail.

#### 1. *The SAC fails to state any claim because it pleads facts showing that Plaintiff consented to any data collection.*

It is well-established that "[c]onsideration of consent is appropriate on a motion to dismiss where lack of consent is an element of the claim." *Silver v. Stripe Inc.*, 2021 WL 3191752, at *2 (N.D. Cal. 2021). Here, Plaintiff's claims can (and should) be dismissed at the pleading stage because he gave consent. *See, e.g.*, *id.* at *3 (relying on plaintiff's consent to dismiss **Section 631** claim under Rule 12(b)(6)); *id.* (relying on plaintiff's consent to dismiss **Section 635** claim under Rule 12(b)(6)); *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955-956 (N.D. Cal. 2017) (relying on plaintiff's consent to dismiss **invasion of privacy** claim under Rule 12(b)(6)), *aff'd*, 745 F.

App'x 8 (9th Cir. 2018); *id.* (relying on plaintiff's consent to dismiss **intrusion upon seclusion** claim under Rule 12(b)(6)); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1062-63 (N.D. Cal. 2021) (considering whether plaintiff consented to evaluate Rule 12(b)(6) motion to dismiss **Section 502** claim); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 n.3 (N.D. Cal. 2021) (considering whether plaintiff consented to evaluate Rule 12(b)(6) motion to dismiss **UCL** claim).

A user consents to activities disclosed in a website's privacy notice when he uses the website with at least "constructive knowledge of [the] website's terms and conditions." *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 483-84 (9th Cir. 2020) (quoting *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014)). Constructive knowledge exists where the website "put[s] 'a reasonably prudent user on inquiry notice'" of the terms. *Stripe*, 2021 WL 3191752, at *3. That condition is met where a user is "provided with an opportunity to review the terms of service" through a "hyperlink." *Id.*

That is precisely what happened here. As the webpages incorporated by reference in the SAC demonstrate, IABMFG's Privacy Policy was prominently displayed throughout Plaintiff's entire IABMFG purchase experience, and it explicitly disclosed Shopify Inc.'s role in collecting data. *See supra* § II. In fact, an entire section of the IABMFG Privacy Policy was dedicated solely to Shopify Inc., and specifically disclosed not only that IABMFG's store was "hosted on Shopify Inc." and that "your data is stored through Shopify [Inc.]'s data storage, databases and the general Shopify application," but also that "[i]f you choose a direct payment gateway to complete your purchase, then Shopify [Inc.] stores your credit card data" for "as long as is necessary to complete your purchase transaction" and then deletes "your purchase transaction information" as soon as the transaction "is complete." Heath Decl., Ex. E. Additionally, IABMFG's Privacy Policy went further, advising that users "may also want to read Shopify [Inc.]'s Terms of Service and Privacy Statement" and providing links to each. *Id.* Each of Shopify Inc.'s Terms of Service and Privacy Statement in turn provided a detailed description of what Shopify Inc. did with a consumer's purchase data, what cookies Shopify Inc. installed when a user visits a merchant's website, what those cookies did, and how long they persisted. *See supra* § II.

As noted above, the SAC attempts to plead around these disclosures, based "on information

and belief," by alleging that Plaintiff "never saw nor agreed to any privacy disclosures on the IABMFG website." Plaintiff alleges simply that IABMFG "modified its website" to include these links to the Privacy Policy only "after Plaintiff's transactions with IABMFG." *Compare* SAC ¶ 61, *with* Compl. ¶ 52 (making no such allegation). That allegation should be disregarded in full. First, this new "information and belief" allegation is "conclusory in nature" unsupported by any alleged fact, and "[o]n that basis alone" must be "disregard[ed] under *Iqbal* and *Twombly*." *Sims v. Opportunity Fin., LLC*, 2021 WL 1391565, at *8 (N.D. Cal. 2021) (Hamilton, J.).

