JACOB M. HEATH (SBN 238959)
jheath@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
Telephone:      +1 650 614 7400
Facsimile:      +1 650 614 7401

THOMAS FU (SBN 325209)
tfu@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA  90017-5855
Telephone:      +1 213 629 2020
Facsimile:      +1 213 612 2499

ARAVIND SWAMINATHAN (admitted *pro hac vice*)
aswaminathan@orrick.com
NICOLE M. TADANO (admitted *pro hac vice*)
ntadano@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
701 5th Avenue, Suite 5600
Seattle, WA  98104-7097
Telephone:      +1 206 839 4300
Facsimile:      +1 206 839 4301

Attorneys for Defendants,
Shopify Inc. and Shopify (USA) Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| Brandon Briskin, on behalf of himself and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Shopify Inc. and Shopify (USA) Inc.,<br><br>Defendants. | Case No. 4:21-cv-06269-PJH<br><br>**DEFENDANT SHOPIFY PAYMENTS (USA) INC.'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>Date:        April 28, 2022<br>Time:        1:30 p.m.<br>Location:  Courtroom 3, 3rd Floor<br>                1301 Clay Street<br>                Oakland, California<br><br>Judge:      The Honorable Phyllis J. Hamilton |

## NOTICE OF MOTION TO DISMISS

**PLEASE TAKE NOTICE** that on April 28, 2022 at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 3 (3rd Floor) of the above-entitled court, located at 1301 Clay Street, Oakland, California 94612, defendant Shopify Payments (USA) Inc. ("Shopify Payments") will, and hereby does, move the Court under Federal Rules of Civil Procedure 8, 12(b)(2) and 12(b)(6) for an order dismissing the Second Amended Class Action Complaint ("SAC") (ECF No. 44) of Plaintiff Brandon Briskin.  This motion is based on this notice, the concurrently filed memorandum of points and authorities, and all other facts the court may or should take notice of, all files, records, and proceedings in this case, and any oral argument the Court may entertain.

**STATEMENT OF RELIEF SOUGHT (CIVIL L.R. 7-2(B)(3)).**  Shopify Payments seeks an Order pursuant to Federal Rule of Civil Procedure 8(a)(2) for failure to provide adequate notice of the claims against it, or in the alternative, pursuant to Federal Rule 12(b)(2) for lack of personal jurisdiction, or in the further alternative, Federal Rule of Civil Procedure 12(b)(6) dismissing the SAC for failure to state a claim upon which relief can be granted.


Dated: February 17, 2022                                     ORRICK, HERRINGTON & SUTCLIFFE LLP


By: */s/ Jacob M. Heath*
_____
JACOB M. HEATH
THOMAS FU
Attorneys for Defendants
Shopify Payments (USA), Inc.,
Shopify (USA), Inc. and Shopify Inc.

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION TO DISMISS   ……………………………………………- 1 -

I.   STATEMENT OF ISSUES TO BE DECIDED (CIVIL L.R. 7-4(A)(3)) ....................- 2 -

II.   SUMMARY OF RELEVANT FACTS .......................................................- 2 -

    A.   Background Facts.........................................................................- 2 -

    B.   Facts Specific to Shopify Payments..............................................- 7 -

III.   LEGAL STANDARD ..........................................................................- 9 -

IV.   LEGAL ARGUMENT .........................................................................- 9 -

    A.   The SAC Fails Under Rule 8 Because It Fails to Distinguish Among Defendants...............................................................................- 9 -

    B.   This Court Lacks Jurisdiction Over Shopify Payments. ......................- 9 -

        1.   *This Court lacks general jurisdiction over Shopify Payments.* ...............- 9 -

        2.   *This Court lacks specific jurisdiction over Shopify Payments.* ............- 10 -

    C.   The SAC Fails to State a Claim Against Shopify Payments...........................- 14 -

        1.   *The SAC fails to state any claim because it pleads facts showing that Plaintiff consented to any data collection.*.....................................- 14 -

        2.   *The SAC fails to state an eavesdropping claim under Penal Code Section 631(a).* ...........................................................................- 14 -

            a.   The SAC fails to state a claim under either clause of Section 631(a), because it fails to plead facts showing that Shopify Payments was a third party to Plaintiff's communications.......- 15 -

            b.   The SAC fails to allege a violation of Section 631(a)'s first clause, because it fails to allege a wiretap of a telephone line...........................................................................- 15 -

            c.   The SAC fails to allege a violation of Section 631(a)'s second clause because it fails to plead facts showing that Shopify Payments read the "contents" of any message. ...........- 15 -

        3.   *The SAC fails to state a claim under Penal Code Section 635.* ............- 16 -

            a.   The Section 635 claim fails because code is not a "device" within the meaning of the California Invasion of Privacy Act. ...........................................................................- 16 -

            b.   The Section 635 claim fails because the SAC fails to allege facts showing that Shopify Inc.'s code was "primarily or exclusively designed" for eavesdropping.................................- 16 -

        4.   *The SAC fails to state a claim for invasion of privacy and intrusion upon seclusion because it does not allege facts showing that Shopify Payments committed an "egregious" or "highly offensive" privacy intrusion.* .................................................................- 17 -

        5.   *The SAC fails to state a Penal Code Section 502 claim, because it fails to allege facts showing that Shopify Payments accessed Plaintiff's iPhone "without permission."* .............................................- 17 -

SHOPIFY PAYMENTS' MOTION TO
DISMISS
CASE NO. 4:21-CV-06269

6. *The SAC fails to state a claim under the UCL.* ....................................- 17 -

a.     The SAC fails to state a claim for an "unlawful" practice........- 17 -

b.     The SAC fails to state a claim for a "fraudulent" practice........- 18 -

c.     The SAC fails to state a claim for an "unfair" practice............- 18 -

V.     CONCLUSION ........................................................................................- 19 -

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................. 9

*Ballard v. Savage*,
F.3d 1495 (9th Cir. 1995) ........................................................................................ 13

*Baton v. Ledger*,
2021 WL 5226315 (N.D. Cal. 2021) ........................................................... 10, 11, 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................................. 9

*Bravo v. Cnty. of San Diego*,
2014 WL 555195 (N.D. Cal. 2014) ........................................................................... 9

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ................................................................................................ 12

*Caces-Tiamson v. Equifax*,
2020 WL 1322889 (N.D. Cal. 2020) ....................................................................... 10

