**GUTRIDE SAFIER LLP**
SETH A. SAFIER (SBN 197427)
seth@gutridesafier.com
MARIE MCCRARY (SBN 262670)
marie@gutridesafier.com
TODD KENNEDY (SBN 250267)
todd@gutridesafier.com
HAYLEY REYNOLDS (SBN 306427)
hayley@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

KALI BACKER (admitted *pro hac vice*)
kali@gutridesafier.com
4450 Arapahoe Ave., Suite 100
Boulder, Colorado 80303
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| BRANDON BRISKIN on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SHOPIFY INC.; SHOPIFY (USA), INC.; and SHOPIFY PAYMENTS (USA), INC.,<br><br>Defendants. | CASE NO. 4:21-cv-06269-PJH<br><br>**PLAINTIFF'S OPPOSITION TO SHOPIFY PAYMENTS (USA) INC.'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>Date: April 28, 2022<br>Time: 1:30 p.m.<br>Judge: Hon. Phyllis Hamilton |

# TABLE OF CONTENTS


I. INTRODUCTION ........................................ 1

II. BACKGROUND ........................................ 2

III. LEGAL STANDARD ........................................ 4

IV. ARGUMENT ........................................ 4

A. The Court Has Personal Jurisdiction Over Shopify Payments ........................................ 4

1. *Shopify Payments purposefully directed its activities toward the forum.* ........................................ 5

2. *Plaintiff's claims arise from Defendants' contact with California.* ........................................ 9

3. *It is reasonable to exercise jurisdiction over Shopify Payments in California.* ........................................ 10

B. The SAC Gives Defendants Adequate Notice Pursuant to Rule 8 ........................................ 10

C. Plaintiff Did Not Consent to Defendants' Tortious Conduct. ........................................ 10

D. Plaintiff States a Claim Under § 631(A). ........................................ 11

E. Plaintiff States a Claim Under § 635 ........................................ 12

F. Plaintiff States a Claim For Privacy Violations Under The California Constitution and California Common Law Intrusion Upon Seclusion. ........................................ 13

G. Plaintiff States a Claim Under § 502 ........................................ 13

H. Plaintiff States a Claim Under the UCL Against Shopify Payments. ........................................ 14

V. CONCLUSION ........................................ 17

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 4

*Baton v. Ledger SAS*, 2021 U.S. Dist. LEXIS 215793 (N.D. Cal. Nov. 8, 2021) .......... 9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 4

*Bergstein v. Parmar*, 2014 WL 12586073 (C.D. Cal. June 23, 2014) .......... 7

*Boschetto v. Hansing*, 539 F.3d 1011 (9th Cir. 2008) .......... 11

*Burger King v. Rudzewicz*, 471 U.S. 462 (1985) .......... 8

*Calder v. Jones*, 465 U.S. 783 (1984) .......... 5

*College Source, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066 (9th Cir. 2011) .......... 6

*Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249 (2011) .......... 17

*Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824 (2006) .......... 17

*Doe v. Successfulmatch.com*, 70 F. Supp.3d 1066 (N.D. Cal. 2014) .......... 18

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017 (2021) .......... 8, 10

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122 (9th Cir. 2003) .......... 5

*Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272 (2009) .......... 14

*Hernandez v. Path, Inc.*, 2012 U.S. Dist. LEXIS 151035 (N.D. Cal. Oct. 17, 2012) .......... 15

*HiQ Labs, Inc. v. LinkedIn Corp.*, 938 F. 3d 985 (9th Cir. 2019) .......... 7

*In re Adobe Sys. Privacy Litig.*, 66 F. Supp. 3d 1197 (N.D. Cal. 2014) .......... 17

*In re Carrier IQ, Inc., Privacy Litig.*, 78 F. Supp. 3d 1051 (N.D. Cal. 2015) .......... 14

*In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) .......... 13

*In re iPhone Application Litig.*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......... 19

*In re Nexus 6P Prods. Liab. Litig.*, 2018 U.S. Dist. LEXIS 23622 (N.D. Cal. Feb. 12, 2018) .......... 12

*Kasky v. Nike, Inc.*, 45 P.3d 243 (Cal. 2002) .......... 16

*Lisa McConnell, Inc. v. Idearc, Inc.*, 2010 WL 364172 (S.D. Cal. 2010) .......... 10

*Lukis v. Whitepages, Inc.*, 454 F. Supp. 3d 746 (N.D. Ill. 2020) .......... 6

*Mavrix Photo, Inc. v. Brand Techs., Inc.,*647 F.3d 1218 (9th Cir. 2011) ............................5, 6, 8

*McCoy v. Alphabet, Inc.,*2021 U.S. Dist. LEXIS 24180 (N.D. Cal. Feb. 2, 2021)....................19

*Myers v. Bennett Law Offices*, 238 F.3d 1068 (9th Cir. 2001) ..............................................10

*Nguyen v. Barnes & Noble, Inc.*, 763 F. 3d 1171 (9th Cir. 2014)..........................................12

*Picot v. Weston*, 780 F.3d 1206 (9th Cir. 2015).....................................................................8, 11

*Ranza v. Nike, Inc.*, 793 F.3d 1059 (9th Cir. 2015) ....................................................................4

*Ribas v. Clark*, 696 P.2d 637 (1985).........................................................................................18

*Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892 (9th Cir. 2013) ..........................................12

*S.D. v. Hytto Ltd.*, 2019 WL 8333519 (N.D. Cal. May 15, 2019) ..............................................7

*Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797 (9th Cir. 2004)...............................4

*Sher v. Johnson*, 911 F.2d 1357 (9th Cir. 1990) ........................................................................11

*Silver v. Stripe, Inc.*, 2021 U.S. Dist. LEXIS 141090 (N.D. Cal. July 28, 2021) ................12, 15

*Usher v. City of Los Angeles*, 828 F.2d 556 (9th Cir. 1987).......................................................4

*Walden v. Fiore*, 134 S. Ct. 1115 (2014) ......................................................................................8

*WhatsApp Inc. v. NSO Grp. Techs., Ltd.*, 472 F. Supp. 3d 649 (N.D. Cal. 2020) .......................7

*Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006) ..............................................................................................................................5

**STATUTES**

Cal. Pen. Code § 631(a) ..........................................................................................................11

Cal. Penal Code § 502.................................................................................................................1

Cal. Penal Code § 635...............................................................................................................12

Cal. Penal Code §§ 631 and 635 ..............................................................................................13

**OTHER AUTHORITIES**

18 U.S.C. § 2511(1)(a).............................................................................................................11

## I. INTRODUCTION

Few types of information are more private than a person's finances. The question at the heart of this case is whether Defendants Shopify Inc. ("Shopify"), Shopify (USA), Inc. ("Shopify USA"), and Shopify Payments (USA), Inc. ("Shopify Payments") (collectively "Defendants") can secretly track and collect intimate details about consumers' financial transactions, aggregate those details into profiles, and share the information with their own merchants and third parties to consumers' detriment. Defendants accomplish this surreptitious data collection by concealing their presence on merchants' websites with embedded software. When consumers begin the checkout process on a merchant's website, like IABMFG, for example, they go to a payment form that appears to belong to the merchant, and, as a result, believe they are communicating only with the merchant. In reality, however, Defendants generate the payment form and use it to intercept consumers' information to send directly to their own servers.

Because Defendants do not ask for permission from the outset, consumers have no idea what happens to their data. Behind the scenes, Defendants use it to build individual profiles and provide analysis on transactions to their merchants, thereby allowing them to profit from their unlawful conduct. Those merchants, in turn, use the information to prejudge consumers, including refusing to do business with some consumers entirely. Defendants also share consumer data with third parties, like Stripe, Inc., that also build their own consumer profiles. Because Defendants remain hidden at all points in the transaction, they deprive consumers of the right to opt out of the collection, use, and disclosure of their own data—a right protected under California law.

Given the lengths to which Defendants have exploited consumer data, it should come as no surprise that they launch a litany of defenses. They claim the Court lacks personal jurisdiction over them, even though Defendants subjected themselves to this forum by committing intentional acts that targeted California consumers. Defendants also rely on three policies—two of which were not even posted on websites Plaintiff viewed—to contend that Plaintiff consented to their conduct. But these are unenforceable browsewrap policies.

Defendants' other arguments are equally flawed. Plaintiff states a claim under Cal. Penal Code § 502 because Defendants accessed his data by sending him software code that caused his

device to send his private information to Defendants. Plaintiff also plausibly alleges claims for all three types of Unfair Competition Law (UCL) claims. For these reasons, the Court should deny Shopify Payments' motion.

## II. BACKGROUND

Defendants run an e-commerce platform that provides payment processing services to millions of merchants across the internet. Second Amended Complaint (SAC) ¶ 24. Defendants embed their software into merchants' websites. *Id*. When a consumer begins the checkout process with one of Shopify's merchant customers, the software makes it appear that the consumer communicates directly with the merchant. *Id*. at ¶¶ 1–2, 4, 25–35, 82. But, in reality, it sends no information to the merchant. *Id*. Rather, Defendants' software generates the payment form and directs to themselves all information entered into it. *Id*. Defendants also install cookies on users' browsers that track consumers' transactions across the Shopify merchant network. *Id*. ¶¶ 5, 38-41. Defendants do not inform consumers about any of this conduct. Because they conceal their involvement by omitting their branding from the payment forms, Defendants collect—without permission—sensitive private information, including consumers' full names, addresses, email addresses, credit card numbers, IP addresses, the items purchased, and geolocation. *Id*. ¶¶ 22–3, 40, 81.

Once Defendants collect the data, they can decipher what data emanates from California because they have consumers' billing addresses and geolocations. *Id*. If they wanted, they could end their intrusion there and disregard the data. Instead, Defendants take additional steps to use data from California and make it profitable for themselves and their merchants. One of the ways they do so is by compiling the data into individualized profiles. *Id*. ¶¶ 6, 42-45. Defendants share information within the profiles with their merchants. *Id*. The information is valuable to the merchants because they provide insights into consumers' creditworthiness before the transaction is final. *Id*. When a consumer from California makes a purchase, Defendants use the consumer's data to provide their merchants with an "analysis" of the order that cross-references the details of the new transaction with the consumer's purchase history to identify potential areas of fraud. *Id*. ¶ 43. Some indicators Defendants flag for their merchants include: the location of the IP address used to

place the order, the distance of the shipping address from the IP address, whether the billing ZIP code "matches the credit card's registered address," and whether "[c]haracteristics of [the] order are similar to non-fraudulent orders observed in the past." *Id*. The analysis is a powerful tool; it gives Shopify merchants an advantage over retailers who do not use Defendants' services and the ability to reject the transaction altogether. *Id*. ¶¶ 43-45.

