JACOB M. HEATH (SBN 238959)
jheath@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone: +1 650 614 7400
Facsimile: +1 650 614 7401

THOMAS FU (SBN 325209)
tfu@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017-5855
Telephone: +1 213 629 2020
Facsimile: +1 213 612 2499

ARAVIND SWAMINATHAN (admitted *pro hac vice*)
aswaminathan@orrick.com
NICOLE M. TADANO (admitted *pro hac vice*)
ntadano@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
701 5th Avenue, Suite 5600
Seattle, WA 98104-7097
Telephone: +1 206 839 4300
Facsimile: +1 206 839 4301

Attorneys for Defendants,
Shopify Inc., Shopify (USA) Inc., and Shopify
Payments (USA) Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

Brandon Briskin, on behalf of himself and those similarly situated,

Plaintiffs,

v.

Shopify Inc., Shopify (USA) Inc., and Shopify Payments (USA) Inc.,

Defendants.

Case No. 4:21-cv-06269

**DEFENDANT SHOPIFY (USA) INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT**

Date: April 28, 2022
Time: 1:30 p.m.
Location: Courtroom 3, 3rd Floor
1301 Clay Street
Oakland, California

Judge: The Honorable Phyllis J. Hamilton

## TABLE OF CONTENTS


Page

I. ARGUMENT ....- 2 -
- A. The SAC Fails To Distinguish Among Defendants In Violation Of Rule 8.......- 2 -
- B. This Court Lacks Jurisdiction Over Shopify USA....- 5 -
  1. *This Court lacks general jurisdiction over Shopify USA.* ....- 5 -
  2. *This Court lacks specific jurisdiction over Shopify USA.* ....- 5 -
  3. *There is no basis for granting jurisdictional discovery.* ....- 6 -
- C. The SAC Fails To State A Claim Against Shopify USA....- 7 -
  1. *The SAC's allegations regarding consent should be disregarded.* ....- 7 -
  2. *The SAC fails to state an eavesdropping claim under Penal Code Section 631(a).* ....- 8 -
     - a. The SAC fails to state a claim under either clause of Section 631(a), because it fails to plead facts showing that Shopify USA was a third party to Plaintiff's communications. ....- 8 -
     - b. The SAC fails to allege a violation of Section 631(a)'s first clause, because it fails to allege a wiretap of a telephone line....- 8 -
     - c. The SAC fails to allege a violation of Section 631(a)'s second clause because it fails to plead facts showing that Shopify Inc. read the "contents" of any message....- 8 -
  3. *The SAC fails to state a claim under Penal Code Section 635.* ....- 9 -
     - a. The Section 635 claim fails because code is not a "device" within the meaning of the California Invasion of Privacy Act....- 9 -
     - b. The Section 635 claim fails because the SAC fails to allege facts showing that Shopify Inc.'s code was "primarily or exclusively designed" for eavesdropping....- 9 -
  4. *The SAC fails to state a claim for invasion of privacy and intrusion upon seclusion because it does not allege facts showing that Shopify USA committed an "egregious" or "highly offensive" privacy intrusion.* ....- 9 -
  5. *The SAC fails to state a Penal Code Section 502 claim, because it fails to allege facts showing that Shopify USA accessed Plaintiff's iPhone "without permission."* ....- 9 -
  6. *The SAC fails to state a claim under the UCL.* ....- 11 -
     - a. The SAC fails to state a claim for an "unlawful" practice.......- 11 -
     - b. The SAC fails to state a claim for a "fraudulent" practice.......- 12 -
     - c. The SAC fails to state a claim for an "unfair" practice....- 12 -

II. CONCLUSION ....- 13 -

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adobe Sys. v. Blue Nile Grp., Inc.*,
125 F. Supp. 3d 945 (N.D. Cal. 2015) .......... 3

*Ashcroft v. Iqbal.*,
556 U.S. 662 (2009) .......... 6, 7

*Austin v. Budget Rental Car, Inc.*,
2020 WL 8614183 (N.D. Cal. 2020) .......... 1, 2

*Bardin v. DaimlerChrysler Corp.*,
136 Cal. App. 4th 1255 (2006) .......... 12

*Baton v. Ledger SAS*,
2021 WL 5226315 (N.D. Cal. 2021) .......... 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 6

*Bravo v. Cty. of San Diego*,
2014 WL 555195 (N.D. Cal. 2014) .......... 2

*Brodsky v. Apple Inc.*,
2019 WL 4141936 (N.D. Cal. 2019) .......... 10

*Brown v. Google LLC*,
525 F. Supp. 3d 1049. (N.D. Cal. 2021) .......... 10

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) .......... 10

*Custom Packaging Supply, Inc. v. Phillips*,
2015 WL 8334793 (C.D. Cal. 2015) .......... 10

*Cutera, Inc. v. Lutronic Aesthetics, Inc.*,
2020 WL 4937129 (E.D. Cal. 2020) .......... 8

