JACOB M. HEATH (SBN 238959)
jheath@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone: +1 650 614 7400
Facsimile: +1 650 614 7401

THOMAS FU (SBN 325209)
tfu@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017-5855
Telephone: +1 213 629 2020
Facsimile: +1 213 612 2499

ARAVIND SWAMINATHAN (admitted *pro hac vice*)
aswaminathan@orrick.com
NICOLE M. TADANO (admitted *pro hac vice*)
ntadano@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
701 5th Avenue, Suite 5600
Seattle, WA 98104-7097
Telephone: +1 206 839 4300
Facsimile: +1 206 839 4301

Attorneys for Defendants,
Shopify Inc., Shopify (USA) Inc., and Shopify
Payments (USA) Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

Brandon Briskin, on behalf of himself and those similarly situated,

Plaintiffs,

v.

Shopify Inc., Shopify (USA) Inc., and Shopify Payments (USA) Inc.

Defendants.

Case No. 4:21-cv-06269-PJH

**DEFENDANT SHOPIFY INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT**

Date: April 28, 2022
Time: 1:30 p.m.
Location: Courtroom 3, 3rd Floor
1301 Clay Street
Oakland, California

Judge: The Honorable Phyllis J. Hamilton

## TABLE OF CONTENTS

**Page**


I. ARGUMENT ........................................ - 3 -

A. The SAC Fails To Distinguish Among Defendants In Violation Of Rule 8 ....... - 3 -

B. This Court Lacks Jurisdiction Over Shopify Inc. ........................................ - 3 -

1. *This Court lacks general jurisdiction over Shopify Inc.* ........................ - 3 -

2. *This Court lacks specific jurisdiction over Shopify Inc.* ........................ - 3 -

3. *There is no basis for granting jurisdictional discovery.* ........................ - 7 -

C. The SAC Fails To State A Claim Against Shopify Inc. ........................................ - 7 -

1. *The SAC's allegations regarding consent should be disregarded.* ......... - 7 -

2. *The SAC fails to state an eavesdropping claim under Penal Code Section 631(a).* ........................................ - 9 -

a. The SAC fails to state a claim under either clause of Section 631(a), because it fails to plead facts showing that Shopify Inc. was a third party to Plaintiff's communications. ................ - 9 -

b. The SAC fails to allege a violation of Section 631(a)'s first clause, because it fails to allege a wiretap of a telephone line. ........................................ - 10 -

c. The SAC fails to allege a violation of Section 631(a)'s second clause because it fails to plead facts showing that Shopify Inc. read the "contents" of any message. .................... - 10 -

3. *The SAC fails to state a claim under Penal Code Section 635.* ............ - 11 -

a. The Section 635 claim fails because code is not a "device" within the meaning of the California Invasion of Privacy Act. ........................................ - 11 -

b. The Section 635 claim fails because the SAC fails to allege facts showing that Shopify Inc.'s code was "primarily or exclusively designed" for eavesdropping. ................................ - 13 -

4. *The SAC fails to state a claim for invasion of privacy and intrusion upon seclusion because it does not allege facts showing that Shopify Inc. committed an "egregious" or "highly offensive" privacy intrusion.* ........................................ - 14 -

5. *The SAC fails to state a Penal Code Section 502 claim, because it fails to allege facts showing that Shopify Inc. accessed Plaintiff's iPhone "without permission."* ........................................ - 15 -

6. *The SAC fails to state a claim under the UCL.* .................................... - 15 -

II. CONCLUSION ........................................ - 15 -

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 13

*Austin v. Budget Rental Car, Inc.*,
2020 WL 8614183 (N.D. Cal. 2020) ... 1

*Bacilio v. City of Los Angeles*,
28 Cal. App. 5th 717 (2018) ... 13

*Baton v. Ledger SAS*,
2021 WL 5226315, at *6 ... 4, 5, 6, 7

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ... 11

*Caces-Tiamson v. Equifax*,
2020 WL 1322889 (N.D. Cal. 2020) ... 3

*In re Carrier IQ, Inc., Privacy Litig.*
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ... 12

*Cisco Sys., Inc. v. Dexon Computer, Inc.*,
2021 WL 2207343 (N.D. Cal. 2021) ... 4, 5

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) ... 13

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011) ... 14, 15

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*,
141 S. Ct. 1017 (2021) ... 6, 7

*Freeman v. Gonzales*,
444 F.3d 1031 (9th Cir. 2006) ... 12

*In re Google, Inc. Privacy Policy Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ... 14

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ... 9, 11

*LNS Enterprises LLC v. Cont'l Motors, Inc.*,
22 F.4th 852 (9th Cir. 2022) ... 4

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........ 14

*Lucent Techs., Inc. v. Bd. of Equalization*,
241 Cal. App. 4th 19 (2015) ........ 12

*Lukis v. Whitepages, Inc.*,
454 F. Supp. 3d 746 (N.D. Ill. 2020) ........ 4, 5

*Mavrix Photo v. Inc. v. Brand Techs., Inc.*,
647 F.3d 1218 (9th Cir. 2011) ........ 6

*Menken v. Emm*,
503 F.3d 1050 (9th Cir. 2007) ........ 5

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. 2019) ........ 9, 10, 12

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ........ 13

*Silver v. Stripe, Inc.*,
2021 WL 3191752 (N.D. Cal. 2021) ........ 9

*Sims v. Opportunity Fin., LLC*,
2021 WL 1391565 (N.D. Cal. 2021) ........ 8

*Slack Techs., Inc. v. Phoji, Inc.*,
2020 WL 4701174 (N.D. Cal. 2020) ........ 7

*Smith v. United States Dep't of Agric.*,
2016 WL 4179786 (N.D. Cal. 2016) ........ 7

