1   COOLEY LLP
    BENEDICT HUR (224018)
2   (bhur@cooley.com)
    SIMONA AGNOLUCCI (246943)
3   (sagnolucci@cooley.com)
    JOSHUA ANDERSON (312836)
4   (joshua.anderson@cooley.com)
    TIFFANY M. LIN (321472)
5   (tiffany.lin@cooley.com)
    3 Embarcadero Center, 20th Floor
6   San Francisco, California 94111-4004
    Telephone:     +1 415 693 2000
7   Facsimile:     +1 415 693 2222
8

9   Attorneys for Defendants
    Shopify Inc.; Shopify (USA) Inc.; and Shopify
10  Payments (USA) Inc.

11

12                  UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14                       OAKLAND DIVISION

15  BRANDON BRISKIN, on behalf of himself    Case No. 21-cv-06269-PJH
    and those similarly situated,
16                                           **SHOPIFY INC.; SHOPIFY (USA) INC.; AND
                   Plaintiff,                SHOPIFY PAYMENTS (USA) INC.'S
17                                           MOTION TO DISMISS**
18        v.                                 Date:      December 4, 2025
19  SHOPIFY INC.; SHOPIFY (USA) INC.; and    Time:      1:30 p.m.
    SHOPIFY PAYMENTS (USA) INC.,             Location:  Courtroom 3, 3rd Floor
20                                                      1301 Clay Street
                   Defendants.                          Oakland, California
21                                           Judge:     Hon. Phyllis J. Hamilton
22
                                             Date Action Filed: August 13, 2021
23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................. 1

STATEMENT OF ISSUES TO BE DECIDED ..................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................... 1

I.    INTRODUCTION ........................................................................................ 1

II.   BACKGROUND ......................................................................................... 3

III.  LEGAL STANDARD .................................................................................. 5

IV.   ARGUMENT ............................................................................................... 6

    A.    Plaintiff's allegations of deception invoke Rule 9(b) for all claims. ..................... 6

    B.    Plaintiff's CIPA, intrusion upon seclusion and invasion of privacy claims
        are untimely. ............................................................................................ 7

        1.    Plaintiff does not plead the time and manner of the discovery. ................ 7

        2.    Plaintiff fails to show the inability to have made earlier discovery
             despite reasonable diligence. ......................................................... 9

    C.    Plaintiff's CIPA, CDAFA, invasion of privacy, and intrusion upon
        seclusion claims should be dismissed because there is no allegation that
        Shopify's conduct was willful or intentional. ............................................... 9

    D.    The SAC fails to state a claim against Shopify for invasion of privacy
        under the California Constitution, or for intrusion upon seclusion. ..................... 11

        1.    The SAC fails to allege anything more than "routine commercial
             behavior." ................................................................................. 11

    E.    The SAC fails to state a claim against Shopify under CIPA Section 631(a). ....... 13

        1.    Shopify is an authorized party to the communication. ........................... 14

        2.    The SAC does not plausibly allege that "contents" of Plaintiff's
             communications were read while "in transit." ................................... 16

        3.    There is no alleged violation of the remaining CIPA Section 631(a)
             clauses. .................................................................................... 17

        4.    The SAC fails to state a claim against Shopify under CIPA Section
             635. ......................................................................................... 18

    F.    The SAC fails to allege actual damages as required by CDAFA. ....................... 20

    G.    Plaintiff's UCL claim should be dismissed. ................................................... 21

        1.    Plaintiff lacks statutory standing under the UCL. ................................. 21

        2.    The SAC fails to allege a violation of existing law on which to base
             an "unlawful" practice claim. ....................................................... 23

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-i-

**SHOPIFY INC.; SHOPIFY (USA) INC.; AND
SHOPIFY PAYMENTS (USA) INC.'S MOTION
TO DISMISS; 21-CV-06269-PJH**

**TABLE OF CONTENTS**
(continued)

Page

3. The SAC fails to meet the heightened particularity standard to establish a "fraudulent" practice. ............................................................. 24

4. The SAC fails to sufficiently allege an "unfair" practice. ........................ 24

V. CONCLUSION ................................................................................................. 25

Cooley LLP
Attorneys at Law
San Francisco

-ii-

Shopify Inc.; Shopify (USA) Inc.; and
Shopify Payments (USA) Inc.'s Motion
to Dismiss; 21-cv-06269-PJH

# TABLE OF AUTHORITIES

**Page(s)**

*Abagninin v. AMVAC Chem. Corp.*,
  545 F.3d 733 (9th Cir. 2008).................................................................. 6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................... 5, 8, 25

*B.K. v. Desert Care Network*,
  2024 WL 5338587 (C.D. Cal. Aug. 22, 2024)........................................ 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................... 5

*Borg-Warner Protective Servs. Corp. v. Superior Ct.*,
  75 Cal. App. 4th 1203 (1999) ....................................................... 14

*Brodsky v. Apple Inc.*,
  445 F. Supp. 3d 110 (N.D. Cal. 2020) ............................................... 16

*Calhoun v. Google LLC*,
  526 F. Supp. 3d 605 (N.D. Cal. 2021) ................................................ 7

*Campbell v. Facebook Inc.*,
  77 F. Supp. 3d 836 (N.D. Cal. 2014) ................................................ 22

*Coffee v. Google, LLC*,
  No. 20-CV-03901-BLF, 2022 WL 94986 (N.D. Cal. Jan. 10, 2022) ..................... 25

*Cohen v. Casper Sleep Inc.*,
  No. 17cv9325, 2018 WL 3392877 (S.D.N.Y. July 12, 2018)............................ 19

*Doe I v. Google LLC*,
  741 F. Supp. 3d 828 (N.D. Cal. 2024) ........................................ 7, 10, 11

*Doe v. Cnty. of Santa Clara*,
  No. 23-CV-04411-WHO, 2024 WL 3346257 (N.D. Cal. July 8, 2024)..................... 20

*Doe v. Meta Platforms, Inc.*,
  690 F. Supp. 3d 1064 (N.D. Cal. 2023) .............................................. 20

*Esparza v. UAG Escondido A1 Inc.*,
  No. 23CV0102 DMS(KSC), 2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024)............ 18

*In re Finjan Holdings, Inc.*,
  58 F.4th 1048 (9th Cir. 2023) ....................................................... 6

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*,
  9 F.4th 1167 (9th Cir. 2021) ....................................................... 14

Cooley LLP
Attorneys at Law
San Francisco

1

**TABLE OF AUTHORITIES**
continued

2

Page(s)

3

*Foman v. Davis*,
371 U.S. 178 (1962) .................................................................................................. 6

4

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797 (2005) .......................................................................................... 7, 9

5

6

*Gardiner v. Walmart Inc.*,
No. 20-CV-04618-JSW, 2021 WL 2520103 (N.D. Cal. Mar. 5, 2021) ................................. 23

7

8

*In re Gilead Scis. Secs. Litig.*,
536 F.3d 1049 (9th Cir. 2008) .................................................................................. 5

9

*Gonzalez v. Planned Parenthood of L.A.*,
759 F.3d 1112 (9th Cir. 2014) .................................................................................. 6

10

11

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ................................................................. 12, 18

12

13

*In re Google, Inc. Priv. Policy Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ....................................................................... 13

14

*Gutierrez v. Converse Inc.*,
No. 23-6547-KK-MARx, 2024 WL 3511640 (N.D. Cal. July 12, 2024) .............................. 17

15

16

*Gutierrez v. Converse Inc.*,
No. 24-4797, 2025 WL 1895315 (9th Cir. July 9, 2025) .............................................. 15

17

18

*Hadley v. Kellogg Sales Co.*,
243 F. Supp. 3d 1074 (N.D. Cal. 2017) ................................................................... 25

19

*Harrill v. Emanuel Med. Ctr.*,
No. 2:23-CV-01672-DC-CKD, 2025 WL 1635428 (E.D. Cal. June 9, 2025) ......................... 7

20

21

*Hayter v. PHH Mortg. Corp.*,
No. 15-CV-03332-LB, 2016 WL 3902483 (N.D. Cal. July 19, 2016) .................................. 9

22

23

*Heerde v. Learfield Commc'ns, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024) ..................................................................... 19

24

*Hill v. NCAA*,
7 Cal. 4th 1 (1994) ................................................................................................ 13

25

26

*Hodsdon v. Mars, Inc.*,
891 F.3d 857 (9th Cir. 2018) ........................................................................... *passim*

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

SHOPIFY INC.; SHOPIFY (USA) INC.; AND
SHOPIFY PAYMENTS (USA) INC.'S MOTION
TO DISMISS; 21-CV-06269-PJH

1

**TABLE OF AUTHORITIES**
continued

2

**Page(s)**

3    *Horti v. Nestlé HealthCare Nutrition, Inc.*,
       No. 21-CV-09812-PJH, 2022 WL 2441560 (N.D. Cal. July 5, 2022).....................................23
4

5    *Hubbard v. Google LLC*,
       No. 19-CV-07016-SVK, 2024 WL 3302066 (N.D. Cal. July 1, 2024) .................................20

6
     *In re iPhone Application Litig.*,
7      844 F. Supp. 2d 1040 (N.D. Cal. 2012) .................................................................................13

8    *Johnson v. Blue Nile, Inc.*,
       No. 20-cv-8183-LB, 2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) .......................................14
9

10   *Licea v. Cinmar*,
       LLC, 659 F. Supp. 3d 1096 (C.D. Cal. 2023).......................................................................17

11   *Love v. Ladder Fin., Inc.*,
       No. 23-cv-04234-VC, 2024 WL 2104497 (N.D. Cal. May 8, 2024)....................................14
12

13   *Low v. LinkedIn Corp.*,
       900 F. Supp. 2d 1010 (N.D. Cal. 2012) .................................................................................13
14

15   *Lucent Techs., Inc. v. Bd. of Equalization*,
       241 Cal. App. 4th 19 (2015) ..................................................................................................19

