**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
Hayley Reynolds (State Bar No. 306427)
hayley@gutridesafier.com
Kali R. Backer (State Bar No. 342492)
kali@gutridesafier.com
Rajiv V. Thairani (State Bar No. 344390)
raj@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDON BRISKIN, on behalf of himself and those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SHOPIFY INC.; SHOPIFY (USA) INC.; and SHOPIFY PAYMENTS (USA) INC.<br><br>Defendants. | Case No. 4:21-cv-06269-PJH<br><br>PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT<br><br>Hon. Phyllis J. Hamilton<br><br>Hearing Date: December 4, 2025<br>Hearing Time: 1:30 PM<br>Courtroom: Courtroom 3, 3rd Floor<br>1301 Clay Street<br>Oakland, California |

# TABLE OF CONTENTS

**I.** INTRODUCTION ....................................................................................................1

II. BACKGROUND .......................................................................................................2

III. ARGUMENT ............................................................................................................3

A. Defendants Are Incorrect About Rule 9(b)...........................................................3

B. The Statue of Limitations Does Not Bar the Privacy Claims. ...........................5

C. Plaintiff Alleges Invasion of Privacy and Intrusion Upon Seclusion Claims. ...............7

1. Plaintiff Alleges Intent. ....................................................................................7

2. Defendants' Conduct Went Beyond "Routine Commercial Behavior."............8

3. Plaintiff Never Consented to the IABMFG Privacy Policy; Nor Did the Policy Disclose the Alleged Conduct. ..........................................................11

D. Plaintiff Alleges Claims Under CIPA § 631(a). ..........................................................13

1. Plaintiff Alleges Intent. ....................................................................................14

2. Shopify Was Not an Authorized Party to the Communication.......................15

3. "Contents" Were Intercepted "In Transit." ......................................................16

E. Plaintiff Alleges a Claim under Cal. Pen. Code § 635..............................................19

F. Plaintiff Alleges a Claim Under the CDAFA. ...........................................................20

G. Plaintiff States a Claim Under the UCL. ...................................................................22

1. Plaintiff Has Standing. .....................................................................................22

2. Shopify Engaged in Unlawful Conduct. ..........................................................23

3. Shopify Violated the Fraud Prong. ..................................................................23

4. Shopify Engaged in Unfair Conduct. ...............................................................24

H. Plaintiff Requests Leave to Amend If Necessary. ......................................................25

IV. CONCLUSION ........................................................................................................25

## TABLE OF AUTHORITIES

**Cases**

*A.B. v. Google LLC*,
737 F. Supp. 3d 869 (N.D. Cal. 2024) ........ 5

*Ambriz v. Google, LLC*,
No. 23-cv-05437-RFL, 2025 LEXIS 153606 (N.D. Cal. Feb. 10, 2025) ........ 16

*Ambriz v. Google, LLC*,
No. 23-cv-05437-RFL, 2025 U.S. Dist. LEXIS 29609 (N.D. Cal. Feb. 10, 2025) ........ 18

*ASARCO, LLC v. Union Pac. R.R. Co.*,
765 F.3d 999 (9th Cir. 2014) ........ 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 6

*B.K. v. Desert Care Network*,
No. 2:23-cv-05021-SPG-PD, 2024 U.S. Dist. LEXIS 152953 (C.D. Cal. Aug. 22, 2024) ........ 14

*Beaver v. Tarsadia Hotels*,
816 F.3d 1170 (9th Cir. 2016) ........ 23

*Bowen v. Energizer Holdings, Inc.*,
118 F. 4th 1134 (9th Cir. 2024) ........ 6, 23

*Briskin v. Shopify, Inc.*,
135 F.4th 739 (9th Cir. 2025) ........ 1, 7, 9, 16

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) ........ 11

*Chabner v. United of Omaha Life Ins., Co.*,
225 F. 3d 1042 (9th Cir. 2000) ........ 23

*Cole v. Hartford Fin. Servs. Grp.*,
2010 U.S. Dist. LEXIS 150948 (C.D. Cal. Feb. 25, 2010) ........ 7

*Collins v. eMachines, Inc.*,
202 Cal. App. 4th 249 (2011) ........ 24

*Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824 (2006) ........ 24

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) ........ 22

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ........ 4, 14

*Doe v. Eating Recovery Ctr. LLC*,
No. 23-cv-05561-VC, 2024 U.S. Dist. LEXIS 99236 (N.D. Cal. June 4, 2024) ........ 18

*Doe v. GoodRx Holdings, Inc.*,
No. 23-cv-00501-AMO, 2025 LEXIS 229385 (N.D. Cal. July 22, 2025) ........ 8

*Doe v. Google LLC*,
No. 23-cv-02431-VC, 2025 LEXIS 116198 (N.D. Cal. June 6, 2025) ........ 15

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ........ 8

*Edwards v. FCA US LLC*,
No. 22-cv-01871-WHO, 2022 U.S. Dist. LEXIS98891 (N.D. Cal. June 2, 2022) ........ 4

*Epic Games, Inc. v. Apple, Inc.*,
67 F.4th 946 (9th Cir. 2023) .... 24

*Falk v. General Motors Corp*.,
496 F. Supp. 2d 1088 (N.D. Cal. 2007) .... 7

Flanagan v. Flanagan,
27 Cal. 4th 766 (2002) .... 20

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797, 27 Cal. Rptr. 3d 661 (2005).... 5

*Friedman v. AARP, Inc.*,
855 F.3d 1047 (9th Cir. 2017) .... 23

*Gabrielli v. Haleon US Inc.*,
No. 25-cv-02555-WHO, 2025 LX 326276 (N.D. Cal. Aug. 29, 2025) .... passim

*Gabrielli v. Motorola Mobility LLC*,
No. 24-cv-09533-JST, 2025 LEXIS 273067 (N.D. Cal. July 14, 2025).... 15

*Graham v. Noom*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .... 15

*Griffith v. TikTok, Inc.*,
No. 5:23-cv-00964-SB-E, 2024 U.S. Dist. LEXIS 235520 (C.D. Cal. Dec. 24, 2024).... 13

*Hamman v. Cava Grp., Inc.*,
No. 22-cv-593-MMA (MSB), 2023 U.S. Dist. LEXIS 215443 (S.D. Cal. Dec. 4, 2023).... 3

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .... 17

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (Cal. 2009).... 9

*In re Adobe Sys. Privacy Litig*.,
66 F. Supp. 3d 1197 (N.D. Cal. 2014) .... 25

*In re Carrier IQ, Inc., Consumer Privacy Litig*.,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) .... 4, 20, 24

*In re Facebook Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .... 7, 21

*In re Facebook Inc. Internet Tracking Litig.*,
956 F.3d at 603 (9th Cir. 2020).... 10, 11, 17

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) .... 9

*In re Google Assistant Privacy Litig*.,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .... 15

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015).... 17

*In re Google RTB Consumer Priv. Litig*.,
606 F. Supp. 3d 935 (N.D. Cal. 2022) .... 10

*In re iPhone Application Litig*.,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .... 22

*In re Meta Pixel Healthcare Litig*., 6
47 F. Supp. 3d at 799 (N.D. Cal. 2022) .... 9, 12

*In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987 (N.D. Cal. 2024) ..... passim

*In re Solara Medical Supplies, LLC Customer Data Security Breach Litigation*, 613 F. Supp. 3d 1284 (S.D. Cal. May 2020) ..... 22, 24, 25

*In re Zynga Priv. Litig.*, 750 F.3d at 1106 (9th Cir. 2014) ..... 16, 17

*Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891 (N.D. Cal. 2023) ..... 15

*Katz-Lacabe,* 668 F. Supp. 3d at 942 (N.D. Cal. 2023) ..... 10

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ..... 4

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir 2018) ..... 6, 8

*Klein v. Chevron U.S.A., Inc.*, 137 Cal. Rptr. 3d 293 (Cal. Ct. App. 2012) ..... 23

*Kohler v. Flava Enters.*, No. 10-CV-0730 IEG (NLS), 2010 U.S. Dist. LEXIS 84033 (S.D. Cal. Aug. 13, 2010) ..... 5

*Kwikset Corp. v. Superior Court,* 51 Cal.4th 310 (2011) ..... 22

*Lasko v. Caliber Home Loans*, 2022 U.S. App. LEXIS 6215 (9th Cir. Mar. 10, 2022) ..... 5

*Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096 (C.D. Cal. 2023) ..... 19

*Lineberry v. Addshopper, Inc.*, No. 23-cv-01996-VC, 2025 LEXIS 167653 (N.D. Cal. Feb. 19, 2025) ..... 18

*Lynch v. Express Scripts Holding Co.*, No. 23-cv-01170-AMO, 2025 U.S. Dist. LEXIS 150756 (N.D. Cal. Aug. 5, 2025) ..... 12

*Maya v. Centex Corp.*, 658 F.3d 1060 (9th Cir. 2011) ..... 22

*McClung v. AddShopper, Inc.*, No. 23-cv-01996-VC, 2024 LEXIS 68340 (N.D. Cal. Jan. 17, 2024) ..... 21, 22

*McKell v. Wash. Mut., Inc.*, 49 Cal. Rptr. 3d 227 (2006) ..... 24

*Pac. Steel Grp. v. Commer. Metals Co.*, 600 F. Supp. 3d 1056 (N.D. Cal. 2022) ..... 23

