COOLEY LLP
BENEDICT HUR (224018)
(bhur@cooley.com)
SIMONA AGNOLUCCI (246943)
(sagnolucci@cooley.com)
JOSHUA ANDERSON (312836)
(joshua.anderson@cooley.com)
TIFFANY M. LIN (321472)
(tiffany.lin@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222

Attorneys for Defendants
Shopify Inc.; Shopify (USA) Inc.; and Shopify Payments (USA) Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| BRANDON BRISKIN, on behalf of himself and those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SHOPIFY INC.; SHOPIFY (USA) INC.; and SHOPIFY PAYMENTS (USA) INC.,<br><br>Defendants. | Case No. 21-cv-06269-PJH<br><br>**SHOPIFY INC.; SHOPIFY (USA) INC.; AND SHOPIFY PAYMENTS (USA) INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Date: December 4, 2025<br>Time: 1:30 p.m.<br>Location: Courtroom 3, 3rd Floor<br>1301 Clay Street<br>Oakland, California<br>Judge: Hon. Phyllis J. Hamilton<br><br>Date Action Filed: August 13, 2021 |

## TABLE OF CONTENTS

Page


I. INTRODUCTION ..... 1
II. ARGUMENT ..... 2
A. Rule 9(b) applies because all of Plaintiff's claims sound in fraud. ..... 2
B. Plaintiff fails to invoke the discovery rule. ..... 2
C. Plaintiff fails to identify allegations that support intent for any claim. ..... 4
1. Plaintiff does not establish even general intent. ..... 4
2. Plaintiff cannot establish intent under CIPA and CDAFA. ..... 5
D. Plaintiff's Invasion of Privacy and Intrusion Upon Seclusion claims must be dismissed. ..... 6
1. The SAC fails to allege a "highly offensive" intrusion that goes beyond "routine commercial behavior." ..... 6
E. Plaintiff's CIPA claims must be dismissed. ..... 7
1. As a vendor, Shopify is a party to the communication. ..... 7
2. Plaintiff fails to allege that the "contents" of a communication were read while "in transit." ..... 10
3. Plaintiff does not allege Shopify violated Section 635. ..... 11
F. Plaintiff fails to adequately plead standing under CDAFA. ..... 11
G. Plaintiff fails to support his UCL claim. ..... 13
1. The SAC fails to establish a cognizable loss. ..... 13
2. The SAC fails to allege a predicate violation of existing law. ..... 13
3. The SAC fails to establish a duty to disclose. ..... 14
4. The SAC fails to sufficiently allege an "unfair" practice claim. ..... 15
H. Plaintiff should not be granted leave to amend. ..... 15
III. CONCLUSION ..... 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abagninin v. AMVAC Chem. Corp.*,
545 F.3d 733 (9th Cir. 2008) ........ 15

*In re Accellion, Inc. Data Breach Litig.*,
713 F. Supp. 3d 623 (N.D. Cal. 2024) ........ 4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 3, 4

*Beasley v. Lucky Stores, Inc.*,
400 F. Supp. 3d 942 (N.D. Cal. 2019) ........ 3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 4

*Bittner v. United States*,
598 U.S. 85 (2023) ........ 9

*Borg-Warner Protective Servs. Corp. v. Super. Ct.*,
75 Cal. App. 4th 1203 (1999) ........ 8

*Chabner v. United of Omaha Life Ins., Co.*,
225 F.3d 1042 (9th Cir. 2000) ........ 14

*Cho v. Hyundai Motor Co.*,
636 F. Supp. 3d 1149 (C.D. Cal. 2022) ........ 2

*Damner v. Facebook Inc.*,
No. 20-cv-05177-JCS, 2020 WL 7862706 (N.D. Cal. Dec. 31, 2020) ........ 4

*Doe I v. Google*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ........ 2, 4, 5

*Doe v. Eating Recovery Ctr. LLC*,
No. 23-cv-05561-VC, 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) ........ 9, 10

*Facebook, Inc. v. Power Ventures, Inc.*,
844 F.3d 1058 (9th Cir. 2016) ........ 5

*In re Facebook, Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ 12

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797 (2005) ........ 2, 3

*Gerritsen v. FCA US LLC*,
No. CV 19-08268-AB (KSX), 2020 WL 3841304 (C.D. Cal. Mar. 3, 2020) ........ 13

*Gilday v. Dubois*,
124 F.3d 277 (1st Cir. 1997) ........ 11

## TABLE OF AUTHORITIES
**continued**

**Page(s)**

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ........ 7

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ........ 8, 11

*Gutierrez v. Converse Inc.*,
No. 24-4797, 2025 WL 1895315 (9th Cir. July 9, 2025) ........ 9, 10

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ........ 14

*Hammerling v. Google, LLC*,
No. 22-17024, 2024 WL 937247 (9th Cir. Mar. 5, 2024) ........ 7

*Harrott v. Cnty. of Kings*,
25 Cal. 4th 1138 (2001) ........ 9

*Heerde v. Learfield Commc'ns, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024) ........ 11

*Hodsdon v. Mars, Inc.*,
891 F.3d 857 (9th Cir. 2018) ........ 14

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) ........ 8

*Leocal v. Ashcroft*,
543 U.S. 1 (2004) ........ 9

*Libman v. Apple, Inc.*,
No. 22-CV-07069-EJD, 2024 WL 4314791 (N.D. Cal. Sep. 26, 2024) ........ 13