Second, the allegation is negated by the SAC's incorporation of IABMFG's website as the basis for Plaintiff's claims. *See supra* § II; *see also, e.g.*, SAC ¶¶ 28-34, 57-61 (quoting, describing, and including images of IABMFG's current website). The IABMFG website makes clear that Plaintiff was at a minimum on inquiry notice of IABMFG's Privacy Policy. There can be no doubt that IABMFG's website "provided [users] with an opportunity to review" the Privacy Policy through a "hyperlink." *Stripe*, 2021 WL 3191752, at *3. Indeed, it does so three times—presenting prominent hyperlinks to IABMFG's Privacy Policy on the checkout, payment, and shipping pages. *See supra* § II. Each time, that information appears immediately under the buttons that Plaintiff was required to press to proceed or turn back. *See id.* As a matter of law, that is sufficient to create the notice required to make the terms of IABMFG's Privacy Policy binding.[8] *See Stripe*, 2021 WL 3191752, at *3. IABMFG's website presents consumers with at least three opportunities to learn of Shopify Inc.'s involvement in any transaction. Whether Plaintiff chose to avail himself of any does render Shopify Inc.'s routine processing of his transaction criminal. When "the [Complaint], when read as a whole, does not support plaintiff's information and belief allegation," that allegation may be disregarded. *Sims*, 2021 WL 1391565, at *8; *see also Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (*Twombly* allows information and belief allegations "where the belief is

[8] This should not be controversial. An IABMFG consumer could not avoid IABMFG terms—say its 60-day refund policy, *see* Heath Decl., Ex. J—by claiming it was not binding because the consumer did not choose to view it. By proceeding to complete a purchase on IABMFG's website, which prominently links at least thrice to IABMFG's refund policy, the consumer is bound by those terms. The link to IABMFG's Privacy Policy is no different. It was presented in exactly the same way—and, in fact, immediately next to—the link to IABMFG's Refund Statement. *See supra* § II.

based on factual information that makes the inference … plausible”).[9]

*Stripe* is instructive. The *Stripe* Court’s reasons for finding the privacy policy “conspicuous and obvious” map onto this case directly:

> First, the hyperlink to [IABMFG’s] privacy policy is displayed in a bright [blue] font against a white background, which stands out from most of the surrounding text. Further, the hyperlink to the privacy policy is located close to the “place order” button, thus it is hard for a user placing an order to miss it. The bold font alerting consumers to the amount of the charge … placed on their card calls additional attention to the area where [IABMFG’s] privacy policy is located. There is nothing about the text that makes it inconspicuous or nonobvious.

2021 WL 3191752, at *3. The same result should obtain here. The Court should not countenance the SAC’s attempt to plead around this fatal issue by characterizing it as an “information and belief” allegation, nor can the Court ignore the standard on the basis that Plaintiff didn’t “see” conspicuous and obvious disclosures. *See* SAC ¶ 61.

2. *The SAC fails to state an eavesdropping claim under Penal Code Section 631(a).*

Separate and apart from the categorical legal bar that Plaintiff’s consent poses to his suit, the SAC fails to state an eavesdropping claim under Section 631(a) for processing Plaintiff’s transaction. That provision makes it unlawful to (1) “intentionally tap[], or make[] any unauthorized connection … with any telegraph or telephone wire, line, cable, or instrument,” or (2) “willfully and without the consent of all parties to the communication … read[], or attempt[] to read, or to learn the contents or meaning of any message … while the same is in transit.” Cal. Penal Code § 631(a). As discussed below, the SAC fatally fails to allege that *any* third-party disclosure occurred at all. It also fails to allege tapping of a telephone line required under clause 1, or unauthorized disclosure of contents required under clause 2, thus failing to state any claim under

---

[9] What is more, as the documents submitted with Defendants’ Opposition To Plaintiff’s Motion For Leave To Amend, ECF No. 39-4, demonstrate, all available evidence on this issue contradicts Plaintiff’s new “information and belief” allegation. *See* Heath Decl. Exs. A-D. Specifically, those documents explain that IABMFG’s Privacy Policy and the link to it on the IABMFG checkout page appear to match a Shopify Inc.-supplied template that was “made available to merchants [only] prior to April 30, 2018.” ECF No. 39-4. It defies logic that the relevant policy was changed *after* Plaintiff’s alleged June 2019 purchase *to* a version of the policy that existed only before April 30, 2018. *See id.*

Section 631(a).[10]

a. The SAC fails to state a claim under either clause of Section 631(a), because it fails to plead facts showing that Shopify Inc. was a third party to Plaintiff's communications.