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .................................................................... 15

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) ................................................................................... 3

*Lisa McConnell, Inc. v. Idearc, Inc.*,
2010 WL 364172 (S.D. Cal. 2010) ......................................................................... 13

*Mohazzabi v. Mohazzebi*,
2019 WL 6493969 (N.D. Cal. 2019) ....................................................................... 12

*Pebble Beach Co. v. Caddy*,
453 F.3d 1151 (9th Cir. 2006) ................................................................................... 9

*Picot v. Weston*,
780 F.3d 1206 (9th Cir. 2015) ................................................................................. 13

*Speidel v. Markota*,
2021 WL 3463895 (C.D. Cal. 2021) ....................................................................... 13

*Steel v. United States*,
813 F.2d 1545 (9th Cir. 1987) ................................................................................. 11

*Stewart v. Screen Gems-EMI Music, Inc.*,
    81 F. Supp. 3d 938 (N.D. Cal. 2015) ................................................................ 9

*Silver* v. *Stripe Inc.*,
    2021 WL 3191752 (N.D. Cal. 2021) ............................................................... 18

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
    433 F.3d 1199 (9th Cir. 2006) ....................................................................... 10

**Statutes**

Cal. Bus. & Prof. Code § 1427 .......................................................................... 18

Cal. Bus. & Prof. Code § 17200 ........................................................................ 17

Cal. Bus. & Prof. Code § 22575 ........................................................................ 18

Cal. Penal Code § 502 .......................................................................... 14, 17, 18

Cal. Penal Code § 631 .......................................................................... 14, 15, 16

Cal. Penal Code § 635 .................................................................... 14, 16, 17, 18

Cal. Penal Code § 637 ........................................................................................ 18

**Rules**

Fed. R. Civ. P. 8 ......................................................................................... 1, 2, 9

Fed. R. Civ. P. 12(b)(2) ................................................................................. 2, 9

Fed. R. Civ. P. 12(b)(6) ........................................................................... 2, 9, 14

**Other Authorities**

https://www.iambecoming.com/4572025/checkouts/
    5a9f0424b4812fc7195441a3ff49d5b1 ............................................................. 3

https://www.iambecoming.com/4572025/checkouts/
    5a9f0424b4812fc7195441a3ff49d5b1?previous_step=shipping_method&
    step=payment_method ..................................................................................... 4

https://www.iambecoming.com/4572025/checkouts/
    5a9f0424b4812fc7195441a3ff49d5b1?previous_step=contact_information&
    step=shipping_method ..................................................................................... 4

Plaintiff's Second Amended Complaint ("SAC") now draws Shopify Payments (USA) Inc. ("Shopify Payments") into the action that he has previously attempted against Shopify Inc. and Shopify (USA) Inc. ("Shopify USA"), alleging that routine processing of commercial transactions on the internet constitutes several crimes.  When a customer pays with a credit card—whether in a physical store or online—the payment information is typically sent to a payment processor (not processed by the merchant), and then in turn to other entities.  Nevertheless, Plaintiff's original lawsuit argued that because Plaintiff's credit card information for an online transaction was transmitted to *Shopify Inc.* (not Shopify Payments or Shopify USA) for processing, rather than directly to the merchant who sold him athletic apparel, that processing violated California's Constitution, various statutes, and the common law.  In adding Shopify Payments, it is unclear what the SAC's theory seems to be, given that there is no clear allegation specifying whether Plaintiff thinks it was Shopify Payments or else Shopify Inc. who received Plaintiff's information as part of the payment processing.

Despite adding third defendant Shopify Payments, the SAC still (like the initial Complaint and First Amended Complaint before it) does not differentiate between the defendants or specifically explain what role each supposedly played in the complained of conduct.  Indeed, the substantive allegations—all of which are attributed to the fictitious amalgam "Shopify"—have not materially changed.  The primary revision in the SAC is to include Shopify Payments, in addition to Shopify Inc. and Shopify USA, in the definition of the fictitious "Shopify," which supposedly committed all of the alleged acts.

But because the SAC does not distinguish between what Shopify Payments supposedly did versus what Shopify Inc. or Shopify USA supposedly did (or even, at times, what non-party Stripe Inc. did), the SAC's claims fail for all the same reasons given in Shopify Inc.'s and Shopify USA's Motions to Dismiss ("Shopify Inc. MTD" and "Shopify USA MTD," respectively).  As detailed in Shopify USA's MTD, the SAC violates Rule 8 by failing to differentiate between—and hence to provide adequate notice to—Shopify Payments, Shopify Inc., and Shopify USA.  And as detailed in Shopify Inc.'s MTD, Plaintiff's claims fail on their merits, both because his consent to the

SHOPIFY PAYMENTS' MOTION TO DISMISS
CASE NO. 4:21-CV-06269

complained-of acts is fatal to all of his claims as pled, and because each claim independently fails to state a claim for relief.  To facilitate the Court's review and because those arguments are addressed fully in Shopify USA's and Shopify Inc.'s briefs—and because the SAC does not distinguish Shopify Payments from Shopify USA or Shopify Inc. in any material way—this brief simply cross references those arguments, rather than repeating them here.  Specifically, the Statement of Issues to Be Decided (§ I), Background Facts (§ II.A), Legal Standard (§ III), and arguments under Rule 8 (§ IV.A) and Rule 12(b)(6) (§ IV.C), either borrow liberally from the corresponding sections of Shopify Inc.'s MTD or Shopify USA's MTD, or cross reference the appropriate sections of those briefs.

But the SAC also fails for reasons specific to Shopify Payments—which are the focus of this brief.  Specifically, the SAC fails to plead facts that establish personal jurisdiction over Shopify Payments, and relies on facts Plaintiff knows to be incorrect, *see infra* § II.B.  The new discussion of those Shopify Payments-specific issues is contained in the Facts Specific to Shopify Payments (§ II.B), and in arguments as to why this Court lacks jurisdiction over Shopify Payments (§ IV.B). For each and all of those reasons, the SAC should be dismissed.

## I.     STATEMENT OF ISSUES TO BE DECIDED (CIVIL L.R. 7-4(a)(3))

Shopify Payments seeks Rule 8 dismissal for failure to plead facts showing that Shopify Payments caused Plaintiff's alleged harm, Rule 12(b)(2) dismissal for lack of personal jurisdiction, and Rule 12(b)(6) dismissal for failure to state a claim.