In addition to building profiles and analyzing their data, Defendants also use Californians' data by sharing it with other non-merchant third-parties, such as Stripe and MaxMind, who, in turn, use the data to feed their own profiles on users. *Id*. ¶¶ 15-16, 46–47. Through these collective actions, Defendants directly target and exploit the California market.

The overall relationship among the Defendants is worth clarifying. Shopify operates the overall e-commerce platform, and Shopify USA processes consumer data from the platform. *Id*. at ¶¶ 10, 14-15. In order to obtain Shopify's e-commerce services, merchants must contract with Shopify directly. *Id*. at ¶ 10. Beyond its general e-commerce services, Shopify offers other, separate features for which merchants have to pay additional fees. One of those features is online payment processing. *Id*. at ¶ 15. Shopify Payments runs the payment processing feature. *Id*. Thus, in order to obtain payment processing, Shopify merchants must separately contract with Shopify Payments.[1] *Id*. Though Shopify Payments manages Shopify's payment processing feature, it does not do the actual work of processing merchants' payments. Instead, it outsources it to Stripe. *Id*. at ¶¶ 15-16.

Shopify Payments' terms of service with its merchants confirms Plaintiff's allegations. *See* ECF 53 at 8,[2] It establishes that "both Shopify and Stripe may collect or receive certain personal data about [merchants] and [their] customers." *Id*. It also confirms that Shopify Payments and Stripe "collect, use, retain and disclose [] Cardholder Data that [merchants] provide to [them] or

---

[1] Shopify Payments argues that the fact that the SAC quotes from a version of the contract that "was not in effect at the time of Plaintiff made his purchase" somehow defeats Plaintiff's claims. *See* ECF 53 at 8. It does not. Importantly, Shopify Payments does not dispute that it contracted with California merchants at the time of Plaintiff's purchase. And, if anything, the older version of the contract confirms Plaintiff's allegations, as explained below.

[2] *Available at* https://web.archive.org/web/20200212224322/https:/www.shopify.com/legal/terms-payments-us.

authorize [them] to collect, including information that we may collect directly from your end users via cookies or other means." *Id*. None of this conduct was disclosed to consumers in the course of their transactions on Shopify's platform.

## III. LEGAL STANDARD

"Where, as here, the defendant's motion [to dismiss for lack of personal jurisdiction] is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand" it. *Ranza v. Nike, Inc*., 793 F.3d 1059, 1068 (9th Cir. 2015) (citation omitted). The Court must accept Plaintiff's uncontroverted allegations as true, and resolve any factual disputes in conflicting affidavits in the plaintiff's favor. *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 800 (9th Cir. 2004).

To survive a Rule 12(b)(6) motion, the claimant must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court must accept all factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). This is not akin to a "probability requirement." *Id*.

## IV. ARGUMENT

### A. The Court Has Personal Jurisdiction Over Shopify Payments.

California's long-arm statute permits the exercise of personal jurisdiction to the fullest extent allowed by the Due Process Clause. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd*., 328 F.3d 1122, 1129 (9th Cir. 2003). Jurisdiction comports with due process when the defendant has minimum contacts with the state. *Ranza*, 793 F.3d at 1068. For cases involving tortious conduct, such as here, the Ninth Circuit uses the following test to determine whether a non-resident defendant is subject to specific personal jurisdiction: (1) the non-resident defendant must purposefully direct his activities toward the forum; (2) the claim must arise out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with

fair play and substantial justice, i.e., be reasonable. *Mavrix Photo, Inc. v. Brand Techs., Inc.,* 647 F.3d 1218, 1228 (9th Cir. 2011).

Plaintiff bears the burden of proving the first two prongs. *Id*. If Plaintiff succeeds, the burden shifts to Defendants to "set forth a compelling case that the exercise of jurisdiction would not be reasonable." *Id. at* 1212. Shopify Payments' brief focuses exclusively on the first two factors, so the last prong is not in dispute. *See* ECF 53 at 9-14.

### 1. *Shopify Payments purposefully directed its activities toward the forum.*

The "purposeful direction" element is straightforward. All it requires is a showing that defendants (1) committed an intentional act, (2) expressly aimed at the forum state, (3) caused harm that the defendant knew was likely to be suffered in the forum state. *See Calder v. Jones*, 465 U.S. 783, 789–90 (1984). The inquiry focuses on "where the consequences of a defendant's actions were felt, rather than where the actions occurred." *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1205–06 (9th Cir. 2006). Thus, jurisdiction is proper even if the defendant's "only contact with the forum state is the purposeful direction of a foreign act having effect in the forum state." *See College Source, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076–77 (9th Cir. 2011) (internal citation omitted).

In *Mavrix Photo,* the Ninth Circuit considered when tortious conduct on a nationally accessible website is expressly aimed at a particular forum. It explained that the "maintenance of a passive website alone cannot satisfy the express aiming prong." *Mavrix Photo, Inc.*, 647 F. 3d at 1229. But, "operating even a passive website in conjunction with 'something more' — conduct directly targeting the forum — is sufficient." *Id*. A defendant does "something more" when a defendant "specifically targeted" consumers in a state, *Rio Properties, Inc. v. Rio Intern. Interlink*, 284 F. 3d 1007, 1020 (9th Cir. 2002), or when a defendant exploits the state market for its own commercial gain, *Mavrix Photo*, 647 F. 3d at 1229. Defendants did both.[3]

---

[3] To that end, Defendants' attempt to silo the jurisdictional analysis into two separate "theories"—one based on Defendants' collection, use and disclosure of Californians' data and the other rooted in Shopify Inc.'s physical contacts with California—is simply wrong. *See* ECF 53 at 9-14. The Ninth Circuit, in *Mavrix Photo*, made clear that *all* of these contacts are to be examined *collectively* as factors in determining whether a defendant has done "something more" than simply operate a passive website. 647 F. 3d at 1229.