*Facebook, Inc. v. ConnectU LLC*,
489 F. Supp. 2d 1087 (N.D. Cal. 2007) .......... 10

*Facebook, Inc. v. Power Ventures, Inc.*,
2010 WL 3291750 (N.D. Cal. 2010) .......... 10

*Foley v. Bates*,
2007 WL 963825 (N.D. Cal. 2007) .......... 2

*Gen-Probe, Inc. v. Amoco Corp.*,
926 F. Supp. 948 (S.D. Cal. 1996) .......... 2

*Heller v. NBCUniversal, Inc.*,
2016 WL 6573985 (C.D. Cal. 2016) .......... 4

*Hernandez v. Path, Inc.*,
2012 WL 5194120 (N.D. Cal. 2012) .......... 10

*Lane v. Cap. Acquisitions & Mgmt. Co.*,
2006 WL 4590705 (S.D. Fla. 2006) .......... 4

*Lane v. XYZ Venture Partners, LLC.*,
322 F. App'x 675 (11th Cir. 2009) .......... 4

*Munning v. Gap, Inc.*,
2016 WL 6393550 (N.D. Cal. 2016) .......... 3, 4

*People of Territory of Guam v. Yang*,
800 F.2d 945 (9th Cir. 1986) .......... 2

*Silver v. Stripe Inc.*,
2021 WL 3191752 (N.D. Cal. 2021) .......... 11, 12

*Slack Techs., Inc. v. Phoji, Inc.*,
2020 WL 4701174 (N.D. Cal. 2020) .......... 6

*Smith v. United States Dep't of Agric.*,
2016 WL 4179786 (N.D. Cal. 2016) .......... 6, 7

*Tivoli LLC v. Sankey*,
2015 WL 12683801 (C.D. Cal. 2015) .......... 3

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2016) .......... 10, 11

*Vendavo, Inc. v. Price f(x) AG,*,
2018 WL 1456697 (N.D. Cal. 2018) .......... 4

*Weingand v. Harland Fin. Sols., Inc.*,
2012 WL 2327660 (N.D. Cal. 2012) .......... 10

*Wolfe v. Strankman*,
392 F.3d 358 (9th Cir. 2004) .......... 6

**Statutes**

California Consumer Privacy Act of 2018, Cal. Bus. & Prof. Code § 1427 *et seq.* .......... 11

California Online Privacy Protection Act of 2003, Cal. Bus. & Prof. Code § 22575 *et seq.* ........ 11

Cal. Penal Code § 502 ........ 9, 10, 11

Cal. Penal Code § 631 ........ 8, 9

Cal. Penal Code § 635 ........ 9

**Rules**

Fed. R. Civ. P. 8 ........ 1, 2, 3, 4, 5, 8

Fed. R. Civ. P. 12(b)(6) ........ 8, 12

The Opposition to Shopify (USA) Inc.'s Motion to Dismiss ("USA Opp."), and the arguments it incorporates from the Opposition to Shopify Inc.'s Motion to Dismiss ("Inc. Opp."), entirely fail to address the most glaring problem with the claims against Shopify (USA) Inc. ("Shopify USA"): Shopify USA has nothing to do with this lawsuit. Shopify USA is a wholly separate entity from Shopify Inc. that is not responsible for handling customer data (such as Plaintiff's) because it does not contract with or furnish e-commerce services to Shopify Inc.'s merchants. Rather, it provides services and support to various aspects of Shopify Inc.'s business, such as messaging and mobile applications that merchants can use to improve their marketing and customer service and support for shipping-related services. ECF No. 29-9 at ¶¶ 3, 6. The SAC does not allege that the store at issue here, IABMFG, used Shopify USA's services in connection with the singular sale to Plaintiff that gives rise to his claims, much less does Plaintiff allege that Shopify USA's services relate in any way to his claims.

Instead, the Oppositions repeat the same tactic that the SAC employs: attempting to blur any distinction between Shopify Inc., Shopify USA, and Shopify Payments (USA) Inc. ("Shopify Payments"), treating the three companies as entirely interchangeable. This is intentional. The Oppositions admit as much, stating plainly that the allegations "asserted against each entity" are as to "all of them." USA Opp. 9. (Which is why the Oppositions' substantive arguments are identical as to Shopify USA, Shopify Inc., and Shopify Payments.) And with respect to jurisdiction, too, the Oppositions largely fail to recognize any difference between the three companies. Instead, they make essentially verbatim arguments against all Defendants—despite the fact that, as Shopify USA's MTD, Shopify Payments' MTD, and the accompanying declarations make clear, the three companies are very different.