*Svenson v. Google Inc.*,
65 F. Supp. 3d 717 (N.D. Cal. 2014) ........ 2, 10, 11

*Vendavo, Inc. v. Price f(x) AG*,
2018 WL 1456697 (N.D. Cal. 2018) ........ 2

*Walden v. Fiore*,
571 U.S. 277 (2014) ........ 5

*Wolfe v. Strankman*,
392 F.3d 358 (9th Cir. 2004) ........ 7

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ........ 11

**Statutes**

Cal. Penal Code § 502 .......... 3, 15

Cal. Penal Code § 631 .......... 2, 9, 10

Cal. Penal Code § 635 .......... 2, 3, 10, 11, 12, 13, 14

**Rules**

Fed. R. Civ. P. 8 .......... 3, 7

The Opposition to Shopify Inc.'s Motion to Dismiss ("Inc. Opp."), and the arguments it incorporates from the Opposition to Shopify (USA) Inc.'s Motion to Dismiss ("USA Opp."), is a bundle of misdirection and mischaracterizations. But this Court need not wade through all (or even most) of them to conclude that the Second Amended Complaint ("SAC") must be dismissed. The Oppositions leave unchallenged many of the key points for dismissal made in Shopify Inc.'s Motion to Dismiss ("Shopify Inc. MTD"), or incorporated there by reference from Shopify (USA) Inc.'s Motion to Dismiss ("Shopify USA MTD"). And they obfuscate the remaining arguments, often in reliance on theories this District has already rejected. Not least, the Oppositions obscure that they ask this Court to bless a claim (already repudiated at the pleading stage in this District) that every credit card transaction and website on the internet is a crime and grounds for suit in California.

As an initial matter, the Oppositions do not even attempt to distinguish the directly on-point cases cited in Shopify USA's MTD, which hold that where "defendants are separate corporate entities[] and perform separate roles," pleading as to defendants as a collective "is insufficient." *Austin v. Budget Rental Car, Inc.*, 2020 WL 8614183, at *2 (N.D. Cal. 2020), *cited at* Shopify USA MTD § IV.A. And they freely admit that the SAC's "repeated[] refer[ence]" to the fictitious entity "'Shopify' which is defined to include all Defendants," was intentional. USA Opp. 9.[1] Indeed, the SAC does not even attempt to allege that Shopify Inc., Shopify (USA) Inc. ("Shopify USA"), and Shopify Payments (USA) Inc. ("Shopify Payments") are alter egos such that they can be treated

[1] The SAC's failure to distinguish between Defendants leads to many arguments being repeated across briefs. Indeed, the Oppositions double down on that interchangeable treatment, using the *USA* Opp., for instance, to respond to arguments made in Shopify *Inc.'s* MTD. For the Court's convenience, the table below indicates where unique arguments (i.e., arguments that do not merely cross reference other filings) are made in each brief:

| | Inc. MTD | USA MTD | Payments MTD | Inc. Opp. | USA Opp. | Payments Opp. | Inc. Reply | USA Reply | Payments Reply |
|---|---|---|---|---|---|---|---|---|---|
| Jurisdiction | X | X | X | X | X | X | X | X | X |
| Rule 8 | | X | | | X | | | X | |
| Merits (Claims 1-4) | X | | | X | | | X | | |
| Merits (Claims 5-6) | X | | | | X | | | X | |

legally as a single entity. They simply assert that this lumping-together is permissible, either because group pleading is acceptable generally, or because Shopify Inc. and Shopify USA are corporate affiliates. *Id.* (Curiously, they make no mention of Shopify Payments (USA) Inc. ("Shopify Payments")). But the caselaw says otherwise. *See, e.g.*, *Vendavo, Inc. v. Price f(x) AG*, 2018 WL 1456697, at *4 (N.D. Cal. 2018) (dismissing complaint that "d[id] not distinguish" between two affiliated companies for failing to provide the requisite "specificity" to which each defendant was entitled). Each (including Shopify Payments) is separately entitled to know what it supposedly did to violate the law. The SAC does not provide that notice, and thus should be dismissed.

Nor do the Oppositions refute the key points defeating personal jurisdiction as to Shopify Inc. They (rightly) make no argument that this Court has general jurisdiction. And as to specific jurisdiction, the Oppositions do not dispute that (as Plaintiff has previously admitted) his claims "arise from the fact that Defendants hid their presence on IABMFG's site and sent code to his device." ECF 37 at 8. That concession means that only allegations that concern Plaintiff's interaction with the payment forms on IABMFG's webpage are relevant to the question of specific jurisdiction. For these interactions—the only ones that matter—Plaintiff admits both that (1) as a matter of law, contacts with California can support jurisdiction only if they are "the defendant's own choice," Inc. Opp. 8-9; and (2) as a matter of fact, Shopify Inc. does not control "where [its merchants] sell their products" or "who necessarily interacts with [the] payment forms" that form the basis of his claims, ECF No. 37 at 8. He is thus left with no basis for showing (as the law requires) that his claims arise out of acts that Shopify Inc. purposefully directed towards California.