16   *Muha v. Experience Info. Sols., Inc.*,
       106 Cal. App. 5th 199 (2024) ................................................................................................21
17

18   *Naimi v. Starbucks Corp.*,
       798 F. App'x 67 (9th Cir. 2019) ............................................................................................23
19

20   *Napear v. Bonneville Int'l Corp.*,
       669 F. Supp. 3d 948 (E.D. Cal. 2023)......................................................................................8

21   *R.C. v. Sussex Publishers, LLC*,
       No. 24-CV-02609-JSC, 2025 WL 948060 (N.D. Cal. Mar. 28, 2025)..................................17
22

23   *Rodriguez v. Google LLC*,
       No. 20-CV-04688-RS, 2021 WL 6621070 (N.D. Cal. Aug. 18, 2021) .................................17
24

25   *Rubke v. Capitol Bancorp Ltd*,
       551 F.3d 1156 (9th Cir. 2009)..................................................................................................6

26   *Ruiz v. Gap, Inc.*,
       540 F. Supp. 2d 1121 (N.D. Cal. 2008) .................................................................................13
27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF AUTHORITIES**
continued

**Page(s)**

*Saleh v. Nike, Inc.*,
    562 F. Supp. 3d 503 (C.D. Cal. 2021) .................................................................. 19

*In re Sequoia Benefits & Ins. Data Breach Litig.*,
    No. 22-CV-08217-RFL, 2024 WL 1091195 (N.D. Cal. Feb. 22, 2024) ......................... 23, 25

*Shah v. Cap. One Fin. Corp.*,
    768 F. Supp. 3d 1033 (N.D. Cal. 2025) ................................................................ 13

*Silver v. Stripe Inc.*,
    No. 4:20-CV-08196-YGR, 2021 WL 3191752 (N.D. Cal. July 28, 2021) ..................... 23, 25

*Smith v. Intel Corp.*,
    No. 23-CV-05761-HSG, 2025 WL 2381617 (N.D. Cal. Aug. 15, 2025) ........................ 24

*Svenson v. Google Inc.*,
    65 F. Supp. 3d 717 (N.D. Cal. 2014) .................................................................... 17

*Tavernetti v. Superior Ct.*,
    22 Cal. 3d 187 (1978) ...................................................................................... 13

*U.S. v. Christensen*,
    828 F.3d 763 (9th Cir. 2015) .............................................................................. 9

*U.S. v. Schweihs*,
    569 F.2d 965 (5th Cir. 1978) .............................................................................. 19

*Valenzuela v. Keurig Green Mountain, Inc.*,
    674 F. Supp. 3d 751 (N.D. Cal. 2023) ............................................................. 13, 17

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ............................................................................ 6, 7

*Wesch v. Yodlee, Inc.*,
    No. 20-CV-05991-SK, 2021 WL 6206644 (N.D. Cal. July 19, 2021) ......................... 21

*Williams v. DDR Media, LLC*,
    No. 22-cv-03789-SI, 2023 WL 5352896 (N.D. Cal. Aug. 18, 2023) .......................... 14

*Williams v. What If Holdings, LLC*,
    No. C 22-03780 WHA, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ...................... 16

*Yoon v. Lululemon USA, Inc.*,
    549 F. Supp. 3d 1073 (C.D. Cal. 2021) ............................................................ 17, 19

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

vi

SHOPIFY INC.; SHOPIFY (USA) INC.; AND
SHOPIFY PAYMENTS (USA) INC.'S MOTION
TO DISMISS; 21-CV-06269-PJH

1

**TABLE OF AUTHORITIES**
continued

2

Page(s)

3

*In re Zynga Priv. Litig.*,
  750 F.3d 1098 (9th Cir. 2014) ................................................................. 16

4

**Statutes**

5

6

Cal. Bus. & Prof. Code § 17200 ............................................................... 21

7

Cal. Bus. & Prof. Code § 17204 ............................................................... 21

8

Cal. Bus. & Prof. Code § 22575 ............................................................... 23

9

Cal. Civ. Code § 1798.110(a) ................................................................... 15

10

Cal. Civ. Code § 1798.140(j)(1) ............................................................... 15

11

Cal. Civ. Code § 1798.140(ag) ................................................................. 15

12

Cal. Civ. Code § 1798.140(ai) .................................................................. 15

13

Cal. Civ. Code § 1798.150(c) ................................................................... 23

14

Cal. Civ. Code § 2304 .............................................................................. 15

15

Cal. Civ. Code § 2305 .............................................................................. 15

16

Cal. Civ. Proc. Code § 340(a) .................................................................... 7

17

Cal. Penal Code § 502(c)(1) ....................................................................... 9

18

Cal. Penal Code § 502(c)(2) ....................................................................... 9

19

Cal. Penal Code § 502(e)(1) ............................................................... 20, 21

20

Cal. Penal Code § 631(a) ................................................................. *passim*

21

Cal. Penal Code § 635 ....................................................................... 18, 19

22

**Other Authorities**

23

Federal Rule of Civil Procedure 12(b)(6) ................................................... 1

24

Federal Rule of Civil Procedure 8 ............................................................ 24

25

Federa Rule of Civil Procedure 9(b) .............................................. 6, 7, 24

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**NOTICE OF MOTION AND MOTION**

**TO ALL ATTORNEYS OF RECORD:** PLEASE TAKE NOTICE that the following Motion will be heard on December 4, 2025, in Courtroom 3, 3rd Floor, of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California 94612, with the Honorable Phyllis J. Hamilton presiding.

Defendants Shopify Inc., Shopify (USA) Inc., and Shopify Payments (USA) Inc. (collectively "Shopify") hereby move to dismiss Plaintiff Brandon Briskin's Second Amended Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). The Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities contained herein, the concurrently filed Request for Judicial Notice ("RJN"), the Declaration of Tiffany Lin in Support of the RJN and attached exhibits, all pleadings and other papers filed in this action, and any other evidence or argument that may be presented to the Court in connection with this Motion.

**STATEMENT OF ISSUES TO BE DECIDED**

Whether the SAC should be dismissed with prejudice for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Despite the thicket of confusing, often contradictory allegations in Plaintiff's Second Amended Complaint ("SAC," Dkt. No. 44), the premise underlying Plaintiff's lawsuit is as clear as it is difficult to believe. He claims that he went online to purchase apparel from I Am Becoming ("IABMFG"), entered payment information, completed a credit card transaction, and did so believing that no one but IABMFG would be involved in the transaction. According to Plaintiff, the notion that online service providers like Shopify or payment processors like Stripe might be involved in processing data for IABMFG is utterly foreign; in his telling, it is a concept so extreme that it constitutes an "egregious breach of social norms."

But what Plaintiff pleads ignorance of is something readily understood by anyone who has ever set up an email account. By design, the internet is an interconnected system—it's called the World Wide Web for a reason. A single website may be hosted on one company's servers, built

1   using another company's tools, embedded with features from other providers, transmitted through

2   an internet service provider, and displayed through a user's third-party browser.  This is evident in

3   the privacy policies of the many thousands of websites an ordinary person would visit every year.

4       It should be even more obvious to someone using a credit card.  IABMFG is an online

5   direct-to-consumer clothing merchant.  It is not a bank.  It is simply not plausible to allege, as

6   Plaintiff does, that users reasonably believe only IABMFG would be involved in processing the

7   data needed to complete his purchase.  But based on that very notion, Plaintiff's theory is that each

8   and every online transaction that involves third parties not specifically named in a privacy policy

9   triggers criminal and civil liability for wiretapping, hacking, and privacy violations.  This theory is

10  meritless.

11      The SAC stumbles on the threshold issue of timeliness.  Plaintiff alleges that he completed

12  a single transaction on the IABMFG website in 2019, meaning each of his privacy claims was

13  facially barred by the applicable statutes of limitation when he filed suit more than two years later.

14  To avoid the limitations problem, Plaintiff claims that his lawyers employed special tools on the

15  IABMFG website in 2021 and found that, at that time, IABMFG used Shopify's services—a state

16  of facts consistent with IABMFG's disclosures.  Nothing in the SAC, however, establishes that the

17  "discovery" of what IABMFG was doing in 2021 has anything to do with what it may have done

18  in 2019 when Plaintiff made his purchase.  In fact, Plaintiff all but disclaims the ability to make

19  such allegations, contending it was not possible for him to know what Shopify may have collected

20  at the time.  The SAC hangs on mere speculation in this regard, which cannot support a claim.

21  Having failed to properly invoke the discovery rule, Plaintiff's privacy claims must be dismissed

22  as untimely.

23      Even reaching the merits of Plaintiff's claims, each fails for a multitude of reasons.  *First*,

24  the litany of intentional torts Plaintiff asserts require a showing of intent Plaintiff cannot make.

25  Plaintiff merely takes aim at the routine operation of the internet, and fails to support the idea that

26  there is a nefarious plot to intentionally steal his data.  On the contrary, he admits that Shopify

27  provided standard templates that disclosed its role, and he nowhere alleges that Shopify encouraged

28  merchants like IABMFG to alter or diverge from those disclosures.  On the contrary, the judicially

1    noticeable materials make clear that Shopify contractually *required* the merchants it served to post

2    a privacy policy disclosing that Shopify was processing users' data.

3        *Second*, because Plaintiff challenges the routine operation of the internet in general and

4    credit card processing in particular, he cannot plausibly allege the egregious breach of social norms

5    that California law requires to support constitutional and common law privacy claims.