*Revitch v. New Moosejaw, LLC*, 2019 U.S. Dist. LEXIS 186955 (N.D. Cal. 2019) ..... 19

*Riganian v. LiveRamp Holdings, Inc.*, No. 25-cv-00824-JST, 2025 LEXIS 251568 (N.D. Cal. July 18, 2025) ..... 10

*Roches v. Cty. of Santa Clara*, No. 17-cv-06077-BLF (N.D. Cal. July 9, 2018) ..... 6

*Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2022 U.S. Dist. LEXIS 13476 (N.D. Cal. Jan. 25, 2022) ..... 19, 21

*Rovai v. Select Portfolio Servicing, LLC*, 2018 U.S. Dist. LEXIS 107764 (S.D. Cal. June 27, 2018) ... 25

*Rubio v. Capital One Bank*, 613 F.3d 1195 (9th Cir.2010) ... 22

*Sanders v. Am. Broad. Cos*., 20 Cal. 4th 907 (1999) ... 10

*Scherer v. FCA US*, 565 F. Supp. 3d 1184 (S.D. Cal. 2021) ... 4

*Schreiber Distrib. Co. v. Serv-Well Furniture Co*., 806 F.2d 1393 (9th Cir. 1986) ... 25

*Semegen v. Weidner*, 780 F.2d 727 (9th Cir. 1985) ... 5

*Shahnaz Zarif v. Hwareh.com, Inc*., No. 23-cv-0565-BAS-DEB, 2025 U.S. Dist. LEXIS 26519 (S.D. Cal. Feb. 12, 2025) ... 11, 12, 14

*Silver v. Stripe Inc*., 2021 U.S. Dist. LEXIS 141090 (N.D. Cal. 2021) ... 12, 13

*Smith v. Google, LLC*, 735 F. Supp. 3d 1188 (N.D. Cal. 2024) ... 4, 16, 20

*Smith v. Google, LLC*, No. 23-cv-03527-PCP, 2024 U.S. Dist. LEXIS 98367 (N.D. Cal. June 3, 2024) ... 20

*Smith v. Rack Room Shoes, Inc*., No. 24-cv-06709-RFL, 2025 LEXIS 354693 (N.D. Cal. Aug. 4, 2025) ... 21

*Stark v. Patreon, Inc*., 635 F. Supp. 3d 841 (N.D. Cal. 2022) ... 22, 24, 25

*Supermail Cargo, Inc. v. U.S.*, 68 F.3d 1204 (9th Cir. 1995) ... 5

*Tate v. VITAS Healthcare Corp*., 762 F. Supp. 3d 949 (E.D. Cal. 2025) ... 16

*Torres v. Prudential Fin., Inc*., No. 22-cv-07465 (CRB), 2025 LEXIS 184282 (N.D. Cal. Apr. 17, 2025) ... 16

*Toy v. Life Line Screening of Am. Ltd.* 2024 U.S. Dist. LEXIS 88872, No. 23-cv-04651-RFL (N.D. Cal. Mar. 19, 2024) ... 19

*United States Dep't of Justice v. Reporters Comm. For Freedom of the Press*, 489 U.S. 749 (1989) ... 10

*Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017) ... 11

*Wesch v. Yodlee, Inc*., No. 20-cv-05991-SK, 2021 U.S. Dist. LEXIS 74545 (N.D. Cal. Feb. 16, 2021) ... 17, 18

*West v. Ronquillo-Morgan*, 526 F. Supp. 3d 737 (C.D. Cal. 2020) ... 22

*Yockey v. Salesforce, Inc*., No. 22-cv-09067-JST, 2024 U.S. Dist. LEXIS 146802 (N.D. Cal. Aug. 16, 2024) ... 18

*Yoon v. Lululemon United States*, 549 F. Supp. 3d 1073 (C.D. Cal. 2021) ... 15, 16, 18

*Yoon v. Meta Platforms, Inc.*, No. 24-cv-02612-NC, 2024 U.S. Dist. LEXIS 234457 (N.D. Cal. Dec. 30, 2024) ..................... 20

**Statutes**

Cal. Civ. Code § 1798.140 .................................... 10
Cal. Pen. Code § 631(a) .................................... 14, 16
Cal. Pen. Code § 635 .................................... 19
Cal. Penal Code § 502(c)(2) .................................... 20

**Rules**

Fed. R. Civ. P. 12(g)(2) .................................... 3
Fed. R. Civ. P. 9(b) .................................... 3, 4, 7

## I. INTRODUCTION

This case returns to this Court after the Ninth Circuit *en banc* reversed the prior dismissal. Defendants now move to dismiss for the third time, largely pretending as if this case is something that it is not. Defendants now cast themselves as mere service providers facilitating an online transaction, a process they claim depends on a host of third-parties. That is not what Plaintiff has alleged.

As the Ninth Circuit observed, Plaintiff alleges that Defendants' "involvement with the consumer neither begins nor ends with the completed transaction." *Briskin v. Shopify, Inc.*, 135 F.4th 739, 747 (9th Cir. 2025). Defendants "installed tracking cookies" the minute Plaintiff "first viewed one of the items he later purchased" that enabled Shopify to "track Briskin's behavior across Shopify's vast merchant network." *Id.* at 747-748. When a user makes a purchase on a Shopify-hosted website, Shopify "processes the payment" and, in doing so, "indefinitely stores sensitive personal information it collects through the payment form." *Id.* Shopify then uses the collected data to "assess[] the financial risks associated with the individual consumers and their transactions" and to "create[] user profiles…for the benefit of its merchants." *Id.* Third-parties, such as Stripe, also "use[] the shared collected data to create user risk profiles, which it then markets to [its] own customers." *Id.* Shopify obtained and used this data "***for its own commercial gain***." *Id.* at 756.

The Second Amended Complaint ("SAC") alleges that consumers had no idea any of this was occurring. SAC ¶4. The Ninth Circuit explicitly held that these were "intentional activities" that amounted to "the kind of contact that that would tend to cause privacy injuries." *Briskin*, 135 F.4th. at 760. Defendants do not mention the Ninth Circuit's holdings once. They cannot escape law-of-the-case by ignoring it.

Defendants additionally assert a host of new arguments that they could have but failed to raise in prior proceedings. Their statute-of-limitations argument disregards the discovery rule, and Defendants, in fact, admit that Plaintiff learned of Shopify's misconduct through counsel in 2021. They also contend that the information intercepted was not "content," but that position ignores that the data at issue—names, addresses, payment information, and items purchased—are the very *messages* consumers intended to convey to the merchant. And Defendants' attempt to minimize the privacy harms ignores both the breadth of the tracking alleged and the case law confirming that the mass *accumulation* and *commercial use* of such data constitutes an invasion of privacy. Finally, their

contention that Plaintiff fails to allege damages under California's Comprehensive Computer Data Access and Fraud Act ("CDAFA") and Unfair Competition Law ("UCL") is incorrect. The CDAFA allows for a disgorgement of profits remedy, and courts have long-held that a plaintiff may recover benefit-of-the-bargain damages for UCL claims, which is precisely what Plaintiff seeks here. He explicitly alleges that he would not have purchased items from IABMFG had he known of Shopify's interception and tracking, and, thus, lost he money as a direct result.

Defendants' third motion to dismiss must be denied.

## II. BACKGROUND

Shopify operates an e-commerce platform that integrates directly into its merchants' websites. SAC ¶1. To consumers, the webpages appear to belong entirely to the merchant—there is no Shopify branding, disclosure, or other indication that Shopify is involved. *Id.* ¶¶4, 26. Consumers, therefore, reasonably believe they are communicating only with the merchant. *Id*. They are not.

In reality, Shopify uses its platform to collect vast amounts of consumer data. *Id*. ¶¶2-6. What appears to consumers as a routine checkout process is, in fact, a system for data monetization and brokering. Shopify—not the merchant—deploys code to consumers' devices that generates the payment form and surreptitiously routes every piece of information entered—names, shipping addresses, credit-card number and CVC, IP addresses, geolocation data, and the items purchased—directly to Shopify's servers. *Id.* ¶¶2, 25–33, 81. Once Shopify has a consumer's information, it tracks that individual's activity across its entire merchant network using cookies installed when the consumer visits any merchant's page. *Id.* ¶38. Shopify aggregates the extracted data to build detailed profiles, which it markets as a risk analysis to its merchants. *Id.* ¶43-43 These profiles are based on cross-site information available only to Shopify—such as whether a consumer's order resembles past transactions, whether addresses match, or whether the IP location aligns with the shipping destination. *Id*. Shopify's profiling has real-world consequences for consumers: Shopify merchants can preemptively block or cancel any transaction flagged as "high risk." *Id*. ¶45. Shopify further shares the intercepted data with third parties engaged in similar profiling, e.g., Stripe. *Id.* ¶¶44–47.

Plaintiff Briskin is a consumer who was subjected to Shopify's undisclosed data collection and use. When Briskin bought an item from the IABMFG website in 2019, he had no reason to know that Shopify was involved in the transaction or that it would intercept his information. *Id*. ¶¶57-66. The

IABMFG website did not disclose Shopify's involvement, and Briskin never consented to Shopify's collection, storage, or use of his personal data. *Id*. However, like all other users who made a purchase on the IABMFG website, Shopify installed tracking cookies, collected his sensitive financial information, and used it to profile him. *Id*. Briskin would not have bought the items on IABMFG had he known it would enable Shopify to track his behavior, disseminate his private information, and generate a risk profile based on his transaction history. *Id*.