*LiMandri v. Judkins*,
52 Cal. App. 4th 326 (1997) ........ 14

*M.D. v. Google LLC*,
No. 24-cv-06369-AMO, 2025 WL 2710095 (N.D. Cal. Sep. 23, 2025) ........ 4, 7

*McClung v. AddShopper, Inc.*,
No. 23-cv-01996-VC, 2024 WL 189006 (N.D. Cal. Jan. 17, 2024) ........ 12, 13

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) ........ 11

*Moore v. Centrelake Med. Grp., Inc.*,
83 Cal. App. 5th 515 (2022) ........ 12

*Muha v. Experian Info. Sols., Inc.*,
106 Cal. App. 5th 199 (2024) ........ 12

**TABLE OF AUTHORITIES**
**continued**

**Page(s)**

*Naimi v. Starbucks Corp.*,
798 F. App'x 67 (9th Cir. 2019) .......... 13

*People v. Hawkins*,
98 Cal. App. 4th 1428 (2002) .......... 5

*People v. Robles*,
23 Cal. 4th 1106 (2000) .......... 9

*Perez v. Romantix Online, Inc.*,
No. 5:25-cv-02465-NW, 2025 WL 3085786 (N.D. Cal. Oct. 27, 2025) .......... 5, 7, 13

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... 12

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) .......... 11

*Shaw v. Experian Info. Sols., Inc.*,
891 F.3d 749 (9th Cir. 2018) .......... 6

*Silver v. Stripe Inc.*,
No. 4:20-CV-08196-YGR, 2021 WL 3191752 (N.D. Cal. July 28, 2021) .......... 14

*In re Slyman*,
234 F.3d 1081 (9th Cir. 2000) .......... 6

*Smith v. Google LLC*,
735 F. Supp. 3d 1188 (N.D. Cal. 2024) .......... 2, 12

*Smith v. Rack Room Shoes, Inc.*,
No. 24-cv-06709-RFL, 2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) .......... 12

*In re Solara Medical Supplies, LLC Customer Data Security Breach Litigation*,
613 F. Supp. 3d 1284 (S.D. Cal. 2020) .......... 12, 13

*Svenson v. Google Inc.*,
65 F. Supp. 3d 717 (N.D. Cal. 2014) .......... 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) .......... 5

*Torres v. Prudential Fin., Inc.*,
No. 22-cv-07465 (CRB), 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) .......... 10

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 12

*United Riggers & Erectors, Inc. v. Coast Iron & Steel Co.*,
4 Cal. 5th 1082 (2018) .......... 9

## TABLE OF AUTHORITIES
**continued**

**Page(s)**


*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) .......... 6

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) .......... 10

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) .......... 2

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 11

**Statutes**

Cal. Bus. & Prof. Code § 22575(a) .......... 14

Cal. Civ. Code
§ 1798.110(a) .......... 7, 9
§§ 1798.140(j)(1), (ag), (ai) .......... 9
§ 1798.150(c) .......... 14
§ 2330 .......... 8

Cal. Code Regs. tit. 11, § 7050(a)(4) .......... 6, 9

Cal. Cons. Priv. Act .......... 7, 9, 13, 14

Cal. Penal Code
§ 502(c)(1) .......... 5, 12
§ 502(c)(2) .......... 5
§ 502(e)(1) .......... 11, 12
§ 631 .......... 1, 8
§ 631(a)(2) .......... 5, 7, 10
§ 631(a)(3) .......... 5, 7, 10
§ 632 .......... 10
§ 635 .......... 1, 7, 11

Fed. Wiretap Act .......... 6

**Other Authorities**

Fed. R. Civ. P.
8 .......... 2, 4
9(b) .......... 2, 4, 14

Jud. Council of Cal., Criminal Jury Instr., CALCRIM No. 250 (2011) .......... 5

U.S. Const. Art. III .......... 12

## I. INTRODUCTION

Plaintiff's opposition leans on smoke and mirrors to distract from the glaring omissions in his Second Amended Complaint ("SAC"). He cites the SAC's generalized assertions about what data Shopify could have collected from other people in 2021 to hide the paucity of allegations pertaining to his own experience two years prior. Cutting through the noise, the SAC concerns Plaintiff's single 2019 purchase and the data Plaintiff speculates Shopify may (or may not) have collected about it. These wafer-thin allegations cannot support the sweeping claims Plaintiff asserts.

***First***, Plaintiff fails to show the timeliness of his facially time-barred claims. The burden to demonstrate timeliness is his, and he fails to carry it.

***Second***, Plaintiff leans on conclusory assertions that Shopify intended to surreptitiously collect his data. In so doing, he ignores judicially noticeable facts demonstrating Shopify's disclosure requirements for merchants—not to mention his own allegations that Shopify has no knowledge of whether merchants obtain adequate consent.

***Third***, Plaintiff continues to feign surprise that third parties are involved in payment processing, or that fraud detection and risk analysis attend each credit card transaction. These well-established features of modern commerce cannot—as a matter of law—constitute an "egregious breach of social norms" sufficient to support his common law privacy claims.

***Fourth***, Plaintiff's CIPA claim under Section 631 fails because Shopify was a party to the communication, and in any event, Shopify is not alleged to have read the contents of Plaintiff's communications while in transit. His claim under Section 635 fails because the SAC itself alleges that Shopify's technology is not primarily or exclusively designed for eavesdropping.