To state a claim against Shopify Inc. under any clause of Section 631, the SAC must allege facts showing that Shopify Inc. was a third party to Plaintiff's communications. That is because Section 631 "'appl[ies] only to eavesdropping by a third party.'" *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020) (quoting *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979). It does not cover "a participant"—even one who "record[s]" the communication. *Id.*

Here, that rule means—undisputedly—that IABMFG cannot be liable under Section 631(a), as the SAC concedes that IABMFG was the intended recipient of Plaintiff's information. SAC ¶ 59. But that same rule means that Shopify Inc. cannot be liable either, because Shopify Inc. received Plaintiff's information not as an independent "third party" interloping on Plaintiff's communications with IABMFG, but rather as "an extension of" IABMFG itself. *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021). Specifically, Shopify Inc. is "a vendor that provides a software service" to IABMFG—namely, tools that "capture its clients' data, hosts it on [Shopify Inc.]'s servers, and allows the clients to analyze their data." *Id.* Said otherwise, Shopify Inc. "provide[d] a tool" that IABMFG chose to employ "to record and analyze its own data in aid of [its own] business." *Id.* This is not a case where a third-party surreptitiously redirected communication away from its intended recipient, but one where the intended recipient itself contracted with another to act in its stead—no different than when a company employs an outside call center to field customer inquiries on its behalf. *See Allen v. Quicken Loans Inc.*, 2018 WL 5874088, at *4 (D.N.J. 2018) (third-party Javascript code hosted on a website is not an unlawful wiretap under analogous provision of federal Wiretap Act). Because Shopify Inc. was not a third-party to any of Plaintiff's communications, it cannot be deemed to have violated Section 631(a).

---

[10] It is unclear whether Plaintiff also means to invoke Section 631's third clause, which makes it a crime to "use[], or attempt[] to use, … or to communicate … any information so obtained." But that clause applies only where the information at issue "was obtained through a violation of the first or second clauses." *In re Google Assistant Privacy Litig.*,457 F. Supp. 3d 797, 825, 827 (N.C. Cal. 2020). Because Plaintiff cannot show a violation of either of those clauses, he "also ha[s] failed to plead a violation of the third clause." *Id.* at 827. The same is true of Section 631's fourth clause as well, which criminalizes aiding and abetting violations of the first two clauses.

b. <u>The SAC fails to allege a violation of Section 631(a)'s first clause, because it fails to allege a wiretap of a telephone line.</u>

In any event, the SAC separately fails to state a claim under the ***first clause*** of Section 631(a), which makes a defendant liable only if it taps a "telegraph or telephone wire, line, cable, or instrument." Cal. Penal Code § 631(a). That clause requires a plaintiff to allege not only that a defendant tapped a "wire, line, cable, or instrument" but, also that whichever of those was involved carried "telegraph or telephone" signals. *See In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 825-26 (N.D. Cal. 2020) (holding that complaint failed to state a claim under Section 631(a) because it did not suggest "that Google Assistant operates using telegraph or telephone wires"). Here, the SAC alleges no facts suggesting that any services Shopify Inc. provides to IABMFG operate via (much less "tap") "telegraph or telephone" lines. In fact, the SAC says otherwise, alleging that Shopify Inc.'s technology "tapped, electrically or otherwise, the lines and/or instruments of *internet communication*." SAC ¶ 84; *see also id.* ¶ 57; *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001) (affirming dismissal because plaintiff's complaint included "unnecessary details contrary to his claims"). There is no serious dispute that "internet communication" no longer occurs over "telephone" or "telegraph" lines, *see Verizon v. FCC*, 740 F.3d 623 (D.C. Cir. 2014), so the allegation about internet communications therefore negates the requisite "telegraph or telephone" lines element. Perhaps for this reason, Plaintiff has admitted that he "do[es] not state a claim under the first clause" of Section 631(a). ECF No. 37 at 17, n.5.

c. <u>The SAC fails to allege a violation of Section 631(a)'s second clause because it fails to plead facts showing that Shopify Inc. read the "contents" of any message.</u>

The SAC separately fails to state a claim under Section 631(a)'s ***second clause***, which prohibits only the "unauthorized access of the 'contents' of any communication." *See Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020). The "contents" of a communication under Section 631 has the same meaning as under the federal Wiretap Act—i.e., "the intended message conveyed by the communication." *See In re Zynga Privacy Litig.*, 750 F. 3d 1098, 1106 (9th Cir. 2014). That means to state a claim under Section 631(a)'s second clause, two things must be true: (1) a plaintiff must have intended to convey a substantive message, and (2) the defendant must have

accessed (or attempted to access) that substance, and not mere "record information," like name and address, that merely facilitates a communication or transaction. *See In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1061 (N.D. Cal. 2012) (holding that "data" that is "generated" without the communicative "intent of the user" cannot "constitute 'content' susceptible to interception"); *see also Svenson v. Google Inc.*, 65 F. Supp. 3d 717, 729 (N.D. Cal. 2014) (explaining that "names, mailing addresses, phone numbers, billing information, and date of account creation," have been characterized as "record or other information" and not "contents" of a communication (citing *Chevron Corp. v. Donziger*, 2013 WL 4536808, at *6 (N.D. Cal. 2013)).