## II.    SUMMARY OF RELEVANT FACTS

### A.    Background Facts[1]

The SAC alleges that in June 2019, Plaintiff purchased fitness apparel from IABMFG, a Shopify Inc. merchant, through IABMFG's website.  SAC ¶ 57.  In the course of that purchase, the SAC alleges Plaintiff was presented with the checkout screen reproduced at SAC ¶ 28 (**Fig. 1**). SAC ¶ 58.  In providing these reproductions of IABMFG's current website, the SAC incorporates

---

[1] Because these facts are drawn from the portions of the SAC directed only at the fictitious "Shopify" amalgam, they do not vary across entities and thus are reproduced from Shopify Inc.'s MTD.  Facts specific to Shopify Payments are included in the next section, "Facts Specific to Shopify Payments."

1   those webpages by reference, and the Court is permitted to consider their full context.  *See Knievel*
2   *v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

3       The image at SAC ¶ 28 is cropped so as to omit the portion of the screen below the
4   "Continue to shipping" and "Return to cart" buttons, which presents shoppers with links to
5   IABMFG's Refund Policy, Privacy Policy, and Terms of Service (**Fig. 2**).  *See* Heath Decl., Ex. A
6   (red box added).[2]



**Figure 1**                              **Figure 2**

[2] *Available at* https://www.iambecoming.com/4572025/checkouts/5a9f0424b4812fc7195441a3ff
49d5b1.

SHOPIFY PAYMENTS' MOTION TO
DISMISS
CASE NO. 4:21-cv-06269

1    The same pages from which the SAC provides screenshots demonstrates that, in the course

2    of checking out, consumers are provided with other links to IABMFG's Privacy Policy as well.

3    For instance, the SAC alleges that after completing the above checkout screen (**Fig. 1**), Plaintiff

4    was "required to provide his private information in order to complete the checkout process," SAC

5    ¶ 59, on a screen like the one below (**Fig. 3**), SAC ¶ 31.  As above, the full version of that screen

6    (**Fig. 4**) includes a link to IABMFG's Privacy Policy.  *See* Heath Decl., Ex. B (red box added). [3]

7

8

9



10

11

12

13

14

15

16

17

18

19

20

21

**Figure 3**                    **Figure 4**

22

23

24    When selecting the method for shipping his purchases, there too IABMFG's website

25    presents a link to the Privacy Policy. (**Fig. 5**).  *See* Heath Decl., Ex. C (red box added).[4]

26    ------------------------------

[3] *Available at* https://www.iambecoming.com/4572025/checkouts/5a9f0424b4812fc7195441a3ff
27    49d5b1?previous_step=shipping_method&step=payment_method.

[4] *Available at* https://www.iambecoming.com/4572025/checkouts/5a9f0424b4812fc7195441a3ff4
28    9d5b1?previous_step=contact_information&step=shipping_method

**Figure 5**

In short, the website the SAC relies on links to IABMFG's Privacy Policy for consumers at least three times (*see* **Figs. 2, 4, 5**) in the course of checkout, each situated in a distinct blue color, just under the buttons that Plaintiff was required to click on in order to advance with his purchase. Despite providing and relying on these screenshots and incorporating the webpages by reference, the SAC alleges "on information and belief" that "[a]t some point . . . after Plaintiff's transaction with IABMFG—the company modified its website" and that "Plaintiff never saw" the links to the Privacy Policy that clearly appear on the uncropped pages imaged in the SAC.  SAC ¶ 61.

IABMFG's Privacy Policy linked on those pages the SAC provides in cropped form discloses (among other things) that IABMFG's online store is "hosted on Shopify Inc.," an "e-commerce platform that allows [merchants] to sell [their] products and services" online."  Indeed, the Privacy Policy has an entire section dedicated to Shopify Inc. and its role, where it explains that a consumer's data is "stored through Shopify [Inc.]'s data storage, databases, and the general Shopify application," and that if a customer chooses certain payment methods, Shopify Inc. will "store[] [the consumer's] credit card data" for "only as long as is necessary to complete [the] purchase transaction," at which point the "purchase transaction information is deleted."  IABMFG's Privacy Policy further directs readers to Shopify Inc.'s own Terms of Service and Privacy Statement in case they have additional questions about Shopify Inc.'s involvement, Heath Decl., Ex. D (emphasis added):

> **SECTION 4 - SHOPIFY**
> **Our store is hosted on Shopify Inc.** They provide us with the online e-commerce platform that allows us to sell our products and services to you.
> **Your data is stored through Shopify's data storage, databases, and the general Shopify application**. They store your data on a secure server behind a firewall.

1

2

3

4

5

6

7

Payment:
**If you choose a direct payment gateway to complete your purchase, then Shopify stores your credit card data.** It is encrypted through the Payment Card Industry Data Security Standard (PCI-DSS). **Your purchase transaction data is stored only as long as is necessary to complete your purchase transaction. After that is complete, your purchase transaction information is deleted.**
All direct payment gateways adhere to the standards set by PCI-DSS as managed by the PCI Security Standards Council, which is a joint effort of brands like Visa, MasterCard, American Express and Discover.
PCI-DSS requirements help ensure the secure handling of credit card information by our store and its service providers.
**For more insight, you may also want to read Shopify's Terms of Service (https://www.shopify.com/legal/terms) or Privacy Statement (https://www.shopify.com/legal/privacy).**

8

9

10

11

12

13

14

Shopify Inc.'s own Privacy Statement, in turn, contains more detailed disclosures about what data it processes and how.  It included a plainly worded explanation of how Shopify Inc. handled consumer data, covering topics including: "[w]hy we process your information," "[w]here we send your information," "[y]our rights over your information," and "[h]ow we use 'cookies' and other tracking technologies."  Heath Decl., Ex. E.  This last category includes a link to Shopify Inc.'s Cookie Policy, which provided more detail on every cookie that Shopify Inc. used, including name, function, and duration.  Heath Decl., Ex. F.