This case is nearly identical to *Lukis v. Whitepages, Inc.*, 454 F. Supp. 3d 746 (N.D. Ill. 2020). There, the plaintiff alleged that Whitepages "knowingly searches for and obtains private and public records regarding Illinois residents," "profiles them in free previews," and "sells monthly subscriptions for background reports that it prepares from those records." 454 F. Supp. at 757. The court held the "actions qualify as the kind of 'intentional contacts… with [Illinois]' required for the exercise of specific jurisdiction." *Id*.

Here, just as in *Lukis*, Defendants knowingly obtained data from California residents through the software code they embedded in their merchants' websites.[4] SAC ¶¶ 1–5, 24–41. They knew they acquired data from California because they collected consumers' geolocations and billing addresses. *Id*. ¶¶ 7, 40, 51, 59, 81. In fact, Shopify Payments specifically admits that it collects consumer data. ECF 53-1 at ¶ 6. But Defendants did much more than simply collect data through their code. Rather, Defendants then took additional steps voluntarily to make use of the data behind the scenes, while knowing the data originated from California. In doing so, they targeted Californians for their own profit. As in *Lukis*, Defendants compiled the data into individualized profiles. SAC ¶ 7, 42-45, 103, 115, 124. They then leveraged their ability to synthesize the data by giving their merchants an "analysis" of the details of the particular transaction and how it compares to the consumers' purchase history. *Id*. The value in the analysis is due to Defendants' aggregation of data. No single merchant could create such an analysis on their own. Only Defendants can provide such insights because they track consumers' transactions across their entire merchant network. These direct uses of Californians' data caused injuries that occurred in California, including the invasion of privacy. *Id*. at ¶¶ 81-87, 94-96, 104-05, 114–118.

As explained in Plaintiff's Opposition to Shopify's Motion to Dismiss (ECF 58), Defendants' contacts went beyond knowingly collecting, analyzing, and cross-referencing

[4] Purposefully embedding code on consumers' devices to collect and compile their personal financial information is an intentional act. *See HiQ Labs, Inc. v. LinkedIn Corp*., 938 F. 3d 985, 1001 (9th Cir. 2019) (analogizing a CFAA cause of action to a digital "breaking and entering" and a "trespass" offense)*; WhatsApp Inc. v. NSO Grp. Techs., Ltd*., 472 F. Supp. 3d 649, 661–62 (N.D. Cal. 2020) (sending code to servers and accessing them without authorization was an intentional act); *S.D. v. Hytto Ltd.*, 2019 WL 8333519, at *2–8 (N.D. Cal. May 15, 2019) (wiretapping is an intentional act); *Bergstein v. Parmar*, 2014 WL 12586073 at *3–4 (C.D. Cal. June 23, 2014) (recording telephone conversations is an intentional act).

Californians' data. *See* ECF 58 (Pl. Opp. Shop. Br.) § IV(A)(1)-(2). Defendants exploited the California market by profiting off of California consumers they knew transacted through the payment forms, just like the defendant did in *Mavrix Photo*. *See Mavrix Photo, Inc.*, 647 F.3d at 1225-30.

Shopify Payments has additional contacts with California as well. The Supreme Court has made clear that "entering a contractual relationship that 'envisioned continuing and wide-reaching contacts' in the forum State'" suffices for jurisdictional purposes. *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014); *see also Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021). Since at least 2014, Shopify Payments has had an ongoing relationship with Stripe, a California-based company with its headquarters in California. SAC ¶¶ 15-16; *see also* ECF 58-1 (Backer Decl.), Ex. 5 (ECF 58-6) at 34. To say that Stripe is a critical part of Shopify Payments' business model would be an understatement since Shopify Payments depends *exclusively* on Stripe to perform the actual processing of credit cards. *See id*. (Backer Decl.), Ex. 5 (ECF 58-6) at 34. In other words, Shopify Payments relies entirely on a California-based company to perform the cornerstone feature of its of business.

Shopify Payments argues that an "allegation that defendant entered into a contract with a California resident is insufficient to show that the defendant purposefully direct[ed] activities at California." ECF 53 at 12 (internal quotations omitted.) But, as the cases Shopify Payments relies upon explain, the rule applies when the contract is with the *plaintiff* who is the only connection to the forum state. *See, e.g.*, *Burger King v. Rudzewicz*, 471 U.S. 462, 478 (1985) ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."); *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015) (finding "a contract alone does not automatically establish minimum contacts in the plaintiff's home forum"; "[r]ather, there must be actions by the defendant *himself* that create a 'substantial connection' with the forum State.") (internal citations and quotations omitted.)

Here, by contrast, Plaintiff alleges that Shopify Payments entered into multiple contracts with California third-parties, including Stripe and the California merchants[5] for whom it sold its services. SAC ¶¶ 15-16. Those contracts—along with its knowing use and disclosure of Californians' data—demonstrate actions that Shopify Payments voluntarily took itself to create a substantial connection with the state.