As a result, the Oppositions steer directly into the Rule 8 problem identified in Shopify USA's MTD. They do not even attempt to distinguish the directly on-point cases cited in Shopify USA's MTD, which clearly hold that where "defendants are separate corporate entities[] and perform separate roles," pleading as to defendants as a collective generally "is insufficient." *Austin v. Budget Rental Car, Inc.*, 2020 WL 8614183, at *2 (N.D. Cal. 2020), *cited at* Shopify USA MTD

§ IV.A. And they freely admit that the SAC "repeatedly refer[s]" to the fictitious entity "'Shopify' which is defined to include all Defendants." USA Opp. 9. Indeed, the Oppositions themselves double down on this lumping-together, by simply repeating the same arguments as to each company. That alone is enough for dismissal.

But it is far from the only reason that the SAC must be dismissed as to Shopify USA. As detailed in Shopify Inc.'s MTD, the SAC also fails on jurisdictional grounds, and fails to state any claim on which relief can be granted. Because neither the Oppositions nor the SAC draw any distinction between Shopify Inc. and Shopify USA (not to mention Shopify Payments) as to any of those arguments, the SAC should be dismissed against Shopify USA in its entirety for the same reasons it should be dismissed against Shopify Inc. *See* Shopify Inc. MTD Reply §§ I.A, I.B., I.C.

## I. ARGUMENT

### A. The SAC Fails To Distinguish Among Defendants In Violation Of Rule 8.

Shopify USA's MTD established two basic points as to Rule 8, neither of which the Oppositions dispute. *First*, it showed that the SAC does not distinguish between Defendants but instead "treats three distinct legal entities—Shopify Inc., Shopify USA, and Shopify Payments—as one and the same, lumping them all together with a single defined term of 'Shopify.'" Shopify USA MTD 7 (quoting SAC ¶ 18). Far from contesting that point, the Oppositions readily confess that the SAC "repeatedly refer[s]" to the fictitious entity "'Shopify' which is defined to include all Defendants." USA Opp. 9. *Second*, Shopify USA's MTD demonstrated that the law forbids exactly what the SAC does here, citing a bevy of cases—*Austin*, 2020 WL 8614183, at *2; *Bravo v. Cty. of San Diego*, 2014 WL 555195, at *2 (N.D. Cal. 2014); and *Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 961 (S.D. Cal. 1996), among others—holding that "lumping together multiple defendants in one broad allegation fails to satisfy [Rule 8's] notice requirement," and hence requires dismissal. Shopify USA MTD 6-7 (quoting *Bravo*, 2014 WL 555195, at *2). The Oppositions do not contest either *Austin*'s or *Bravo*'s or *Gen-Probe*'s application either, making no attempt to distinguish (or, indeed, even mention) them.[1] *See* USA Opp. 8-10; *see also People of*

[1] Even as to the (few) cases cited in Shopify USA's MTD that the Oppositions do attempt to distinguish, their arguments fall flat. All they say about *Foley v. Bates*, 2007 WL 963825 (N.D.

*Territory of Guam v. Yang*, 800 F.2d 945, 947 (9th Cir. 1986) ("[Appellant] does not attempt to distinguish these cases. They control."). The uncontested law and uncontested facts thus make clear that the SAC must be dismissed—and render immaterial everything else the Oppositions have to say about Rule 8. The Oppositions' argument that the SAC purportedly alleges "Defendants acted in concert to collect, use, and share user data," USA Opp. 9, proves the point. Which Defendant collected the data, which used it, and which shared it, and to what extent for each? The SAC does not say, which is why it fails to satisfy Rule 8.

In any event, the remainder of the Oppositions' Rule 8 arguments are also wrong on their own terms. Contrary to the Oppositions' representations, for instance, none of the cases they cite announces a rule that contravenes the uncontested caselaw discussed above. *Tivoli LLC v. Sankey*, 2015 WL 12683801 (C.D. Cal. 2015), recognized (consistent with the above) that "[a] complaint may fail to provide fair notice of alleged misconduct under Rule 8(a) … where it fails to differentiate among defendants or specify which defendant is the subject of Plaintiff's various allegations." *Id.* at *3. But because the complaint in that case (unlike here) included a "conspiracy allegation," meaning that "each corporate defendant [wa]s liable for the others' actions," the usual need to distinguish between defendants did not apply. *Id.* at *4. Similarly, *Munning v. Gap, Inc.*, 2016 WL 6393550 (N.D. Cal. 2016), acknowledged that in general a complaint may not "merely lump multiple defendants together" but must "differentiate [the] allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation." *Id.* at *3. The court permitted group pleading in that case because—unlike the