Just as important, the Oppositions ignore several flaws that defeat the merits of each of the SAC's claims. As to **Penal Code § 631**, they concede that the SAC fails to state a claim under the first clause (for wiretapping), Inc. Opp. 19, n.7, and with respect to the second clause, they manufacture a distinction—already rejected by *Svenson v. Google Inc.*, 65 F. Supp. 3d 717, 729 (N.D. Cal. 2014)—that information submitted by the user means, by definition, that it is "content" under CIPA. As to **Penal Code § 635**, the Oppositions do not dispute that to qualify as a "device" under the statute, a contraption must be capable of being "manufacture[d]," "assemble[d],"

"transport[ed]," and "import[ed]"; yet they provide no explanation of any of those things can be done to computer code. (The Oppositions also do not dispute that their reading of Section 635 would outlaw essentially every credit card transaction, whether online or in a physical store, and mark nearly every smart device in existence as one designed primarily for wiretapping.) As to **Invasion of Privacy**, the Oppositions maintain categorically that those claims cannot be dismissed at the pleading stage, but do not dispute that Shopify Inc.'s MTD cited numerous cases doing exactly that. Similarly, as to **Penal Code § 502**, the Oppositions do not dispute that under the cases identified in Shopify Inc.'s MTD the claim must be dismissed (they simply urge the Court to ignore them). And as to the **UCL**, too, the Oppositions do not dispute that Judge Gonzales Rogers recently rejected materially identical allegations brought by Plaintiff's counsel; indeed, their UCL discussion does not even *acknowledge* that decision, much less attempt to distinguish it. Those are not the only defects with the SAC requiring dismissal. But they are, alone, more than sufficient to demonstrate that the SAC cannot proceed. This Court should dismiss the SAC in its entirety.

# I. ARGUMENT

## A. The SAC Fails To Distinguish Among Defendants In Violation Of Rule 8.

For the reasons stated in Shopify USA's MTD Reply § I.A, the SAC must be dismissed because it fails to differentiate between Shopify Inc., Shopify USA, and Shopify Payments as required by Rule 8.

## B. This Court Lacks Jurisdiction Over Shopify Inc.

### 1. *This Court lacks general jurisdiction over Shopify Inc.*

The Oppositions do not dispute that this Court lacks general jurisdiction. *See* Inc. Opp. 5.

### 2. *This Court lacks specific jurisdiction over Shopify Inc.*

All agree that specific jurisdiction exists only when (1) the defendant "purposefully direct[s] his activities" toward the state or its residents; and (2) the claim before the court "arises out of or relates to the defendant's forum-related activities." *Caces-Tiamson v. Equifax*, 2020 WL 1322889, at *3 (N.D. Cal. 2020); *see* Inc. Opp. 5. The Oppositions offer two theories for how Shopify Inc. supposedly satisfied those requirements: (1) that "Shopify" "specifically targeted" consumers in California; and (2) that Shopify Inc. "exploit[ed] the [California] market for its own commercial

gain." *Id.* at 6. Neither withstands scrutiny.[2]

**"Specific targeting" of California residents.** The Oppositions' arguments about "specific targeting" simply regurgitate the claim-related, but forum-agnostic, allegations in the SAC about how "Shopify" provides its software to "millions" of merchants around the world, operating "millions of websites," one of whom happens to be IABMFG (who in turn sold goods to Plaintiff in California through its own universally accessible website). Shopify Inc. MTD at 9. But Shopify Inc.'s MTD already explained (at 8-9) why those allegations are insufficient: Purposeful direction cannot stand "on the mere fact that [Shopify Inc.] provides services to customers [merchants] nationwide," even if some of those merchants (or their customers) happen to be located in California. *Baton*, 2021 WL 5226315, at *6; *see also Cisco Sys., Inc. v. Dexon Computer, Inc.*, 2021 WL 2207343, *3 (N.D. Cal. 2021). Moreover, Plaintiff himself has admitted that Shopify Inc. does not control "where [its merchants] sell their products" or "who necessarily interacts with [the] payment forms" that give rise to his claims, ECF No. 37 at 8—meaning that it was not Shopify Inc. that made its "own choice" to "specifically target[] California," *Baton*, 2021 WL 5226315, at *6, but rather IABMFG that chose to make its online store accessible in California, and Plaintiff who chose to reach out from California to that online store and initiate his purchase.

The Oppositions' primary response is to assert that "[t]his case is nearly identical to *Lukis v. Whitepages, Inc.*, 454 F. Supp. 3d 746 (N.D. Ill. 2020)." Inc. Opp. 6. But that case is critically different on exactly the grounds just discussed. In *Lukis*, the defendants' "contacts" with Illinois were entirely independent of any action or choice made by the plaintiffs, but resulted solely from the *defendant's own* decision to reach into Illinois by "search[ing] for and obtain[ing]" information

---

[2] The Oppositions' criticism of Shopify Inc. for analyzing their arguments as "two separate theories"—"one based on Defendants' collection, use and disclosure of Californians' data and the other rooted in Shopify Inc.'s physical contacts with California," Inc. Opp. at 6, n.1—is baffling. It was Plaintiff himself who organized his arguments in exactly the way he now maligns, *see id.* at 7 ("Beyond Defendants' uses of Californians' data, Defendants also exploited the California market."); *see also* ECF No. 37 at 7 (same). In any event, to the extent the Oppositions mean to suggest (with their assertion that "contacts are to be examined collectively") that they can secure personal jurisdiction through some allegations about Shopify Inc.'s contacts with California, and other allegations about the acts giving rise to his claims, without any connection between the two, that is simply incorrect. *See LNS Enterprises LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 863-64 (9th Cir. 2022) ("nationwide contacts rather than … contacts with [the forum] specifically" plus other forum contacts that the claims do not "arise out of" are "inadequate" for specific jurisdiction).

about the plaintiffs from "databases operated by state and local governments in Illinois." 454 F. Supp. 3d at 753-54, 758. Here, the opposite is true. The connection with California exists because IABMFG independently chose to sell its products in California, *and* the consumer independently chose to engage in the transaction from California. *Lukis* thus serves only to underscore what is missing from the SAC's allegations.