6        *Third*, under the California Invasion of Privacy Act ("CIPA"), as properly construed, a

7    company that collects and processes user data only as part of the services offered to a website is

8    not considered a third party to the communications.  And here, Plaintiff expressly pleads that

9    Shopify acted as a service provider processing payments on behalf of IABMFG.  This common-

10   sense conclusion is consistent not just with ordinary agency principles, but also with the California

11   Consumer Privacy Act ("CCPA"), which the California Legislature enacted specifically to govern

12   internet-based data collection and processing.  Under that law, companies that merely process data

13   on behalf of a website need not even be affirmatively disclosed to users.  It would be a strange

14   jurisprudence to impose criminal liability under CIPA for an "omission" the CCPA permits, but

15   that is the perverse result Plaintiff's theory compels.  But even if Shopify were a true third party

16   under CIPA, the SAC fails to supply sufficient factual support for a substantive violation.  For

17   instance, the SAC fails to plausibly allege that Shopify "read" or attempted to read the contents of

18   his communications with IABMFG while they were in transit.  Similarly, the SAC's enumeration

19   of all the services Shopify provides negates the conclusory statement that Shopify's services

20   constitute a device that is designed primarily or exclusively for eavesdropping.

21       *Fourth*, Plaintiff's claim under the California Comprehensive Data Access & Fraud Act

22   fails because he has not, and cannot, allege he has suffered any harm within the meaning of that

23   statute.  *Finally*, the lack of harm also dooms Plaintiff's claim under the Unfair Competition Law

24   ("UCL") which must also be dismissed for failure to establish a predicate violation.

25       Plaintiff has had several chances to hone his fanciful theory.  His claims should now be

26   dismissed with prejudice.

27   **II.    BACKGROUND**

28       Defendants  Shopify  Inc.,  Shopify  (USA)  Inc.,  and  Shopify  Payments  (USA)  Inc.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

SHOPIFY INC.; SHOPIFY (USA) INC.; AND
SHOPIFY PAYMENTS (USA) INC.'S MOTION
TO DISMISS; 21-CV-06269-PJH

1   (collectively "Shopify") bring this renewed motion to dismiss.  Plaintiff has amended the complaint

2   twice, once as of right and once with leave of court, over Shopify's objections.  *See* Dkt. No. 43.

3          The operative SAC alleges that in June 2019, Plaintiff Brandon Briskin (a California

4   resident) used his iPhone's Safari browser to purchase fitness apparel from IABMFG's online

5   storefront, located at iambecoming.com.  *See* SAC ¶¶ 8, 57.  IABMFG is a Shopify merchant,

6   meaning Shopify allegedly generated the website's payment form and processed the data users

7   entered into it.  *See id.* ¶¶ 10, 32.  Based solely on a test transaction Plaintiff's counsel conducted

8   nearly two years later, in April 2021, the SAC alleges Shopify collected Plaintiff's purchase

9   details—including his name, address, credit card information, and item purchased—in order to

10  process the 2019 transaction.  *Id.* ¶¶ 24–34.  However, nothing in the SAC indicates that the data

11  transmissions observed in April 2021 are consistent with data transmissions that occurred when

12  Plaintiff used the website in 2019.  While Plaintiff asserts that his data was collected by operation

13  of the Shopify source code, *see, e.g., id.* ¶ 60, he also disclaims knowledge and even the ability to

14  discover what may have been shared before counsel's investigation in 2021.  *See id.* ¶ 30.

15         In April 2021, IABMFG's privacy policy disclosed that it would share customers' personal

16  information—including specifically payment information—with third parties like credit card

17  processors or other vendors that support the website.  *See* RJN Ex. A, at 2 (IABMFG January 2021

18  Privacy Policy).  In a section of the privacy policy titled "Sharing with Third Parties," IABMFG

19  offered to disclose a "complete and up-to-date list" of service providers with whom it shares

20  customer data upon the customer's request.  *Id.*   Despite this, Plaintiff alleges that Shopify

21  "deliberately chose to hide its involvement from consumers" to make it appear that merchants

22  "handle payment themselves."  SAC ¶ 52.  Similarly, the SAC claims that Shopify designed its

23  payment pages to omit any express references to its role, although it contradicts this assertion by

24  also alleging that the default merchant template (*i.e.*, the store theme)—which the *merchants* could

25  choose to modify—disclosed Shopify's participation.  *See id.* ¶¶ 4, 53.

26         According to the SAC, Shopify uses the information it collects from merchants to generate

27  risk scores for particular consumers and transactions, to track consumers across different Shopify

28  merchant websites, and to block or delay transactions deemed "high risk."  *Id.* ¶¶ 42–47.  Despite

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

SHOPIFY INC.; SHOPIFY (USA) INC.; AND
SHOPIFY PAYMENTS (USA) INC.'S MOTION
TO DISMISS; 21-CV-06269-PJH

1  disclaiming knowledge of what was collected in his 2019 transaction, Plaintiff asserts that Shopify

2  processed his information to facilitate his transaction and thereafter used his data to generate a "risk

3  score" when he sought goods from other merchants that used Shopify.  *Id.* ¶¶ 42, 57–66.

4      The crux of the SAC's allegations is that Shopify intentionally and deceptively structured

5  its relationship with merchant websites like IABMFG in order to harvest consumers' private

6  information without their knowledge or consent.  *See id.* ¶¶ 1–3.  What the SAC conveniently omits

7  is that Shopify required merchant websites to disclose their use of Shopify and obtain user consent

8  for the use and access to their data.  *Id.*; *see also* RJN Ex. B, at 1 (Shopify June 2019 Privacy

9  Policy).  For example, Shopify's Privacy Policy during the relevant time period required merchants

10  like IABMFG to "post an up-to-date and accurate privacy policy" and "obtain consent from your

11  customers for the use and access of their personal information by Shopify."  RJN Ex. B, at 1.

12      Despite the ready availability of documents undermining Plaintiff's narrative, Plaintiff

13  seeks to represent a proposed class of extraordinary breadth: "[a]ll natural persons who, between

14  August 13, 2017 and the present, submitted payment information via Shopify's software while

15  located in California."  SAC ¶ 68.  The SAC alleges six claims: a violation of the California

16  Invasion of Privacy Act ("CIPA") Sections 631 and 635, invasion of privacy under the California

17  Constitution, intrusion upon seclusion, a violation of the California Computer Data Access and

18  Fraud Act ("CDAFA") Section 502, and a violation of California's Unfair Competition Law

19  ("UCL").  *See id.* ¶¶ 76–97 (CIPA Sections 631 and 635), 98–107 (invasion of privacy), 108–119

20  (intrusion upon seclusion), 120–128 (CDAFA), 129–145 (UCL).

21  ## III.    LEGAL STANDARD

22      To survive a motion to dismiss, a plaintiff must plead facts showing that his right to relief

23  rises above "the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

24  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

25  do not suffice," and pleadings that are "no more than conclusions, are not entitled to the assumption

26  of truth."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  A court need not accept as true

27  "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

28  inferences."  *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

SHOPIFY INC.; SHOPIFY (USA) INC.; AND
SHOPIFY PAYMENTS (USA) INC.'S MOTION
TO DISMISS; 21-CV-06269-PJH

1    Nor must a court "accept as true allegations that contradict matters properly subject to judicial

2    notice or by exhibit." *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014)

3    (citations omitted).

4        Under established Ninth Circuit law, claims that are grounded in fraud must clear the

5    heightened pleading requirements of Rule 9(b), regardless of whether fraud is actually an "essential

6    element" of that claim. *In re Finjan Holdings, Inc.*, 58 F.4th 1048, 1057 (9th Cir. 2023) (quoting

7    *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003)). If, as here, "a plaintiff . . .

8    choose[s] [] to allege in the complaint that the defendant has engaged in fraudulent conduct," then

9    "the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)."

10   *Vess*, 317 F. 3d at 1103–04. Rule 9(b) requires a plaintiff to state with particularity the

11   circumstances constituting fraud. Fed. R. Civ. P. 9(b).

12       The Court's discretion to dismiss a complaint with prejudice is "particularly broad in cases

13   such as this, where a plaintiff has previously been granted leave to amend and fails to add the

14   requisite particularity to her claims." *Rubke v. Capitol Bancorp, Ltd*, 551 F.3d 1156, 1167 (9th Cir.

15   2009); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). Dismissal without leave to amend is

16   appropriate in light of a plaintiff's "repeated failure to cure deficiencies by previous amendment."

17   *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008).

18   **IV.    ARGUMENT**

19       **A.    Plaintiff's allegations of deception invoke Rule 9(b) for all claims.**

20       This case centers on routine data processing for online shopping. Despite the everyday

21   nature of the conduct behind these allegations, Plaintiff spins a theory of deception and

22   concealment, hypothesizing that Shopify and merchants who use its services have conspired to

23   defraud consumers by concealing Shopify's role in facilitating transactions for online merchants.

24   *See* SAC ¶ 48 ("Shopify conceals its involvement with consumer transactions . . ."); *see also id.* ¶¶

25   52 ("Shopify deliberately chose to hide its involvement from consumers."), 131 ("Shopify

26   concealed and failed to disclose to the Class [seven separate alleged omissions]."), 132 ("[T]hese

27   omissions were misleading and deceptive."); 134 ("Shopify's conduct was fraudulent and deceptive

28   . . ."), 141 ("Absent Shopify's unlawful, unfair, and fraudulent conduct . . ."), 135 ("Shopify

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

SHOPIFY INC.; SHOPIFY (USA) INC.; AND
SHOPIFY PAYMENTS (USA) INC.'S MOTION
TO DISMISS; 21-CV-06269-PJH

1    actively concealed the facts . . ."), 144 (seeking "a declaration that the above-described trade

2    practices are fraudulent . . .").

3        These allegations render each of Plaintiffs' claims subject to the heightened pleading

4    requirements of Rule 9(b), meaning they must be "accompanied by the who, what, when, where,

5    and how of the misconduct charged." *Vess*, 317 F.3d at 1106 (internal quotation and citation

6    omitted). For example, in *Doe I v. Google*, the court held it was "appropriate to apply a Rule 9(b)

7    pleading standard" to plaintiffs' fraud-based allegations regarding Google's alleged interception of

8    their personal information on health care provider's websites. *Doe I v. Google LLC*, 741 F. Supp.