This is Defendants' third motion to dismiss. The Court previously granted Shopify's second motion to dismiss on personal jurisdiction and Rule 8 grounds. *See* ECF 66. The Ninth Circuit reversed both holdings *en banc*. *See* ECF 75.

## III. ARGUMENT

Despite submitting over 96 pages of briefing on their last motion to dismiss alone, Defendants did not once argue that "all" claims were subject to Rule 9(b) nor assert a statute of limitations defense. *See* ECF 51, 52, 53, 61, 62, 63. They also never argued that the SAC failed to allege "actual damages" under the CDAFA, (*see* ECF 51 at 21-23); that Plaintiff failed to allege intent for the CDAFA, invasion of privacy, and intrusion upon seclusion claims, (*see* ECF 51 generally); or that Plaintiff lacked standing under the UCL – indeed, the prior motions did not mention standing *once* (*id*. at 23-25). Each of these new defenses was available to Defendants. Indeed, the allegations are ***exactly the same*** as what existed before the appeal. Yet, Defendants failed to raise them in prior briefing and now raise them for first time with their third motion to dismiss.[1] These defenses – along with the few residual arguments Defendants made in their last motion to dismiss – all fail on the merits.

### A. Defendants Are Incorrect About Rule 9(b).

It is black letter law that Rule 9(b) applies to fraud-based claims. But nothing extends Rule 9(b) to statutory or invasion of privacy claims, such as those asserted here, which do not turn on

[1] Although the Court expressed a willingness to consider new arguments at the last Case Management Conference, that was not an invitation to relitigate the pleadings from scratch or otherwise assert an entirely new wave of defenses. "[U]nder Rule 12(g)(2) and Rule 12(h)(2), a party that seeks to assert a defense that was available but omitted from an earlier Rule 12 motion can only do so in a pleading, a Rule 12(c) motion, or at trial." *Hamman v. Cava Grp., Inc.*, No. 22-cv-593-MMA (MSB), 2023 U.S. Dist. LEXIS 215443, at *4 (S.D. Cal. Dec. 4, 2023); *see also* Fed. R. Civ. P. 12(g)(2) (parties "must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.") Indeed, here, as in *Hamman*, "the factual footing has not even changed in a way that would give the Court some pause before using its discretion to ban this successive 12(b)(6) motion." *Id*. at *4–8.

deception. Defendants contend Rule 9(b) applies to "all" the claims, but they wholly fail to cite any authority supporting that proposition. In the one case Defendants cite—*Doe I v. Google LLC*, 741 F. Supp. 3d 828, 841-42 (N.D. Cal. 2024)—the court merely mused that the plaintiffs there "may well be subjecting their intent-related allegations" to Rule 9(b) but did not make any definitive ruling establishing that to be the case. And, even *Doe I* cites to separate opinion that expressly rejected that notion, *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1198 (N.D. Cal. 2024) held that Rule 9(b) was inapplicable to wiretapping claims since they are "statutory claims" that "do not sound in fraud." Defendants themselves previously conceded as much. They asserted their Rule 9(b) defense ***solely*** with respect to the UCL fraud prong claim. *See* ECF 51 at 24. That was the correct approach.

In any event, the Rule 9(b) analysis here is straight-forward. Rule 9(b) requires plaintiffs to plead "'the who, what, when, where, and how' of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). Omission claims are "subject to a lower pleading standard." *Edwards v. FCA US LLC*, No. 22-cv-01871-WHO, 2022 U.S. Dist. LEXIS98891, at *15–17 (N.D. Cal. June 2, 2022). The "standard is *lowered* on account of the reduced ability in an omission suit 'to specify the time, place, and specific content' relative to a claim involving affirmative misrepresentations." *Scherer v. FCA US*, 565 F. Supp. 3d 1184, 1189 (S.D. Cal. 2021).

Plaintiff easily satisfies Rule 9(b). In *Edwards*, an omission claim satisfied Rule 9(b) by identifying "the 'who' (FCA); the 'what' (knowing about, yet failing to disclose a defect); the 'when' (at the time of purchase and thereafter); the 'where' (FCA's authorized repair facilities); and the 'how' (if Edward had known of the alleged defect, he would not have purchased the Jeep, or would have paid less)." 2022 U.S. Dist. LEXIS 98891, at *15–17. The SAC mirrors those allegations; it alleges: Defendants (who) failed to disclose "that it was involved in the transaction at all" and that it would use the information collected and make that information available to third parties (what) (SAC ¶131) on the "websites it operates on behalf of its merchant customers" (*id*. ¶138) when users "submitted payment information" during the class period (when) (*id*. ¶68), and if Plaintiff had known of the misconduct, he would not have purchased the products from IABMFG (how) (*id*. ¶¶63-66). The SAC also includes screenshots of the IABMFG payment forms that Plaintiff saw but omitted Shopify's involvement. *Id*. ¶¶ 28, 31; *see also In re Carrier IQ, Inc., Consumer Privacy Litig*., 78 F. Supp. 3d 1051, 1114 (N.D. Cal. 2015) (finding similar allegations sufficient). These allegations are "specific

enough to give defendants notice of the particular misconduct… so that they can defend against the charge". *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

**B. The Statue of Limitations Does Not Bar the Privacy Claims.**

Defendants also assert for the first time that Plaintiff's CIPA, intrusion upon seclusion and invasion of privacy claims are barred under the statute of limitations. Defendants' position is meritless.

Statute of limitations is an affirmative defense. *See Lasko v. Caliber Home Loans*, 2022 U.S. App. LEXIS 6215, at *1 (9th Cir. Mar. 10, 2022). Plaintiffs are "not required to plead around anticipated affirmative defenses, including the statute of limitations." *Kohler v. Flava Enters.*, No. 10-CV-0730 IEG (NLS), 2010 U.S. Dist. LEXIS 84033, at *3 (S.D. Cal. Aug. 13, 2010). As such, "[d]ismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint." *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014). Shopify's burden is extraordinarily high: dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Supermail Cargo, Inc. v. U.S.*, 68 F.3d 1204, 1206 (9th Cir. 1995). "As a result, the defense generally cannot be asserted on a Rule 12(b)(6) motion." *A.B. v. Google LLC*, 737 F. Supp. 3d 869, 877-78 (N.D. Cal. 2024).

Defendants do not come close to meeting their burden. They, in fact, concede that Plaintiff alleges all the necessary ingredients to invoke the discovery rule and state point-blank that "Plaintiff alleges that he neither knew nor could have known about Shopify's alleged misconduct until 2021, when his counsel visited the IABMFG website." MTD at 7; *see also Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807, 27 Cal. Rptr. 3d 661, 110 P.3d 914 (2005) (the discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action" which occurs when he "has reason at least to suspect a factual basis for its elements"); *Gabrielli v. Haleon US Inc.*, No. 25-cv-02555-WHO, 2025 LX 326276, at *25 (N.D. Cal. Aug. 29, 2025).[2]

Defendants make three arguments to sidestep this. First, they contend it is implausible as a matter of law that Plaintiff's data was collected to begin with since the Court cannot infer that the IABMFG website was operating in the same way in 2019 as it was in 2021. MTD at 7-9. But nothing in the SAC indicates that either Shopify or the IABMFG website was operating *differently* in 2019.

[2] To the extent more specifics are needed as to Plaintiff's discovery of the misconduct, he can amend to explicitly allege that he discovered the factual basis of the claims in 2021.

To accept the argument, the Court would have to draw the inference *against* Plaintiff that the IABMFG website was not transmitting data to Shopify in 2019, something the Ninth Circuit expressly forbids. *See Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988 (9th Cir 2018). And, to the extent Defendants seek definitive proof that the IABMFG website was operating in the same fashion in 2019 as it was in 2021, the position is wrong because "a plaintiff typically need not support her allegations with evidence at the pleading stage." *Bowen v. Energizer Holdings, Inc*., 118 F. 4th 1134, 1148 (9th Cir. 2024). This is because "the plausibility standard is not akin to a 'probability requirement.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Moreover, the SAC alleges the exact opposite of what Shopify contends. Plaintiff alleges that Shopify has been offering its services to merchants since at least 2018 and IABMFG was one of those merchants. SAC ¶¶ 1, 12. It further alleges what occurred when Plaintiff visited the IABMFG website in 2019. It states that, unbeknownst to Plaintiff, he "submitted the form containing his private information to complete the checkout process, his private information was sent to Shopify's computer network, where it was stored, analyzed, and/or processed." *Id*. ¶60. Given that counsel's investigation later uncovered what was occurring, the Court can reasonably infer that the same undisclosed data transmissions and tracking were taking place when Plaintiff made his purchase in 2019.

Second, Defendants point to a 2021 version of the IABMFG Privacy Policy and claim it purportedly disclosed their conduct. MTD at 8. But it is undisputed that that version *did not exist at the time of Plaintiff's purchase* in 2019. *Id*. It, at most, pertains to information conveyed the *same year* Plaintiff filed suit in 2021. Because "there is no allegation demonstrating that Plaintiff was aware of or should have been aware of the factual basis for [his] claims" *before 2021*, the argument fails. *Roches v. Cty. of Santa Clara*, No. 17-cv-06077-BLF, at *12-14 (N.D. Cal. July 9, 2018).