***Fifth***, Plaintiff lacks CDAFA standing. He implicitly concedes he has suffered no cognizable damage or loss; rather, he claims that his alleged entitlement to disgorgement is enough to confer standing under CDAFA. It is not.

***Finally***, Plaintiff's UCL claim similarly fails for lack of standing. Even on the merits, Plaintiff has failed to show a predicate legal violation, and he relies on outdated authorities to suggest Shopify was under a duty to disclose that binding case law forecloses. Plaintiff all but

abandons his effort to make a claim under the UCL's "unfair" prong.

Because it is clear at this stage that Plaintiff cannot cure these fatal defects, the third complaint should be dismissed without leave to amend.

## II. ARGUMENT

### A. Rule 9(b) applies because all of Plaintiff's claims sound in fraud.

Plaintiff argues that Rule 9(b) cannot apply to his claims because they do not "turn on deception." Opp. at 3–4.[1] This ignores the SAC's extensive allegations of Shopify's purported concealment, which distinguish these pleadings from the single "passing reference" to misrepresentation in *Smith v. Google LLC*, 735 F. Supp. 3d 1188, 1198 (N.D. Cal. 2024). *See* SAC ¶¶ 48, 52, 131–135, 141, 144. These allegations are grounded in fraud. Indeed, Plaintiff's UCL fraud prong expressly encompasses the conduct alleged under each other claim. *See id.* ¶ 131 (alleging Shopify "concealed" its interception of communications, invasion of privacy, and access to data on devices). Rule 9(b) therefore applies to all claims. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003); *Doe I v. Google*, 741 F. Supp. 3d 828, 843 (N.D. Cal. 2024). While *Doe I* did not reach Rule 9(b) because plaintiffs' allegations did not even satisfy Rule 8, Judge Chhabria's rationale for applying Rule 9(b) to a similar theory of liability remains sound. And though the standard is "*somewhat* relaxed" in the context of fraudulent omission, "a plaintiff alleging fraudulent omission or concealment must still plead the claim with particularity." *Cho v. Hyundai Motor Co.*, 636 F. Supp. 3d 1149, 1165 (C.D. Cal. 2022) (emphasis added) (citation omitted). The SAC does not clear this bar. *See* Mot., Dkt. 84, at 6–7.

### B. Plaintiff fails to invoke the discovery rule.

Plaintiff's CIPA and common law privacy claims are facially untimely because he brought suit in August 2021, more than two years after his purchase in June 2019. Plaintiff claims it is Shopify's burden to negate tolling, but California law "places the burden on the plaintiff" to plead facts supporting the discovery rule. *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808

---

[1] Plaintiff's quibbling about what arguments were raised in prior briefing, Opp. at 3 n.1, is precisely what the Court wanted to avoid when it authorized Shopify to raise new arguments. Tr. of Case Mgmt. Conf. at 18:12–15 ("Well, I certainly don't want to be in the position of sitting and comparing the arguments from those raised years before and those raised now. So, you persuade me, Mr. Hur. **You make your best argument**." (emphasis added)).

(2005). "[T]he ***plaintiff*** must plead that, despite diligent investigation of the circumstances of the injury, he or she could not have reasonably discovered facts supporting the cause of action within the applicable statute of limitations period." *Id.* at 809 (emphasis added).

Though "conclusory allegations" of delayed discovery are insufficient, *id.* at 808, the SAC offers little more than a naked assertion that Plaintiff could not have discovered Shopify's role in his transaction sooner. Nor does his claim—that only persons with special knowledge and tools could determine the "payment forms" were generated by Shopify—advance his case. *See* SAC ¶ 30.[2] Plaintiff's "alleged lack of expertise is, without more, insufficient" to meet his burden. *Beasley v. Lucky Stores, Inc.*, 400 F. Supp. 3d 942, 959 (N.D. Cal. 2019). Plaintiff falls far short of explaining why a reasonably diligent consumer could not have learned of Shopify's alleged role from sources available to him.[3]

This failure to support tolling illustrates a more fundamental pleading failure. While Plaintiff bases his complaint on an assertion that his "private information was sent to Shopify's computer network" in 2019, SAC ¶ 60, this conclusory claim is contradicted by the admission that he did not know and could not have known how Shopify's software operated. No allegation supports the notion that the IABMFG website had the same data practices more than two years before counsel's "discovery," or even that IABMFG was a Shopify merchant at the time.[4]

The best Plaintiff does is argue that nothing in the SAC indicates that IABMFG or Shopify operated differently in 2019. Opp. at 5–6. This amounts to nothing more than an assertion that there is a "possibility" that the challenged practices were in place. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the plaintiff has not stated a plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Holding Plaintiff to his pleading burden is not, as he suggests, drawing an inference against

---

[2] Plaintiff's tolling allegation concerns only payment forms, yet Plaintiff's opposition pivots focus to cookies. To the extent cookies play a central role in plaintiff's claims, Plaintiff does not allege why he could not have discovered them sooner.

[3] Plaintiff's argument that he need not submit evidence at the pleading stage is a red herring. Evidence is not required, but allegations are—and those allegations are absent in the SAC.