Here, the SAC asserts that "in order to complete the checkout process," Plaintiff provided "his full name, delivery address, billing address, phone number, and credit card number, expiration date, and CVV code," which Shopify Inc. collected. SAC ¶ 59. But, for two reasons, the SAC fails to satisfy the "content" requirement necessary to state a claim. *First*, Plaintiff's provision of information necessary to complete a commercial checkout transaction is not the same as composing a message with substantive, communicative intent; that is, there was no "intended message conveyed" by Plaintiff here at all. *See Zynga*, 750 F.3d at 1106. *Second*, every type of information that the SAC identifies—"name, delivery address, billing address, phone number, and credit card number, expiration date, and CVV code," SAC ¶ 59—falls into the classes of data held to be mere record information (i.e., the kind of information that merely facilitates a transaction), not message "content." *See, e.g.*, *Svenson*, 65 F. Supp. 3d at 729 ("names, mailing addresses, phone numbers, billing information" are not content).[11] Accordingly, the SAC fails to state a claim under Section 631(a)'s second clause.

3. *The SAC fails to state a claim under Penal Code Section 635.*

Section 635 makes it a crime to "manufacture[], assemble[], sell[], offer[] for sale, advertise[] for sale, possess[], transport[], import[], or furnish[] to another any device which is primarily or exclusively designed or intended for eavesdropping." Cal. Penal Code § 635(a). The

[11] *See also Zynga*, 750 F. 3d at 1106 ("contents" does not include "information regarding the characteristics of the message that is generated in the course of the communication" like "the name, address, and subscriber number or identity of a subscriber or customer"); *Brodsky*, 445 F. Supp. 3d at 127 ("user names, passwords, and geographic location information" are not "content[]").

SAC asserts that Shopify Inc. violated that provision by possessing "software code modules" designed to collect and process his shipping, billing, and payment information as required to facilitate his purchase from IABMFG. SAC ¶¶ 91-92. That theory fails for two reasons.

a. The Section 635 claim fails because code is not a "device" within the meaning of the California Invasion of Privacy Act.

The SAC's Section 635 claim is premised on the assumption that Shopify Inc.'s "software code modules" constitutes a "device" within the meaning of the statute. SAC ¶¶ 91-92. But the "proper definition" of a statutory term is a "[p]urely legal question." *Freeman v. Gonzales*, 444 F.3d 1031, 1037 (9th Cir. 2006). The fact that the SAC alleges that "code" is a "device," SAC ¶ 91, is thus immaterial; it is a legal conclusion for this Court to decide. *See Iqbal*, 556 U.S. at 678-79 (courts, even at the motion-to-dismiss stage, "are not bound to accept … a legal conclusion" as true); *see also, e.g.*, *Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204, 1208-09 (9th Cir. 2013) (affirming dismissal on grounds that complaint's allegation that "Wells Fargo is in the business of collecting debts" was insufficient to show that it met the statutory definition of a "debt collector"). Here, statutory text and context both make clear that Section 635 uses the term "device" in a way that connotes a physical object, and hence excludes the computer code alleged by the SAC.

By using the term "device" without specifically defining it, Section 635 directs courts to apply its ordinary meaning. *DeGeorge v. U.S. Dist. Court*, 219 F.3d 930, 936 (9th Cir. 2000); *accord, e.g.*, *De Vries v. Regents of Univ. of Cal.*, 6 Cal. App. 5th 574, 591 (2016). And a "device," in common parlance, is "a piece of equipment or a mechanism designed to serve a special purpose or perform a special function." Webster's Third New International Dictionary of the English Language Unabridged 618 (2002); *see also Consolidation Coal Co. v. Fed. Mine Safety & Health Review Comm'n*, 136 F.3d 819, 822 (D.C. Cir. 1998). That definition—and particularly, its references to "equipment" or "a mechanism"—connotes a physical object.

That straightforward reading is confirmed by the context in which the term "device" appears. The list of acts that Section 635 forbids one to do with a "device" confirms that the provision contemplates only physical objects. Specifically, Section 635 makes it unlawful to (among other things) "manufacture[]," "assemble[]," "transport[]," or "import[]," a device. While

one could readily do any of those things to physical objects, it would be odd and inappropriate word choice to apply any of those verbs to intangible software code.