15

16

17

18

19

20

21

22

23

24

The SAC nevertheless claims that Plaintiff "was not aware" that when he "submitted the form containing his private information to complete the checkout process, his private information was sent to Shopify[] [Inc.]'s computer network, where it was stored, analyzed, and/or processed." SAC ¶ 60.  The SAC also asserts that Plaintiff "was not aware" that Shopify Inc. would "install[] … a tracking cookie … on his smartphone."  *Id.*  The SAC alleges that "[h]ad [Plaintiff] known that Shopify [Inc.] would collect, store, analyze, and/or transfer his private information," he "would not have purchased products from IABMFG."  SAC ¶ 64.  In acknowledging the presence of disclosures of Shopify's involvement, the SAC claims that, nevertheless, "Plaintiff never saw nor agreed" to those "privacy disclosures on the IABMFG website."  SAC ¶ 61.

25

26

27

Nevertheless, on these bases, Plaintiff filed this lawsuit accusing Shopify Payments, Shopify Inc., and Shopify USA of committing crimes and torts for processing his purchase information and utilizing routine cookies in exactly the manner those disclosures said it would.

28

SHOPIFY PAYMENTS' MOTION TO DISMISS
CASE NO. 4:21-cv-06269

**B.     Facts Specific to Shopify Payments**

Shopify Payments is a company distinct from both Shopify Inc. and Shopify USA, which provides Shopify Inc. merchants in the United States with a simple way to accept payments online. *See* Bressack Decl. ¶ 3-4.  Specifically, Shopify Payments provides payment account boarding, payment underwriting, and payment data transmission services that help merchants integrate with a payment processor, so that the payment processor can accept and process credit card, debit card, and other types of payments for the merchant's sales. *Id.* ¶ 4.

To that end, Shopify Payments "contracted with Stripe … to provide payment processing services" to Shopify Inc. merchants.  SAC ¶ 16; *see also* ECF No. 39-5.  Through that contract—which the SAC incorporates by reference by quoting from it and describing it, *see supra* at 2-3—Shopify Payments engages Stripe to provide "payment processing services" to merchants who elect to use Shopify Payments "for financial transaction processing of credit cards, debit cards, and other Payment Devices."  *See* Bressack Decl. ¶ 11 (explaining that the contract is available at sec.gov/Archives/edgar/data/1594805/000119312515129273/d863202dex1011.htm).    Additionally,  the contract imposes "[l]imitations" on what Stripe may do with consumer data. *Id.*  Specifically, it states that if Shopify Payments "provides to [Stripe] any User Data that is Personally Identifiable Information, then [Stripe] will: (a) be permitted to use such shared User Data ***solely for the purpose of performing its obligations under this Agreement***, (b) not disclose any such shared User Data to any third party (other than third parties engaged, under appropriate terms of confidentiality, to assist with the provision of Stripe Services), and (c) utilize commercially reasonable security measures … to protect such shared User Data from unauthorized access, use, disclosure, alteration, or destruction." *Id.*  Thus while the SAC alleges that "through that contract, Shopify Payments (USA), Inc. shares with Stripe thousands, if not millions of California consumers' private information and transaction information and has enabled Stripe, Inc. to develop user profiles on those California consumers," SAC ¶ 17, that allegation is contradicted by the contract itself, which makes no mention of—and certainly does not require—any user profiles to be created by Stripe.  *See* Bressack Decl. ¶ 11.

As alluded to above, Shopify Payments provides services only to some eligible merchants

in the United States.  *Id.* ¶ 5.  Not all United States merchants are eligible to use Shopify Payments' services; and of those merchants that are eligible, not all necessarily utilize those services.[5]  *Id.* Eligible merchants who do utilize Shopify Payments' services agree to be bound by Shopify Payments' Terms of Service.  Those Terms of Service, as their name suggests, are a contract between Shopify Payments and merchants who choose to avail themselves of Shopify Payments' services; they are not an agreement between Shopify Payments and any other entity (including merchants' customers, like Plaintiff).

The contents of the Terms of Service change from time to time.  *See* Bressack Decl. ¶ 9.  At the time Plaintiff allegedly made his purchase from IABMFG in June 2019, *see* SAC ¶ 57, the operative version of the Terms of Service was Version 1.10.[6]  Bressack Decl. ¶ 9.  The SAC, however, quotes from a different version of the Terms of Service—one that was not in effect at the time Plaintiff made his purchase.  *See* Bressack Decl. ¶ 9; SAC ¶ 15.  While the SAC asserts that Terms of Service provided that "'[Stripe] and MaxMind, a fraud detection service, each independently serve as "data controllers" with regards to any personal data that they may processes under this Agreement and that we are not responsible for how they process such data,'" SAC ¶ 15, that language does not appear anywhere in the operative Terms of Service (Version 1.10).  Bressack Decl. ¶ 9.  In fact, Version 1.10 of the Terms of Service does not make any mention of "MaxMind" at all.  *Id.*  Rather, the language quoted in the SAC appeared in the Shopify Payments Terms of Service months *after* Plaintiff made his purchase, specifically from on or around February 2020 until on or around January 2022.  *Id.*  Plaintiff is aware his SAC references an inapplicable version of the Terms of Service. When Defendants offered Plaintiff an opportunity to amend the SAC unopposed prior to submission of the instant Motions, Plaintiff declined, once again receiving a

---

[5] The SAC does not specifically allege whether IABMFG, the merchant from whom Plaintiff made his purchase, was eligible for Shopify Payments' services or whether it, in fact, utilized those services.  This failure to plead facts connecting Shopify Payments to the acts with which Plaintiff takes issue is yet another indicator of the slapdash manner in which Shopify Payments has been added to this lawsuit.  Despite claiming that he had thoroughly investigated his claims before filing in August 2021, it was only in late December 2021, after reading Shopify Inc.'s and Shopify USA's filed motions to dismiss (and perhaps worrying that he would be unable to sustain a claim against those entities), that Plaintiff sought to add Shopify Payments as an additional defendant.

[6] *Available at* https://web.archive.org/web/20200212224322/https://www.shopify.com/legal/terms-payments-us.

SHOPIFY PAYMENTS' MOTION TO DISMISS
CASE NO. 4:21-cv-06269

1  preview of Defendants briefing instead of addressing his pleading error.[7]

2  **III.   LEGAL STANDARD**

3    A motion to dismiss under Rule 8 is decided solely on the face of the complaint.  A

4  complaint survives such a motion only if it provides each "defendant[] fair notice of the claims

5  against [it]." *Bravo v. Cnty. of San Diego*, 2014 WL 555195, at *2 (N.D. Cal. 2014).  "[L]umping

6  together multiple defendants in one broad allegation fails to satisfy [this] notice requirement." *Id.*

7    A motion to dismiss under Rule 12(b)(2) is not limited to the pleadings and "may consider

8  extrinsic evidence … including affidavits submitted by the parties."  *Stewart v. Screen Gems-EMI*

9  *Music, Inc.*, 81 F. Supp. 3d 938, 951 (N.D. Cal. 2015).  The plaintiff bears the burden of establishing

10 personal jurisdiction.  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).