Defendants' briefs pretend as if all of their alleged contacts with California are fortuitous because they provide services "nationwide and globally," and that the contacts result from the actions of their merchants, not themselves. ECF 51 at 9; *see also* ECF 53 at 12. But, as explained above, that is simply not true. Defendants knowingly take Californians' data and further process that data for their own commercial benefit. Shopify, in particular, also markets directly to California consumers and merchants. *See* ECF 58-1 (Backer Decl.), Exs. 3–4 (ECF 58-4 – ECF 58-5); *see also* SAC, ¶¶ 11-12, 36-37, 56, 62. These contacts are completely of Defendants' own making and constitute direct and purposeful contact with the forum that gives grise to Plaintiff's claims. *See Lukis*, 454 F. Supp. 3d at 757.

Defendants also rely on *Baton v. Ledger SAS*, 2021 U.S. Dist. LEXIS 215793 (N.D. Cal. Nov. 8, 2021) to resist jurisdiction. But none of the facts asserted here were at issue in that case. In *Baton*, the plaintiff argued that the court had specific jurisdiction over Defendants because one of their merchants, Ledger, derived 7% of its business from California. *Id*. at *15–16. The court refused to graft Ledger's contacts with California onto Shopify or Shopify USA because the "contacts must be the defendant's own choice." *Id*. Here, by contrast, Plaintiff alleges that Shopify USA had direct contacts with California through the code it sent to users, its collection of Californians' data, its creation of profiles about Californians and use of the data. These allegations subject Shopify USA to this Court's jurisdiction.

---

[5] Shopify Payments makes much of the fact that not all of Shopify's merchants use Shopify Payments. *See* ECF 53 at 9-10. However, the Shopify 10-K provides that, as of 2018, "more than two-thirds of our merchants in 15 countries have enabled Shopify Payments." ECF 58-1 (Backer Decl.), Ex. 5 (ECF 58-6) at 13. Thus, given that Shopify had over 80,000 merchants in California as of 2018 (*see* ECF 58-1 (Backer Decl.), Ex. 2 (ECF 58-3); *see also* SAC ¶ 12), it is reasonable to assume that about two thirds of those California merchants had Shopify Payments (i.e., about 53,333).

**2. *Plaintiff's claims arise from Defendants' contact with California.***

A fundamental flaw with Defendants' personal jurisdiction argument is it limits the second prong of the specific jurisdiction analysis to only those claims that "arise out" of forum-related activities. ECF 51 at 9-10. As explained in Plaintiff's Opposition to Shopify's Motion to Dismiss (ECF 58), the test is not so narrow, and, in fact, last year, the Supreme Court squarely rejected Defendants' characterization in *Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017 (2021). There, the Supreme Court explained that the suit need only "arise out of *or relate to* the defendant's contacts with the forum." *Id*.

Here, Plaintiff's injuries arise from Defendants' contacts with the state (i.e., Defendants' transmission of code to Californians' devices, collection of Californians' data, and profiling of Californians without consent). *See* SAC ¶¶ 1-5, 7, 24-46, 51-54, 59-66, 80-85, 92-96, 103-05, 110-115, 123-125, 131-45. Plaintiff's injuries (i.e., the wrongful collection and disclosure of his personal information) also arise from Shopify Payments' contract with Stripe. In an attempt to avoid this obvious conclusion, Shopify Payments relies on an outlier opinion that contends that a claim arises out of a contract only if "the agreement requires" the defendant to undertake the underlying actions. *See* ECF 53 at 13; *see also Lisa McConnell, Inc. v. Idearc, Inc*., 2010 WL 364172 at *6 (S.D. Cal. 2010). That's simply not the standard in the Ninth Circuit, and *Lisa McConnell* does not cite to any authority otherwise. *Id*. The Ninth Circuit plainly holds that a claim "arises out" of forum-related activities when the plaintiff "would not have suffered an injury 'but for' [the Defendant's] forum related conduct." *Myers v. Bennett Law Offices*, 238 F.3d 1068 (9th Cir. 2001). That is what occurred here.

Plaintiff's lawsuit also "relates to" Defendants' contacts with California since Defendants advertise and sell the product that harmed Plaintiff (Shopify Payments) in California to California merchants. At a minimum, Plaintiff's claims also "relate to" Shopify Payments' contract with Stripe as well since Plaintiff's data would not have been wrongfully collected, disclosed or used if it were not for that contract. Defendants accordingly "enjoy[] the benefits and protection of [California's] laws"—"the enforcement of contracts, the defense of property, the resulting

formation of effective markets." *Ford Motor Co.*, 141 S. Ct. at 1029. Thus, it can hardly be surprising or "said to be undue" to subject Defendants to jurisdiction in California. *Id*. at 1030.

**3. *It is reasonable to exercise jurisdiction over Shopify Payments in California.***

The final element assesses whether it is reasonable to exercise jurisdiction over the defendant. Unlike the other two prongs, the burden of persuasion lies with the defendant. Only when a defendant makes "a ***compelling case*** that the exercise of jurisdiction would not be reasonable" is it possible to defeat jurisdiction on this basis. *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015); *see also Sher v. Johnson*, 911 F.2d 1357, 1364 (9th Cir. 1990) (once court finds purposeful availment, it must presume that jurisdiction would be reasonable).