---

Cal. 2007), for instance, is that it "involved five unrelated defendants, some [of whom] were parties against whom the plaintiff clearly could not state a claim." USA Opp. 10. But that is hardly different from the SAC, which lumps together four separate entities—Shopify Inc., Shopify USA, Shopify Payments, and Stripe Inc., *see* SAC ¶¶ 41, 61 (alleging that acts were undertaken by "Shopify and/or Stripe")—one of whom (Stripe) the SAC does not even attempt to state a claim against. And the Oppositions' argument that *Adobe Sys. v. Blue Nile Grp., Inc.*, 125 F. Supp. 3d 945 (N.D. Cal. 2015) "do[es] not support" the need to distinguish between defendants, USA Opp. 10, is simply wrong. *Adobe* collected numerous decisions—which the Oppositions do not even acknowledge or try to distinguish—holding that where a "complaint failed to attribute specific conduct to a specific defendant" it "thereby violated Rule 8." 125 F. Supp. 3d at 965-66 (collecting cases). That the specific Complaint in *Adobe* happened not to violate Rule 8, because it "state[d] that five of its causes of action [we]re brought against" Defendant "Blue Source Group Inc., specifically," *Adobe*, 125 F. Supp. 3d at 965, is immaterial, as the SAC here *does not* "specifically" call out Shopify Inc. or Shopify USA in any of its substantive allegations.

SAC—the complaint there alleged "corporate fraud" that frustrated the plaintiff's ability "to attribute particular fraudulent conduct to each defendant as an individual." *Id.* Likewise, *Heller v. NBCUniversal, Inc.*, 2016 WL 6573985 (C.D. Cal. 2016), explained that the "crucial distinction" between permissible and impermissible group pleading is whether "plausible allegations" indicate that "*each* of the … defendants" was responsible for "*each* of the [acts] at issue." *Id.* at *4 (emphasis in original). Under that rubric, the SAC clearly fails, as it is obvious that Shopify Inc., Shopify USA, and Shopify Payments cannot *all* have committed every act that the SAC attributes to the fictitious "Shopify." In fact, Shopify USA's MTD even gave two examples of acts alleged in the SAC (two emails supposedly sent by "Shopify") that—the Oppositions do not dispute—could have been committed by, at most, *only one* of the Defendants. Shopify USA MTD 7-8 (citing SAC ¶¶ 36, 41).[2]

The Oppositions' suggestion that Rule 8's requirements are unimportant because "Shopify USA is the wholly owned subsidiary of Shopify (USA) Holdings, Inc., which, in turn, is the wholly owned subsidiary of Shopify Inc.," USA Opp. 9, is likewise contrary to the law. It is well-established that Rule 8's requirements apply with full force—and indeed, are "particularly pertinent"—to a complaint that "fails to differentiate" between "a parent corporation and its subsidiary." *Lane v. Cap. Acquisitions & Mgmt. Co.*, 2006 WL 4590705, at *5 (S.D. Fla. 2006), *aff'd sub nom. Lane v. XYZ Venture Partners, LLC.*, 322 F. App'x 675 (11th Cir. 2009); *see also, e.g., Vendavo, Inc. v. Price f(x) AG,* 2018 WL 1456697, at *4 (N.D. Cal. 2018) (dismissing claim for "lack of specificity" because it "d[id] not distinguish between" two related companies). Moreover, the Oppositions' assertion that "Defendants concede that they are related entities who could have acted in concert," USA Opp. 9, is entirely false, and the Oppositions cite nothing (i.e., nowhere that Shopify Inc. or Shopify USA or Shopify Payments supposedly made that concession) in support of it. To the contrary, Shopify Inc., Shopify USA, and Shopify Payments have

[2] The Oppositions argue that these allegations are irrelevant because "the email is not necessarily the injurious activity." USA Opp. 9-10. But that entirely misses the point. These emails are simply examples demonstrating that—contrary to the Oppositions' suggestion, *see* USA Opp. 9—each allegation charged to the fictious "Shopify" *could not, in fact, have been committed by all Defendants*.

consistently emphasized that they are "separate entities." Shopify Inc. MTD 1. Indeed, they specifically explained this to Plaintiff's counsel—and offered to answer any additional questions about the different entities' roles—weeks before he first amended his Complaint. *See* ECF No. 39-2, at 1-2, 7. Notably, neither the Oppositions nor the SAC even attempt to show that the companies are, in fact, legally the same, such as by reference to and application of the alter ego doctrine. Plaintiff had a choice: establish that it is legally appropriate to treat two or more defendants as the same, or provide each Defendant with notice of the claims against it as the Rule requires. The SAC asks the Court for permission to do neither.

Even under the cases cited in the Oppositions—not to mention all of those cited in Shopify USA's MTD—the SAC fails Rule 8's notice requirement. It must therefore be dismissed in its entirety.

**B. This Court Lacks Jurisdiction Over Shopify USA.**

1. *This Court lacks general jurisdiction over Shopify USA.*

The Oppositions do not dispute—and thus concede—that this Court lacks general jurisdiction over Shopify USA. *See* USA Opp. 4.

2. *This Court lacks specific jurisdiction over Shopify USA.*

Nearly all of the Oppositions' specific-jurisdiction contentions as to Shopify USA simply replicate those advanced as to Shopify Inc, based on the SAC's allegations as to the undifferentiated "Shopify" amalgam. *Compare* USA Opp. § IV.A, *with* Inc. Opp. § IV.A. All of those identical arguments fail for the same reasons given in Shopify Inc.'s MTD Reply § I.B.