The Oppositions' assertion that that Shopify Inc. "targeted Californians" because it took actions "knowing th[at] data originated from California," Inc. Opp. 7, is directly contrary to the law. A defendant does not "purposefully direct its activities at the forum state merely by directing those activities at a person who happens to reside in the forum state, even if the defendant knows the person resides there." *Cisco*, 2021 WL 2207343, at *3. Moreover, as Shopify Inc.'s MTD observed—and the Oppositions do not dispute—the fact that *Plaintiff* happened to be in California when he made his purchase was a circumstance that was entirely *his choice*, not Shopify Inc.'s. *See* Shopify Inc. MTD at 9, n.7; *see* Inc. Opp. § IV.A (saying nothing to contest this). In other words, Shopify Inc.—unlike the defendant in *Lukis* which gathered information from Illinois databases—does not reach into California specifically in any way to collect or process their information. Rather, Shopify Inc. ultimately gets possession of some California resident data only because its merchants (here, IABMFG) independently chose to make sales to California residents. That is the opposite of purposeful direction. *See Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("[T]he plaintiff cannot be the only link between the defendant and the forum.").

**Exploiting the California market.** The Oppositions' "exploiting the California market" theory simply recounts miscellaneous allegations from the SAC—e.g., that Shopify Inc. "opened a store in Los Angeles." Inc. Opp. 7-8. These have nothing to do with Plaintiff's claims, and so are wholly irrelevant. Shopify Inc. MTD at 9-10; *see also Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007) (specific jurisdiction must be "based on the relationship between the defendant's forum contacts and plaintiff's claims"). And even if those contacts could be considered—which they cannot—they would still be insufficient. All they would show is that about 7% of Shopify Inc.'s merchants reside in California. *See* SAC ¶¶ 7, 12 (alleging that Shopify Inc. has 80,000 merchants in California out of "millions" worldwide). That is plainly insufficient. *See Baton*, 2021 WL

5226315, at *9 (holding that a company cannot be subject to personal jurisdiction in California simply because it derives 7% of its business from the state).[3] *See* Shopify Inc. MTD at 10.

The Oppositions' primary response is to analogize Shopify Inc.'s *merchants* (e.g., IABMFG) to the defendant in *Mavrix Photo v. Inc. v. Brand Techs., Inc.*, 647 F.3d 1218 (9th Cir. 2011). Specifically, they argue that just as "[a] substantial number of hits to [the defendant's] website came from California residents" in *Mavrix*, "a substantial number of hits to [Shopify's merchant's websites] came from California residents" here. Inc. Opp. at 7-8 (alterations in original). But the most that comparison could show is that the *merchant*—not Shopify Inc. itself—is subject to personal jurisdiction under *Marvix*. Remember, Shopify Inc. offers merchants a platform to build their own online stores; it does not own or operate the store or control who visits or shops there, and there is no allegation that Shopify Inc. has any control over the traffic any merchant's storefront generates online, whether from California, Kalamazoo, or otherwise. As the Oppositions themselves recognize, that is insufficient, as *Baton* forbids a plaintiff to "graft [a merchant's] contacts with California onto Shopify Inc." *See* Inc. Opp. 8-9 (citing *Baton*, 2021 WL 5226315, at *15-16). Everything the Oppositions say about *Marvix* is thus beside the point.

The Oppositions' invocation of *Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017 (2021) does not save its SAC. Inc. Opp. at 9-10. The Oppositions suggest that *Ford* somehow sustains jurisdiction if there is any theoretical connection—no matter how tenuous—between the allegations and the SAC's claims. This overstates *Ford*'s holding, where the Court specifically explained that it "d[id] not … consider," and so "does not also resolve," any matter as to "internet transactions," because they present "very different questions whether and how a defendant's virtual 'presence' and conduct translate into 'contacts' with a particular State." *Ford*, 141 S. Ct. at 1028, n.4. The SAC's claims, of course, hinge entirely on internet transactions, and

---

[3] The Oppositions try to sidestep *Baton*, by asserting that all it did was "refuse[] to graft [a merchant's] contacts with California onto Shopify Inc." Inc. Opp. 7. But that simply ignores huge swaths of the decision. As explained in Shopify Inc.'s MTD, *Baton* additionally held that personal jurisdiction was lacking over a Shopify Inc. merchant, even though the merchant "solicit[ed] customers in the United States and California" and "7.03% of [the merchant's] worldwide revenue comes from California." 2021 WL 5226315, at *9. Here Shopify Inc. is in the same position here as was the merchant in *Baton*.

so *Ford* is by its own terms inapplicable.[4]