9    3d 828, 843 (N.D. Cal. 2024). Plaintiff does not come close to meeting the heightened particularity

10   that Rule 9(b) requires.

11       **B.    Plaintiff's CIPA, intrusion upon seclusion and invasion of privacy claims are
             untimely.**

12       Plaintiff's claims under CIPA, as well as those for intrusion upon seclusion and

13   constitutional invasion of privacy, fall outside of the applicable limitations periods and should

14   therefore be dismissed. *See* Cal. Civ. Proc. Code § 340(a) (one-year limitations period for CIPA);

15   *Harrill v. Emanuel Med. Ctr.*, No. 2:23-CV-01672-DC-CKD, 2025 WL 1635428, at *11 (E.D. Cal.

16   June 9, 2025) (two-year limitations period for constitutional privacy claim); *Calhoun v. Google

17   LLC*, 526 F. Supp. 3d 605, 624 (N.D. Cal. 2021) (same for an intrusion upon seclusion claim). The

18   alleged violations occurred upon the Plaintiff's purchase from the IABMFG site on June 14, 2019,

19   SAC ¶ 57, but he did not bring suit until over two years later on August 13, 2021. Dkt. No. 1.

20       The discovery rule does not save Plaintiff's claims. A plaintiff seeking the benefit of the

21   discovery rule must "specifically plead facts to show (1) the time and manner of discovery and (2)

22   the inability to have made earlier discovery despite reasonable diligence." *Fox v. Ethicon Endo-

23   Surgery, Inc*., 35 Cal. 4th 797, 808 (2005) (quoting *McKelvey v. Boeing N. Am., In.*, 74 Cal. App.

24   4th 151, 160 (1999)). Plaintiff cannot meet either requirement.

25       **1.    Plaintiff does not plead the time and manner of the discovery.**

26       Plaintiff alleges that he neither knew nor could have known about Shopify's alleged

27   misconduct until 2021, when his counsel visited the IABMFG website. But unlike most plausible

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

SHOPIFY INC.; SHOPIFY (USA) INC.; AND
SHOPIFY PAYMENTS (USA) INC.'S MOTION
TO DISMISS; 21-CV-06269-PJH

1    discovery rule allegations, Plaintiff does not allege that his counsel discovered in 2021 what

2    actually happened in 2019. Instead, the SAC describes the April 2021 discovery in present tense

3    only and offers nothing—not even speculation—to establish that Shopify's data collection was

4    substantively the same two years earlier. In other words, the SAC itself contradicts any basis for

5    Plaintiff's cursory allegation regarding his 2019 experience, which amounts to nothing more than

6    an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678; *see also*

7    *Napear v. Bonneville Int'l Corp.*, 669 F. Supp. 3d 948, 964 (E.D. Cal. 2023) (disregarding

8    contradictory allegations when evaluating a motion to dismiss).

9         This omission is material. The IABMFG privacy policy in effect at the time of counsel's

10   investigation in 2021 plainly disclosed the very data sharing at issue here. It directly stated that

11   IABMFG provided payment and other personal information to third parties that supported the

12   website, including payment processors. *See* RJN Ex. A, at 2. In other words, the 2021

13   "investigation" by Plaintiff's counsel—with the supposed "special software tools" and technical

14   skill—simply "discovered" what IABMFG's privacy policy already stated: that third parties like

15   Shopify support the website and facilitate payment.

16        Plaintiff cannot premise his claim on this lawful, fully disclosed data processing, so he

17   instead concocts a theory of nefarious, surreptitious data processing two years earlier. But the

18   lawful data processing discovered in 2021, without more, supplies no factual basis on which to

19   infer either that (1) IABMFG's data collection or sharing practices were the same in 2019 as in

20   2021, or (2) IABMFG failed to adequately disclose that processing in 2019 even though it

21   adequately disclosed that processing in 2021. *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys.,*

22   *Inc.*, 637 F.3d 1047, 1056 (9th Cir. 2011) ("In assessing the plausibility of an inference, we 'draw

23   on our judicial experience and common sense,' and consider 'obvious alternative explanations.'")

24   (quoting *Iqbal*, 556 U.S. at 679, 682) (citation modified). More than a sheer possibility is required

25   to state a plausible claim for relief and thereby "unlock the doors of discovery." *Iqbal*, 556 U.S. at

26   678.

27        Plaintiff cannot have it both ways. He cannot plead ignorance of his 2019 data collection

28   to invoke the discovery rule while offering unsupported and conclusory assertions that his data was

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

SHOPIFY INC.; SHOPIFY (USA) INC.; AND
SHOPIFY PAYMENTS (USA) INC.'S MOTION
TO DISMISS; 21-CV-06269-PJH

collected in 2019.  And the IABMFG privacy policy would foreclose a claim premised on counsel's 2021 investigation.  Counsel's discovery of fully disclosed, lawful conduct in 2021 cannot supply the basis for accusations of allegedly deceptive and fraudulent wrongdoing two years prior.

> ### 2. Plaintiff fails to show the inability to have made earlier discovery despite reasonable diligence.

The temporal sleight of hand is coupled with another misdirection: though Plaintiff focuses on the difficulty of discovering IABMFG's use of Shopify in 2021, *see* SAC ¶ 30, his claims are not clearly limited to data collection through IABMFG.  He purports to represent a class of all individuals who "submitted payment information via Shopify's software while located in California," SAC ¶ 68, and his operative claims refer broadly to "merchants."  *See, e.g.*, *id.* ¶ 82. Plaintiff alleges that over a million merchants use Shopify's services, and that he made purchases on the websites of other Shopify merchants—each of which was under an obligation to disclose their use of Shopify.  *See id.* ¶¶ 42, 62; *see also* RJN Ex. B, at 1.  Under California law, plaintiffs cannot take advantage of the discovery rule if they "have the opportunity to obtain knowledge from sources open to their investigation," such as the disclosures of any one of these merchants.  *See Fox*, 35 Cal. 4th at 808 (citation modified).

By focusing exclusively on just one website he contends did not mention Shopify, Plaintiff fails to meet his burden of pleading facts that plausibly establish his "inability to have made earlier discovery despite reasonable diligence." *Id.*

> ### C. Plaintiff's CIPA, CDAFA, invasion of privacy, and intrusion upon seclusion claims should be dismissed because there is no allegation that Shopify's conduct was willful or intentional.

Plaintiff's CIPA, CDAFA, invasion of privacy, and intrusion upon seclusion claims all require him to allege that Shopify acted with intent to violate each statute or law.  *See U.S. v. Christensen*, 828 F.3d 763, 791 (9th Cir. 2015) (CIPA § 631(a) requires allegations that defendant acted "consciously and deliberately with the goal of intercepting" plaintiff's private information.); Cal. Penal Code § 502(c)(1)–(c)(2) ("CDAFA") (requiring that defendant act "knowingly"); *Hayter v. PHH Mortg. Corp.*, No. 15-CV-03332-LB, 2016 WL 3902483, at *2 (N.D. Cal. July 19, 2016) ("[I]ntrusion [on a protected privacy right] must be intentional.").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

SHOPIFY INC.; SHOPIFY (USA) INC.; AND
SHOPIFY PAYMENTS (USA) INC.'S MOTION
TO DISMISS; 21-CV-06269-PJH

The SAC, however, alleges no facts plausibly supporting unlawful intent.  To the contrary, the well-pleaded allegations undermine Plaintiff's naked assertions.  For example, Plaintiff notes that Shopify's default template (*i.e.*, store theme) references Shopify.  *See* SAC ¶ 53.  That disclosure is irreconcilable with the claim that Shopify purposefully designed its checkout system to "conceal" its involvement.  *See id.* ¶¶ 87, 96.  And while Plaintiff contends Shopify provided instructions for businesses that wanted to remove references to Shopify if they wished, the SAC alleges the intent here was not to deceive consumers, but rather to make merchants it hosted appear more sophisticated.  *Id.* ¶¶ 52-53.  Nowhere does Plaintiff contend Shopify *encouraged* merchants to remove the footer, or that Shopify secretly intended for merchants not to comply with its requirement that they disclose their use of Shopify.  Plaintiff's theorized scheme to defraud simply defies credulity.

At most, Plaintiff alleges that, despite their commitments to Shopify, individual merchants *may* have failed to disclose Shopify's involvement in transactions to users.  But allegations of client misconduct cannot be imputed to a vendor absent facts, lacking here, showing the vendor deliberately orchestrated it.  *See Doe I*, 741 F. Supp. 3d at 841 ("[P]laintiff should not be able to get around the intent requirement by simply intoning that the source code provider intended for the clients not to follow instructions.").

The surrounding judicially noticeable facts further undermine any inference of intentional conduct.  At the time both Plaintiff and his counsel completed their transactions, Shopify's Privacy Policy required merchants to "post an up-to-date and accurate privacy policy" and "obtain consent" for Shopify's use and access to customer's personal information.  RJN Ex. B, at 1.  Even if IABMFG had failed to comply, Plaintiff does not allege that Shopify was aware of IABMFG's failure, or that Shopify condoned or encouraged IABMFG's alleged failure to comply.  In fact, the SAC suggests Shopify *did not* have such knowledge.  *See* SAC ¶ 54 (alleging Shopify does not review merchant pages for compliance).  A bare-bones conclusion that a defendant must have known about a client's failure to disclose is not enough—particularly in the face of allegations and judicially noticeable facts to the contrary.  *See, e.g.*, *B.K. v. Desert Care Network*, No. 2:23-cv-

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

SHOPIFY INC.; SHOPIFY (USA) INC.; AND
SHOPIFY PAYMENTS (USA) INC.'S MOTION
TO DISMISS; 21-CV-06269-PJH

05021-SPG-PD, 2024 WL 5338587, at *3 (C.D. Cal. Aug. 22, 2024) (dismissing CIPA claim alleging Meta knowingly received data from hospital websites because the complaint alleged no facts showing that Meta knew or intended the data to have been collected without consent); *Doe I*, 741 F. Supp. 3d at 841 (defendant's failure to prevent healthcare providers from using "tracking technologies" would not support intent against the backdrop of defendant's admonitions not to transmit sensitive data).