Finally, Defendants contend that Plaintiff had an "opportunity to obtain knowledge" regarding Shopify's collection and use of data on the IABMFG website based on the fact that *other websites* – separate and apart from IABMFG – utilized Shopify's services. MTD at 9. Yet, they do not cite to any documents or specific information that actually (or even should have) made Plaintiff aware. Nor do they bother to explain why a disclosure *on some other website* should have informed Plaintiff what was occurring on the IABMFG website. Even if they had, courts recognize that "some public knowledge somewhere in the world regarding an alleged wrong" does not suffice "to put a person on

notice that she in particular has suffered a wrong." *See Cole v. Hartford Fin. Servs. Grp.*, 2010 U.S. Dist. LEXIS 150948, at *7 (C.D. Cal. Feb. 25, 2010). "Reasonable diligence does not require a person to scour the internet in search of any and all information bearing on a purchase." *Id. see also Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1097 (N.D. Cal. 2007). In reality, Plaintiff alleges that he "did know that Shopify was involved in the transaction at all, because it was never disclosed to him." SAC ¶¶30, 60. Shopify does not point to anything that remotely contradicts these allegations.

**C. Plaintiff Alleges Invasion of Privacy and Intrusion Upon Seclusion Claims.**

California's common law invasion of privacy and intrusion upon seclusion claims are analyzed together. They require a showing of "(1) an intentional intrusion into a matter as to which the plaintiff has a reasonable expectation of privacy, and (2) the intrusion must be "highly offensive." *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 606 (9th Cir. 2020).

**1. Plaintiff Alleges Intent.**

Shopify groups the CIPA, CDAFA, invasion of privacy and intrusion upon seclusion claims together to assert that all require intent and that all fail, without going into the specifics of each claim. MTD at 9-11. That approach is wrong because the intent element is different for each claim. As it pertains to invasion of privacy and intrusion upon seclusion, intent may be alleged generally. *See* Fed. R. Civ. P. 9(b). As such, courts reject arguments contesting intent out-of-hand. *See Gabrielli*, 2025 LX 326276, at *36.

In addition to alleging intent generally, *see* SAC ¶¶105, 110, the SAC alleges facts from which intent may be inferred. As the Ninth Circuit observed, Shopify targeted "California consumers to extract, collect, maintain, distribute, and exploit for its own profit" their personal and payment information through software installed "without their knowledge or consent." *Briskin*, 135 F. 4th at 755-756. The SAC further alleges that Shopify deliberately concealed its role by instructing merchants on "how to omit Shopify branding such that the form appears to the consumer to belong to the merchant's website." SAC ¶¶1, 53. Shopify knew most of its large merchants did so and that consumers were "not required to view (through a link or otherwise), let alone agree to, Shopify's Terms of Service or Privacy Policy." *Id.* ¶55. Even its order confirmation emails omitted Shopify. *Id.* ¶¶ 36-37. Shopify chose this concealment precisely because it knew that consumers value their privacy and it wanted to maximize merchants' ability to "white-label" payment forms. *Id.* ¶52.

Despite these allegations, Shopify argues that its own Privacy Policy establishes its lack of intent since it required merchants to "obtain consent" for access to users' personal information. *See* MTD at 10. But what a defendant's "true intent is, what steps it actually took to prevent receipt of [] information, the efficacy of its filtering tools, and the technological feasibility of implementing other measures to prevent the transfer of [such] information, all turn on disputed questions of fact that need development on a full evidentiary record." *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1076 (N.D. Cal. 2023). Indeed, although Shopify asks the Court to take judicial notice of its Privacy Policy, the Court cannot judicially notice Shopify's *intent*, which is plainly an issue of disputed fact. *See Khoja*, 899 F. 3d at 999 (explaining that "[a] court may take judicial notice of matters of public record" but "a court cannot take judicial notice of disputed facts contained in such public records.")

Given that the question of intent is fact-intensive and is not subject to judicial notice, the mere existence of a policy that warns developers ***not*** to transmit data to the defendant is insufficient to establish the absence of intent as a matter of law. *See Doe*, 690 F. Supp. 3d at 1076; *see also Doe v. GoodRx Holdings, Inc*., No. 23-cv-00501-AMO, 2025 LEXIS 229385, at *23-24 (N.D. Cal. July 22, 2025); *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1003 (N.D. Cal. 2024) ("Whatever agreements may have been in place, those agreements do not establish as a matter of law that Meta did not intend to receive the information plaintiffs claim was transmitted.").

Indeed, the facts here are far more compelling than other cases addressing the issue: Shopify not only intentionally designed its software to collect broad swaths of data, but it also gave its merchants *explicit instructions* for how to conceal its involvement by teaching its merchants how to *delete* the "powered by Shopify" disclosure from its templates. SAC ¶¶1, 53 If intent can be satisfied even when a defendant takes steps to actively *avoid* the interception of data, *see, e.g*., *Doe*, 690 F. Supp. 3d at 1076, it is certainly satisfied when it *instructs* its merchants how to hide its participation.

**2. Defendants' Conduct Went Beyond "Routine Commercial Behavior."**

Shopify also contests the merits. Plaintiff alleges that users would not reasonably expect that an unknown third-party, such as Shopify, would collect payment and purchase data on the IABMFG website and beyond, use that data to build consumer profiles and assess users' credit-worthiness, and share that data with other third-parties. The conduct was highly offensive.

Shopify's brief focuses on the "highly offensive" element, arguing that its conduct was "routine commercial behavior," but that position is inherently flawed because it is not amenable to resolution on the pleadings. In determining whether an invasion is "highly offensive," courts consider "the degree and setting of the intrusion," along with "the intruder's motives and objectives." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (Cal. 2009). Due to the fact-intensive nature of the inquiry, courts are "reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is." *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019); *In re Meta Pixel Healthcare Litig*., 647 F. Supp. 3d at 799 (N.D. Cal. 2022) (explaining courts are "hesitant" to decide such issues on the pleadings). "Only if the allegations 'show no reasonable expectation of privacy or an insubstantial impact on privacy interests' can the 'question of [a serious or highly offensive] invasion [ ] be adjudicated as a matter of law.'" *Gabrielli*, 2025 LEXIS 326276, at *23.

To cast its conduct as "routine commercial behavior," Shopify also mischaracterizes the claims. It, in essence, claims that all it did was collect purchase information to "facilitate" online payment processing. MTD at 12. But, as the Ninth Circuit explained, Defendants' involvement "neither begins nor ends with the completed transaction." *Briskin*, 135 F. 4th at 747. From the moment consumers view a product, Shopify installs tracking cookies that monitor their behavior across its vast merchant network. *Id.* at 747-748**.** When a purchase occurs, Shopify not only processes payment data but also collects detailed order information, including the items purchased. SAC ¶¶2, 25–33, 81**.** It repackages this data into consumer profiles, assigns "risk scores" that merchants use to block or cancel transactions, and shares the data with third parties such as Stripe, which build and sell their own "risk insights," all while the tracking continues across Shopify's vast merchant network so it can collect even more data to further enrich those profiles. *Id.* ¶¶38-41, 46-47.

That conduct bears no resemblance to routine payment processing. For example, credit-card companies record the merchant and the total amount charged; they do not record every item purchased, build dossiers on consumers, or otherwise share data collected with third-parties. Shopify, in contrast, secretly monitors consumers' behavior across millions of sites, amasses the resulting data, and leveraging it "for its own commercial gain." *Briskin*, 135 F. 4th at 756.

To downplay the allegations, Shopify argues that, to complete any financial transaction, a host of third-parties are always involved. However, courts recognize that "privacy, for purposes of the intrusion tort, is not a binary, all-or-nothing characteristic… The mere fact that a person can be seen by someone does not automatically mean that he or she can legally be forced to be subject to being seen by everyone." *Sanders v. Am. Broad. Cos*., 20 Cal. 4th 907, 916 (1999). And, contrary to Defendants' assertions, the information that Shopify collected and shared here is "personal information under California law and parties generally maintain a reasonable expectation in their personal information." *In re Google RTB Consumer Priv. Litig*., 606 F. Supp. 3d 935, 946-47 (N.D. Cal. 2022), citing Cal. Civ. Code § 1798.140 (covering "Internet or other electronic network activity information," such as "browsing history, search history, and information regarding a consumer's interaction with an internet website, application, or advertisement"); *see also In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 603 (9th Cir. 2020) (finding reasonable expectation of privacy in browsing history and when Facebook created "highly personalized profiles" of the plaintiffs based on the data collected).

That amassing of data and subsequent use of it is especially critical—and is something that Shopify does not bother to explain in its briefing. While data from a single financial transaction may not strike a person as offensive, Defendants' ability to amass and synthesize data from a multitude of transactions "outstrips the combined power of bits of information contained within." *See United States Dep't of Justice v. Reporters Comm. For Freedom of the Press*, 489 U.S. 749, 764-65 (1989). As such, courts recognize that the mass ***accumulation*** of online data is highly offensive and invades users' reasonable expectation of privacy, ***regardless of the specific type and quality***. *See Riganian v. LiveRamp Holdings, Inc*., No. 25-cv-00824-JST, 2025 LEXIS 251568, at *22-24 (N.D. Cal. July 18, 2025) (rejecting argument that the plaintiffs did not have a "reasonable expectation of privacy" or that the conduct was "highly offensive" based on the "alleged aggregation, synthesis, and sale of comprehensive online and offline data of individuals without their knowledge"); *Katz-Lacabe,* 668 F. Supp. 3d at 942 (N.D. Cal. 2023) ("volume of the collected information is also important" in determining whether "the intrusion was highly offensive.").