[4] Plaintiff misleadingly claims he alleged that IABMFG was a Shopify merchant since 2018. Opp. at 6. He cites one paragraph alleging IABMFG is a *current* merchant, and a second one alleging that Shopify had 80,000 unidentified California merchants in 2018. SAC ¶¶ 1, 12.

him. Opp. at 6. Mere conclusions do not warrant favorable inferences, nor can inferences arise from absent facts. *Iqbal*, 556 U.S. at 678–79. In *M.D. v. Google LLC*, for example, the court dismissed similar claims where plaintiffs sought "to challenge the interception of data reaching back several years" before their counsel "discovered" the practice. No. 24-cv-06369-AMO, 2025 WL 2710095, at *5 (N.D. Cal. Sep. 23, 2025). Because the plaintiffs failed to adequately allege "that the data sharing practices . . . were previously undertaken," the court dismissed the claims "for want of factual support." *Id.* Here too, Plaintiff's supposition lacks factual support and he has not "nudged [his] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### C. Plaintiff fails to identify allegations that support intent for any claim.

Plaintiff repeats the tired refrains of those seeking to avoid their pleading burden: "I'm allowed to just assert it" and "it's a fact issue." Neither works here. While true that some claims have distinct intent elements, his failure to allege even general intent for his common law claims means he cannot get close to establishing the narrower intent that CIPA and CDAFA require.

#### 1. Plaintiff does not establish even general intent.

***First***, Plaintiff asserts that Rule 9(b) permits him to allege intent "generally." Opp. at 7. But this does not "equate[] with a conclusory allegation"—it merely means that intent is not subject to "an elevated pleading standard." *Iqbal*, 556 U.S. at 686–87 (citation omitted). Rule 8 still applies, and a plaintiff cannot "plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." *Id.* at 687. Yet that is precisely what Plaintiff does here. *See* Opp. at 7 (citing SAC ¶¶ 105, 110 ("Shopify intentionally intruded upon the solitude or seclusion of the Class members . . . .")).

***Second***, Plaintiff claims intent turns on "disputed issues of fact" that cannot be resolved on a motion to dismiss. This is meaningless. Nearly all facts in litigation are disputed, yet courts routinely dismiss claims when factual allegations are lacking. *See Doe I*, 741 F. Supp. 3d at 842; *In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 646-47 (N.D. Cal. 2024); *Damner v. Facebook Inc.*, No. 20-cv-05177-JCS, 2020 WL 7862706, at *6 (N.D. Cal. Dec. 31, 2020).

Stripped of conclusory intent claims, Plaintiff's allegations collapse. He admits Shopify's

default store theme included its branding, that *merchants* could remove it if *they* chose, and that Shopify did not review their websites. SAC ¶¶ 52–53. Plaintiff's focus on the alleged instructional video is a red herring because Shopify branding was just one of several ways users could receive notice. Shopify also required merchants to post a privacy policy and obtain consent from its customers for the use of Shopify.[5] Further, Shopify's alleged lack of oversight of IABMFG's website negates any claim that Shopify would have been aware of (much less intended) IABMFG's alleged noncompliance. SAC ¶ 54.

In sum, Plaintiff's summary conclusions are contradicted by the well-pleaded allegations and undermined by the judicially-noticeable documents.

**2. Plaintiff cannot establish intent under CIPA and CDAFA.**

Lacking even general intent, Plaintiff cannot make out the required showings under criminal statutes like CIPA and CDAFA. Intent under California criminal statutes requires "not only [that the defendant] commit the prohibited act," but "must do so with wrongful intent." Judicial Council of Cal., Criminal Jury Instructions, CALCRIM No. 250 (2011). Under CIPA, the "prohibited act" is intentionally reading communications "without the consent of all parties." Cal. Penal Code § 631(a); *Doe I*, 741 F. Supp. 3d at 840 (mere awareness that an interception might occur is not enough). Consent is not an affirmative defense, but an element of the claim. *Perez v. Romantix Online, Inc.*, No. 5:25-cv-02465-NW, 2025 WL 3085786, at *2 (N.D. Cal. Oct. 27, 2025). CDAFA likewise requires knowing access "without permission." *See* Cal. Penal Code §§ 502(c)(1), (2); *People v. Hawkins*, 98 Cal. App. 4th 1428, 1438-39 (2002) ("[K]nowingly" applies to all elements of Section 502(c)(2), not just access); *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1069 (9th Cir. 2016) (finding liability only after Power Ventures knew that it no longer had permission). Under both statutes, then, the "prohibited act" that must be intended is to access data without consent.

As discussed above, Plaintiff fails to show Shopify intended to act without consent because

[5] Plaintiff neither opposes Shopify's RJN nor disputes the documents' authenticity. Rather, he contends that the Court cannot take judicial notice of Shopify's intent—something Shopify never asked the Court to do. Shopify does not seek notice of its intent, but of *documents* that the Court properly considers to evaluate the plausibility of the allegations. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

(1) it required merchants to disclose Shopify's role and obtain adequate consent; and (2) Plaintiff alleges Shopify did not monitor merchants, meaning it would not know if consent was lacking. *See United States v. Christensen*, 828 F.3d 763, 790-91 (9th Cir. 2015) (for purposes of the federal Wiretap Act, "intentionally" means "purposefully and deliberately and not as a result of an accident or mistake" (citation omitted)). Plaintiff's criminal claims fail as a result.