The plain language of Section 635 thus compels the conclusion that the term "device" does not include intangible computer code. And because "statute's plain text" is clear that ends the matter. *See Lucent Techs., Inc. v. Bd. of Equalization*, 241 Cal. App. 4th 19, 38 (2015). But even if any ambiguity as to Section 635's scope remained, because it is a criminal statute, the rule of lenity would require that ambiguity to be resolved in favor of a narrower reading. *People v. Robles*, 5 P.3d 176, 182 (Cal. 2000); *see also Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004) (lenity applies to noncriminal applications of a criminal statute.).

Accordingly, computer code does not constitute a "device" within the meaning of Section 635. The SAC, therefore, fails to state a claim under that statute as a matter of law.

b. <u>The Section 635 claim fails because the SAC fails to allege facts showing that Shopify Inc.'s code was "primarily or exclusively designed" for eavesdropping.</u>

The SAC's Section 635 claim also fails for the independent reason that Shopify Inc.'s code was not "primarily or exclusively designed or intended for eavesdropping upon the communication of another." Cal. Penal Code § 635. Under Section 635's plain and ordinary meaning, it is not sufficient that a device be merely capable of eavesdropping. Rather, the "device" must be "exclusively" or "primarily" geared toward eavesdropping. This construction is sensible. Otherwise a broad swath of devices—e.g., microphones, tape recorders, and all cellphones—that could be used to eavesdrop would be criminalized, and criminal liability imposed on all who "manufacture[], assemble[], sell[], offer[] for sale, advertise[] for sale, possess[], transport[], import[], or furnish[]" such products. *See, e.g.*, *United States v. Schweihs*, 569 F.2d 965, 968 (5th Cir. 1978) (observing that Congress, when it passed a federal analogue of CIPA, did not wish to attach criminal liability to "legitimate electronic device[s]" merely because they *could be* used for eavesdropping, but only to devices specifically designed for that end like "microphones disguised as wristwatches and fountain pens.").

The SAC's theory seems to be that any time a consumer's information is transmitted to a payment processor to complete an online purchase, a criminal violation of Section 635 has been

committed. That position is astounding in its breadth: The factual core of the SAC's objection—that "card information is captured" "[d]uring the transaction" "and transmitted to a payment [processor]"—is standard, not just in online purchases, but in physical ones too. *CFPB v. Universal Debt & Payment Sols., LLC*, 2015 WL 11439178, at *1 (N.D. Ga. 2015); *see also Cohen v. Casper Sleep Inc.*, 2018 WL 3392877, at *4 (S.D.N.Y. 2018) (explaining that many websites install code to collect data, not with the "primary motivation" of spying on their users, but to help with legitimate purposes such as marketing); SAC ¶ 42 ("[O]ver one million websites and other merchants use Shopify [Inc.] to sell their products."). Indeed, it is what "enable[s] merchants to accept check, card, and electronic payments" at all. *Universal Debt*, 2015 WL 11439178, at *1. Accordingly, to the extent Section 635 applies to computer code at all (*see supra* § IV.C.3.a), it must be enforced according to its text and only applied to the code that is "exclusively" or "primarily" designed for an illicit purpose—lest it criminalize the billions of legitimate credit card transactions that form the backbone of the modern economy.

Here, the SAC alleges that because Shopify Inc.'s code is "designed to intercept, collect, transmit, receive, and track communications that [Plaintiff] reasonably (but erroneously) believed would be sent directly and exclusively to [IABMFG]," it was "'primarily or exclusively designed or intended for eavesdropping." SAC ¶¶ 91-92. That allegation is belied by the other allegations regarding Shopify Inc.'s actual role in the online purchasing ecosystem. SAC ¶ 24 ("Shopify is an e-commerce platform that enables merchants to sell products online."). And, even then, that allegation is nothing more than a "legal conclusion couched as a factual allegation," which need not be credited. *Iqbal*, 556 U.S. at 678. The allegedly offending code is no more "designed" to eavesdrop than every credit card processing terminal in physical stores everywhere.

When it comes to actual facts, the SAC's allegations go solely to what Shopify Inc.'s code does (i.e., capture payment data for the purpose of facilitating transactions); nothing in those allegations suggest the purpose to eavesdrop. *See, e.g.*, SAC ¶¶ 25, 60. In fact, to the extent the SAC's allegations shed light on the purpose behind Shopify Inc.'s code, they *negate* any suggestion that the code was "primarily or exclusively" intended for eavesdropping. The SAC admits, for instance, that Shopify Inc.'s "default template for merchant websites" includes a "'powered with

Shopify' link leading to Shopify [Inc.]'s homepage." SAC ¶ 53. The SAC offers no theory for how defaulting merchants into a website design that discloses Shopify Inc.'s involvement evinces that the *primary* or *exclusive* intent of Shopify Inc.'s code was to hide Shopify Inc.'s involvement.