11   A motion to dismiss under Rule 12(b)(6) is resolved solely on the face of the complaint.  To

12 survive a motion under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted

13 as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

14 (2009).  "[L]abels and conclusions, and a formulaic recitation of the elements" of claims will not

15 suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

16 **IV.   LEGAL ARGUMENT**

17    **A.   The SAC Fails Under Rule 8 Because It Fails to Distinguish Among Defendants.**

18    As explained in detail in Shopify USA's MTD, the SAC must be dismissed because, by

19 combining Shopify Inc., Shopify USA, and Shopify Payments into a fictitious single entity that it

20 defines as "Shopify," the SAC fails to provide Shopify Payments, Shopify Inc., or Shopify USA

21 with sufficient notice of the claims against it, as required by Rule 8.  *See* Shopify USA MTD § IV.A.

22    **B.   This Court Lacks Jurisdiction Over Shopify Payments.[8]**

23      1.   *This Court lacks general jurisdiction over Shopify Payments.*

24

25 ───────────────
[7] The SAC's failure to describe the correct Terms of Service is surprising. Not only did counsel
26 alert Plaintiff to the fact that the SAC references an inoperative version, past versions of the Terms
   of Service are readily publicly available for a diligent investigator, *see supra* n.6.

27 [8] "Because California's long-arm statute is co-extensive with federal due process requirements, the
28 jurisdictional analyses under state law and federal due process are the same."  *Yahoo! Inc. v. La
   Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006).

SHOPIFY PAYMENTS' MOTION TO
DISMISS
CASE NO. 4:21-cv-06269

A corporation is subject to general jurisdiction in California only if it is incorporated here, if its principal place of business is here, or if its contacts with California are so "exceptional" as "to approximate physical presence in California." *Baton v. Ledger*, 2021 WL 5226315, at *3-*4 (N.D. Cal. 2021) (dismissing Shopify Inc. and Shopify USA for lack of jurisdiction).  None of those bases applies here.  As the SAC concedes, Shopify Payments is incorporated not in California, but rather in "Delaware," and its principal place of business is in "Wilmington, Delaware."  SAC ¶ 15.  So California is not either of the "paradigm bases for general jurisdiction" over Shopify Payments. *Baton*, 2021 WL 5226315, at *3.  Thus the "only remaining theory for the Court to assert general jurisdiction is that this is 'an exceptional case'" where Shopify Payments' "contacts are so continuous and systematic as to approximate physical presence in California."  *Baton*, 2021 WL 5226315 at *4.  But, Shopify Payments' contacts with California are not materially different from Shopify USA's—which Judge Chen recently found insufficient to support general jurisdiction. *Compare id.* (noting that "approximately three-quarters of [Shopify USA's] employees are located outside of California), *with* Bressack Decl. ¶ 7 (explaining that the same is true of Shopify Payments).  Accordingly, there is no basis for asserting general jurisdiction over Shopify Payments.

2.      *This Court lacks specific jurisdiction over Shopify Payments.*

Specific jurisdiction exists only where the complaint alleges facts showing (1) the defendant "purposefully direct[s] his activities" toward the state or its residents; and (2) the claim before the court "arises out of or relates to the defendant's forum-related activities."  *Caces-Tiamson v. Equifax*, 2020 WL 1322889, at *3 (N.D. Cal. 2020).  The SAC advances two jurisdictional theories as to Shopify Payments, neither of which satisfies both necessary elements.  The first theory of specific jurisdiction alleges facts targeting the fictional amalgam "Shopify," but fails to establish that "Shopify" purposefully directed any relevant acts at California. The second theory of specific jurisdiction, which targets "Shopify Payments" specifically, fails as to both prongs because the acts it describes neither were purposefully directed at California nor gave rise to Plaintiff's claims. Because neither theory alleges that Plaintiff's claims arise out of acts purposefully directed at the forum, the SAC fails to establish specific jurisdiction.  *See Baton*, 2021 WL 5226315, at *11 ("[B]ecause Plaintiffs fail to show (1) that the Shopify, Inc. "purposefully directed" their activities

SHOPIFY PAYMENTS' MOTION TO
DISMISS
CASE NO. 4:21-cv-06269

towards California, and (2) that their claims "arise out of" Shopify [Inc.]'s forum-related activities

demonstrate, the Court concludes that it lacks specific jurisdiction over Shopify Inc.").

**Claim-related but forum-agnostic allegations about "Shopify."**  For the reasons given

in Shopify Inc.'s MTD, the allegations as to the fictitious "Shopify" are insufficient to establish

specific jurisdiction (no matter which entity those "Shopify" allegations are construed as applying

to).

**Claim- and forum-unrelated allegations specific to Shopify Payments.**  The SAC

includes only two sets of allegations specifically focused on Shopify Payments (as opposed to the

fictitious "Shopify").  Neither provides a basis for specific jurisdiction over Shopify Payments.

The first set of allegations describe a contract that Shopify Payments allegedly entered into

with merchants (rather than consumers such as Plaintiff) to enable merchants "to accept and process

online credit and debit payments."  SAC ¶ 15.  But that merchant "contract" described and quoted

in SAC ¶ 15 was not in force at the time Plaintiff made his purchase.  *See* Bressack Decl. ¶ 8.  It is

therefore irrelevant for purposes of evaluating specific jurisdiction, and Plaintiff's claims cannot

possibly arise from it.  *See Steel v. United States*, 813 F.2d 1545, 1549 (9th Cir. 1987) (for "specific

jurisdiction," "[c]ourts must examine the defendant's contacts with the forum at the time of the

events underlying the dispute").[9]

In any event, even if the contract described in SAC ¶ 15 had been in force at the time

Plaintiff made his purchase, it would not establish specific jurisdiction over Shopify Payments.  The

---

[9] This is not the kind of pleading error that Plaintiff should be permitted to correct through amendment.  Indeed, it is not an "error" at all—but rather a deliberate choice to proceed under an allegation that Plaintiff knows to be incorrect.  Not only was the version of the Terms of Service in effect at the time of Plaintiff's purchase publicly available—and thus easily ascertainable through the requisite pre-suit investigation—but counsel for Shopify Payments specifically alerted Plaintiff's counsel to this defect prior to filing this motion.  Shopify Payments' counsel also directed Plaintiff's counsel to the operative version of the Terms of Service, and offered to stipulate to an extension to give Plaintiff time to consider this information and amend his SAC.  But Plaintiff's counsel refused both the invitation to amend and the offer to take time to consider, responding flatly that he saw no need for further amendment.  Plaintiff has thus made a calculated decision to proceed with the allegations in the SAC as pled, despite knowing them to be wrong—at the expense of both Shopify Payments and this Court.  He should not be permitted to evade the consequences of that choice.  Plaintiff has already had three bites at the apple, including one that came only after Shopify Inc. and Shopify USA had fully briefed one round of motions to dismiss.  He should not be given yet another.