Here, Defendants failed to make *any* case, let alone a *compelling* case, that jurisdiction here is not reasonable since neither of their briefs even mentions this prong. Even if they had made an effort to address this point, Defendants cannot meet their burden for the reasons set forth in Plaintiff's Opposition to Shopify Inc.'s Motion to Dismiss (Pl. Opp. Shop. Br.) and incorporates those arguments herein. *See* ECF 58 (Pl. Opp. Shop. Br.) § IV(A)(3).[6]

**B. The SAC Gives Defendants Adequate Notice Pursuant to Rule 8.**

As explained in Plaintiff's Opposition to Shopify USA's Motion to Dismiss, Plaintiff has provided sufficient notice under Rule 8 and grouping Defendants is appropriate here. ECF 58 (Pl. Opp. Shop. USA Br.) § IV(B).

**C. Plaintiff Did Not Consent to Defendants' Tortious Conduct.**

Defendants argue that Plaintiff consented to their conduct by virtue of a policy posted on IABMFG's checkout pages and two policies on Shopify's website. ECF 51 at 12–13: ECF 52 at 11; ECF 53 at 14. This defense is not viable for a number of reasons, as discussed in Plaintiff's Opposition to Shopify Inc.'s Motion to Dismiss. *See* ECF 58 (Pl. Opp. Shop. Br.) § IV(C).

---

[6] Plaintiff makes these arguments based on the evidence available to him without discovery. Should the Court determine a more satisfactory showing of facts is necessary, Plaintiff requests leave to take jurisdictional discovery, and, specifically, depose both of the Defendants and leave to serve the discovery requests attached as Ex. 7 (ECF 58-8) to the Backer Decl. (ECF 58-1) in addition to merits discovery should the case proceed. *See Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008); *In re Nexus 6P Prods. Liab. Litig.*, 2018 U.S. Dist. LEXIS 23622, at *14–15 (N.D. Cal. Feb. 12, 2018).

First, ***none of the policies relate to Shopify Payments*** since none of them even mention Shopify Payments. That fact alone defeats Defendants' consent defense as to Shopify Payments. Second, the Court need not even consider this defense because it is a merits inquiry. *See Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013). Third, Defendants did not authenticate the policies and the checkout pages, and, most notably, failed to establish that the policies and checkout pages (Exs. A–F to Jacob Heath Declaration) were posted at the time of Plaintiff's purchase in 2019. Fourth, the policies are unenforceable browsewrap policies that do not give sufficient notice, especially considering IABMFG posted a completely different privacy policy on its homepage and merchandise pages. *See Nguyen v. Barnes & Noble, Inc.*, 763 F. 3d 1171, 1175–6 (9th Cir. 2014); *see also* SAC ¶ 61; ECF 58-1 (Backer Decl.), Ex 6 (ECF 58-7). And, finally, the policies' terms do not encompass Plaintiff's claims. *See Silver v. Stripe, Inc.*, 2021 U.S. Dist. LEXIS 141090, at *17–*18 (N.D. Cal. July 28, 2021). Nothing in the policies addresses Defendants' use of consumer data to develop individualized profiles, disclosure of the data, and the particular kinds of data collected. That is particularly egregious here because the SAC alleges that Shopify Payments ran the payment processing feature that serves as the basis of the Complaint (*see* SAC ¶¶ 15-17), and Shopify Payments itself admits that it is responsible for "payment data transmission services" (*see* ECF 53-1 ¶ 4). Shopify Payments' consent defense is, therefore, without merit, if not plainly frivolous.

### D. Plaintiff States a Claim Under § 631(A).

CIPA prohibits any person from using electronic means to "learn the contents or meaning" of any "communication" "without consent" or in an "unauthorized manner." Cal. Pen. Code § 631(a). Courts perform the same analysis for both the federal Wiretap Act and CIPA. *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 606–07 (9th Cir. 2020). The Wiretap Act makes liable any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). "Contents" is defined as "includ[ing] any information concerning the substance, purport, or meaning of that communication." *Id.* § 2510(8).

Plaintiff alleges a violation of CIPA. Plaintiff alleges that he input information on website forms that he intended to transmit to the merchant, such as IABMFG. SAC ¶¶ 1–2, 25-35, 58-60. That information was a communication intended for the merchant to instruct the merchant on how to process the payment and where to send the goods. Plaintiff alleges that the information was in transit to the merchant when Defendants intercepted the communication. *Id*. Shopify Payment admits that handles "payment data transmission." ECF 53-1, ¶ 4. Defendants therefore intercepted a communication while it was in transit, in violation of § 631.

None of Defendants' arguments have any merit for the reasons set forth in Plaintiff's Opposition to Shopify Inc.'s Motion to Dismiss. *See* ECF 58 (Pl. Opp. Shop. Br.) § IV(D). Specifically, Defendants qualify as third-parties for liability purposes under § 631, and Plaintiff adequately alleges that Defendants intercepted the contents of his communications since Defendants intercepted information Plaintiff input himself. Accordingly, dismissal of Plaintiff's claim under § 631 is not warranted.

**E. Plaintiff States a Claim Under § 635.**

Section 635 provides that "[e]very person who … possesses … or furnishes to another any device which is primarily or exclusively designed or intended for eavesdropping … shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500) …." Cal. Penal Code § 635 (emphasis added). Courts have likewise concluded that software or computer code constitutes a "device" under this statute. *See Revitch v. New Moosejaw, LLC*, 2019 U.S. Dist. LEXIS 186955, *7–8 (N.D. Cal. Oct. 23, 2019) (code is a device under § 635); *see also In re Carrier IQ, Inc., Privacy Litig*., 78 F. Supp. 3d 1051 (N.D. Cal. 2015) (finding software to be a "device" under the Wiretap Act). Here, Plaintiff alleges that Defendants' computer code is a device that was "designed to intercept, collect, transmit, receive, track, analyze, and sell [] private information." SAC ¶ 80. As explained in Plaintiff's Opposition to Shopify Inc.'s Motion to Dismiss, Defendants' effort to circumvent the cases deeming software code as "device" is unavailing. *See* ECF 58 (Pl. Opp. Shop. Br.) § IV(E). Additionally, Plaintiff plainly alleges that the software code was designed to eavesdrop and intercept communications. Those allegations suffice to state a claim under § 635.