The only argument that the Oppositions make as to Shopify USA specifically is the assertion that because Plaintiff "alleges that Shopify USA processes Californians' data, … it is plausible that it processed Plaintiff's data." USA Opp. 6, n.3.[3] But that paltry assertion fails to show that Plaintiff's claims "arise out of" Shopify USA's acts, which is a necessary prerequisite of specific jurisdiction. *Baton v. Ledger SAS*, 2021 WL 5226315, at *7 (N.D. Cal. 2021) ("[B]ecause Plaintiffs

[3] The Oppositions do not dispute that all other Shopify USA-specific allegations in the SAC—e.g., that Shopify USA used to have an office in California—are wholly unrelated to Plaintiff's claims and thus unable to serve as a basis for specific jurisdiction. *See* Shopify USA MTD 10-11.

fail to show … that their claims "arise out of" Shopify [USA]'s forum-related activities … the Court concludes that it lacks specific jurisdiction[.]"). Indeed, the Oppositions' argument simply misrepresents what the SAC actually alleges. As Shopify USA's MTD explained—in a careful discussion that the Oppositions do not seriously engage with—the SAC and incorporated documents do not allege that Shopify USA processes *all* data from California, but that at most "Shopify USA processes only '[p]latform data' and only 'as needed to provide Shopify Inbox,'" a chat app that the SAC never alleges "that Plaintiff ever used, or had any connection to." Shopify USA MTD 11, n.7. On their own terms, Plaintiff's allegations thus lack any connection between himself and Shopify USA.[4] The Oppositions thus do nothing to rebut the showing made in Shopify USA's MTD that Shopify USA has no connection to this case. It should therefore be dismissed for lack of personal jurisdiction.

3. *There is no basis for granting jurisdictional discovery.*

In a footnote, Plaintiff asks that if this Court "determine[s] a more satisfactory showing of facts is necessary" that he be allowed to take jurisdictional discovery from Shopify USA. USA Opp. 8, n.5. But jurisdictional discovery is unwarranted where "it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction." *Slack Techs., Inc. v. Phoji, Inc.*, 2020 WL 4701174, at *7 (N.D. Cal. 2020). That is exactly the case here, as the "allegations contained in [the] complaint are insufficient on their face to invoke federal jurisdiction." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004); *see Smith v. United States Dep't of Agric.*, 2016 WL 4179786, at *5 (N.D. Cal. 2016) (explaining that "jurisdictional discovery" is disallowed where the defendant makes a "facial jurisdictional challenge"). Because

[4] The Oppositions misrepresent what is legally required to allege a plausible claim by selectively quoting from *Ashcroft v. Iqbal*. The very sentence from *Iqbal* excerpted in the Oppositions goes on to state expressly that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). And so even if Plaintiff had alleged, as the Oppositions wrongly claim, "that Shopify USA processes Californians' data," USA Opp. 6, n.3—as opposed to just data relating to Shopify Inbox—it would still fall short of the requisite plausibility, as that allegation is "merely consistent with" Shopify USA processing Plaintiff's data, and offers nothing to rule out the "obvious alternative" that Shopify USA might have processed some Californian's data without processing Plaintiff's. *See Iqbal*, 556 U.S. at 682.

both Shopify Inc.'s MTD and its reply explain why personal jurisdiction is lacking even accepting, for argument's sake, all the jurisdictional facts alleged in the SAC, it is "immaterial" whether the SAC's jurisdictional allegations are true or false—because jurisdiction is lacking either way—and so jurisdictional discovery accomplishes nothing. *Smith*, 2016 WL 4179786, at *5.

The Oppositions' attempt to call into question Shopify USA's statement that it "is not responsible for handling customer data," USA Opp. 6, is a red herring—and certainly no basis for jurisdictional discovery. As explained above, even accepting the Oppositions' (mis)characterization of the "statement regarding Shopify[ Inc.]'s subprocessors," USA Opp. 6 (citing Backer Decl. Ex. 1), as true, there is still no basis for specific jurisdiction over Shopify USA, because that document on its face makes clear that there is no connection between Shopify USA and the SAC's claims. *See* Backer Decl. Ex. 1 at 6 (stating that the "[d]ata [p]rocessed" by Shopify USA consists of only that which is "needed to provide Shopify Inbox," an application that Plaintiff never alleges he used).

As with Shopify Inc., the Oppositions offer not even a hint of an argument for how the facts they hope to uncover in jurisdictional discovery would change any of the above analysis. Accordingly, such discovery is unwarranted and the Oppositions' request should be denied.