3. *There is no basis for granting jurisdictional discovery.*

In a footnote, the Oppositions ask that if this Court "determine[s] a more satisfactory showing of facts is necessary" that he be allowed to take jurisdictional discovery from Shopify Inc. Inc. Opp. 11, n.5. But jurisdictional discovery is unwarranted where "it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction." *Slack Techs., Inc. v. Phoji, Inc.*, 2020 WL 4701174, at *7 (N.D. Cal. 2020). That is exactly the case here, as the "allegations contained in [the] complaint are insufficient on their face to invoke federal jurisdiction." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004); *see Smith v. United States Dep't of Agric.*, 2016 WL 4179786, at *5 (N.D. Cal. 2016) (explaining that "jurisdictional discovery" is disallowed where the defendant makes a "facial jurisdictional challenge"). Because both Shopify Inc.'s MTD and its reply explain why this Court does not have personal jurisdiction over Shopify Inc., even accepting all the jurisdictional facts alleged in the SAC, it is "immaterial" whether the SAC's jurisdictional allegations are true or false. Jurisdiction is lacking either way, and so jurisdictional discovery would accomplish nothing. *Smith*, 2016 WL 4179786, at *5.[5]

**C. The SAC Fails To State A Claim Against Shopify Inc.**

1. *The SAC's allegations regarding consent should be disregarded.*

---

[4] What is more, *Baton* provides further reasons—none of which the Oppositions engage with—for why *Ford* has no bearing on the analysis here:

> The scale and magnitude of [Shopify Inc.'s] alleged activities in [] California pale in comparison with that undertaken by Ford. There was no enmeshment of [Shopify Inc.'s] obligations to consumers with government-protected in-state business comparable to that in *Ford*. There are no allegations that California law or institutions have provided [Shopify Inc.] any "assistance" to its "in-state business" to "create reciprocal obligations" that [IABMFG] owes to California. … Hence, the "strong 'relationship among the defendant, the forum, and the litigation'—the 'essential foundation' of specific jurisdiction" present in Ford is missing here.

*Baton*, 2021 WL 5226315, at *11 (citations omitted).

[5] What is more, jurisdictional discovery is inappropriate here for the additional reason that the Oppositions do not dispute any of the factual predicates for Shopify Inc.'s jurisdictional arguments. As Judge Chen recently explained in denying plaintiffs jurisdictional discovery as to either Shopify Inc. or Shopify USA in *Baton*, "where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery." *Baton*, 2021 WL 5226315, at *12. Here, the Oppositions do not offer *anything*—much less, something more than "bare allegations"—that contradicts the specific denials made in Shopify Inc.'s declaration.

The Opposition doubles down on the SAC's assertion—not contained in the original Complaint—that "on information and belief," IABMFG "modified its website" "after Plaintiff's transactions with IABMFG" to link to the Privacy Policy that forms the basis of Shopify Inc.'s consent argument. *Compare* SAC ¶ 61, *with* Compl. ¶ 52. As Shopify Inc.'s MTD explained (at §§ II, IV.C.1), the SAC provides no fact to support it. Indeed, the documents submitted with Defendants' Opposition To Plaintiff's Motion For Leave To Amend, ECF No. 39-4, demonstrate that there is a wealth of evidence that contradicts the "information and belief" allegation. *Compare* Heath Decl. Exs. A-D *with* SAC ¶¶ 28, 31. Specifically, they explain that IABMFG's Privacy Policy and the link to it on the IABMFG checkout page were generated using a Shopify Inc.-supplied template that was "made available to merchants [only] prior to April 30, 2018." ECF No. 39-4. It is thus clear, why the SAC omits any factual support for this "information and belief" allegation: All evidence demonstrates that the material portions of the IABMFG checkout page have not changed since April 2018—well before Plaintiff's alleged June 2019 purchase.[6] *See id.* The SAC cannot bury its head in the ground; the "information and belief" allegation should be disregarded given it lacks any factual support whatsoever. *Sims v. Opportunity Fin., LLC*, 2021 WL 1391565, at *8 (N.D. Cal. 2021) (Hamilton, J.).

The rest of the Oppositions' arguments regarding consent are easily disposed. The Oppositions argue that consent cannot be considered at this stage because it is "a defense" that "Defendants have the burden to establish." *See* Inc. Opp. 11. However, that contention is patently wrong, explained by all the caselaw cited in Shopify Inc.'s MTD showing that courts can and do

---

[6] The Oppositions miss the point in their assertion that Shopify Inc. "did not even try to" verify that Exhibits A-F of the Heath Declaration are "the same versions of the webpages … present ***at the times relevant to the allegations***," Inc. Opp. 12 (emphasis in original). As demonstrated above, Shopify Inc. has already—well before Plaintiff filed his SAC—showed that all evidence undermines his claim that the IABMFG checkout page changed. Plaintiff not only ignores that showing, he also has failed—through three complaints and two rounds of motion-to-dismiss briefing—to offer *anything specific* that even so much as calls it into question. It is thus Plaintiff's argument, not Shopify Inc.'s, that is plagued by a defect that Plaintiff cannot "remedy since [he] did not even try to do so in the course of this second round of motion to dismiss briefing." Inc. Opp. 12. It is thus ironic that the Oppositions claim Shopify Inc. relied on "versions of the webpages" not "present ***at the times relevant to the allegations***," because it is the Oppositions that concede that the "SAC quotes from a version of the [Shopify Payments terms of service] that was not in effect at the time of [sic] Plaintiff made his purchase." Payments Opp. 3, n.1.

consider consent at this stage as to each of the SAC's claims because it is "an element" of those claims. *See* Shopify Inc. MTD at 10-11. And, it bears repeating, Plaintiff's own pleadings incorporate the documents establishing his consent. Shopify Inc. MTD § II.