But even if Shopify had some level of awareness that IABMFG failed to disclose Shopify's role in the transaction—a fact the SAC contradicts, SAC ¶ 54—it would still not be enough to adequately allege intent.  Intent requires "more than mere awareness that an interception might occur due to the failure of the [website] to follow instructions."  *Doe I*, 741 F. Supp. 3d at 840 (holding that mere awareness "set[s] the legal bar too low").  Rather, some "purposeful[] and deliberate[]" misconduct is required.  *Id.* (quoting *Christensen*, 828 F.3d at 790).

Plaintiff is "all over the map on the issue of intent, and ultimately [he] fail[s] to offer a coherent narrative."  *Id.*

### D.    The SAC fails to state a claim against Shopify for invasion of privacy under the California Constitution, or for intrusion upon seclusion.

Setting aside the lack of intent, Plaintiff's invasion of privacy claim also fails because he has not alleged any "egregious breach" of social norms—only ordinary ecommerce practices that anyone with a credit card would anticipate.  *See supra* Section IV.C.  Plaintiff does not come close to the high bar for constitutional and common law privacy claims, and these claims should be dismissed.

#### 1.    The SAC fails to allege anything more than "routine commercial behavior."

Plaintiff's constitutional and common law privacy claims fail for the same reason: the SAC alleges nothing more than routine, disclosed, commercial conduct, including the utilization of cookies as part of Shopify's role supporting the IABMFG.  *See* SAC ¶¶ 2–3, 5, 7, 24–25, 39–40, 45–47, 52.[1]  The gravamen of his claim is that he did not know that anyone but an internet-based

---

[1] While Plaintiff references "tracking cookies' in the Complaint, it is unclear what role they actually play in his claims.  The delta between the payment-form information and the data he claims the

1    fitness apparel merchant would be involved in processing his online credit card payment.  The

2    assertion offends common sense and should not be credited.

3        Far from an "egregious breach of social norms," collecting purchase information to

4    facilitate commercial transactions, SAC ¶¶ 2–3, 24–25, and installing routine cookies to facilitate

5    payment processing and fraud prevention, SAC ¶¶ 5, 7, 39–40, 42, 45–47, happen on practically

6    every website that sells goods.  Any reasonable consumer would understand that a payment

7    processor would be involved in transactions like the one here.  Indeed, any adult with a credit card

8    would know that multiple parties are involved in credit card transactions *in any setting*, not just

9    online.  The checkout process at Safeway no doubt involves up to six different entities, if not more:

10   the customer, Safeway, Safeway's payment processor, the credit card company (*e.g.*, Mastercard),

11   the customer's bank, and Safeway's bank.  And the checkout process when making any online

12   purchase, such as on Safeway.com, necessarily requires the involvement of multiple entities,

13   including but not limited to the six listed above.  The involvement of these multiple third parties is

14   precisely why even common criminals know to use cash for transactions they wish to conceal.

15       IABMFG is a fitness apparel merchant, not a bank.  And Plaintiff used a credit card, not

16   cash, to make a purchase.  Engaging with a third-party payment processor (as well as the

17   consumer's own credit card company and the merchant's bank receiving the payment) falls

18   squarely within the ambit of "routine commercial behavior" and any reasonable consumer shopping

19   online—or in person, for that matter—would expect as such.  In a similar vein, despite what

20   Plaintiff's CDAFA claim would suggest, Shopify is not hacking Plaintiff's phone to obtain his

21   payment information and using it for nefarious purposes.  By Plaintiff's own allegations, Shopify

22   obtains it pursuant to an express contract with IABMFG, and uses the data to facilitate his payment

23   and protect against fraud and abuse.  *See* SAC ¶ 15.

24       This conduct is far from the outrageous conduct required to clear the high bar set for these

25   claims to be actionable.  *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 828–30 (N.D.

26   ────────────────────────

27   cookies collect appears to be metadata regarding his internet connection, such as his IP address,
     web browser, and device. *See* SAC ¶ 40.  In the absence of further clarity, Shopify understands his

28   claims to primarily concern payment information, given that the putative class definition
     encompasses those who provided payment information through Shopify's services.  *Id.* ¶ 68.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

SHOPIFY INC.; SHOPIFY (USA) INC.; AND
SHOPIFY PAYMENTS (USA) INC.'S MOTION
TO DISMISS; 21-CV-06269-PJH

Cal. 2020) (internal quotations and citations omitted) (explaining that courts treat these claims as "largely parallel" and set a unified high threshold for liability). The standard is demanding; courts have repeatedly held that "routine commercial behavior" consisting of the collection and disclosure of personal information—even social security numbers—does not qualify as a "highly offensive" or "serious" invasion of privacy. *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (URLs, page views, and browsing history); *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1127–28 (N.D. Cal. 2008) *aff'd*, 380 Fed. Appx. 689 (9th Cir. 2010) (social security numbers); *In re Google, Inc. Priv. Policy Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) (browsing history); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (addresses, geolocation, unique device identifier, gender, age, time zone, and app usage information); *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1047 (N.D. Cal. 2025) (employment information, bank account information, and eligibility for preapproval or approval for a credit card).

Further, even egregious invasions of privacy can be justified, and thus non-actionable, if they are in furtherance of a legitimate countervailing interest. *Hill v. NCAA*, 7 Cal. 4th 1, 38 (1994). By alleging Shopify collects information pursuant to a business contract for the purposes of facilitating his transaction and protecting vendors from fraud, Plaintiff's claim falls woefully short.

**E.    The SAC fails to state a claim against Shopify under CIPA Section 631(a).**

CIPA Section 631(a) contains three operative clauses protecting against "three distinct and mutually independent patterns of conduct": (i) making an unauthorized connection to a telephone or telegraph wire;[2] (ii) "willfully attempting to learn the contents or meaning of a communication in transit," and (iii) "attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192 (1978). Additionally, the fourth clause prohibits aiding and abetting violations of the first three clauses. *See* Cal. Penal Code § 631(a). The SAC is murky as to which clause(s) it invokes, but ultimately

---

[2]In accordance with this clause's plain language, Plaintiff previously conceded that this clause does not apply to the internet. *See* Dkt. No. 58, at 19 n.7; SAC ¶ 57 (alleging the relevant transaction took place on Plaintiff's iPhone's Safari browser); *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 756 (N.D. Cal. 2023) (dismissing CIPA 631(a) first clause claim where "Plaintiff accessed Defendant's website using the smartphone's internet capabilities, not the smartphone's telephonic capabilities"). As such, Shopify does not discuss this first clause further.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

SHOPIFY INC.; SHOPIFY (USA) INC.; AND
SHOPIFY PAYMENTS (USA) INC.'S MOTION
TO DISMISS; 21-CV-06269-PJH

1    it fails to state a claim under any of them.

2              **1.    Shopify is an authorized party to the communication.**

3         Section 631(a) prohibits third parties from learning and using the contents of a

4    communication without consent of the parties to the communication.  At the outset, Plaintiff cannot

5    state a Section 631(a) claim under any clause because the SAC fails to offer plausible allegations

6    that Shopify acted as anything other than a service provider for IABMFG.  That places Shopify

7    inside the transaction, not outside of it.

8         Where, as here, a defendant simply acted as a service provider for a party to the

9    communication, courts hold they are merely extensions of the party for purposes of CIPA liability.

10   In *Graham v. Noom*, for example, the court held that a software vendor providing analytics code

11   (code that collects data about user behavior, web traffic, and website performance) was not a third

12   party, but an extension of the website owner, absent allegations it received an independent benefit

13   from the user data.  533 F. Supp. 3d 823, 833 (N.D. Cal. 2021); *Love v. Ladder Fin., Inc.*, No. 23-

14   cv-04234-VC, 2024 WL 2104497, at *1 (N.D. Cal. May 8, 2024) (dismissing Section 631(a) claim

15   where allegations showed defendant only "provides a tool that allows [the web developer] to record,

16   track, and analyze the interactions that users have with its own site"); *Williams v. DDR Media,*

17   *LLC*, No. 22-cv-03789-SI, 2023 WL 5352896, at *4–5 (N.D. Cal. Aug. 18, 2023) (dismissing

18   Section 631(a) claim after finding recording software was "more akin to a tape recorder vendor

19   than an eavesdropper"); *Johnson v. Blue Nile, Inc.*, No. 20-cv-8183-LB, 2021 WL 1312771, at *1

20   (N.D. Cal. Apr. 8, 2021) (dismissing Section 631(a) claim because the plaintiff "does not plausibly

21   plead that [the defendant] eavesdropped on her communications with Blue Nile . . . only that [the

22   defendant] is Blue Nile's vendor for software services").