The scale of what took place here cannot be understated. Shopify's tracking takes place *across the internet*, in *every website* under its vast merchant network, *regardless of whether a transaction*

*takes place*. On top of that, Shopify utilizes the data to build profiles on consumers for its own commercial gain. That is precisely the kind of conduct that gives rise to invasion of privacy and intrusion upon seclusion claims. *See In re Facebook Inc. Internet Tracking Litig.,* 956 F.3d at 603-05 (finding "the allegations that Facebook allegedly compiled highly personalized profiles from sensitive browsing histories and habits prevent us from concluding that the Plaintiffs have no reasonable expectation of privacy.")

**3. Plaintiff Never Consented to the IABMFG Privacy Policy; Nor Did the Policy Disclose the Alleged Conduct.**

Shopify also argues that the IABMFG Privacy Policy disclosed its conduct and, thus, bars the claims. Not so. First, consent is "an affirmative defense for which defendant bears the burden of proof."[3] *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017). Consent "can be [express] or implied, but any consent must be actual." *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024). Here, Defendants completely fail to articulate how Plaintiff could have possibly consented to a policy that they concede was not effective until *years* after Plaintiff made his purchase. It was, in fact, *impossible* for Plaintiff to have known about it at his purchase since the Privacy Policy did not exist. Defendants themselves do not cite a single case even considering such a document.

Second, even if the Court were to consider an extraneous, irrelevant privacy policy, the IABMFG Policy did not disclose the conduct at issue. "For consent to be actual, the disclosures must 'explicitly notify' users of the conduct at issue. *Calhoun*, 113 F.4th at 1147. Consent "is only effective if the person alleging harm consented 'to the particular conduct, or to substantially the same conduct' and if the alleged tortfeasor did not exceed the scope of that consent." *Id*. "If that user could have plausibly understood the disclosures 'as *not* disclosing that [the defendant] would engage in particular conduct,' then the disclosures are insufficient to establish consent. *Id*.

Shopify nevertheless points to the provision below to argue its collection was disclosed.

[3] Indeed, Plaintiff explicitly alleges that he did ***not*** view the IABMFG Privacy Policy and did not consent to Defendants' conduct. SAC ¶¶60-61*; see also Shahnaz Zarif v. Hwareh.com, Inc.*, No. 23-cv-0565-BAS-DEB, 2025 U.S. Dist. LEXIS 26519, at *15 (S.D. Cal. Feb. 12, 2025).

*See* Lin Decl., Ex. A; MTD at 4, 8.

> **Sharing with Third Parties**
>
> **We may pass your personal data on to third-party service providers contracted by IAB to perform certain services for us, or to collaborate directly with you. For a complete and up-to-date list of the third parties we are currently using, please send an email to support@iabmfg.com.**
>
> Any third parties that we may share your data with are obliged to keep your details securely, and to use them only for the purposes and to complete the tasks identified within the **IAB**/Contractor contract. When they no longer need your data to fulfill this service, they will dispose of the details in line with **IAB's** procedures. If we wish to pass your personal data onto any additional third parties, we will only do so once we have obtained your consent, unless we are legally required to do otherwise.

The provision does not remotely discuss the conduct at-issue: it speaks only of IABMFG maybe "pass[ing]" data to third-parties to perform services for IABMFG.[4] It says nothing of Shopify's amassing data *outside* the IABMFG website or its own *use* of the collected data to build profiles and assess users' creditworthiness. The Policy does not "explicitly notify" users of any of that conduct. Indeed, in other provisions, the Policy states it applies only "to the Site." Ex. A at 2. And, despite going out of its way to specify ***over 50 cookies*** on the site, the Policy does not mention a single Shopify cookie, leading users who read it to believe they are ***not*** utilized on the site. *Id*. The provision Defendants point to even undermines their assertions of a disclosure: it states service providers are "obligated" to use data "only for the purposes and to complete tasks" for IABMFG, which leads users to believe that data may ***not*** be used for purposes beyond those performed for IABMFG. Under *Calhoun*, users did not consent to *any* of the conduct.

*Silver* is particularly instructive. Stripe, as Shopify here, provided its merchants with a payment platform that did not feature any Stripe branding, concealing the fact that Stripe was "obtaining or storing sensitive information, including financial information" when they bought a product. *Id*. The plaintiffs alleged that Stripe invaded their privacy by "secretly tracking, collecting, and storing the personal data and web activity of visitors to merchants' websites." *Silver v. Stripe Inc.*, 2021 U.S. Dist. LEXIS 141090 at *3 (N.D. Cal. 2021). The facts in *Silver* were far less egregious than here: the merchant's privacy policy was in effect at the time of the plaintiffs' purchases and

---

[4]Even generalized notices of "collection" are insufficient to provide notice. *See Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 793 (reasoning the "generalized notice" in Meta's policies did not "specifically indicate that Meta may acquire *health data*"); *Shahnaz Zarif*, 2025 U.S. Dist. LEXIS 26519, at *16-17 (consent argument failed absent a showing from the defendant that "the policies unambiguously allowed it to capture and share information like the specific prescription drugs Plaintiff was searching for"); *Lynch v. Express Scripts Holding Co.*, No. 23-cv-01170-AMO, 2025 U.S. Dist. LEXIS 150756, at *23-27 (N.D. Cal. Aug. 5, 2025) (similar).

explicitly disclosed that third parties may obtain the exact categories of data the plaintiffs alleged Stripe wrongfully collected. The policy also disclosed that the merchant's "partners" like Stripe may "collect information about your online activity… across different websites or online services." *Id*., at *11-12. The plaintiffs there even *affirmatively consented* to the privacy policy by requiring them "to take an affirmative step—clicking the 'Place Order' button—to acknowledge that they were agreeing to the terms" and "were told the consequences that would follow from clicking the button." *Id*. at *10. Yet, despite those facts, the court nonetheless found the plaintiffs stated a claim for invasion of privacy because "[p]rivacy is not an 'all-or-nothing' proposition." *Id*. at *17. The plaintiffs consented to the *collection* of their data, but they never consented to the *disclosure* and *use* of their data to compile profiles. *Id*. at *18. The *Silver* court also found the "nature and volume of the collected information" to be "important" since Stripe was alleged to have "collected comprehensive information relating to plaintiffs' web browsing histories, financial information, device information, and online purchase activities." *Id*.

So too here. The scope of Shopify's data collection is arguably broader than Stripe's in *Silver*; the same kind of browsing history, purchase activity, and financial information is at play. Yet, the invasion of privacy is even more egregious since nothing put Plaintiff on notice of the Privacy Policy, let alone required his affirmative consent (the version Defendants submit, in fact, did not even exist at the time of his purchase). And, even if Shopify's argument were to be credited, nothing in the policies discloses Shopify's tracking across websites, its amassing of data, its compilation of the data into profiles or its subsequent disclosure to third-parties. *See Griffith v. TikTok, Inc*., No. 5:23-cv-00964-SB-E, 2024 U.S. Dist. LEXIS 235520, at *17-20 (C.D. Cal. Dec. 24, 2024) (rejecting consent defense since "it is not clear that reasonable users of the websites at issue would understand that their information would be shared with Defendants based on vague disclosures about collection by advertising partners or service providers.").

### D. Plaintiff Alleges Claims Under CIPA § 631(a).

CIPA creates liability when a person "willfully and without consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit" and when a person

"uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained." Cal. Pen. Code § 631(a). Defendants violated both provisions.[5]

**1. Plaintiff Alleges Intent.**

Defendants again argue that CIPA requires alleged violators to have "acted with intent to violate [the] statute." MTD at 9. But, as one court recently put it, "[c]aselaw forecloses this challenge." *Shahnaz Zarif*, 2025 LEXIS 103944, at *20-21. CIPA and Wiretap Act claims are analyzed together, and the "Ninth Circuit rejected that the word 'intentionally' in the Wiretap Act 'must be read to require a defendant to know that [its] conduct is unlawful.'" *Id*. "Rather, the statute only requires 'an intentional act, defined as 'an act that is being done on purpose.'" *Id*. For instance, in *Gabrielli*, the allegation that "Haleon intentionally operated its website and assisted third parties in gathering Gabrielli's information" sufficed to establish intent for purposes of wiretapping. *See Gabrielli*, 2025 U.S. Dist. LEXIS 169503, at *29.

The same is true here. The SAC alleges that Shopify deployed code designed to collect and transmit user data to Shopify. SAC ¶¶1, 24-36. As the Ninth Circuit held, Shopify's "business model is to perform the payment processing services…and, in the course of doing so, to obtain valuable personal data about California consumers for its own commercial gain." *Briskin*, 135 F.4th at 756. That data lets Shopify build profiles on consumers, offer risk assessment services to its merchants, and share the data with others for their own use. SAC ¶¶42-47; *see also In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1003 (allegations sufficed when Meta willfully read or attempted to read the contents of the plaintiffs' electronic communications, knew confidential information was transmitted through its tracking, and that such information was valuable to Meta).