### D. Plaintiff's Invasion of Privacy and Intrusion Upon Seclusion claims must be dismissed.

#### 1. The SAC fails to allege a "highly offensive" intrusion that goes beyond "routine commercial behavior."

Unable to defend his incoherent allegations, Plaintiff insists that offensiveness cannot be resolved on the pleadings. Opp. at 9. But courts routinely dismiss claims based on conduct any reasonable person would expect. *See* Mot. at 13 (collecting cases).

Perhaps recognizing that consumers anticipate third-party involvement in credit card transactions, Plaintiff focuses on "risk profiles." *See In re Slyman*, 234 F.3d 1081, 1086 (9th Cir. 2000) (noting that credit card transactions are intermediated by a third party). But "risk profiles" are common, expected parts of everyday financial transactions. For example, any adult is familiar with the idea of a credit score, which is a "risk profile." *See Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 752 (9th Cir. 2018) (discussing credit reporting agencies receiving comprehensive data and furnishing the information to third parties). Additionally, fraud alerts that block suspicious transactions are not only common, but important guardrails in modern commerce. The service Plaintiff challenges—which protects both merchants and consumers—is not some surreptitious data siphon, but rather something Plaintiff alleges merchants must specifically contract into. SAC ¶ 15. And notably, even in the absence of the alleged contract, California's comprehensive privacy regulations explicitly permit service providers and contractors to use data they collect on behalf of websites "[t]o prevent, detect, or investigate . . . malicious, deceptive, fraudulent or illegal activity . . . ." Cal. Code Regs. tit. 11, § 7050(a)(4).

Most fundamentally, Plaintiff offers no plausible allegations specific to himself. He cites a single IABMFG transaction and vaguely alludes to other transactions on other merchant websites that may or may not have disclosed Shopify's role or obtained consent. SAC ¶¶ 57–62. These

sparse claims show no data "accumulation" rising to an "egregious breach of social norms." *See In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 829–30 (N.D. Cal. 2020) (citation omitted).

**1. Plaintiff's strawman consent argument lacks merit.**

Plaintiff spends several pages rebutting a consent argument Shopify never made. Opp. at 12–13. Shopify merely noted the inconsistency of alleging a 2019 violation based on a 2021 investigation that "discovered" conduct disclosed in the privacy policy. He offers no facts showing the same practices existed two years earlier. *See M.D.*, 2025 WL 2710095, at *5. And contrary to Plaintiff's argument, the 2021 policy clearly disclosed that payment data could be shared with third parties and that cookies would be installed. Dkt. 84-4 at 2, 6. The fraud detection service Plaintiff complains of is alleged to be something merchants contract for—meaning it falls squarely within the scope of data IABMFG said it may disclose to "service providers." SAC ¶ 15. Where the challenged conduct is plainly within the scope of a privacy policy, even a broad one, courts uphold such disclosures. *See Hammerling v. Google, LLC*, No. 22-17024, 2024 WL 937247, at *1–2 (9th Cir. Mar. 5, 2024) (unpublished opinion); *Perez*, 2025 WL 3085786, at *2–3. Plaintiff's assertion that privacy policies must spell out data processing in excruciating detail cannot be squared with *Hammerling* and the California Consumer Privacy Act ("CCPA"), which permits categorical notice. Cal. Civ. Code § 1798.110(a).

**E. Plaintiff's CIPA claims must be dismissed.**

Plaintiff clarified that he asserts claims only under clauses 2 and 3 of CIPA Section 631(a). Neither claim can survive, because Shopify was a party to Plaintiff's communication, and Plaintiff does not allege Shopify read his alleged communications while in transit or used data so obtained. Nor can Plaintiff's CIPA Section 635 claim survive because he lacks statutory standing and fails to allege that Shopify's services are a mere eavesdropping device.

**1. As a vendor, Shopify is a party to the communication.**

Plaintiff fails to show that Shopify was a third-party eavesdropper. To the contrary, his opposition reinforces that Shopify was an "extension of" and thus "party to" the communications in question, and its collection and use of Plaintiff's payment information occurred pursuant to its status as a legitimate vendor of IAMBMFG. Accordingly, Shopify is not liable as an eavesdropper

under CIPA and, contrary to Plaintiff's assertions, Shopify's hypothetical capacity to use the data independently does not change this.

Plaintiff alleges that Shopify's payment forms, data processing, and even the third-party integrations for fraud detection are provided pursuant to contracts with merchants. SAC ¶¶ 14–15. Plaintiff does not deny that these allegations falter under *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021), which would treat Shopify as an extension of IABMFG, not a third party, for purposes of CIPA liability. He argues instead that "most courts" since *Graham* have held that the mere capacity to use the data for its own benefit renders a service provider a third-party eavesdropper for purposes of a motion to dismiss. Opp. at 15.

While true that some courts hold that allegations of a vendor's mere "capacity" to use data for its own benefit is sufficient at the pleading stage, these courts err by focusing exclusively on data use rather than applying ordinary agency principles that are implied in every California statute. *See Borg-Warner Protective Servs. Corp. v. Super. Ct.*, 75 Cal. App. 4th 1203, 1207–08 (1999) (California statutes are to be construed in light of common law principles). In fairness, this error was invited by defendants in those cases. Since *Graham*, defendants have incorrectly argued that they must be treated as mere service providers unless the plaintiff alleges independent data use. *See, e.g.*, *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023). In response, courts note that requiring a threshold showing of independent use for any Section 631 claim would render the statute's third clause—forbidding use of improperly obtained data—superfluous. But this interpretive problem evaporates when viewing the issue through an agency lens, which considers whether the agent acted within the scope of authority, not an agent's hypothetical "capacity" to exceed that authority. *See* Cal. Civ. Code § 2330 (agent represents the principle for all purposes within the scope of authority). A service provider could be liable under CIPA if it exceeds the scope of its delegated authority in any way that violates the statute—whether or not it involves the independent data use. For example, a service provider could exceed its authority by making unauthorized connections or improperly reading communications in transit, thus violating clauses 1 and 2 without actually using any data. The interpretive problem that motivated *Javier* becomes illusory under this standard.