The SAC's allegations are at best "merely consistent with" a theory that leads to liability. But to survive dismissal under Rule 12(b)(6), it must provide "[s]omething more," "such as facts tending to exclude the possibility that the [innocent] explanation is true." *See In re Century Aluminum Co. Sec., Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013). Because the SAC pleads no facts showing that Shopify Inc.'s code was "primarily or exclusively" intended for eavesdropping, instead of facilitating legitimate purchase transactions, the Section 635 claim must be dismissed.

4. *The SAC fails to state a claim for invasion of privacy and intrusion upon seclusion because it does not allege facts showing that Shopify Inc. committed an "egregious" or "highly offensive" privacy intrusion.*

To allege a violation of California's constitutional right to privacy, the SAC must allege, among other things, "conduct by the defendant that amounts to a serious invasion of [a] protected privacy interest." *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 829 (N.D. Cal. 2020). To state a claim for intrusion upon seclusion, "a plaintiff must allege intrusion into a private place, conversation or matter in a manner highly offensive to a reasonable person." *Id.* at 830 (numbering omitted). Because the standards for these two causes of action "are closely related," courts "treat[] them together." *Id.* at 829; *see also Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009).

To show the requisite "serious invasion" or "highly offensive" intrusion, the SAC must allege facts showing an "egregious breach of the social norms"—a "high bar" that is not satisfied by "[e]ven disclosure of personal information, including social security numbers." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012). "[C]ollection—and even disclosure to certain third parties—of" more anodyne "personal information" falls well below the requisite threshold. *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d at 829-30; *see also In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) (no intrusion claim based on collection and disclosure of users' data, including browsing histories); *Low*, 900 F. Supp. 2d at 1025 (no "highly offensive" invasion of privacy by disclosing users' browsing histories to third parties). Where a party does nothing more than engage in "routine commercial behavior," it does not commit a

violation of California's constitution or common-law privacy protections. *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d at 830. That is true even where the "routine commercial behavior" involves "obtaining [a] plaintiff's address without his knowledge or permission, and using it to mail him coupons and other advertisements." *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011) (finding such conduct not an "egregious breach of social norms").

Here, the SAC fails to establish that Shopify Inc.'s conduct was even as egregious as conduct held insufficient elsewhere. First, as the IABMFG webpages incorporated by reference into the SAC reveal, Shopify Inc.'s activity was fully disclosed. *See supra* § IV.C.1. Second, even if that were not true, what the SAC accuses Shopify Inc. of here—collecting purchase information to facilitate commercial transactions and installing routine cookies to facilitate website performance—happens on practically every website that offers goods or services in exchange for payments. *See In re Pharmatrak, Inc.*, 329 F.3d 9, 14 (1st Cir. 2003) ("Cookies often store user preferences, login and registration information, or information related to an online 'shopping cart.'"). Because the SAC has alleged no facts that mark Shopify Inc.'s conduct as being particularly egregious, rather than a commonplace part of the modern internet economy, his constitutional and common law privacy claims fail.

5. *The SAC fails to state a Penal Code Section 502 claim, because it fails to allege facts showing that Shopify Inc. accessed Plaintiff's iPhone "without permission."*

Section 502 criminalizes various acts that a person commits after having accessed data on a computer "without permission." Cal. Penal Code § 502; *see In re Google Android Consumer Priv. Litig.*, 2013 WL 1283236, at *11 (N.D. Cal. 2013). Courts in this District have been clear that the phrase "without permission" requires far more than merely acting without affirmatively obtaining a person's consent. (Although, as explained above, Plaintiff did give his consent. *See supra* § IV.C.1.) Specifically, a person "may only be subjected to liability for acting 'without permission' under Section 502 if they "access[ ] or us[e] a computer, computer network, or website in a manner that overcomes technical or code-based barriers." *In re iPhone Application Litig.*, 2011 WL 4403963, at *12 (N.D. Cal. 2011); *see also, e.g., In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 716 (N.D. Cal. 2011) ("It is thus impossible, on Plaintiffs' own allegations, for Defendant to

be liable under the subsections of Section 502 which require a defendant to act "without permission," as there were clearly no technical barriers blocking Defendant from accessing its own website."), *aff'd*, 572 F. App'x 494 (9th Cir. 2014).