SHOPIFY PAYMENTS' MOTION TO
DISMISS
CASE NO. 4:21-cv-06269

only connection alleged by the SAC between the contract described in SAC ¶ 15 and California is that "[u]pon information and belief, Shopify Payments (USA), Inc. contracts with thousands of California merchants." SAC ¶ 15.  That allegation is insufficient for all the same reasons described in Shopify Inc.'s MTD at 10 (explaining that "a company does not purposefully direct acts into California 'based on the mere fact that [it] provides services to customers nationwide,' even if some of those customers happen to be located in California (quoting *Baton*, 2021 WL 5226315, at *6)).  And, even *if* the SAC had sufficiently alleged that the Terms of Service targeted California, as argued below with respect to the contract between Shopify Payments and Stripe, the SAC does not allege that its claims "arise out of" the Terms of Service (which is an agreement with merchants, not merchants' customers').  *See* SAC ¶ 15 (discussing the Terms of Service in only a single paragraph, which makes no mention of Plaintiff or his claims).

The second set of allegations focus on a contract that Shopify Payments entered into with "with Stripe, a company with its principal place of business in California, to provide payment processing services." SAC ¶ 16.  According to the SAC, through that contract, Shopify Payments "shares with Stripe thousands, if not millions, of California consumers' private information and transaction information and has enabled Stripe, Inc. to develop user profiles on those California consumers." SAC ¶ 17.  But that contract, too, is insufficient to establish specific jurisdiction over Shopify Payments, as it fails both requirements identified above.

For one thing, it fails to demonstrate the requisite purposeful direction of activities towards California on the part of Shopify Payments.  Courts have repeatedly emphasized that an "allegation that defendant entered into a contract with a California resident" is insufficient to show that the defendant "purposefully direct[ed] activities at California." *Mohazzabi v. Mohazzebi*, 2019 WL 6493969, at *4 (N.D. Cal. 2019); *see also, e.g.*, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.").  Indeed, that is true even where the contract contemplates that performance will occur in the forum state. *See, e.g.*, *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) ("the fact that a contract envisions one party discharging his obligations in the forum

SHOPIFY PAYMENTS' MOTION TO
DISMISS
CASE NO. 4:21-cv-06269

1   state cannot, standing alone, justify the exercise of jurisdiction over another party to the contract");

2   *Speidel v. Markota*, 2021 WL 3463895, at *4 (C.D. Cal. May 4, 2021) (no purposeful direction

3   where complaint alleged that "Defendant ordered merchandise from a Los Angeles–based printing

4   company and another nonparty to be sent to [plaintiff's] home in Los Angeles for distribution").

5   Where, as here, the contract is indifferent to where Shopify Payments' counterparty (i.e., Stripe)

6   completes performance of the contract, the lack of purposeful direction at California on the part of

7   Shopify Payments is even clearer than in *Picot or Speidel*.

8        Additionally—and this fact should not be glossed over—the SAC's claims do not "arise out

9   of" the contract between Shopify Payments and Stripe, described in SAC ¶¶ 16-17.  "In order to

10  determine whether [a] Plaintiff's tort claim arises out of its contractual contact, the Court must first

11  determine what [the Defendant] is required to do under the [contract]."  *Lisa McConnell, Inc. v.*

12  *Idearc, Inc.*, 2010 WL 364172, at *6 (S.D. Cal. 2010).  Only if "the agreement requires" the

13  defendant to undertake the actions that give rise to the plaintiff's claims (or that "bring[] the parties

14  within tortious 'striking distance' of one another") can it be said that the claims would not have

15  arisen "but for" the contract.  *Id.*; *see also Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995)

16  (a claim "arises out of" a contact only if it would not have occurred "but for" the contact).

17       Here, as the contract itself makes clear, none of the acts that form the basis for the SAC's

18  claims was *required* by Shopify Payments' contract with Stripe.  *See supra* § II.B; *see also* Bressack

19  Decl. ¶ 11 (providing a link to the contract).  Indeed, whereas the SAC alleges that "through th[e]

20  contract" with Stripe, Shopify Payments "has enabled Stripe, Inc. to develop user profiles on those

21  California consumers," SAC ¶ 17, the actual contract makes no mention of—and certainly does not

22  require—any user profiles to be created by Stripe.  *See supra* § II.B; *see also* Bressack Decl. ¶ 11.

23  Rather, it imposes "[l]imitations" on what Stripe may do with consumer data, stating expressly that

24  if Shopify Payment "provides to [Stripe] any User Data that is Personally Identifiable Information,"

25  then Stripe will "be permitted to use such shared User Data ***solely for the purpose of performing***

26  ***its obligations under this Agreement***."  *See supra* § II.B; *see also* Bressack Decl. ¶ 11.  Because

27  none of the acts (or claims) alleged in the SAC is *required* by Shopify Payments' contract with

28  Stripe, none "arises out of" the contract, as would be required to have the contract serve as a basis

SHOPIFY PAYMENTS' MOTION TO
DISMISS
CASE NO. 4:21-cv-06269

1    for specific jurisdiction.

2           Accordingly, neither the allegations as to the fictitious "Shopify," nor those specifically

3    related to Shopify Payments, provide a basis for the exercise of specific jurisdiction over Shopify

4    Payments.  The SAC must be dismissed as to Shopify Payments in its entirety.

5           **C.     The SAC Fails to State a Claim Against Shopify Payments.**

6           The SAC also must be dismissed in its entirety as to Shopify Payments under Rule 12(b)(6)

7    because the SAC itself (along with IABMFG webpages incorporated by reference therein, *see supra*

8    § II) makes clear that Plaintiff consented to any data collection, which defeats each of Plaintiff's

9    claims.  Additionally, independent of the issue of consent, each of the SAC's claims—under (1)

10   Section 631; (2) Section 635; (3) the California constitution or common law; (4) Section 502; and

11   (5) the Unfair Competition Law—must fail.