**F. Plaintiff States a Claim For Privacy Violations Under The California Constitution and California Common Law Intrusion Upon Seclusion.**

Claims for privacy violations under the California Constitution and common law intrusion upon seclusion consist of two key elements: (1) there must be "reasonable expectation of privacy", and (2) the intrusion must be "highly offensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 606. *See also Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 285–97 (2009). As explained in Plaintiff's Opposition to Shopify Inc.'s Motion to Dismiss, the only element Defendants dispute is whether the conduct is "highly offensive." *See* ECF 58 (Pl. Opp. Shop. Br.) § IV(F). But that is "an issue that cannot be resolved at the pleading stage." *Id*. Further, the sheer scale of the data collected and Defendants' aggregation of that data demonstrate that their intrusion into California consumers' privacy is, in fact, highly offensive. *Silver*, 2021 U.S. Dist. LEXIS 141090, at *18.

**G. Plaintiff States a Claim Under § 502.**

Plaintiff alleges that Defendants accessed Plaintiff's data (i.e., his private information) without permission, in violation of Cal. Penal Code § 502 by installing software code and cookies that enabled them to collect his data and track his activity across the Internet. SAC ¶¶ 1–5, 25-41, 51-55, 121-125. Judge Yvonne Gonzalez Rogers upheld a similar claim in *Hernandez v. Path, Inc.*, 2012 U.S. Dist. LEXIS 151035 (N.D. Cal. Oct. 17, 2012). Just as in this case, the plaintiff in *Hernandez* alleged that the defendant's app "accessed the putative class members' mobile devices and uploaded to its servers the class members' personally identifiable information" and shared the information with third parties. *Id*. at *1. Plaintiff accordingly states a claim under § 502.

Defendants' arguments otherwise are without merit for the same reasons discussed in Plaintiff's Opposition to Shopify (USA), Inc.'s Motion to Dismiss. *See* ECF 58 (Pl. Opp. Shop. USA Br.) § IV(G). Dismissal is accordingly inappropriate.

### H. Plaintiff States a Claim Under the UCL Against Shopify Payments.

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." (§ 17200.) The scope of the UCL is "broad." *Kasky v. Nike, Inc.*, 45 P.3d 243, 249 (Cal. 2002). As explained in Plaintiff's Opposition to Shopify (USA) Inc.'s Motion to Dismiss, Plaintiff has alleged claims under all three prongs. *See* Pl. Opp. Shop. USA Br. § IV(H).

***Unlawful***. Plaintiff states a claim under the unlawful prong of the UCL because he alleges that Shopify Payments along with the other Defendants violated a number of statutes, including Cal. Penal Code §§ 631 and 635, CalOPPA and CCPA.[7] *See* ECF 58 (Pl. Opp. Shop. Br.) § IV(D) and (E). Plaintiff alleges violations of Cal. Penal Code §§ 631 and 635, as discussed above.

Plaintiff also pleads violations of CalOPPA. CalOPPA requires a commercial website or online service "that collects personally identifiable information through the internet about individual consumers residing in California who use or visit its commercial website or online service" to "conspicuously post its privacy policy on its website or in the case of the operator of an online service, make that policy available in accordance with paragraph (5) of subdivision (b) of Section 22577." Here, Shopify Payments ***admits*** it provides "payment data transmission services" to Shopify merchants. ECF 53-1 ¶ 4. It further admits that it "processes merchants' customers' personal data". *Id.* ¶ 6. Shopify Payments is accordingly—by its own admission—an online service provider that collects personally identifiable information and therefore falls within the ambit of CalOPPA. *See* SAC ¶¶ 15-17, 24-41, 81, 138. Even though Shopify Payments runs Shopify's payment processing feature, the payment forms make no mention of Shopify Payments, let alone conspicuously post its privacy policy. SAC ¶¶ 15-17, 28, 31, 51-54; *see also* ECF 53 at 3-6. Plaintiff accordingly alleges a claim under the unlawful prong of the UCL against Shopify Payments.

---

[7] Defendants' only argument as to Plaintiff's UCL claim based on the CCPA is that the CCPA does not provide a private right of action. The California Supreme Court, however, recognizes that violations of statutes that do not include their own private right of actions can serve as a basis for an unlawful UCL claim. *See Stop Youth Addiction, Inc.*, 17 Cal.4th at 561–62. Plaintiff states a claim under the UCL for unlawful conduct under the CCPA.