### C. The SAC Fails To State A Claim Against Shopify USA.

#### 1. *The SAC's allegations regarding consent should be disregarded.*

As explained in Shopify Inc.'s MTD Reply § I.C.1, the SAC's allegation—not contained in the original Complaint—that "on information and belief," IABMFG "modified its website" "after Plaintiff's transactions with IABMFG" should be disregarded, as it is wholly unsupported. And the rest of the arguments that the Oppositions raise in an attempt to evade the IABMFG Privacy Policy are pure makeweight. Most simply regurgitate the same arguments made as to Shopify Inc., and so fail for the same reasons. *See* Shopify Inc. MTD Reply § I.C.1.

And the only argument on consent that the Oppositions make specific to Shopify USA—that "none of the[] [privacy] policies even mention Shopify USA," USA Opp. 10—only undermines, rather than bolsters, the plausibility of Plaintiff's claims. There is an "obvious alternative explanation," *see Iqbal*, 556 U.S. at 682, for why the IABMFG Privacy Policy discloses

only Shopify Inc. as performing various tasks: that it is Shopify Inc. that performs them. Plaintiff's theory—that Shopify USA and Shopify Payments are, for reasons unknown, really performing those tasks in secret but hiding their involvement behind Shopify Inc.—is not only unsupported by any concrete allegations, but also highlights the perversity of Plaintiff's tactics and demonstrates clearly why the Complaint fails under Rule 8. First, he casts an ever-widening net, sweeping additional companies into his lawsuit simply for having the word "Shopify" in their names; then, when those additional defendants fail to appear in the relevant documents, he cites that alone as reason for why his claims must proceed to discovery. This is exactly the kind of "fishing expedition[]" that Rule 12(b)(6) was designed to be "a bulwark against." *Cutera, Inc. v. Lutronic Aesthetics, Inc.*, 2020 WL 4937129, at *4 (E.D. Cal. 2020). Plaintiff's claims should be dismissed in their entirety.

2. *The SAC fails to state an eavesdropping claim under Penal Code Section 631(a).*

a. <u>The SAC fails to state a claim under either clause of Section 631(a), because it fails to plead facts showing that Shopify USA was a third party to Plaintiff's communications.</u>

For the reasons given in Shopify Inc.'s MTD Reply § I.C.2.a, the Oppositions fail to rebut the arguments made in Shopify Inc.'s MTD and Shopify USA's MTD showing that Shopify USA (to the extent it was involved at all) acted merely as an "extension" of IABMFG, and thus not as a third party that can be held liable under Section 631(a).

b. <u>The SAC fails to allege a violation of Section 631(a)'s first clause, because it fails to allege a wiretap of a telephone line.</u>

The Oppositions concede that the SAC does not state a claim under Section 631(a)'s first clause, *see* Inc. Opp. 19, n.7, so those portions of the SAC, *see, e.g.*, SAC ¶ 84, must be dismissed.

c. <u>The SAC fails to allege a violation of Section 631(a)'s second clause because it fails to plead facts showing that Shopify Inc. read the "contents" of any message.</u>

For the reasons given in Shopify Inc.'s MTD Reply § I.C.2.c, the Oppositions fail to distinguish the cases cited in Shopify Inc.'s MTD and Shopify USA's MTD showing that the

information alleged to be at issue here does not constitute the "contents" of a message, and thus cannot give rise to a claim under Section 631(a)'s second clause.

3. *The SAC fails to state a claim under Penal Code Section 635.*

a. The Section 635 claim fails because code is not a "device" within the meaning of the California Invasion of Privacy Act.

For the reasons given in Shopify Inc.'s MTD Reply § I.C.3.a, the Oppositions fail to show that the software code alleged in the SAC constitutes a "device" within the meaning of Section 635, and so fail to demonstrate that Section 635 applies. For this reason alone, the SAC's claim under Section 635 must be dismissed.

b. The Section 635 claim fails because the SAC fails to allege facts showing that Shopify Inc.'s code was "primarily or exclusively designed" for eavesdropping.

For the reasons given in Shopify Inc.'s MTD Reply § I.C.3.c, the Oppositions fail to show that the software code alleged in the SAC was designed "primarily or exclusively" for eavesdropping within the meaning of Section 635, and so fail to demonstrate that Section 635 applies. For this independent reason, the SAC's claim under Section 635 must be dismissed.

4. *The SAC fails to state a claim for invasion of privacy and intrusion upon seclusion because it does not allege facts showing that Shopify USA committed an "egregious" or "highly offensive" privacy intrusion.*

For the reasons given in Shopify Inc.'s MTD Reply § I.C.4, the Oppositions fail to show that the conduct alleged in the SAC constitutes an "egregious" or "highly offensive" privacy intrusion, as opposed to routine commercial behavior, and so fails to state a claim for invasion of privacy or intrusion upon seclusion.

5. *The SAC fails to state a Penal Code Section 502 claim, because it fails to allege facts showing that Shopify USA accessed Plaintiff's iPhone "without permission."*

The Oppositions do not dispute that their theory of Section 502, as criminalizing the use of routine cookies, would outlaw essentially every website—including the Northern District of California's homepage and the U.S. Courts' PACER site. Shopify Inc. MTD at 22-23; *see* USA Opp. 12-13. Nor do they dispute that under the cases cited in Shopify Inc.'s MTD, the SAC fails to state a claim under Section 502. Instead, they malign those decisions as "outlier cases," which

have supposedly been called into question by the Ninth Circuit and urge this Court to ignore them. The Oppositions' argument fails for several reasons.

For one thing—despite Shopify USA pointing out this defect in the last round of motion to dismiss briefing, *see* ECF 41 at 9—the Oppositions cite ***no case*** reading Section 502 so broadly as to prohibit (indeed, to criminalize) the installation of cookies in an individual's browser. To the contrary, courts have instructed that "Section 502 is an anti-hacking statute" and so should be "interpret[ed] … narrowly" to target that behavior. *Custom Packaging Supply, Inc. v. Phillips*, 2015 WL 8334793, at *3 (C.D. Cal. 2015); *see also Brodsky v. Apple Inc.*, 2019 WL 4141936, at *8-*9 (N.D. Cal. 2019).

For another, the Oppositions' characterization of the cases cited in Shopify Inc.'s MTD as "outlier[s]," USA Opp. 13, is backwards. "[C]ourts in this District have ***largely adopted*** th[e] 'overcoming technical or code based barriers' test" set forth in the decisions cited in Shopify Inc.'s MTD, "as the operative test to determine if Defendant acted without permission." *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1099 (N.D. Cal. 2015) (emphasis added); *see also, e.g.*, *Brodsky*, 2019 WL 4141936, at *9. In fact, two of the three cases the Oppositions cite as supposedly being to the contrary do not actually answer the question at all. *See Hernandez v. Path, Inc.*, 2012 WL 5194120, at *4 (N.D. Cal. 2012) ("[T]he Court cannot conclude as a matter of law whether [the defendant's] alleged conduct … falls outside the scope of [Section 502]," given "the current limited briefing"); *Weingand v. Harland Fin. Sols., Inc.*, 2012 WL 2327660, at *3 (N.D. Cal. 2012) (explaining that "whether the events in question may or may not be covered under the statute" is "not properly before the Court"). And the third, *Facebook, Inc. v. ConnectU LLC*, 489 F. Supp. 2d 1087, 1091 (N.D. Cal. 2007), has not only been criticized, *see, e.g.*, *Facebook, Inc. v. Power Ventures, Inc.*, 2010 WL 3291750, at *9 (N.D. Cal. 2010), but also has not been cited in this District on this question at all—positively or negatively—in the past six years.

The Oppositions similarly fail in suggesting that *United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2016), "calls the 'technical barrier' requirement into question." USA Opp. 12. As Judge Koh recently explained, "*Christensen* did not conclude that a barrier need not be circumvented." *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1074, n.7. (N.D. Cal. 2021). Indeed,

*Christensen* would have had no occasion to even do what the Oppositions claim, as *Christensen* itself involved a technical barrier, namely "a system of password protection," and it "required that [that] barrier be circumvented." *Id.*

The Oppositions' attempts to avoid the clear holdings of the cases cited in Shopify Inc.'s MTD fail. Those decisions preclude a cause of action under Section 502, and so that claim must be dismissed.

6. *The SAC fails to state a claim under the UCL.*

a. <u>The SAC fails to state a claim for an "unlawful" practice.</u>

The Oppositions concede that to state a UCL claim for an "unlawful" practice, a plaintiff must show a "violation[] of [an]other law[]." *Silver v. Stripe Inc.*, 2021 WL 3191752, at *6 (N.D. Cal. 2021); *see* USA Opp. 14. Here, the only unique laws (not discussed above) that the SAC offers as predicates for the UCL claim are the California Consumer Privacy Act of 2018 ("CCPA"), Cal. Bus. & Prof. Code § 1427 *et seq.*; and the California Online Privacy Protection Act of 2003 ("CalOPPA"), Cal. Bus. & Prof. Code § 22575 *et seq. See* USA Opp. 14-15.

As to the CCPA, the Oppositions maintain only that "statutes that do not include their own private right of actions can serve as a basis for an unlawful UCL claim." USA Opp. 15. The problem, however, as explained in Shopify Inc.'s MTD (at 23), is not just that the CCPA lacks a private right of action, but that it also affirmatively "states that consumers may not use the CCPA as a basis for a private right of action under any statute." *Stripe*, 2021 WL 3191752, at *7 (holding that a CCPA violation may not serve as a predicate for a UCL unlawful claim for that reason). The Oppositions simply ignore the *Stripe* decision.

As to CalOPPA, the Oppositions similarly ignore the requirement—discussed in Shopify Inc.'s MTD (at 23-24)—that a CalOPPA claim exists only where (among other requirements) an "operator fails to post its policy within 30 days after being notified of noncompliance," Cal. Bus. & Prof. Code § 22575, and the SAC nowhere alleges that Shopify Inc. was *ever* formally "notified of noncompliance," much less that it failed to post a privacy policy more than "30 days after" receiving such notice. Because the SAC fails to plead a violation of any predicate law, its UCL claim based on an "unlawful" practice also fails.

b. The SAC fails to state a claim for a "fraudulent" practice.

The Oppositions' argument regarding the SAC's "fraudulent" UCL claim likewise ignores the *Stripe* decision. Indeed, the Oppositions simply restate the arguments that Plaintiff's same counsel made—and the Court rejected—in that case. *See* Shopify Inc. MTD at 24 (explaining that the SAC's UCL "fraudulent" claim is a "near verbatim cop[y]" of the one from *Stripe*); USA Opp. § IV.H.2 (failing to dispute this). What is more, the Oppositions do so without even acknowledging the *Stripe* decision at all, much less attempting to explain why this Court should disregard it. For all the same reasons given in Shopify Inc.'s MTD and in the *Stripe* decision, the SAC fails to state a UCL claim based on a "fraudulent" act.

c. The SAC fails to state a claim for an "unfair" practice.

As Shopify Inc.'s MTD explained, all the SAC says on the question of whether Shopify USA[5] engaged in an "unfair" practice is the conclusory allegation parroting the elements of the cause of action. The SAC says only that the fictitious "Shopify" entity "'engaged in conduct that is unfair and unconscionable because its activities with respect to Class members' Private Information offends public policy, is immoral unethical, oppressive, outrageous, unscrupulous, and substantially injurious, and has caused substantial harm that greatly outweighs any possible utility from the conduct.'" Shopify Inc. MTD § IV.C.6.c (quoting SAC ¶ 140); *compare id. with Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1260-61 (2006) (explaining that to state a claim under the "unfair" prong of the UCL, a complaint must plead facts showing conduct that violates "public policy" or "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" and in which the "utility of the defendant's conduct" is outweighed by the "gravity of

---

[5] Although this argument—like all of those addressing the SAC's failures to state a claim under Rule 12(b)(6)—was addressed in full in Shopify *Inc.'s* MTD, Plaintiff has responded to it only in his Opposition to Shopify *USA's* MTD. That reflects the fact that the Oppositions, like the SAC, declined to organize the arguments so as to direct each to the proper entity, and instead split the arguments across both Oppositions without any apparent reason for the division. *See* Shopify Inc. MTD Reply at 7, n.5. As set forth in Shopify Inc.'s MTD Reply, *id.*, Shopify USA adopts the Oppositions' organization for ease of the Court's review, notwithstanding that it confuses whether and which of Plaintiff's arguments apply to each entity. Shopify USA therefore assumes for the purpose of this argument that the SAC's allegations regarding an unfair practice pertain to Shopify USA. Given that the SAC fails to distinguish between Shopify USA and Shopify Inc., the same argument applies equally if the allegations are interpreted as applying to Shopify Inc. *See* Shopify Inc. MTD Reply § I.C.6.

the harm to the alleged victim"). The Oppositions now belatedly try to bolster that threadbare assertion, but their attempts fail.

The Oppositions first suggest that even if "the SAC does not allege actual violations" of any statute, it still alleges conduct that "violates the public policy underlying those statutes." USA Opp. 16-17. As an initial matter, however, the Oppositions cite no authority for the proposition that the UCL's "unfair" prong was meant to bail out any plaintiff unable to state a claim under any other provision of law. What is more, the Oppositions' argument fails on its own terms. The "public policy underlying [a] statute[]" is expressed as much in a statute's limitations as in its substantive prohibitions. With each statute at issue here, the Legislature made a careful policy judgment about what to prohibit—and, just as important, what to permit. The Oppositions' attempt to use the UCL to outlaw activities that the Legislature specifically chose to permit would thus turn the "public policy underlying those statutes" on its head.

The Oppositions then fall back to asserting that the harm from the acts "Shopify" is accused of outweigh the benefits. USA Opp. 17-18. But everything the Oppositions say about the supposed harm, and lack of offsetting benefit, is based on nothing more than speculation and conjecture. While the Oppositions cite the SAC for allegations about what "Shopify" supposedly *did*, they cite nothing in the SAC (because there are no allegations on this score) showing that "substantial injuries to consumers" resulted or that there is a lack of "countervailing utility." *See id.* Showing that the supposed harm outweighs the lack of benefit is an element of the UCL "unfair" claim, and thus it is the SAC's responsibility to plead facts establishing it. Because the SAC has not, this claim, too, must be dismissed.

## II. CONCLUSION

Shopify USA respectfully requests that the Court dismiss the SAC.

Dated: April 6, 2022

Respectfully Submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Jacob M. Heath*
JACOB M. HEATH
THOMAS FU
Attorneys for Defendants
Shopify (USA) Inc., Shopify Inc., and
Shopify Payments (USA) Inc.