The Oppositions also attempt to distinguish *Stripe* on the grounds that it supposedly involved "sign-in wrap," instead of "browsewrap." Inc. Opp. 14. That argument misconstrues the governing law. The operative question, regardless of whether "sign-in wrap" or "browsewrap" is involved, is whether a reasonably prudent user would have been on inquiry notice of the terms. *Silver v. Stripe, Inc.*, 2021 WL 3191752, at *3 (N.D. Cal. 2021). As Shopify Inc.'s MTD (at 13) explained, all the reasons in *Stripe* for finding inquiry notice are true here: the link was in a bright blue font against a white background, was presented three times, was located immediately next to the continue/checkout button, and was near the amount of the final order total.[7] The Oppositions' argument that the Shopify Inc. Privacy Policy and Terms of Service are irrelevant because they are referenced with URLs in the IABMFG Privacy Statement, instead of copied into that document in toto, similarly lacks any basis, and the Oppositions cite no case that has held as much.

At the end of the day, Plaintiff was presented *three times* with the IABMFG Privacy Policy, which fully disclosed Shopify Inc.'s role in his transaction. That alone negates all causes of action pled, and requires dismissal of the entire SAC.

2. *The SAC fails to state an eavesdropping claim under Penal Code Section 631(a).*

a. <u>The SAC fails to state a claim under either clause of Section 631(a), because it fails to plead facts showing that Shopify Inc. was a third party to Plaintiff's communications.</u>

The Oppositions do not dispute that under *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021), where one company provides software services to another, and thus acts merely as "an extension of" that other company, it cannot be liable under Section 631. *See* Inc. Opp. 18-19. Instead, they argue that *Noom* "is distinguishable," and that this case is more like *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *1 (N.D. Cal. 2019), because Shopify Inc. does not "collect

[7] Plaintiff is presumably aware that his identical legal theory was attempted and declined in this District mere months ago; he retained the exact same counsel that asserted it, and lost, in *Stripe*.

and store the data for the sole use by IABMFG, but instead uses the data for [its own] commercial purposes"—namely sharing it with "Stripe" and "MaxMind." *Id.* at 18-19. The Oppositions get the legal principle right—the operative question is whether Shopify Inc. is acting for its own purposes or its merchant's—but the application wrong. To the extent Shopify Inc. shares information with Stripe and MaxMind, the SAC itself does not allege that it does so "independent" of its relationship with IABMFG for Shopify Inc.'s own purposes, as opposed to at IABMFG's direction and for its benefit. Hence, without a specific allegation that Shopify Inc. processes the data independently, solely for its own purposes, the SAC's allegations require the conclusion that Shopify Inc. is "an extension" of IABMFG. Indeed, as Plaintiff himself has put it in detail, this sharing is specified in a "separate contract" that the "Shopify [Inc.] merchant" enters, which "discusses how users' personal information is shared with Stripe" and MaxMind. ECF No. 36-2 at ¶ 15. Because the actions described in the SAC are thus not independent of IABMFG, but rather for IABMFG's benefit and pursuant to its contractual directives, Shopify Inc. acts merely as an "extension" of IABMFG, and not as a third party that can be held liable under Section 631(a).[8]

b. <u>The SAC fails to allege a violation of Section 631(a)'s first clause, because it fails to allege a wiretap of a telephone line.</u>

The Oppositions concede that the SAC does not state a claim under Section 631(a)'s first clause, *see* Inc. Opp. 19, n.7, so those portions of the SAC, *see, e.g.*, SAC ¶ 84, must be dismissed.

c. <u>The SAC fails to allege a violation of Section 631(a)'s second clause because it fails to plead facts showing that Shopify Inc. read the "contents" of any message.</u>

As Shopify Inc.'s MTD (at § IV.C.2.c) explained, courts have held—without qualification—that "names, mailing addresses, phone numbers, billing information" are not the "content" of a communication.[9] *Svenson v. Google Inc.*, 65 F. Supp. 3d 717, 729 (N.D. Cal. 2014);

---

[8] The Oppositions' assertion that "Defendants admit that they were not the intended recipient of Plaintiffs' communications," Inc. Opp. 18, is entirely false. Shopify's MTD pointed out (at 14) that "the SAC concedes that IABMFG was the intended recipient of Plaintiff's information," which is fatal to the Section 631(a) claim. Because Shopify Inc. is alleged to have merely acted as an extension of IABMFG, if IABMFG was an intended recipient, then Shopify Inc. was too.

[9] The Oppositions' suggestion that "Defendants concede[] section 631 applies to electronic communications under the second clause," Inc. Opp. 19, n.7, is designed only to mislead. The

*see also, e.g.*, *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) ("[U]ser names, passwords, and geographic location information are not content."); *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1104 (9th Cir. 2014). The Oppositions do not dispute that all of the information alleged to be at issue here—*i.e.*, "name, delivery address, billing address, phone number, and credit card number, expiration date, and CVV code" provided "to complete the checkout process," (*see* SAC ¶ 59)—falls within those categories. *See* Inc. Opp. 19-21. Instead, in keeping with a common theme for their arguments, they attempt to draw a distinction that another court has already rejected. The Oppositions argue that the information here is "content" because it was "directly input by the user," as opposed to "automatically generated." Inc. Opp. 20. But *Svenson* itself rejected exactly that argument, explaining that "this Court does not read *Zynga* so narrowly to mean that only automatically generated data may constitute record information." 65 F. Supp. 3d at 729. *Svenson* went on to emphasize that data like "name, email address, Google account name, home city and state, zip code, and in some instances telephone number" is exactly the "type of information that the Ninth Circuit recognized as record information in *Zynga*," and that "[n]umerous courts in this district likewise have characterized such information as record information" as well, whether input manually or automatically generated. *Id.*

The Oppositions' fallback argument—that all of the precedent just discussed is distinguishable because it was decided "under the Stored Communications Act" and not Cal. Penal Code § 631(a), *see* Inc. Opp. 20-21—is similarly foreclosed by precedent. The Stored Communications Act "incorporates the Wiretap Act's definition of 'contents,'" *Svenson*, 65 F. Supp. 3d at 728, and "[t]he 'contents' of a communication under CIPA and the federal Wiretap Act are the same." *Noom*, 533 F. Supp. 3d at 833. The cases above apply with full force to bar the SAC's Section 631(a) claim.

### 3. *The SAC fails to state a claim under Penal Code Section 635.*

#### a. <u>The Section 635 claim fails because code is not a "device" within the meaning of the California Invasion of Privacy Act.</u>

---

operative question is whether the information at issue here qualifies as a communication in the first place. This supposed concession gets the Oppositions nothing.

The Oppositions' primary argument is that courts have "concluded that software or computer code constitutes a 'device' under this statute." Inc. Opp. 21. But neither case they cite actually issued such a holding. *Revitch* did not interpret the statute at all, but rather erroneously viewed the question as a factual one that it was required to "assume the truth of" in Plaintiff's favor "[a]t the pleading stage." 2019 WL 5485330, at *3. Doing so is inconsistent with well-established precedent that statutory interpretation is a legal question, appropriate for resolution on a motion to dismiss. *See Freeman v. Gonzales*, 444 F.3d 1031, 1037 (9th Cir. 2006) (The "proper definition" of a statutory term is a "[p]urely legal question[.]"); *see also* Shopify Inc. MTD 17. The other case they cite, *In re Carrier IQ, Inc., Privacy Litig.*, involved wholly different arguments, and was under a different statute with different text, context, and history. *See* 78 F. Supp. 3d 1051, 1084-87 (N.D. Cal. 2015) (interpreting federal statute in light of, *e.g.*, the Senate Judiciary Committee report and letters to Senator Franken—none of which bear on the interpretation of Section 635). Perhaps unsurprisingly, the Oppositions cite nothing to support the proposition that the definition at issue in *In re Carrier IQ* has any relevance here.

Nor do the Oppositions provide any direct response to Shopify Inc.'s showing that the plain text, statutory context, and rule of lenity all make clear that Section 635 uses the term "device" in a way that cannot be applied to computer code. *See* Shopify Inc. MTD 17-18.[10] The Oppositions address none of those indicia of statutory meaning, but instead skip straight to arguing that, because CIPA was enacted to "giv[e] greater protection to privacy interests," when a court is "faced with two possible interpretations of CIPA" it must pick "the interpretation that provides the greatest privacy protection." Inc. Opp. 22. But that runs afoul of the well-established rule that courts are "bound by a statute's plain text," *Lucent Techs., Inc. v. Bd. of Equalization*, 241 Cal. App. 4th 19, 38 (2015), and may resort to "other aids, such as the statute's purpose" only where "the text of the statute does not speak to the question," *Bacilio v. City of Los Angeles*, 28 Cal. App. 5th 717, 724-

[10] The Oppositions misrepresent Shopify Inc.'s argument as "amount[ing] to asking this Court to find that because software code did not exist at the time the statute was implemented in 1967" it is not governed by CIPA, and then devote the rest of their discussion to attacking that strawman. Inc. Opp. 21. But Shopify Inc.'s MTD says nothing even remotely resembling that argument—either on the page cited in the Inc. Opp. (Shopify Inc. MTD 17) or anywhere else.

25 (2018). What is more, the limitless principle advanced by the Oppositions—that regardless of what its text says, Section 635 must always be given the more expansive reading—is contradicted by the very cases they cite. As those decisions recognized, CIPA is a "coherent statutory scheme" with clearly defined limits—which courts do not transgress even if it would be more protective of privacy. *See Flanagan v. Flanagan*, 27 Cal. 4th 766, 776 (2002) (citing *Ribas v. Clark*, 38 Cal. 3d 355, 360-361 (1985)), *cited at* Inc. Opp. 22. For instance, courts have recognized that CIPA was passed with the goal of "protect[ing] against the intentional, nonconsensual recording of telephone conversations," and so it acts to bar only recording or eavesdropping of the conversation itself, "not later dissemination" or "secondhand repetition" of its contents (even though prohibiting that, too, would give greater privacy protection). *Id.* at 775.

The Oppositions' attempt to characterize Section 635 as a boundless prohibition that must grow broader at every turn fails. Per the statute's text, the Legislature made the choice to outlaw only those things that could be (among other things) "manufacture[d]," "assemble[d]," "transport[ed]," or "import[ed]." Because one cannot do any of those things to intangible code, the SAC—which is based only on such code—does not state a claim under Section 635.

b. <u>The Section 635 claim fails because the SAC fails to allege facts showing that Shopify Inc.'s code was "primarily or exclusively designed" for eavesdropping.</u>

The Oppositions assert that because the SAC alleges that Shopify Inc.'s code is "designed to enable Shopify[ Inc.]'s computer network to intercept … communications" that conclusively establishes that the code was "primarily or exclusively" designed for eavesdropping. Inc. Opp. 22 (quoting SAC ¶ 4). But Shopify Inc.'s MTD already explained (at 19) why that allegation is insufficient: It is nothing more than a "legal conclusion couched as a factual allegation"—i.e., a "threadbare recital[] of the elements of [Plaintiff's] cause of action"—which "will not do" even at the motion to dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Oppositions similarly fail in their attempt to resolve the SAC's admission that the purpose of Shopify Inc.'s code "is to facilitate payments." Inc. Opp. 22-23. According to the Oppositions, "[w]hat one does with a communication after it" has been recorded is irrelevant to whether the purpose was "primarily" to eavesdrop. *Id.* at 22. But, as Shopify Inc.'s MTD explained

(at § IV.C.3.b)—and the Oppositions do not dispute—if that is correct, then a criminal violation occurs every time any consumer makes a credit card purchase, whether online or in a physical store, since the consumer's information is always sent to a payment processor. The Oppositions offer no theory for why the Legislature would have meant to outlaw all such routine commercial transactions—or why, in a statute targeted only at devices with specific purposes, the Legislature would have meant for courts to disregard the purpose to which the device was being put. Nor do they grapple with the fact that their reading—which would apply to any device that sends information (for any purpose) to an entity not specifically known to the user—would render illegal almost every cellphone, smart device, and computer connected to the internet (all of which do so routinely for wholly benign purposes). Because the SAC's Section 635 claim is based on an untenable reading of the statute, it fails and must be dismissed.

4. *The SAC fails to state a claim for invasion of privacy and intrusion upon seclusion because it does not allege facts showing that Shopify Inc. committed an "egregious" or "highly offensive" privacy intrusion.*

In defense of the SAC's invasion of privacy claims, the Oppositions primarily argue that "whether an intrusion is 'highly offensive' is one that cannot be resolved at the pleading stage." Inc. Opp. 23. But that simply ignores the cases cited in Shopify Inc.'s MTD doing just that. *See, e.g.*, *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (dismissing invasion of privacy claims because "Plaintiffs have failed to establish that Defendant's conduct 'amounts to a serious invasion' of the protected privacy interest"); *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) (dismissing intrusion on seclusion claims because "Plaintiffs' allegations do not plausibly rise to the level of intrusion necessary to establish an intrusion claim"); *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 993 (2011) (sustaining demurrer of invasion of privacy claims because "the conduct of which [plaintiff] complains does not meet the standard of 'highly offensive'").[11]

So, the Oppositions fall back to simply insisting that the acts alleged here are "undoubtedly

[11] The Oppositions' assertion (at 23) that "Defendants concede that Plaintiff alleges he had a reasonable expectation of privacy" is demonstrably false. Shopify Inc.'s MTD (at 10-11) specifically explained that the SAC's allegations affirmatively negated any expectation of privacy.

offensive." Inc. Opp. 24. But the Oppositions fail to grapple with (indeed, they do not cite the relevant case law at all) the rule that "routine commercial behavior"— even behavior that involves "obtaining" and "using" a "plaintiff's address without his knowledge or permission"—does not rise to the level required to state a privacy claim. *Folgelstrom*, 195 Cal. App. 4th at 992. As a result, the Oppositions cite *nothing* in the SAC which could even purportedly distinguish the acts alleged here from routine commercial transactions, as required to state a claim. *See* Inc. Opp. § IV.F (including no cites to the SAC).[12]

The Oppositions' argument—from its assertion that these claims categorically cannot be dismissed, to its failure to engage with the "routine" nature of the acts alleged, to its wholesale failure to engage with (let alone distinguish) the caselaw cited in Shopify Inc.'s MTD—fails through and through. The privacy claims must be dismissed.

5. *The SAC fails to state a Penal Code Section 502 claim, because it fails to allege facts showing that Shopify Inc. accessed Plaintiff's iPhone "without permission."*

For the reasons given in Shopify USA's MTD Reply § I.C.5, the Oppositions fail to show that the SAC alleges facts showing that Shopify Inc. overcame a technical or code-based barrier to access Plaintiff's device, and hence that Shopify Inc. acted "without permission" as defined in (and required under) Section 502. Accordingly, the SAC's claim under this statute must be dismissed.

6. *The SAC fails to state a claim under the UCL.*

For the reasons given in Shopify USA's MTD Reply §§ I.C.6.a-I.C.6.c, the Oppositions fail to show that the SAC alleges facts required to state a claim for an "unlawful," "fraudulent," or "unfair" practice under the UCL. Accordingly, that claim must be dismissed.

## II. CONCLUSION

Shopify Inc. respectfully requests that the Court dismiss the SAC.

---

[12] Plaintiff previously attempted to support his claim by asserting that what Shopify Inc. is accused of is "akin to" unlawfully accessing a "credit report." ECF No. 37 at 22-23. After Shopify Inc. demonstrated that assertion was inaccurate, *see* ECF No. 42 at 14-15 (explaining how credit reports contain far more sensitive information than what Shopify Inc. is alleged to have processed here), Plaintiff (rightly) abandoned that argument. Notably, though, he makes no substitute in its place, leaving his assertion that Shopify Inc. committed an "egregious" violation wholly unsupported.

Dated: April 6, 2022

Respectfully Submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Jacob M. Heath*
JACOB M. HEATH
THOMAS FU
Attorneys for Defendants
Shopify Inc., Shopify (USA) Inc., and
Shopify Payments (USA) Inc.