23        This holding flows directly from the proposition that CIPA must be construed in light of

24   ordinary common law agency principles.  *Borg-Warner Protective Servs. Corp. v. Superior Ct.,* 75

25   Cal. App. 4th 1203, 1207–08 (1999) (California statutes must be "construed in light of common

26   law principles unless it contains clear and unequivocal language that discloses an intent to depart

27   from, alter, or abrogate the common law rule concerning a particular subject matter."); *Flo & Eddie,*

28   *Inc. v. Sirius XM Radio, Inc.*, 9 F.4th 1167, 1176 (9th Cir. 2021) (applying *Borg-Warner*).  Under

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

SHOPIFY INC.; SHOPIFY (USA) INC.; AND
SHOPIFY PAYMENTS (USA) INC.'S MOTION
TO DISMISS; 21-CV-06269-PJH

1    those principles, IABMFG can empower an agent to do anything IABMFG is authorized to do.  *See*

2    Cal. Civ. Code §§ 2304, 2305 ("Every act which, according to this Code, may be done by or to any

3    person, may be done by or to the agent of such person for that purpose, unless a contrary intention

4    clearly appears.").  Nothing in CIPA suggests that the Legislature intended to limit a principal's

5    ability to delegate authority to an agent; indeed, that is why no one would question whether an

6    IABMFG employee could lawfully access Plaintiff's data to facilitate his purchase.

7         Treating service providers as extensions of the website is consistent with the California

8    Consumer Privacy Act ("CCPA") which, unlike CIPA, was specifically crafted by the Legislature

9    to govern online data collection.  *See Gutierrez v. Converse Inc.*, No. 24-4797, 2025 WL 1895315,

10   at *2 (9th Cir. July 9, 2025) (Bybee J. concurring) (noting that CCPA, not CIPA section 631(a), is

11   more apt to govern internet-based data collection, that the internet could not have been imagined

12   by the enacting legislature, and that it has never updated section 631(a) to address new technology

13   despite doing so with other provisions) (unpublished opinion).  The CCPA holds that a service

14   provider or contractor engaged to process data is not a "third party," provided the contractor's

15   processing of data is subject to and remains within the scope of contractual restrictions—in other

16   words, the service provider acting within the scope of delegated authority stands in the shoes of the

17   principal website.  *See* Cal. Civ. Code §§ 1798.140(j)(1), (ag), (ai).  Because these service providers

18   are not considered "third parties" to the transaction, the CCPA does not even require their role to

19   be disclosed to end users.  *See, e.g.*, Cal. Civ. Code § 1798.110(a) (requiring businesses to disclose

20   the *categories*—not identities—of the *third parties* with whom personal data may be shared).

21        Here, the SAC alleges that Shopify's role was to collect, validate, and process payment

22   information for IABMFG.  *See* SAC ¶¶ 24–25, 33.  Of course, Shopify cannot foist its services on

23   third parties without their knowledge or consent; IABMFG purposefully took affirmative steps to

24   use Shopify to help it accept online payments, including through the use of payment forms

25   generated by Shopify.  And, critically, Plaintiff himself alleges that Shopify performed these

26   services—including with the assistance of Stripe and MaxMind—pursuant to a written contract

27   with IABMFG.  *See* SAC ¶ 15.  In other words, Shopify's role was limited to performing functions

28   for IABMFG pursuant to IABMFG's request and instructions, not eavesdropping on IABMFG or

Cooley LLP
Attorneys at Law
San Francisco

15

Shopify Inc.; Shopify (USA) Inc.; and
Shopify Payments (USA) Inc.'s Motion
to Dismiss; 21-cv-06269-PJH

1    its customers.  That Shopify allegedly used its own servers to perform those functions is immaterial.

2    *See* SAC ¶ 60.  As courts recognize, that "is part of how the software tool functions" and does not

3    transform the vendor into a third-party eavesdropper.  *Williams v. What If Holdings, LLC*, No. C

4    22-03780 WHA, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022).

5             And there are no plausible allegations that Shopify acted outside the scope of its engagement

6    by IABMFG as it pertains to Plaintiff.  While the SAC generally alleges that Shopify has "amassed

7    an incredible amount of sensitive data" and "leverages" that data to create transaction risk scores,

8    it lacks details that would render this theory plausible *as to Plaintiff*.  SAC ¶ 42.  Notwithstanding

9    the total failure to supply a basis for his assertions of 2019 data collection and processing (*see supra*

10   IV.B.), the conclusory assertions concerning the collection and processing of Plaintiff's data are

11   alleged to be part of the services Shopify offered IABMFG and other businesses Plaintiff allegedly

12   patronized.  *See* SAC ¶¶ 57–62.  In sum, Shopify is not liable as a third-party eavesdropper because

13   the pleadings do not establish that Shopify engaged in any conduct other than as a service provider

14   for IABMFG.

15                    **2.    The SAC does not plausibly allege that "contents" of Plaintiff's
                                    communications were read while "in transit."**

16

17   Even if Shopify was engaged in conduct other than as a service provider for IABMFG, the

18   SAC still does not support CIPA liability.  Section 631(a)'s second clause prohibits efforts to read

19   the "contents" of a communication while "in transit."  *See Brodsky v. Apple Inc.*, 445 F. Supp. 3d

20   110, 127 (N.D. Cal. 2020).  The statute's focus on reading "contents" while "in transit" shows that

21   Plaintiff cannot state a claim where he alleges only routine data collection and processing.

22            ***First***, the SAC does not allege that Shopify read the "contents" of Plaintiff's

23   communications.  This entails efforts to understand "the intended message conveyed by the

24   communication" as opposed to "record information regarding the characteristics of the message

25   that is generated in the course of the communication."  *In re Zynga Priv. Litig.*, 750 F.3d 1098,

26   1106 (9th Cir. 2014).  But the SAC enumerates only record information in the list of "private"

27   information Shopify allegedly collected.  SAC ¶ 81 (listing name, mailing/delivery/billing address,

28   phone number, email address, credit card information, IP address, items purchased, brand/model

of device, browser type, and "unique tracking codes"); *Svenson v. Google Inc.*, 65 F. Supp. 3d 717, 729 (N.D. Cal. 2014) (holding that "names, mailing addresses, phone numbers, [and] billing information" are not the "content" of a communication); *Yoon v. Lululemon USA, Inc*., 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (holding that keystrokes, mouse clicks, pages viewed, and shipping and billing information, date and time of web visit, duration of the visit, Plaintiff's IP address, location at time of visit, browser type, and operating system were not "content" of a communications).[3]

*Second*, the SAC does not allege that Shopify "read" Plaintiff's communications *while in transit*. In fact, the SAC states the opposite. It contends that the relevant data is encrypted and sent to Shopify's servers, and only at that point—*after* it has been received by Shopify—is the data analyzed or "read." SAC ¶¶ 40, 59. This deficiency was fatal to plaintiffs' second clause claim in *R.C. v. Sussex Publishers, LLC*, No. 24-CV-02609-JSC, 2025 WL 948060, at *7 (N.D. Cal. Mar. 28, 2025), and should be fatal here. *See also Gutierrez v. Converse Inc.*, No. 23-6547-KK-MARx, 2024 WL 3511648, at *7–8 (C.D. Cal. July 12, 2024) (granting summary judgment where messages were encrypted in transit and essentially impossible to read), *aff'd* 2025 WL 1895315, at *1. *Valenzuela*, 674 F. Supp. 3d at 758 ("'While' is the key word here."); *Licea v. Cinmar*, LLC, 659 F. Supp. 3d 1096, 1110 (C.D. Cal. 2023) (dismissing section 631 claim when "[t]he timeline of the automatic recording and transcription is unclear"); *Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2021 WL 6621070, at *4 (N.D. Cal. Aug. 18, 2021) (dismissing claim where Plaintiff failed to allege Defendant's "interception of user communications while the same are in transit to third-party apps") (citation modified).

### 3. There is no alleged violation of the remaining CIPA Section 631(a) clauses.

Section 631(a)'s third clause makes it a crime to use or attempt to use information obtained through a violation of the first two clauses. Cal. Penal Code § 631(a). Because the SAC fails to state a claim under the first two clauses, the clause-three claim necessarily fails too. *See In re*

---

[3] This is true even though the SAC alleges Plaintiff entered some information manually. *See id.* at 728 (rejecting that "only automatically generated data may constitute record information").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

SHOPIFY INC.; SHOPIFY (USA) INC.; AND
SHOPIFY PAYMENTS (USA) INC.'S MOTION
TO DISMISS; 21-CV-06269-PJH

*Google Assistant Priv. Litig.*, 457 F. Supp. 3d at 825, 827.  Plaintiff's claim under the fourth clause—which criminalizes aiding and abetting violations of the first three clauses—fails for the same reason.

The aiding and abetting claim fails for additional reasons.  To start, such a claim requires a plaintiff to allege knowledge that the "other's conduct constitutes a breach of duty" as well as the provision of "substantial assistance or encouragement." *Esparza v. UAG Escondido A1 Inc.*, No. 23CV0102 DMS(KSC), 2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024) (citation modified).  To meet this standard, Plaintiff must allege that Shopify knew IABMFG, Stripe, or MaxMind was violating CIPA Section 631(a).  But IABMFG was a direct participant in the communications at issue and was the party Plaintiff himself alleges he thought he was transacting with. *See* SAC ¶ 36. It therefore makes no sense to suggest that Shopify knew *IABMFG* was unlawfully reading the contents of messages Plaintiff admittedly wanted IABMFG to read.  *See id.* ¶ 84.

And to the extent Plaintiff alleges Shopify aided or abetted Stripe or MaxMind, the SAC contains no well-pleaded allegations that *these companies* violated any of the first three clauses of CIPA Section 631(a), or that Shopify had knowledge of such a violation.  As to the second clause, there is no allegation that Stripe or MaxMind read or attempted to read the contents of Plaintiff's communications while in transit between Plaintiff and IABMFG.  Rather, the SAC situates these entities downstream of Shopify—receiving data only as a result of Shopify's sharing it with them. *See, e.g.*, SAC ¶ 46 (alleging Shopify collects data and *then shares it with Stripe*).  And again, without a violation of the second clause, there can be no violation of the third clause.  Nor is there anything in the SAC suggesting these Shopify partners—two steps removed from the transaction— had any reason to know that the data they processed pursuant to the alleged contract with IABMFG was unlawfully obtained, as the third clause requires.  Plaintiff's efforts to impose CIPA liability on Shopify already strains common sense.  He gains nothing from his efforts to extend his claims to entities even further removed from his transaction.

### 4.    The SAC fails to state a claim against Shopify under CIPA Section 635.

Section 635 targets the creation or provision of a device "primarily or exclusively designed or intended for eavesdropping."  Cal. Penal Code § 635(a).  Plaintiff's claim fails on both standing

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

SHOPIFY INC.; SHOPIFY (USA) INC.; AND
SHOPIFY PAYMENTS (USA) INC.'S MOTION
TO DISMISS; 21-CV-06269-PJH

1   and substance.

2       A Section 635 plaintiff must show injury from the manufacture, sale, or assembly of an

3   eavesdropping device.  *See Graham*, 533 F. Supp. 3d at 835; *Lululemon*, 549 F. Supp. at 1085.  But

4   the Plaintiff alleges he was injured from only IABMFG's use of Shopify's code, and not from the

5   manufacture, sale, or assembly of Shopify's code.  *See* SAC ¶¶ 1–2, 24–35, 60.  That is not enough

6   for injury under Section 635, since Section 635 "does not prohibit the 'implementation' or 'use' of

7   a wiretapping device."  *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 522 (C.D. Cal. 2021).  Plaintiff

8   therefore lacks statutory standing to pursue this claim.  *See id.* at 522; *Lululemon*, 549 F. Supp. 3d

9   at 1085; *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 863 (C.D. Cal. 2024).

10      Even if Plaintiff had standing, the plain text of Section 635 covers only *devices* whose

11  *primary* purpose is surreptitious interception.  *See, e.g.*, *U.S. v. Schweihs*, 569 F.2d 965, 968 (5th

12  Cir. 1978) (under analogous federal statute, observing that Congress did not wish to attach criminal

13  liability to "legitimate electronic device[s]" merely because they could be used for eavesdropping,

14  but only to devices specifically designed for that end like "microphones disguised as wristwatches

15  and fountain pens").  It remains an open question whether computer code can even qualify as a

16  "device" under Section 635.  *See Graham*, 533 F. Supp. 3d at 835 (declining to address the issue

17  given plaintiff's lack of standing).  This Court should find that under the plain statutory language,

18  Shopify's "software code modules," SAC ¶¶ 90–92, are not a "device" because they are intangible

19  code that cannot be (among other things) "manufacture[d]," "assemble[d]," "transport[ed]," or

20  "import[ed]."  *See* Cal. Penal Code § 635; *Lucent Techs., Inc. v. Bd. of Equalization*, 241 Cal. App.

21  4th 19, 38 (2015) (noting that courts are "generally bound by a statute's plain text"); *People v.*

22  *Robles*, 23 Cal. 4th 1106, 1114-15 (2000) (explaining that the rule of lenity requires a narrow

23  reading of criminal statutes).

24      In any event, Shopify's software code is standard ecommerce infrastructure used to support

25  merchant websites, not spyware.  The SAC is replete with examples of Shopify's legitimate use,

26  such as web hosting, providing website assets, payment processing, and fraud prevention.  *See, e.g.*,

27  SAC ¶¶ 2, 24, 33, 41, 43, 46, 47.  Such tools are plainly not "designed or intended" for spying.  *See*

28  *Cohen v. Casper Sleep Inc.*, No. 17cv9325, 2018 WL 3392877, at *4 (S.D.N.Y. July 12, 2018)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

SHOPIFY INC.; SHOPIFY (USA) INC.; AND
SHOPIFY PAYMENTS (USA) INC.'S MOTION
TO DISMISS; 21-CV-06269-PJH

1   (explaining that many websites install code to collect data, not with the "primary motivation" of

2   spying on their users, but to help with legitimate purposes such as marketing); SAC ¶ 42 ("[O]ver

3   one million websites and other merchants use Shopify [Inc.] to sell their products[.]").   And

4   importantly, as described above, Shopify's Privacy Policy at the time of Plaintiff's alleged

5   transaction required merchants to disclose how Shopify would collect and process users' data.  RJN,

6   Exs. A & B.  This undercuts the SAC's bare assertion that Shopify "intended" its code to be used

7   for eavesdropping.  SAC ¶ 91.

8          Section 635's plain text applies only to code "primarily or exclusively designed or intended"

9   for eavesdropping, not to the ordinary payment systems that power billions of legitimate online

10  transactions across millions of merchant websites.  This claim must be dismissed.

11         **F.      The SAC fails to allege actual damages as required by CDAFA.**

12         CDAFA permits a private right of action by only those who have "suffer[ed] actual damage

13  or loss by reason of a violation."  Cal. Penal Code § 502(e)(1).  Plaintiff fails to show he has suffered

14  any cognizable loss under CDAFA.

15         The only "damage or loss" alleged in the SAC consists of Shopify's receipt and alleged use

16  of Plaintiff's data without his consent.  However, it is well established that the loss of the right to

17  control one's data or loss of theoretical data value does not constitute "actual damage or loss" as

18  required by CDAFA.  *Doe v. Cnty. of Santa Clara*, No. 23-CV-04411-WHO, 2024 WL 3346257,

19  at *9 (N.D. Cal. July 8, 2024) (quoting *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461 488 (N.D. Cal.

20  2021)) (collecting cases); *see also Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1081–82

21  (N.D. Cal. 2023), *motion to certify appeal denied*, No. 22-CV-03580-WHO, 2024 WL 4375776

22  (N.D. Cal. Oct. 2, 2024) (affirming *Cottle*'s rejection of a theory based on "loss of the right to

23  control their own data, the loss of the value of their data").  Nor does Plaintiff allege data collection

24  by Shopify prevented his ability to monetize his own data.  *See Hubbard v. Google LLC*, No. 19-

25  CV-07016-SVK, 2024 WL 3302066, at *11 (N.D. Cal. July 1, 2024) ("Plaintiffs have not alleged

26  facts supporting the conclusion that [d]efendants' conduct inhibited [p]laintiffs' ability to

27  participate in the market for their information.").  The SAC's allegation that the proposed class

28  suffered a "loss of value" of their personal information is insufficient to show "actual damage or

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

SHOPIFY INC.; SHOPIFY (USA) INC.; AND
SHOPIFY PAYMENTS (USA) INC.'S MOTION
TO DISMISS; 21-CV-06269-PJH

1    loss" under CDAFA.  SAC ¶ 125.

2          Plaintiff also alleges he paid a "price premium" for IABMFG to cover Shopify's fees, which

3    Plaintiff would not have paid had he known of Shopify's payment processing.  *Id.*  But CDAFA

4    requires a plaintiff to show that he suffered harm or loss as a result of a defendant's unlawful

5    hacking of a computer system.  *See* Cal. Penal Code § 502(e)(1) (conferring standing on individuals

6    who suffered loss "by reason of a violation").[4]  This accords with general standing requirements in

7    California state courts, which demand that the plaintiff show some "downstream consequences" to

8    bring suit—to say nothing of the higher standard of "damage or loss" in CDAFA.  *See Muha v.*

9    *Experian Info. Sols., Inc.*, 106 Cal. App. 5th 199, 208–10 (2024) (holding that, even where actual

10   harm need not be shown, plaintiffs still must demonstrate "downstream consequences" to

11   demonstrate a cognizable injury in fact).  A plaintiff's subjective preferences for third-party data

12   processing online does not constitute "actual damage or loss" under CDAFA.

13          **G.    Plaintiff's UCL claim should be dismissed.**

14          To state a claim under the UCL, Plaintiff must establish statutory standing and allege that

15   Shopify engaged in unlawful, fraudulent, or unfair business practices.  Cal. Bus. & Prof. Code

16   § 17200.  The SAC has failed to meet any of these requirements.

17          **1.    Plaintiff lacks statutory standing under the UCL.**

18          To establish UCL standing, a plaintiff must allege that he "lost money or property as a result

19   of unfair competition."  Cal. Bus. & Prof. Code § 17204.  Plaintiff fails to do so.

20          First, Plaintiff cannot establish loss of "money or property" under the UCL merely by

21   alleging that Shopify obtained his personal data.  The "lost value of a plaintiff's personal

22   information does not constitute economic harm under the UCL."  *Wesch v. Yodlee, Inc.*, No. 20-

23

---

24   [4] Plaintiff appears to borrow this theory of standing from the UCL context, where loss could
25   rationally be measured as the difference between what the consumer paid and what he would have
     paid in the absence of the fraud.  As discussed further in Section IV.G.3. *infra*, where, as here, the
26   loss is alleged to flow from the failure to disclose information (specifically, Shopify's payment
     processing), only omissions concerning physical defects that hinder the product's central functions
27   to be actionable.  *See infra* Section IV.G.3; *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 864–65 (9th Cir.
     2018).  Here, Shopify's status as a payment processor has nothing to do with the fitness apparel
28   Plaintiff purchased.  A non-actionable omission could not cause his injury.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

SHOPIFY INC.; SHOPIFY (USA) INC.; AND
SHOPIFY PAYMENTS (USA) INC.'S MOTION
TO DISMISS; 21-CV-06269-PJH

1    CV-05991-SK, 2021 WL 6206644, at *4 (N.D. Cal. July 19, 2021) (internal citations omitted)

2    (collecting cases); *see also Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014)

3    ("[C]ourts have consistently rejected such a broad interpretation of 'money or property'" under the

4    UCL that includes "personal information.") (collecting cases).

5          Second, in cases involving misrepresentation due to alleged non-disclosures, courts require

6    that the omission concern a physical defect impacting the central function of the product purchased

7    in order to be actionable. *See, e.g.*, *Hodsdon*, 891 F.3d at 864–65. In *Hodsdon*, the Ninth Circuit

8    rejected a claim premised on allegations consumers would have paid less for Mars chocolate bars

9    or would not have purchased them had Mars disclosed the existence of child labor in its supply

10   chain. *Id.* at 860, 865. According to the court, the omission was not actionable because it did not

11   concern a physical defect that impacted the function of the chocolate bar. *Id.* at 865. Plaintiff's

12   theory is that he would have paid less for or would not have purchased his fitness apparel had he

13   known IABMFG was using Shopify. But because IABMFG's use of Shopify had nothing to do

14   with the function of the fitness apparel, this supposed non-disclosure is not actionable and could

15   not have produced his injury. *See, e.g.*, *id.* at 864–65.

16         Finally, even if Shopify had made an affirmative representation, courts still reject attempts

17   to manufacture standing without a direct link between the misrepresentation and the price paid. For

18   example, in *Blackburn v. Etsy, Inc.*, the court found standing lacking where the plaintiffs alleged

19   they had overpaid for products on Etsy's website because of Etsy's representations of securing

20   carbon offsets. No. CV 23-5711 PA (MARX), 2023 WL 9105662, at *4–5 (C.D. Cal. Oct. 12,

21   2023). The court stated that the mere assertion of a "price premium" was inadequate without well-

22   pleaded facts showing the misrepresentation resulted in plaintiffs' payment of a premium. *Id.* at

23   *5. Observing that the price sellers charge on the platform "may result from a variety of factors"

24   having nothing to do with carbon offsets, and that the plaintiffs failed to allege the particular

25   products were available elsewhere at a cheaper price that did not reflect the "premium" associated

26   with the misrepresentations, the court concluded that standing was insufficiently alleged. *Id.*

27         Here, nothing in the SAC establishes that the price IABMFG charged for the products

28   Plaintiff purchased was in any way influenced by the service IABMFG obtained from Shopify.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

SHOPIFY INC.; SHOPIFY (USA) INC.; AND
SHOPIFY PAYMENTS (USA) INC.'S MOTION
TO DISMISS; 21-CV-06269-PJH

1    Indeed, Plaintiff does not provide any facts to support his allegations that IABMFG actually

2    incurred costs for Shopify's services, or that IABMFG passed those costs to consumers.  Even if

3    he had, he does not allege there was an alternative source for the products that would not include

4    these costs.  IABMFG is a fitness apparel merchant, not a technology company or bank.  Had it not

5    used Shopify's services, it would have needed *some* third party for web hosting and payment

6    processing.  Plaintiff's "bare recitation of the word 'premium' does not adequately allege a

7    cognizable injury." *Naimi v. Starbucks Corp.*, 798 F. App'x 67, 70 (9th Cir. 2019); *see also Horti*

8    *v. Nestlé HealthCare Nutrition, Inc.*, No. 21-CV-09812-PJH, 2022 WL 2441560, at *8 (N.D. Cal.

9    July 5, 2022) (allegations that plaintiffs "suffered injury based on their payment of a 'premium

10   price' for a product that did not work as advertised and that they would not have paid for had they

11   known the truth" are "insufficient to adequately allege a cognizable injury").

12       Plaintiff's UCL claim should be dismissed for lack of standing.  But his claim fails on the

13   merits as well, as further discussed below.

14              **2.    The SAC fails to allege a violation of existing law on which to base an**
                 **"unlawful" practice claim.**
15

16       A plaintiff can "borrow" violations of other laws to form the basis of an "unlawful" UCL

17   claim.  *Silver v. Stripe Inc.*, No. 4:20-CV-08196-YGR, 2021 WL 3191752, at *6 (N.D. Cal. July

18   28, 2021).  Plaintiff cites CIPA, the California Online Privacy Protection Act of 2003 ("COPPA"),

19   the CCPA, and CDAFA.  Plaintiff's CIPA and CDAFA claims fail for the reasons discussed above,

     and his remaining claims fail as well.  *See supra* Section D–E, Section G.
20
21       COPPA only creates liability if a company fails to post a compliant privacy policy within

22   30 days of a notice of noncompliance.  Cal. Bus. & Prof. Code § 22575.  There is no allegation that

23   Shopify was ever notified of non-compliance or failed to comply within 30 days of such a notice.

24   Further, to allow a CCPA claim to form that basis of a UCL "unlawful" claim would allow Plaintiff

     to engineer a private right of action based on a law that explicitly does not provide for one.  Cal.
25
26   Civ. Code § 1798.150(c); *Gardiner v. Walmart Inc.*, No. 20-CV-04618-JSW, 2021 WL 2520103,

27   at *8 (N.D. Cal. Mar. 5, 2021) (finding that because Plaintiffs premised their "unlawful" claim on

28   CCPA, they did "not allege[] a predicate violation to support his unlawful claim"); *In re Sequoia*

Cooley LLP
Attorneys at Law
San Francisco

23

Shopify Inc.; Shopify (USA) Inc.; and
Shopify Payments (USA) Inc.'s Motion
to Dismiss; 21-cv-06269-PJH

*Benefits & Ins. Data Breach Litig.*, No. 22-CV-08217-RFL, 2024 WL 1091195, at *8 (N.D. Cal. Feb. 22, 2024) (granting dismissal of UCL claims in part because the CCPA cannot be the basis of a private right of action). Plaintiff's "unlawful" theory fails as a matter of law.

### 3. The SAC fails to meet the heightened particularity standard to establish a "fraudulent" practice.

While all of Plaintiff's allegations are grounded in assertions of deception and concealment, *see supra* Section IV.A, Plaintiff's allegations under the UCL's "fraudulent" prong present the clearest case for applying Rule 9(b)—and here Plaintiffs do not even satisfy Rule 8.

The gravamen of Plaintiff's claim is that Shopify engaged in "fraudulent" conduct by failing to disclose its role in his purchase of fitness apparel on IABMFG. SAC ¶¶ 131, 134. But omissions are only actionable under the UCL if they concern "physical defects that affect the central function of the [product]"—otherwise, there is no duty to disclose. *Hodsdon*, 891 F.3d at 860. "[T]he meaning of 'central' set forth in *Hodsdon* . . . 'requires that the defect be central to the product's function,' such that the product is incapable of use." *Smith v. Intel Corp.*, No. 23-CV-05761-HSG, 2025 WL 2381617, at *6 (N.D. Cal. Aug. 15, 2025) (quoting *In re Apple Processor Litig.*, No. 18-CV-00147-EJD, 2022 WL 2064975, at *9 (N.D. Cal. June 8, 2022), *aff'd*, No. 22-16164, 2023 WL 5950622 (9th Cir. Sept. 13, 2023)).

The allegations here are even more attenuated than those in *Hodsdon*. While the omission there actually concerned the production method for the chocolate purchased, IABMFG's use of Shopify has nothing to do with the fitness apparel Plaintiff purchased. Nor would it make sense to suggest that Shopify's payment processing created a physical defect of Plaintiff's clothing that made them unwearable. *See Smith*, 2025 WL 2381617. Plaintiff's allegations establish only that Shopify enabled him to successfully purchase the apparel he wanted. *See* SAC ¶¶ 57, 59–60.

### 4. The SAC fails to sufficiently allege an "unfair" practice.

The SAC also fails to allege an "unfair" practice under both recognized standards for this type of UCL claim. The first standard "requires allegations that the challenged conduct violates a public policy that is tethered to a specific constitutional, statutory, or regulatory provision. The second standard involves balancing the harm to the consumer against the utility of the defendant's

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  practice." *Silver*, 2021 WL 3191752 at *8 (internal citations and quotations omitted).

2  Under the tethering test, Plaintiff does not connect the challenged conduct to any public

3  policy that is tied to a specific constitutional, statutory, or regulatory provision.[5]  Instead, he offers

4  only the conclusory assertion that Shopify's practices were "immoral[,] unethical, oppressive,

5  outrageous, unscrupulous, and substantially injurious[.]"  SAC ¶ 140.  Even if relevant to this

6  standard, conclusory labels cannot substitute for factual allegations. *Iqbal*, 446 U.S. at 678–79.

7  Under the balancing test, Plaintiff likewise fails to plead facts showing that the alleged harm

8  outweighs the utility of Shopify's practices.  The complaint articulates numerous sound reasons for

9  Shopify's data collection, not least enabling IABMFG to make a website available to Plaintiff so

10  he could peruse fitness apparel, and facilitating the processing of his payment when he found some

11  clothing he wanted to purchase. *See* SAC ¶¶ 24, 27–35, 57–60.  The data collection and use Plaintiff

12  challenges serves critical payment processing, fraud prevention, and risk management functions,

13  and the harms alleged by Plaintiff do not offset that utility.

14  **V.      CONCLUSION**

15  For all these reasons, Plaintiff's SAC fails to state a claim upon which relief can be granted.

16  Plaintiff has already had two chances to amend his complaint, and no further amendment could

17  cure the defects identified in this motion.  Shopify respectfully requests that the Court grant this

18  Motion and dismiss the SAC with prejudice.

19

20

21

22

23

---

24  [5]To the extent Plaintiff founds this "public policy" upon the statutes making up his claim under the "unlawful prong," it would still be subject to dismissal.  Courts consistently dismiss "unfair"

25  practice claims where the allegations overlap entirely with those under the unlawful and fraudulent prongs. *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104–05 (N.D. Cal. 2017) (collecting

26  cases); *Coffee v. Google, LLC*, No. 20-CV-03901-BLF, 2022 WL 94986, at *13 (N.D. Cal. Jan. 10, 2022) (dismissing all UCL claims premised on the same allegations); *In re Sequoia Benefits & Ins.*

27  *Data Breach Litig.*, 2024 WL 1091195 at *8 (dismissing UCL claim where "unfair" allegations

28  mirrored insufficient "unlawful" prong allegations).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

25

SHOPIFY INC.; SHOPIFY (USA) INC.; AND
SHOPIFY PAYMENTS (USA) INC.'S MOTION
TO DISMISS; 21-CV-06269-PJH

Dated: September 18, 2025                          COOLEY LLP


                                                  By: */s/ Benedict Hur*
                                                       Benedict Hur

                                                  Attorneys for Defendants
                                                  Shopify Inc.; Shopify (USA) Inc.; and Shopify
                                                  Payments (USA) Inc.

Cooley LLP
Attorneys at Law
San Francisco

26

SHOPIFY INC.; SHOPIFY (USA) INC.; AND
SHOPIFY PAYMENTS (USA) INC.'S MOTION
TO DISMISS; 21-CV-06269-PJH