Shopify's cited cases do not help it. *B.K.* addressed an aiding theory that is not at issue here. *See B.K. v. Desert Care Network*, No. 2:23-cv-05021-SPG-PD, 2024 U.S. Dist. LEXIS 152953, *7-8 (C.D. Cal. Aug. 22, 2024). In *Doe I*, the court found that Google "obviously intended to collect *some* communications"; as a result, the question turned on whether Google intended to collect a narrow category of HIPAA-protected data. *Doe v. Google LLC*, No. 23-cv-02431-VC, 2025 LEXIS 116198,

[5] Defendants' brief surmises that Plaintiff also asserts a claim under the "aiding" prong of CIPA. *See* MTD at 18. Plaintiff, however, does not assert such a theory.

*11 (N.D. Cal. June 6, 2025). Even there, the court later found intent adequately pled after amendment. *Id*.

Shopify argues proof that it encouraged merchants to remove Shopify references is necessary. That, however, is not the standard. Intent turns on whether the defendant purposefully engaged in conduct that intercepted communications. *Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 LEXIS 273067, at *29 (N.D. Cal. July 14, 2025) (rejecting that the interception was due to a "bona fide error" and not intentional since the complaint alleged "that Motorola intentionally operated its website and assisted third parties in collecting Gabrielli's information.") And, that is a factual question. *Id*. For this reason, "interceptions may be considered intentional where a defendant is aware of the defect causing interception and takes no remedial action," *even without active encouragement*. *In re Google Assistant Privacy Litig*., 457 F. Supp. 3d 797, 815 (N.D. Cal. 2020).[6]

**2. Shopify Was Not an Authorized Party to the Communication.**

Shopify further argues that it acted as a mere service provider for IABMFG and, thus, was an authorized party to the communication, relying on cases such as *Graham v. Noom*, 533 F. Supp. 3d 823 (N.D. Cal. 2021). *See* MTD at 14-15. What Shopify glosses over is that even *Graham* acknowledges that the test for determining whether the defendant is, in fact, a service provider (i.e., functions as a mere "tape recorder") is whether the defendant ***uses the data for its own benefit***. If so, it is not treated as an authorized party and is subject to liability for wiretapping. *See Graham*, 533 F. Supp. 3d at 832 (finding that the question of whether Fullstory was a "service provider" depended on whether there were allegations that FullStory "used the data itself.")

Since *Graham*, most courts hold that the defendant need only be ***capable*** of using the data for its own benefit. For instance, in *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891 (N.D. Cal. 2023), the plaintiff alleged that the defendant used ActiveProspect's software to track users' interactions with the website. *Id.* at 894-95. It concluded that ActiveProspect was a third-party based on its *capability* to use user data to its benefit, *regardless of whether or not it actually did so* since that is "beyond the ordinary function of a tape recorder." *Id.* at 900, quoting *Yoon v. Lululemon United States*, 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021). Most courts now adopt that reasoning. *See*

[6] Shopify's arguments as to its own Privacy Policy fail for the same reasons explained above. Although the Court may take judicial notice of the *existence* of the policy, it cannot take judicial notice of Shopify's intent, which is a disputed issue of fact. *See Khoja*, 899 F. 3d at 999.

*Torres v. Prudential Fin., Inc.*, No. 22-cv-07465 (CRB), 2025 LEXIS 184282, at *8-9 (N.D. Cal. Apr. 17, 2025); *Ambriz v. Google, LLC*, No. 23-cv-05437-RFL, 2025 LEXIS 153606, at *7 (N.D. Cal. Feb. 10, 2025) (adopting the same test); *Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949, 955 (E.D. Cal. 2025) (same).

Although Shopify insists that its "role was limited to performing functions for IABMFG" (MTD at 15), yet again, the Ninth Circuit's opinion foreclose that argument since it held point-blank that Shopify used the data it collected for its "own commercial gain" to compile profiles of users. *Briskin*, 135 F.4th at 756. These allegations are precisely in line with what other courts have found to be sufficient. *See, e.g., Smith,* 735 F. Supp. 3d at 1197-98 (alleging that Google tracks users and compiles that data into "dossiers" on users).

Shopify claims that the analysis is whether it operated outside the scope of its agreement with IABMFG. But, again, that is not the standard, and it cites no case law adopting such a rationale, let alone dismissing a case on such a basis. Even if it were the appropriate analysis, the Court could not make such a determination on the pleadings, as there are no allegations as to IABMFG's contract with Shopify. *See Ambriz*, 2025 LEXIS 153606, at *7 (finding that "whether or not Google receives permission from a business to use the call data it collects… is irrelevant to the question of its capabilities").[7] The position is meritless.

### 3. "Contents" Were Intercepted "In Transit."

CIPA prohibits interception of "contents" of communications. "Contents" of communications "refer[] to the ***intended message conveyed by the communication***, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d at 1106 (9th Cir. 2014) (emphasis added); *see also Yoon v. Lululemon*, 549 F. Supp. 3d at 1082 (§ 631(a) protects "user-generated material" but not "routine identifiers").

It is undisputed that Shopify collects the data that users input into the payment forms, which includes the user's name, addresses, credit card information, amount spent, phone number and other data. SAC ¶¶2-3, 28-35. Shopify's sole argument is that this data does not qualify as contents, but, rather, is simply record information regarding the characteristics of the message. Shopify, however,

[7] For the same reason, Shopify's argument that the SAC lacks allegations as to Plaintiff fails, as it irrelevant to Shopify's *capabilities* to use the data for its own benefit, which Plaintiff alleged.

ignores that the key inquiry under *In re Zynga* is whether the data is "the intended message conveyed by the communication." *In re Zynga Priv. Litig.*, 750 F.3d at 1106. And, "***[i]f an address, phone number, or URL is . . . part of the substantive information conveyed to the recipient, then by definition it is 'content.'***" *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 137 (3d Cir. 2015); *see also Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1093 (N.D. Cal. 2022) ("Generally, customer information such as a person's name, address, and subscriber number or identity is record information, but it may be contents when it is part of the substance of the message conveyed to the recipient.") To illustrate, imagine a third-party listens in on a conversation between two other parties in which one party gave the other his or her name and address. That would, by definition, not merely convey a record that the conversation occurred, but, rather, it would convey the *actual substance* of the parties' conversation and would qualify as contents.

The payment forms operate in the same fashion: they require the user to affirmatively input and communicate certain data—including their name, addresses, phone number, credit card information—and click on "Pay Now" buttons to confirm their intent to purchase items on Shopify merchants' websites. SAC ¶¶2-3, 28-35. Because this is affirmative information that the user intends to communicate to the merchant, "the transactional data *is* the communication, as opposed to information about the person or entity sending the communication." *Wesch v. Yodlee, Inc.*, No. 20-cv-05991-SK, 2021 U.S. Dist. LEXIS 74545, *11 (N.D. Cal. Feb. 16, 2021) (finding that banking data that users inputted qualified as contents); *see also In re Google Inc. Cookie Placement*, 806 F.3d at 137; *Hammerling*, 615 F. Supp. 3d at 1093.

Moreover, "[c]ourts employ a contextual 'case-specific' analysis hinging on 'how much information would be revealed' by the information's tracking and disclosure." *Hammerling*, 615 F. Supp. 3d at 1092. For instance, in *In re Facebook, Inc. Internet Tracking Litig.*, the Ninth Circuit concluded that URLs could qualify as "contents" if they could provide "significant information regarding the user's browsing history" and divulge "a user's personal interests, queries, and habits on third-party websites operating outside of Facebook's platform." 956 F.3d at 596, 605. The same principle applies here. Plaintiff alleges that Shopify collects details about the order, including the "item(s) purchased." SAC ¶¶37, 51, 81. Shopify amasses further data by tracking users' activities across its merchant network with its cookies. *Id*. ¶¶5, 7. 51, 81 As in *Wesch*, this is the kind of data

that could "reveal personal details of Plaintiffs' lives and their expenditures." 2021 U.S. Dist. LEXIS 74545, at *11. It goes far beyond merely documenting a "record" of a communication. *See Lineberry v. Addshopper, Inc.*, No. 23-cv-01996-VC, 2025 LEXIS 167653, at *9 (N.D. Cal. Feb. 19, 2025) (browsing activity that showed "the specific products viewed as opposed to just the IP address and fact that the website was accessed on a particular date—should be considered the 'contents'" because "[b]rowsing a specific product online is akin to calling the store and asking for information about that product, and everyone agrees that the latter counts as the 'content' of the communication"); *Gabrielli*, 2025 LEXIS 326276, at *31 (finding contents were alleged when the information collected included "the Website user's affirmative decisions, actions, choices [and] preferences," including "user input data"); *Yoon*, 2024 LEXIS 82572, at *13-14 (URLs were contents because they were alleged to have "shed light on people's interests, politics, artistic tastes.")[8]

Shopify also contests that Plaintiff alleges the "in transit" element. The "in transit" element is satisfied when it is alleged that the defendant received messages "before or simultaneously with" the intended recipient. *Yockey v. Salesforce, Inc.*, No. 22-cv-09067-JST, 2024 U.S. Dist. LEXIS 146802, at *5 (N.D. Cal. Aug. 16, 2024); *see also Ambriz v. Google, LLC*, No. 23-cv-05437-RFL, 2025 U.S. Dist. LEXIS 29609, at *12-13 (N.D. Cal. Feb. 10, 2025). Plaintiff meets that standard by alleging the communications were intercepted "while in transit to the merchant" and the "merchant does not receive" the communication "and share it with Shopify, but instead it goes directly to Shopify." SAC ¶82; *see also id*. ¶33 (alleging that, when a user clicks the "Pay Now" button, the Shopify's code causes the payment details to be "sent directly to Shopify's servers"); *see Doe v. Eating Recovery Ctr. LLC*, No. 23-cv-05561-VC, 2024 U.S. Dist. LEXIS 99236, at *1 (N.D. Cal. June 4, 2024) (finding the in transit element satisfied because the transmission of information was instantaneous).[9]

---

[8] Defendants cite *Svenson* but, there, the court acknowledged that the Ninth Circuit had previously distinguished a case on the basis that it involved data inputted into a form. *Svenson v. Google Inc.*, 65 F. Supp. 3d 717, 729 (N.D. Cal. 2014). *Svenson* opted to place little weight on that distinction given the implications such an interpretation would have on the scope of subpoenas, which is an entirely separate issue from wiretapping claims. *Yoon* similarly acknowledged that CIPA protects "internal, user-generated material of a message," which is precisely what Plaintiff alleges here. *Yoon*, 549 F. Supp. 3d at 1082.

[9] Based on these allegations, the Court may infer that the transmission occurs in real time, but, to the extent the Court believes that allegations must explicitly state as much, Plaintiff can easily amend to add such allegations. *See Ambriz*, 2025 U.S. Dist. LEXIS 29609, at *12-13.

Each case Defendants cite is readily distinguishable. In *Rodriguez*, the defendant received data, stored it, and *then* shared it with a third-party. *See Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2022 U.S. Dist. LEXIS 13476, at *7–10 (N.D. Cal. Jan. 25, 2022) (plaintiffs alleged that Google logged their data and then subsequently transmitted it). Here, the data went *directly* to Shopify. In *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1110 (C.D. Cal. 2023), the plaintiff wholly failed to articulate the timeline of the transmission, whereas, here, the SAC walks through each step, with screenshots showing exactly when and how the data is transmitted. *See* SAC ¶¶25-40; *Toy v. Life Line Screening of Am. Ltd*. 2024 U.S. Dist. LEXIS 88872, No. 23-cv-04651-RFL, at *3 (N.D. Cal. Mar. 19, 2024) (finding the "in transit" element satisfied when the complaint offered detailed allegations about how Meta Pixel worked).

Defendants also argue that the data was encrypted so it could not have "read" the communications while "in transit." MTD at 17. The argument is baseless. Plaintiff alleges that only the contents of certain cookies are encrypted. SAC ¶40. Nothing in the SAC alleges that data transmitted through the payment forms was encrypted. Indeed, that data could *not* have been encrypted since the SAC features a screenshot of the payload which is *unencrypted*. *Id*. ¶33.

**E. Plaintiff Alleges a Claim under Cal. Pen. Code § 635.**

Cal. Penal Code § 635 makes punishable "[e]very person who …assembles… possesses … or furnishes to another any device which is primarily or exclusively designed or intended for eavesdropping." Shopify first argues that Plaintiff lacks standing for this claim because he alleges only an injury from "IABMFG's use of Shopify's code" but not from the "the manufacture, sale, or assembly of the Shopify code." MTD at 19. *Meta Pixel* recently rejected that argument, concluding that the "better interpretation" is that "injuries caused by *use* of an eavesdropping device are traceable to the manufacture, sale, and provision of that device, and that an injured party therefore has a private right of action against the creator of the device." 2024 U.S. Dist. LEXIS 53062, at *10.

Shopify also argues that software code does not qualify as a "device" under the statute. Not so. *See Revitch v. New Moosejaw, LLC*, 2019 U.S. Dist. LEXIS 186955, at *7–8 (N.D. Cal. 2019) (code is a device under § 635); *Smith v. Google, LLC*, No. 23-cv-03527-PCP, 2024 U.S. Dist. LEXIS

98367, at *21-22 (N.D. Cal. June 3, 2024) (applying § 635 to code); *see also In re Carrier IQ, Inc., Privacy Litig.*, 78 F.Supp.3d at 1084 (finding software to be a "device" under the Wiretap Act).[10]

Shopify next argues the code is not "'primarily or exclusively designed or intended' for eavesdropping," citing to various examples of uses. MTD at 19-20. "[T]hese are all factual responses to plaintiffs' complaint." *Smith*, 735 F. Supp. 3d at 1200-01. "[A]t the 12(b)(6) stage the question is not whether the Court can imagine any purpose ... other than eavesdropping but instead whether plaintiffs' allegations are sufficient to plausibly state a claim." *Meta Pixel*, 2024 U.S. Dist. LEXIS 53062, at *11. Plaintiff alleges here that the code is "primarily or exclusively designed to intercept, collect… and track communications that Class members reasonably (but erroneously) believed would be sent… to the merchant." SAC ¶ 92. Because Shopify's involvement is not disclosed to users, "[o]nly a person with technical knowledge… could determine that the payment forms are generated by Shopify." *Id.* ¶ 30. These allegations are akin to those accepted by other courts. *See Smith*, 735 F. Supp. 3d at 1200-01; *Meta Pixel*, 2024 U.S. Dist. LEXIS 53062, at *11.

Finally, Shopify again challenges intent, but the argument fails for the same reasons explained above. Intent may be alleged generally, and CIPA § 635 "does not require intent or knowledge that the device would actually be used unlawfully." *Yoon v. Meta Platforms, Inc.*, No. 24-cv-02612-NC, 2024 U.S. Dist. LEXIS 234457, at *22 (N.D. Cal. Dec. 30, 2024). For that reason, allegations that "collecting [the at-issue] information would be helpful to Defendant and Defendant knowingly wanted to use that information" are enough to plausibly allege intent, which Plaintiff has done, as explained above. *Id*. Shopify's Privacy Policy also does not change the analysis. If anything, the provisions Shopify points to "can show that Defendant knew it could be used for wiretapping if used improperly as it addressed the potential for misuse." *Id*. at *23. Indeed, "CIPA § 635 does not require the intent that the device *would* be used unlawfully, just that it *could* be." *Id*.

**F. Plaintiff Alleges a Claim Under the CDAFA.**

The CDAFA imposes liability on any person who "[k]nowingly accesses and without permission takes, copies, or makes use of any data from a computer…" Cal. Penal Code § 502(c)(2). Defendants now argue that Plaintiff has not alleged actual damages. This argument fails.

[10] The California Supreme Court has instructed courts to interpret CIPA to provide "greater protection to privacy interests." *Flanagan v. Flanagan*, 27 Cal. 4th 766, 775 (2002). Applying § 635 to modern software code accords with that mandate.

In *Smith v. Rack Room Shoes, Inc.*, No. 24-cv-06709-RFL, 2025 LEXIS 354693, at *7-9 (N.D. Cal. Aug. 4, 2025), for example, the court explained that "[a] disgorgement theory can 'constitute[] an injury sufficient to establish [Article III] standing to bring [a plaintiff's] claims for CDAFA violations.'" *Id.* This is because the Ninth Circuit recognized that plaintiffs have a "stake in the profits garnered" unjustly from their data, and "[u]nder California law, this stake in unjustly earned profits exists regardless of whether an individual planned to sell his or her data or whether the individual's data is made less valuable." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d. at 600. *Smith* held "[t]hat logic applies equally to the issue of whether plaintiffs have suffered 'damage' under CDAFA." 2025 LEXIS 354693, at *7-9.

As in *Smith*, Plaintiff alleges that Shopify wrongfully "obtained control of Plaintiff's and the Class members' data" (SAC ¶ 124) which enabled it "to generate substantial profit, not only through its transaction fees, but also by… selling and/or sharing consumers' Private Information." *Id.* ¶ 115. As in *Smith*, Plaintiff seeks "relief for that injury" which includes the "disgorgement of profits made by Shopify as a result of its intrusions upon the Class members' privacy." *Id.* ¶¶ 119, 125. Shopify ignores this theory of injury. Under *Smith*, it suffices. *See also Rodriguez*, 772 F. Supp. 3d at 1109.

Plaintiff also "alleges monetary loss in a more conventional way." *McClung v. AddShopper, Inc.*, No. 23-cv-01996-VC, 2024 LEXIS 68340, at *6-7 (N.D. Cal. Jan. 17, 2024). He alleges that he "would not have purchased products from IABMFG" had he known that Shopify would "install a tracking cookie on his smartphone browser, for the purpose of tracking him" or that Shopify "would collect, store, analyze, and/or transfer his private information." SAC ¶¶ 63, 64. These allegations are nearly identical to those in *McClung* that sufficed to allege a benefit of the bargain theory of loss. *See McClung*, 2024 LEXIS 68340, at *6-7 (plaintiffs alleged they "would not have purchased products from these retailers had they known that it would subject them to the alleged scheme" that sent them "unwanted email communications as a result of those purchases.")[11]

Finally, to the extent Defendants challenge this claim due to a purported failure to allege "intent," the CDAFA requires "only 'knowing access' that is made unlawful if 'the person 'without permission takes, copies, or makes use of' data on the computer.'" *West v. Ronquillo-Morgan*, 526

[11] Shopify argues that this is not a loss sustained "by reason of the violation." MTD at 21. But the causal connection is direct and concrete: Plaintiff would not have purchased the products had he known of Defendants' misconduct. Their assertion that it pertains to a "subjective" preference is irrelevant.

F. Supp. 3d 737, 745 (C.D. Cal. 2020). The CDAFA "is focused on the 'unauthorized taking or use of information.'" *Id*. Plaintiff alleges that Defendants designed their software code to collect data and chose to make use of it. The taking was unauthorized because Plaintiff did not consent.

**G. Plaintiff States a Claim Under the UCL.**

The UCL provides for three distinct causes of action. "Each of these three adjectives [unlawful, unfair, or fraudulent] captures a 'separate and distinct theory of liability.'" *Rubio v. Capital One Bank,* 613 F.3d 1195, 1203 (9th Cir.2010). Shopify violated of all three prongs.

**1. Plaintiff Has Standing.**

To establish standing under the UCL, a plaintiff "must show he personally lost money or property" because of the unfair business practice. *In re iPhone Application Litig*., 844 F. Supp. 2d 1040 (N.D. Cal. 2012). There are "innumerable ways" a plaintiff could satisfy this requirement. *Kwikset Corp. v. Superior Court,* 51 Cal.4th 310, 330 (2011). Although Shopify argues the "lost value" of data is insufficient, *see* MTD at 21-22, Shopify largely ignores that the most common way to establish UCL standing is to allege the consumer "would not have bought the product but for" the unfair business practice or that the consumer "paid more than he or she actually valued the product." *Id*. That is precisely what Plaintiff alleges here: he alleges that he would not have bought the products from IABMFG had he known of Shopify's misconduct. *See* SAC ¶¶ 63-66. Plaintiff lost a concrete amount of money as a direct result of the UCL violation.

"Courts in California have consistently held that benefit of the bargain damages represents economic injury for purposes of the UCL." *See In re Solara Medical Supplies, LLC Customer Data Security Breach Litigation*, 613 F. Supp. 3d 1284, 1301 (S.D. Cal. May 2020). This, in fact, is a "quintessential" injury-in-fact. *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011); *see also Davidson v. Kimberly-Clark Corp*., 889 F.3d 956, 965-66 (9th Cir. 2018). In *McClung*, for example, plaintiffs had standing when they alleged they would not have purchased products had known of the misappropriation of their data and unwanted emails. 2024 LX 68340, at *6. Plaintiff's allegations are nearly identical. *See also Stark v. Patreon, Inc*., 635 F. Supp. 3d 841, 854 (N.D. Cal. 2022) (plaintiffs had UCL standing when they alleged "that if Patreon had disclosed the manner in which it shared

user data with Facebook, they would not have paid Patreon subscription fees, or at least not in the same amounts.")[12]

Shopify finally argues that further details about the specifics of the price premium paid are necessary to state a cognizable injury. The Ninth Circuit disagrees. Just last year, it explained that a plaintiff "need prove only that she 'paid more for [the product] than [she] otherwise would have paid, or bought it when [she] otherwise would not have done so,' …, absent Defendants' 'false representations—or actionable non-disclosures—about [the product,].'" *Bowen*, 118 F. 4th at 1147.[13] No further details are necessary.[14]

**2. Shopify Engaged in Unlawful Conduct.**

Plaintiff's UCL unlawful prong claims "borrow[] violations of other laws and makes those unlawful practices actionable under the UCL." *Klein v. Chevron U.S.A., Inc.*, 137 Cal. Rptr. 3d 293, 326-27 (Cal. Ct. App. 2012); *see also Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1177 (9th Cir. 2016). "Virtually any state, federal, or local law can serve as the predicate." *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1052 (9th Cir. 2017). Plaintiff predicates his unlawful claims on the causes of action discussed above as well as various other statutes. This means that if ***any*** of the other claims proceed, so too must the claim under the UCL unlawful prong.[15] *See, e.g., Pac. Steel Grp. v. Commer. Metals Co.*, 600 F. Supp. 3d 1056, 1082 (N.D. Cal. 2022) ("[t]hese claims are duplicative of other claims and accordingly rise and fall as they do.")

**3. Shopify Violated the Fraud Prong.**

---

[12] Courts even recognize the benefit-of-the-bargain theory of injury when a consumer did ***not*** buy anything, but merely shared data that the defendant failed to protect. *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1024.

[13] Notably, Defendants' authority on this point pre-dates *Bowen*.

[14] Shopify argues that omissions are not actionable unless they pertain to product defects, but that is not true, as explained below. It also has no bearing on the unlawful and unfair prongs.

[15] CCPA and CalOPPA also serve as predicate acts. *See* SAC ¶¶137-139. Shopify argues the CCPA cannot be a predicate because it does not have its own right of action. But the Ninth Circuit explicitly rejected that assertion when it held: "[i]t does not matter whether the underlying statute also provides for a private cause of action; [the UCL] can form the basis for a private cause of action even if the predicate statute does not." *Chabner v. United of Omaha Life Ins., Co.,* 225 F. 3d 1042, 1048 (9th Cir. 2000). Shopify also asserts, yet another, new argument, claiming the violation of CalOPPA fails in light of the absence of notice, but it cannot dispute that the originally filed complaint notified it of the violation, *see* ECF 1, which was more than 30 days ago.

Plaintiff's claim under the UCL fraud prong alleges that Shopify committed fraud by failing to disclose its interception, collection, tracking, use, and disclosure of users' data. SAC ¶131. Shopify contends "omissions are only actionable under the UCL if they concern 'physical defects'". MTD at 24. It is wrong. It is well-established that omissions are actionable under the UCL when the omission is "contrary to a representation actually made by the defendant, or an omission of a fact that defendant was obliged to disclose." *Daugherty v. Am. Honda Motor Co*., 144 Cal. App. 4th 824, 835 (2006). A duty to disclose arises "when the defendant has *exclusive knowledge* of material facts not known or reasonably accessible to the plaintiff" and "when the defendant *actively conceals* a material fact from the plaintiff." *Collins v. eMachines, Inc*., 202 Cal. App. 4th 249, 255 (2011) (emphasis added). The duty is not limited to product defects. Courts recognize the duty in cases involving the handling of data. *See Stark*, 635 F. Supp. 3d at 855-56 (finding "Patreon's disclosure of limited data sharing gave rise to a duty to disclose "); *In re Solara Med. Supplies, LLC*, 613 F. Supp. 3d at 1303 (finding "a duty to disclose based upon [d]efendant's exclusive knowledge of the alleged inadequacy of its security measures"); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d at 1113-14 (duty to disclose when defendants had exclusive knowledge of the information related to software).

As in these cases, Shopify had a duty to disclose because they had exclusive knowledge and actively concealed their involvement. SAC ¶135. Plaintiff did not know about Defendants' involvement in the transactions. *Id*. Nor could he because they actively hid their role by designing their payment forms to look as if they belonged to the merchant. *Id*. ¶¶ 4, 30, 87. Yet, Shopify knew the transmission, disclosure, and use of users' data was occurring. *Id*. ¶¶ 42-47, 87, 92.

**4. Shopify Engaged in Unfair Conduct.**

"As the UCL's three-prong structure makes clear, a business practice may be unfair, and therefore illegal under the UCL, even if not specifically proscribed by some other law." *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 1000 (9th Cir. 2023) (quotations omitted). The test "to support a finding of unfairness to consumers" is "the balancing test, which 'weigh[s] the utility of the defendant's conduct against the gravity of the harm to the alleged victim.'" *Id*. It is fact-driven and "requires a review of the evidence." *McKell v. Wash. Mut., Inc.*, 49 Cal. Rptr. 3d 227, 240 (2006). For that reason, it "cannot usually be" determined on the pleadings. *Id*.; *see also Rovai v. Select Portfolio*

*Servicing, LLC*, 2018 U.S. Dist. LEXIS 107764, at *47 (S.D. Cal. June 27, 2018) (the balancing test is not "a particularly difficult test to satisfy at the motion to dismiss stage").

The SAC alleges that Class members were harmed because "Shopify intruded on communications" that they "believed to be private" and then shared Class members' data with third parties who, in turn, shared the data with other third-parties. SAC ¶133. Shopify argues there was some utility. However, Shopify ignores these disclosures occurred "*[u]nbeknownst to Class members and without their consent*." *Id.* (emphasis added). That point drives home the unfairness at stake: a simple, obvious fix – i.e., informing users and obtaining their consent – would have completely avoided the harm while preserving whatever benefit Shopify derived from the use and disclosure of the data. That is more than enough at the pleadings to state an unfair practice. *See, e.g., In re Solara Med. Supplies, LLC*, 613 F. Supp. 3d at 1304; *Stark*, 635 F. Supp. 3d at 856; *In re Adobe Sys. Privacy Litig*., 66 F. Supp. 3d 1197, 1227 (N.D. Cal. 2014).

### H. Plaintiff Requests Leave to Amend If Necessary.

Should this Court find any claims in the SAC insufficient, Plaintiff requests leave to amend to cure the deficiencies. "[L]eave to amend should be granted unless the Court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co*., 806 F.2d 1393, 1401 (9th Cir. 1986).

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss must be denied.

Dated: October 23, 2025.

**GUTRIDE SAFIER LLP**

*/s/Seth A. Safier*
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
Hayley Reynolds (State Bar No. 306427)
hayley@gutridesafier.com
Kali R. Backer (State Bar No. 342492)
kali@gutridesafier.com
Rajiv V. Thairani (State Bar No. 344390)
raj@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090

Facsimile: (415) 449-6469

*Attorneys for Plaintiff*