This agency analysis also harmonizes CIPA with the CCPA, which, unlike CIPA, was specifically crafted by the Legislature to govern online data collection. *See Gutierrez v. Converse Inc.*, No. 24-4797, 2025 WL 1895315, at *2–3 (9th Cir. July 9, 2025) (Bybee J., concurring) (noting that the CCPA should govern and CIPA Section 631(a) "does not apply to the internet") (unpublished opinion). The CCPA excludes service providers acting within contractual limits from the definition of "third party." *See* Cal. Civ. Code §§ 1798.140(j)(1), (ag), (ai). The CCPA presumes service providers *could* use data independently—otherwise restrictions would be unnecessary—but as long as processing stays within contractual bounds, they are not third parties. *See, e.g.*, Cal. Civ. Code § 1798.110(a).

Reading CIPA to treat such providers as "eavesdroppers" based solely on "capacity" creates a direct conflict with the CCPA, which must be avoided by harmonizing the statutes. *See United Riggers & Erectors, Inc. v. Coast Iron & Steel Co.*, 4 Cal. 5th 1082, 1090 (2018) ("To the extent possible, statutes relating to the same class of things, and sharing the same purpose or object, should be harmonized and construed similarly."). It would also raise direct conflicts with the CCPA's implementing regulations, which explicitly permit service providers to use data they collect for certain independent purposes—including fraud detection and prevention—"even if this business purpose is not specified in the written contract required by the CCPA and these regulations." Cal. Code Regs. tit. 11, § 7050(a)(4).

Expanding CIPA beyond the CCPA's scope would also contravene the rule of lenity, which applies here because CIPA is a criminal statute. *See Doe v. Eating Recovery Ctr. LLC*, No. 23-cv-05561-VC, 2025 WL 2971090, at *6 (N.D. Cal. Oct. 17, 2025); *People v. Robles*, 23 Cal. 4th 1106, 1115 (2000); *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004) (lenity applies to noncriminal applications of a criminal statute). This rule compels a strict construction of statutes in favor of the defendant, and it recognizes individuals' due process right to a fair warning of what conduct is deemed criminal. *Bittner v. United States*, 598 U.S. 85, 100–103 (2023); *Harrott v. Cnty. of Kings*, 25 Cal. 4th 1138, 1154 (2001) (rule of lenity provides a fair warning of the boundaries of criminal conduct). These interests would be thwarted by a reading of CIPA that disregards agency principles—both implicit in CIPA and adopted by the CCPA—and hinges liability not upon the

defendant's actions, but their mere capacity to violate the law.

In sum, Shopify is not liable as a third-party eavesdropper because the pleadings do not establish that Shopify engaged in any conduct other than as a service provider for IABMFG or the other Shopify merchants Plaintiff vaguely mentions visiting in his SAC.

**2. Plaintiff fails to allege that the "contents" of a communication were read while "in transit."**

Plaintiff does not even try to make the required showing that Shopify read the contents of his communications while they were in transit. Instead, he argues that Shopify first obtained his communications and then read them at some future point. That is not enough.

Plaintiff plainly alleged that the data Shopify collects is encrypted in transit,[6] sent to Shopify's servers, and is only then analyzed or "read." SAC ¶¶ 40, 59. This is not sufficient to state a claim, because the reading must occur *while in transit*. Cal. Penal Code § 631(a); *Eating Recovery Ctr.*, 2025 WL 2971090, at *5–6 (holding that the "reading" of the communication must occur in "transit from the person sending the communication to its intended recipient."); *Torres v. Prudential Fin., Inc.*, No. 22-cv-07465 (CRB), 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025) (granting summary judgment where no evidence showed defendant read the contents of communications while in transit). Otherwise, Section 631(a) would cover the same conduct as Section 632, rendering the latter "superfluous." *Eating Recovery Ctr.*, 2025 WL 2971090, at *6. The weight of authority refutes Plaintiffs' assertion that it is sufficient to "read" communications soon after receiving them. *E.g.*, *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023) ("'While' is the key word here."); Mot. at 17 (collecting cases). Further, because CIPA is a criminal statute, the rule of lenity compels a narrow interpretation that holds the statute to its plain text and imposes liability only when the contents of communications are read while in transit, not after receipt. *See Eating Recovery Ctr.*, 2025 WL 2971090, at *6.

Plaintiffs' shifting arguments about what constitutes "contents" only highlight the

[6] Plaintiff's argument that payment form information was unencrypted is contradicted by Paragraph 59 of the SAC and is otherwise irrelevant as it does not establish actual reading. *See Gutierrez*, 2025 WL 1895315, at *1 (affirming summary judgment on clause 2 claim where "[a]t best, th[e] evidence show[ed] [the defendant] *could* read messages[.]" (emphasis in original)).

vagueness of his claims. He asserts that the payment information he entered (routine transactional data) is not "record information" because it formed the substance of his communication. Courts disagree. *See Svenson v. Google Inc.*, 65 F. Supp. 3d 717, 729 (N.D. Cal. 2014); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021); *see also Gilday v. Dubois*, 124 F.3d 277, 296 n.27 (1st Cir. 1997). His further references to unspecified data collected by unspecified cookies underscore that the SAC alleges no instance where Shopify actually read the "contents" of any communication. Since Plaintiff states no claim under clause 2 of section 631(a), his derivative claim under clause 3 fails as well.

**3. Plaintiff does not allege Shopify violated Section 635.**

Case law overwhelmingly supports Shopify's argument that Plaintiff lacks statutory standing under CIPA Section 635, which requires an injury from the manufacture, sale, or assembly of an eavesdropping device—not its use. *See Graham*, 533 F. Supp. 3d at 835; *Lululemon*, 549 F. Supp. at 1085; *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 522 (C.D. Cal. 2021); *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 863 (C.D. Cal. 2024). Plaintiff's lone contrary citation, *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1009 (N.D. Cal. 2024), is unpersuasive because it cited no support and ignored contrary precedent. The Court should follow the majority approach and hold that Plaintiff lacks standing for his Section 635 claim.

Even on the merits, the claim fails. It is an open question whether computer code can even be a "device" under Section 635. *See Graham*, 533 F. Supp. 3d at 835. And the SAC falls far short of alleging that the primary purpose of Shopify's code is interception. *See* Cal. Penal Code § 635. To the contrary, the SAC itself identifies the litany of legitimate and important purposes of Shopify's services. *See, e.g.*, SAC ¶¶ 2, 24, 33, 41, 43, 46, 47. Plaintiff's Section 635 claim fails on both standing and the merits. The Court should dismiss it.

**F. Plaintiff fails to adequately plead standing under CDAFA.**

Plaintiff fails to identify cognizable "damage or loss" needed to support statutory standing under CDAFA. Instead, he relies on a completely separate theory of *relief*: disgorgement. Opp. at 21. But a claim for equitable relief, like disgorgement, does not itself confer standing. *See* Cal. Penal Code § 502(e)(1).

Plaintiff relies on *Smith v. Rack Room Shoes, Inc.* for the proposition that disgorgement supplies statutory standing because he has a "stake in the profits garnered." No. 24-cv-06709-RFL, 2025 WL 2210002, at *3 (N.D. Cal. Aug. 4, 2025) (citation omitted). But *Smith* relied on *In re Facebook, Inc. Internet Tracking Litigation*, which concerned Article III standing, not CDAFA standing. *In re Facebook, Internet Tracking Litig.*, 956 F.3d 589, 600–01 (9th Cir. 2020). Even assuming *In re Facebook* remains good law as to federal standing,[7] it is inconsistent with subsequent California state court cases that hold that actual harm is required to support even basic standing under California law, to say nothing of the narrower "damage or loss" required by CDAFA. *See Muha v. Experian Info. Sols., Inc.*, 106 Cal. App. 5th 199, 207–10 (2024); *Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 538-39 (2022). *Muha* rejected an argument akin to the one Plaintiff advances here, that entitlement to a statutory remedy, untethered to actual harm, is adequate to support standing. 106 Cal. App. 5th at 207–10. If mere entitlement to a remedy is insufficient to clear the threshold injury requirement under California law, it certainly could not satisfy the "damage or loss" element under CDAFA. Plaintiff's own authority suggests as much. *See McClung v. AddShopper, Inc.*, No. 23-cv-01996-VC, 2024 WL 189006, at *2 (N.D. Cal. Jan. 17, 2024) (expressing skepticism that statutory standing can be conferred by an unjust enrichment theory of relief).

Plaintiff advances an alternative to his disgorgement theory, claiming that he would not have purchased from IABMFG had he known about Shopify's involvement. However, statutory standing under CDAFA must be based on "damage or loss *by reason of a violation*" of the statute. Cal. Penal Code § 502(e)(1) (emphasis added). Plaintiff's but-for theory of standing misses the mark, as the purchase of IABMFG's products is a damage or loss that does not stem from a violation of CDAFA—*i.e.*, altering, damaging, deleting, destroying, using, taking, or copying data. *See* Cal. Penal Code §§ 502(c)(1), (2). Plaintiff's authority to the contrary is not persuasive. *McClung* relies on *In re Solara Medical Supplies, LLC Customer Data Security Breach Litigation*, 613 F. Supp. 3d 1284, 1301 (S.D. Cal. 2020) for the proposition that a "benefit of the

---

[7] The Ninth Circuit has recently questioned the continued validity of *In re Facebook* after the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021). *Popa v. Microsoft Corp.*, 153 F.4th 784, 794 (9th Cir. 2025).

bargain" theory of loss is sufficient to establish statutory standing. *McClung*, 2024 WL 189006, at *2. Yet *Solara* only had to do with statutory standing under the UCL. *See* 613 F. Supp. 3d at 1301. Neither the *McClung* nor *Solara* courts specifically grappled with CDAFA's distinct text requiring "damage or loss" stemming from unauthorized data access.

**G. Plaintiff fails to support his UCL claim.**

**1. The SAC fails to establish a cognizable loss.**

Plaintiff fails to show a cognizable loss of money or property and lacks UCL standing.

***First***, Plaintiff does not dispute that the "lost value" of personal data is insufficient to constitute loss under the UCL, nor could he. *See* Mot. at 21–22 (collecting cases).

***Second***, Plaintiff's claim that he overpaid, or would not have purchased from IABMFG, remains unsupported. Just weeks ago, Judge Wise found allegations that a plaintiff would not have purchased products had they known about the defendant's practices insufficient to establish standing. *Perez*, 2025 WL 3085786, at *4. And conclusory allegations of overpayment "untethered in any way to [p]laintiffs' experiences, are insufficient to plead damages under [] consumer protection laws." *Libman v. Apple, Inc.*, No. 22-CV-07069-EJD, 2024 WL 4314791, at *19 (N.D. Cal. Sep. 26, 2024); *see also Gerritsen v. FCA US LLC*, No. CV 19-08268-AB (KSX), 2020 WL 3841304, at *1 (C.D. Cal. Mar. 3, 2020) (finding conclusory allegations of overpayment similarly insufficient).[8] Simply put, Plaintiff must allege *something* beyond a "bare recitation" about a price premium to allege a cognizable UCL injury. *Naimi v. Starbucks Corp.*, 798 F. App'x 67, 70 (9th Cir. 2019).

While Plaintiff's failure to adequately allege a single theory establishing UCL standing should be grounds alone for dismissal, his claims also fail on the merits.

**2. The SAC fails to allege a predicate violation of existing law.**

Aside from bare recitals of largely undisputed law, Plaintiff asserts his only responses to Defendants' motion on the "unlawful" claim in a single footnote. Opp. at 23 n.14.

***First***, as to the CCPA, Plaintiff relies on the general statement that plaintiffs can bring a UCL claim for violations of a statute that does not have its own private right of action. His own

[8] Plaintiff's "benefit of the bargain" theory is even less plausible given that alleged omissions unrelated to the product purchased are not actionable under the UCL. *See infra.*

authority, however, notes that the UCL cannot be used to avoid an express bar to relief. *See Chabner v. United of Omaha Life Ins., Co.,* 225 F.3d 1042, 1048 (9th Cir. 2000). Here, the CCPA states "on its face states that consumers may not use the CCPA as a basis for a private right of action *under any statute*." *Silver v. Stripe Inc.*, No. 4:20-CV-08196-YGR, 2021 WL 3191752, at *7 (N.D. Cal. July 28, 2021) (emphasis added); Cal. Civ. Code § 1798.150(c).

***Second***, with respect to COPPA, Plaintiff argues his August 2021 complaint provided notice of noncompliance. This makes no sense. COPPA requires a website operator to post *its* privacy policy on *its* website. Cal. Bus. & Prof. Code § 22575(a). Shopify had *its* privacy policy posted by March 2019, long before Plaintiff brought suit. *See* RJN Ex. B. If IABMFG's privacy policy is relevant at all, it was also in place prior to Plaintiff's lawsuit. *Id.* Ex. A. In any event, since a violation could only conceivably occur 30 days after the 2021 "notice," Plaintiff cannot credibly claim that such a violation caused a loss of money or property in 2019.

The remaining claims upon which Plaintiff rests his unlawful UCL theory, CIPA and CDAFA, fail for the reasons set forth above. *See supra* Sections E–F.

**3. The SAC fails to establish a duty to disclose.**

Setting aside Plaintiff's Rule 9(b) deficiencies, his UCL claim rests on outdated authority and a nonexistent duty to disclose.

Shopify's payment processing bears no relation to the function of the athletic apparel he purchased—a crucial factor for omissions claims under *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 863 (9th Cir. 2018). Following *Hodsdon*, most courts require both a material functional defect and one of the *LiMandri* factors.[9] *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1085 (N.D. Cal. 2022). All but one of Plaintiff's authorities pre-date *Hodsdon*, and the only subsequent case failed to consider the Ninth Circuit's standard.

By focusing exclusively on whether Shopify had "exclusive knowledge of material facts," Plaintiff fails to show the "crucial element" of a material defect in his athletic apparel. *Hammerling*, 615 F. Supp. 3d at 1085–86.

[9] The *LiMandri* factor Plaintiff relies on is "when the defendant had exclusive knowledge of material facts not known to the plaintiff." *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997) (citation omitted).

**4. The SAC fails to sufficiently allege an "unfair" practice claim.**

Plaintiff fails to address his inability to satisfy the UCL's "tethering" test, *see* Mot. at 24-25, or the authority dismissing "unfair" claims duplicative of other prongs, *see* Mot. at 25 n.5. Instead, he suggests without citation that under the "balancing" test, any utility is outweighed by lack of consent or avoidable harm. Opp. at 24–25. None of his cited cases adopt such a rule.

**H. Plaintiff should not be granted leave to amend.**

Plaintiff has twice amended his complaint and has "repeated[ly] fail[ed] to cure deficiencies." *See Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008). It is apparent then that the SAC's deficiencies cannot be cured by further amendment, and further amendment should be denied.

## III. CONCLUSION

For the foregoing reasons, Plaintiff's SAC fails to state a claim upon which relief can be granted and should be dismissed without leave to amend.

Dated: November 6, 2025

COOLEY LLP

By: */s/ Benedict Hur*
Benedict Hur

Attorneys for Defendants
Shopify Inc.; Shopify (USA) Inc.; and Shopify Payments (USA) Inc.