Here, the SAC includes no allegations that any of Shopify Inc.'s alleged activities overcame any technical or code-based barriers. Indeed, the SAC does not identify any technical or code-based barrier that Plaintiff deployed at all—much less one that Shopify Inc.'s overcame. Rather, the SAC's sole theory is that Shopify Inc. "surreptitiously and intentionally install[ed] software code and cookies" onto "Plaintiff's iPhone," and thus did so even though Plaintiff "never consented" to those acts. SAC ¶¶ 123-24. Of course, as explained above, that is simply incorrect. *See supra* § IV.C.1. But even if it were true, it would still be insufficient to state a claim under Section 502: As explained just above, Section 502 is violated only when a defendant overcomes a technical or code-based barrier; merely "caus[ing] 'nonconsensual transmissions' of [Plaintiff's] personal information as a consequence of Defendant's" operation of "its own website" is not enough. *See In re Facebook Priv. Litig.*, 791 F. Supp. 2d at 716.

In fact, the SAC's allegations make clear it asks the Court to bless an overly broad reading of Section 502. The "software code and cookies" that form the basis of this claim appear to refer to the "Shopify[ Inc.]-produced javascript code" that makes IAMBFG's website run, SAC ¶ 33, and the routine cookies that identify, e.g., the user's device or country, SAC ¶¶ 39-40. If a violation of Section 502 occurs any time a person voluntarily visits a website, and that website installs javascript code or cookies in his browser, without him being specifically aware of each line of code, each and every cookie, and the identity of the person or vendor responsible for producing that code, then this provision would criminalize essentially *every* website on the internet. The Northern District of California's homepage, for instance, installs javascript code without affirmatively telling the user that it is doing so. *See* https://cand.uscourts.gov (right click; select "View Page Source"; use Ctrl+F to search for "javascript"). And the U.S. Courts' PACER privacy policy (which a user is not required to read or agree to before using the site) discloses that its website "use[s]s session

cookies to identify users," without providing any more specifics about those cookies.[12] *See* https://pacer.uscourts.gov/privacy. Under the SAC's theory, the operators of those websites would be committing a crime any time anyone accessed those pages.

6. *The SAC fails to state a claim under the UCL.*

To state a claim under the UCL, Plaintiff must show (among other things) that Shopify Inc. engaged in an "unlawful," "fraudulent," or "unfair" business practice. Cal. Bus. & Prof. Code § 17200. Here, Plaintiff has failed to plead facts establishing any of those three.

a. The SAC fails to state a claim for an "unlawful" practice.

To state a UCL claim for an "unlawful" practice, a plaintiff must show a "violation[] of [an]other law[]." *Stripe*, 2021 WL 3191752, at *6. The SAC fails to do so. It lists five statutes as supposedly forming the basis for Plaintiff's claim: (1) the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 635 and 637; (2) the California Online Privacy Protection Act of 2003 ("CalOPPA"), Cal. Bus. & Prof. Code § 22575 *et seq.*; (3) the California Consumer Privacy Act of 2018 ("CCPA"), Cal. Bus. & Prof. Code § 1427 *et seq*; and (4) the California Computer Data Access and Fraud Act, Cal. Penal Code § 502. SAC ¶ 137.

As explained above, the SAC has not pled facts showing a violation of either (1) CIPA, or (4) Section 502. *See supra* §§ IV.C.2-3, IV.C.5. Accordingly, neither of those can serve as a basis for a UCL unfairness claim. Nor, as the *Stripe* Court explained, can the CCPA: "[T]he CCPA has no private right of action and on its face states that consumers may not use the CCPA as a basis for a private right of action under any statute." *Stripe*, 2021 WL 3191752, at *7; *see also* Cal. Civ. Code § 1798.150(c) ("Nothing in this title shall be interpreted to serve as the basis for a private right of action under any other law.").

That leaves only CalOPPA. But, as in *Stripe*, "the complaint does an inadequate job of explaining the specific violation of th[at] statute," so it cannot serve as the basis for an "unlawful" practice claim under the UCL. 2021 WL 3191752, at *7 (dismissing UCL "unlawful" claim based on CalOPPA). In any event, the SAC has not pled and cannot plead a violation of CalOPPA, which

[12] The PACER website also, of course, collects payment information when a user pays their bills—and presumably passes it on to a payment processor when the user pays by credit card.

exists where an "operator fails to post its policy within 30 days after being notified of noncompliance." Cal. Bus. & Prof. Code § 22575. The SAC nowhere alleges that Shopify Inc. was *ever* formally "notified of noncompliance," much less that it failed to post a privacy policy more than "30 days after" receiving such notice. *See id.*

b. The SAC fails to state a claim for a "fraudulent" practice.

"Claims stated under the fraud prong of the UCL are subject to the particularity requirements of Federal Rule of Civil Procedure 9(b)," meaning that the SAC "must state with particularity the circumstances constituting fraud or mistake," including "an account of the time, place, and specific content of the false representations at issue." *Stripe*, 2021 WL 3191752, at *7. Where, as here, a "fraudulent" UCL claim is based on a defendant's omission, the plaintiff must allege that the defendant had a duty to disclose the omitted fact. *See id.*; *see also Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1557 (2007) ("Absent a duty to disclose, the failure to do so does not support a claim under the fraudulent prong of the UCL.").

The SAC fails to satisfy either requirement, as it fails to state with the requisite particularly facts showing that Shopify Inc. (1) owed Plaintiff a duty to disclose its data collection practices; or (2) made any fraudulent or deceptive statements or omissions in breach of that specific duty. Indeed, the SAC's allegations going to the UCL "fraudulent" practice claim are near verbatim copies of those in the *Stripe* SAC (also filed by Plaintiff's counsel), *compare* SAC ¶¶ 134-135, *with Silver v. Stripe Inc.*, No. 20-cv-8196 (N.D. Cal. filed May 11, 2021), ECF No. 1 ¶¶ 203-204, which the *Stripe* Court held to be deficient on both of these grounds. *See* 2021 WL 3191752, at *7.

That decision was correct. California law recognizes only four circumstances in which an obligation to disclose may arise: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." *Terpin v. AT&T Mobility, LLC*, 2020 WL 5369410, at *3 (C.D. Cal. 2020) (quoting *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997)). Rather than pleading specific facts to establish one of those four circumstances, the SAC only parrots those legal elements then adds the conclusory allegation that

"Shopify [Inc.] owed the Class members a duty to disclose these facts because they were exclusively known and/or accessible to Shopify [Inc.], who had superior knowledge of its activities with respect to the private information of the Class members; [and] because Shopify [Inc.] actively concealed the facts." SAC ¶ 135. That is insufficient to survive a Rule 12(b)(6) motion. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). This Court should not reach a different outcome here. Plaintiff's UCL claim for a "fraudulent" practice should be dismissed.

c. <u>The SAC fails to state a claim for an "unfair" practice.</u>

To state a claim for an "unfair" practice under the UCL, a plaintiff must plead facts showing that the challenged conduct violates a "public policy" that is "tethered" to a specific constitutional, statutory, or regulatory provision, or that the harm from the challenged conduct outweighs "the utility of the defendant's practice." *Stripe*, 2021 WL 3191752, at *8. Here, all the SAC has to say on that score is that "Shopify [Inc.] engaged in conduct that is unfair and unconscionable because its activities with respect to Class members' Private Information offends public policy, is immoral unethical, oppressive, outrageous, unscrupulous, and substantially injurious, and has caused substantial harm that greatly outweighs any possible utility from the conduct." SAC ¶ 140. But once again, that kind of "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements, do[es] not suffice," *Iqbal*, 556 U.S. at 678. Moreover, the SAC is wrong to say that Shopify Inc.'s conduct here was "immoral unethical, oppressive, outrageous, unscrupulous, and substantially injurious," SAC ¶ 140; to the contrary, it is the most basic of "routine commercial behavior"—processing credit card transactions. *See supra* § IV.C.4. Nor are there any facts to conclude that any of Shopify Inc.'s behaviors cause "substantial harm that greatly outweighs any possible utility." SAC ¶ 140. Rather, as the SAC admits, this routine commercial behavior enables Shopify Inc. to facilitate "over one million websites" that allow the same number of small- to medium-sized businesses to sell their products online. SAC ¶ 42. Plaintiff's claim that Shopify Inc.'s behavior is an "unfair" practice under the UCL should thus be dismissed.

## V. CONCLUSION

Shopify Inc. respectfully requests that the Court dismiss the SAC.

Dated: February 17, 2022

Respectfully Submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Jacob M. Heath*
JACOB M. HEATH
THOMAS FU
Attorneys for Defendants
Shopify Inc., Shopify (USA), Inc., and
Shopify Payments (USA) Inc.