12          1.     *The SAC fails to state any claim because it pleads facts showing that Plaintiff*
                   *consented to any data collection.*
13

14          As explained in detail in Shopify Inc.'s MTD, the SAC has failed to plead facts sufficient

15   to establish the requisite lack of consent for each of its claims.  *See* Shopify Inc. MTD § IV.C.1,

16   each of those claims must be dismissed.  For the same reasons set forth there, especially because

17   the SAC does not distinguish between Shopify Inc. and Shopify Payments or Shopify USA *see*

18   *supra* § IV.A, the SAC also fails to plead facts sufficient to establish the requisite lack of consent

19   for its claims against Shopify Payments.

20          2.     *The SAC fails to state an eavesdropping claim under Penal Code Section*
                   *631(a).*
21

22          Separate and apart from the categorical legal bar that Plaintiff's consent poses to his suit,

23   the SAC fails to state an eavesdropping claim under Section 631(a) for processing Plaintiff's

     transaction.    That provision makes it unlawful to (1) "intentionally tap[], or make[] any
24
     unauthorized connection … with any telegraph or telephone wire, line, cable, or instrument," or (2)
25
     "willfully and without the consent of all parties to the communication … read[], or attempt[] to
26
     read, or to learn the contents or meaning of any message … while the same is in transit." Cal. Penal
27
     Code § 631(a).  As discussed in Shopify Inc.'s MTD, the SAC fatally fails to allege that *any* third-
28

SHOPIFY PAYMENTS' MOTION TO
DISMISS
CASE NO. 4:21-cv-06269

party disclosure occurred at all. It also fails to allege tapping of a telephone line required under the first clause, or unauthorized disclosure of contents required under the second clause, thus failing to state any claim under Section 631(a).[10]

        a.    <u>The SAC fails to state a claim under either clause of Section 631(a), because it fails to plead facts showing that Shopify Payments was a third party to Plaintiff's communications.</u>

As explained in detail in Shopify Inc.'s MTD, the SAC fails to plead facts sufficient to establish that Shopify Payments was a third party to Plaintiff's communications, as required to establish liability under either clause of Section 631(a).  *See* Shopify Inc. MTD § IV.C.2.a.  For the same reasons set forth there, especially because the SAC does not distinguish between Shopify Inc. and Shopify Payments or Shopify USA, *see supra* § IV.A, the SAC also fails to plead facts sufficient to establish that Shopify Payments was a third party to Plaintiff's communications.

        b.    <u>The SAC fails to allege a violation of Section 631(a)'s first clause, because it fails to allege a wiretap of a telephone line.</u>

As explained in detail in Shopify Inc.'s MTD, the SAC fails to plead facts sufficient to establish that Shopify Inc. committed a wiretap of a telephone line, as required to establish liability under Section 631(a)'s first clause.  *See* Shopify Inc. MTD § IV.C.2.b.  For the same reasons set forth there, especially because the SAC does not distinguish between Shopify Inc. and Shopify Payments or Shopify USA, *see supra* § IV.A, the SAC also fails to plead facts sufficient to establish that Shopify Payments committed a wiretap of a telephone line.

        c.    <u>The SAC fails to allege a violation of Section 631(a)'s second clause because it fails to plead facts showing that Shopify Payments read the "contents" of any message.</u>

As explained in detail in Shopify Inc.'s MTD, the SAC fails to plead facts sufficient to establish that Shopify Inc. read the "contents" of any message, as required to establish liability

---

[10] It is unclear whether Plaintiff also means to invoke Section 631's third clause, which makes it a crime to "use[], or attempt[] to use, … or to communicate … any information so obtained."  But that clause applies only where the information at issue "was obtained through a violation of the first or second clauses."  *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 825, 827 (N.D. Cal. 2020).  Because Plaintiff cannot show a violation of either of those clauses, he "also ha[s] failed to plead a violation of the third clause."  *Id.* at 827.  The same is true of Section 631's fourth clause as well, which criminalizes aiding and abetting violations of the first two clauses.

1  under Section 631(a)'s second clause.  *See* Shopify Inc. MTD § IV.C.2.c.  For the same reasons set

2  forth there, especially because the SAC does not distinguish between Shopify Inc. and Shopify

3  Payments or Shopify USA, *see supra* § IV.A, the SAC also fails to plead facts sufficient to establish

4  that Shopify Payments read the "contents" of any message.

5          3.       *The SAC fails to state a claim under Penal Code Section 635.*

6        Section 635 makes it a crime to "manufacture[], assemble[], sell[], offer[] for sale,

7  advertise[] for sale, possess[], transport[], import[], or furnish[] to another any device which is

8  primarily or exclusively designed or intended for eavesdropping."  Cal. Penal Code § 635(a).  The

9  SAC asserts that Shopify Payments violated that provision by possessing "software code modules"

10  designed to collect and process his shipping, billing, and payment information as required to

11  facilitate his purchase from IABMFG.  SAC ¶¶ 91-92.  That theory fails for two reasons.

12                  a.     <u>The Section 635 claim fails because code is not a "device" within the</u>

13                         <u>meaning of the California Invasion of Privacy Act.</u>

14        As explained in detail in Shopify Inc.'s MTD, the SAC fails to plead facts sufficient to

15  establish that Shopify Inc.'s code constituted a "device," as required to establish liability under

16  Section 635.  *See* Shopify Inc. MTD § IV.C.3.a.  For the same reasons set forth there, especially

17  because the SAC does not distinguish between Shopify Inc. and Shopify Payments or Shopify USA,

18  *see supra* § IV.A, the SAC also fails to plead facts sufficient to establish that Shopify Payments

19  committed any prohibited act with a "device."

20                  b.     <u>The Section 635 claim fails because the SAC fails to allege facts</u>

21                         <u>showing that Shopify Inc.'s code was "primarily or exclusively designed" for eavesdropping.</u>

22        As explained in detail in Shopify Inc.'s MTD, the SAC fails to plead facts sufficient to

23  establish that Shopify Inc.'s code, even if a "device," was "primarily or exclusively designed" for

24  eavesdropping, as required to establish liability under Section 635.  *See* Shopify Inc. MTD §

25  IV.C.3.b.  For the same reasons set forth there, especially because the SAC does not distinguish

26  between Shopify Inc. and Shopify Payments or Shopify USA, *see supra* § IV.A, the SAC also fails

27  to plead facts sufficient to establish that Shopify Payments committed any prohibited act with a

28  device "primarily or exclusively designed" for eavesdropping.

1

          **4.**      *The SAC fails to state a claim for invasion of privacy and intrusion upon*

2
*seclusion because it does not allege facts showing that Shopify Payments committed an "egregious" or "highly offensive" privacy intrusion.*

3        As explained in detail in Shopify Inc.'s MTD, the SAC fails to plead facts sufficient to

4 establish that Shopify Inc. committed any act that would qualify as an "egregious" or "highly

5 offensive" privacy intrusion, as required to establish liability for an invasion of privacy or an

6 intrusion upon seclusion. *See* Shopify Inc. MTD § IV.C.4. For the same reasons set forth there,

7 especially because the SAC does not distinguish between Shopify Inc. and Shopify Payments or

8 Shopify USA, *see supra* § IV.A, the SAC also fails to plead facts sufficient to establish that Shopify

9 Payments committed an "egregious" or "highly offensive" privacy intrusion.

10

          **5.**      *The SAC fails to state a Penal Code Section 502 claim, because it fails to*

11
*allege facts showing that Shopify Payments accessed Plaintiff's iPhone "without permission."*

12        As explained in detail in Shopify Inc.'s MTD, the SAC fails to plead facts sufficient to

13 establish that Shopify Inc. accessed Plaintiff's iPhone "without permission," as required to establish

14 liability under Section 502. *See* Shopify Inc. MTD § IV.C.5. For the same reasons set forth there,

15 especially because the SAC does not distinguish between Shopify Inc. and Shopify Payments or

16 Shopify USA, *see supra* § IV.A, the SAC also fails to plead facts sufficient to establish that Shopify

17 Payments accessed Plaintiff's iPhone "without permission."

18             **6.**      *The SAC fails to state a claim under the UCL.*

19        To state a claim under the UCL, Plaintiff must show (among other things) that Shopify

20 Payments engaged in an "unlawful," "fraudulent," or "unfair" business practice. Cal. Bus. & Prof.

21 Code § 17200. Here, Plaintiff has failed to plead facts establishing any of those three.

22            **a.**     <u>The SAC fails to state a claim for an "unlawful" practice.</u>

23        To state a UCL claim for an "unlawful" practice, a plaintiff must show a "violation[] of

24 [an]other law[]." *Silver* v. *Stripe Inc.*, 2021 WL 3191752, at *6 (N.D. Cal. 2021). The SAC fails

25 to do so. It lists five statutes as supposedly forming the basis for Plaintiff's "unlawful" UCL claim:

26 (1) the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 635 and 637; (2) the

27 California Online Privacy Protection Act of 2003 ("CalOPPA"), Cal. Bus. & Prof. Code § 22575

28 *et seq.*; (3) the California Consumer Privacy Act of 2018 ("CCPA"), Cal. Bus. & Prof. Code § 1427

1    *et seq*; and (4) the California Computer Data Access and Fraud Act, Cal. Penal Code § 502.  SAC

2    ¶ 137.

3         As explained in detail in Shopify Inc.'s MTD, the SAC fails to plead facts sufficient to

4    establish that Shopify Inc. committed a violation of any of those statutes.  *See* Shopify Inc. MTD §

5    IV.C.6.a.  For the same reasons set forth there, especially because the SAC does not distinguish

6    between Shopify Inc. and Shopify Payments or Shopify USA, *see supra* § IV.A, the SAC also fails

7    to plead facts sufficient to establish that Shopify Payments committed a violation of any of those

8    statutes.

9                   b.    The SAC fails to state a claim for a "fraudulent" practice.

10        As explained in detail in Shopify Inc.'s MTD, the SAC fails to plead facts sufficient to

11   establish that that Shopify Inc. (1) owed Plaintiff a duty to disclose its data collection practices; or

12   (2) made any fraudulent or deceptive statements or omissions in breach of that specific duty, as

13   required to establish liability under the fraud prong of the UCL.  *See* Shopify Inc. MTD § IV.C.6.b.

14   For the same reasons set forth there, especially because the SAC does not distinguish between

15   Shopify Inc. and Shopify Payments or Shopify USA, *see supra* § IV.A, the SAC also fails to plead

16   facts sufficient to establish that Shopify Payments owed Plaintiff a duty to disclose its data

17   collection practices; or made any fraudulent or deceptive statements or omissions in breach of that

18   specific duty.

19                  c.    The SAC fails to state a claim for an "unfair" practice.

20        As explained in detail in Shopify Inc.'s MTD, the SAC fails to plead facts sufficient to

21   establish that Shopify Inc. engaged in conduct that violates a public policy tethered to a specific

22   constitutional, statutory, or regulatory provision, or that the harm from Shopify Inc.'s conduct

23   outweighs the utility of the practice, as required to establish liability under the UCL's "unfair"

24   prong.  *See* Shopify Inc. MTD § IV.C.6.c.  For the same reasons set forth there, especially because

25   the SAC does not distinguish between Shopify Inc. and Shopify Payments or Shopify USA, *see*

26   *supra* § IV.A, the SAC also fails to plead facts sufficient to establish that Shopify Payments

27   engaged in conduct that violates a public policy tethered to a specific constitutional, statutory, or

28   regulatory provision, or that the harm from Shopify Inc.'s conduct outweighs the utility of the

SHOPIFY PAYMENTS' MOTION TO
DISMISS
CASE NO. 4:21-cv-06269

1  practice.

2  **V.      CONCLUSION**

3          Shopify Payments respectfully requests that the Court dismiss the SAC.

4  Dated: February 17, 2022                    Respectfully Submitted,

5                                              ORRICK, HERRINGTON & SUTCLIFFE LLP

6

7                                              By: */s/ Jacob M. Heath*
                                                      JACOB M. HEATH
8                                                     THOMAS FU
                                                 Attorneys for Defendants
9                                              Shopify Payments (USA), Inc.,
                                            Shopify (USA), Inc. and Shopify Inc.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28