***Fraud***. Plaintiff also states a claim under the UCL's fraud prong against Shopify Payments because it concealed its interception, collection, use, and disclosure of Plaintiff's private information. Omissions of "fact[s] that defendant was obliged to disclose" can serve as the basis of a claim under the UCL. *Daugherty v. Am. Honda Motor Co*., 144 Cal. App. 4th 824, 835 (2006). Shopify Payments had a duty to disclose because it had "exclusive knowledge of material facts not known or reasonably accessible to the plaintiff" and it "actively conceal[ed] [] material fact[s] from the plaintiff." *Collins v. eMachines, Inc*., 202 Cal. App. 4th 249, 255 (2011) (emphasis added). The SAC plainly alleges that Shopify Payments, along with the other Defendants, had exclusive knowledge of the facts they concealed (i.e., their involvement with the payment forms and use of the personal information that flowed from them). SAC ¶¶ 1-7, 10, 14-17, 24-56. Shopify Payments actively concealed these facts because it ran Shopify's payment processing feature so it had the ability to disclose the facts but chose not to. *Id*. ¶¶ 15-17; *see also* ECF 53 at 3-6. Moreover, none of the policies that Defendants rely upon even mention Shopify Payments.

Plaintiff's allegations as to the materiality of the facts suffice for the same reasons explained in Plaintiff's Opposition to Shopify (USA) Inc.'s Motion to Dismiss. *See* ECF 58 (Pl. Opp. Shop. USA Br.) § IV(H). Reasonable consumers "would deem [them] important in determining how to act in the transaction at issue." *Collins*, 202 Cal. App. 4th at 255. *See also In re Adobe Sys. Privacy Litig*., 66 F. Supp. 3d 1197, 123 (N.D. Cal. 2014) (finding Adobe had a duty to disclose "that its security practices were not up to industry standards"). And, Plaintiff alleges that he personally deemed them to be important because he would not have "purchased products from IABMFG" had he known that Defendants would "track[] him across potentially hundreds of thousands, if not millions, of websites;" "collect, store, analyze, and/or transfer his private information;" and make his private information "available to potentially millions of merchants." FAC ¶¶ 63–66. These allegations establish materiality. *See Doe v. Successfulmatch.com*, 70 F. Supp.3d 1066, 1080–81 (N.D. Cal. 2014).

***Unfair***. Plaintiff also alleges a claim under the UCL's unfair prong for the same reasons explained in Plaintiff's Opposition to Shopify (USA) Inc.'s Motion to Dismiss. *See* ECF 58 (Pl. Opp. Shop. USA Br.) § IV(H). If anything, those reasons resonate even more profoundly with

respect to Shopify Payments. There is no doubt its conduct violated the public policy underlying the Wiretap Act and CIPA because it engaged in the "the secret monitoring of conversations." *Ribas v. Clark*, 696 P.2d 637, 640 (1985). By definition, that is what Shopify Payments is doing. Even though Shopify Payments runs the payment forms for Shopify, nothing on the forms discloses its involvement so consumers have no idea that they are communicating with Shopify Payments. SAC ¶¶ 15-17, 28, 31, 51-54; *see also* ECF 53 at 3-6. Shopify Payments does not merely listen in on the communications – it puts the data to use to make it profitable. It compiles the data, cross-references it, and analyzes it to provide its merchants with behind-the-scenes intelligence on consumers' transaction history. *Id*. at ¶¶ 42-45. Because Shopify Payments contracts with Stripe to provide the actual payment processing services, it allows Stripe to listen in on consumers' communications as well. *Id*. at ¶¶ 15-17, 46-47. Again, it does so without telling consumers. *Id*. Stripe, too, then uses the data to enrich its own profiles on consumers. *Id*.

The resulting harm is not outweighed by any countervailing utility. Defendants do not offer the Court any real reason as to why their conduct has any utility. They only assert that it amounts to "routine commercial behavior" and is for "processing credit card transactions." *See* ECF 51 at 25. First off, that's simply not true. Defendants admit that Stripe, not Defendants, processes the credit cards. Profiling consumers and analyzing their data does not constitute "routine commercial behavior" under any reasonable definition. Second, to the extent Defendants have any valid basis for their conduct, it does not outweigh the surreptitious theft of millions of consumers' financial data, nor spying on consumers' activity across the internet. Indeed, nothing prevents Defendants from engaging in their efforts *so long as they ask for permission first*. Without taking that necessary (and relatively simple) step, Defendants infringe consumers' fundamental privacy rights on a mass scale. For that reason, the law recognizes that there is no corresponding benefit under the balancing test when a defendant violates consumers' right to privacy. *See McCoy v. Alphabet, Inc.,*2021 U.S. Dist. LEXIS 24180 (N.D. Cal. Feb. 2, 2021), at *29–30 (court cannot say that the "benefit of collecting information outweighs harm to privacy rights"); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1073 (N.D. Cal. 2012) ("However, at this juncture the Court cannot say that Apple's practices are not injurious to consumers, or that any benefit to consumers

outweighs the harm."); *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d at 844 ("The Court cannot say, as a matter of law, that the utility of the Google Assistant necessarily outweighs the harm from false accepts."). Plaintiff accordingly adequately alleges a violation of the unfair prong of the UCL.

**V. CONCLUSION**

For the foregoing reasons, the Court should deny Shopify Payments (USA) Inc.'s Motion to Dismiss.

Dated: March 16, 2022

**GUTRIDE SAFIER LLP**

*/s/ Seth Safier /s/*

SETH A. SAFIER (SBN 197427)
seth@gutridesafier.com
MARIE MCCRARY (SBN 262670)
marie@gutridesafier.com
TODD KENNEDY (SBN 250267)
todd@gutridesafier.com
HAYLEY REYNOLDS (SBN 306427)
hayley@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

KALI BACKER (admitted *pro hac vice*)
kali@gutridesafier.com
4450 Arapahoe Ave., Suite 100
Boulder, Colorado 80303
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiff*