COOLEY LLP
BENEDICT HUR (224018)
(bhur@cooley.com)
SIMONA AGNOLUCCI (246943)
(sagnolucci@cooley.com)
JOSHUA ANDERSON (312836)
(joshua.anderson@cooley.com)
TIFFANY M. LIN (321472)
(tiffany.lin@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222

Attorneys for Defendants
Shopify Inc.; Shopify (USA) Inc.; and Shopify Payments (USA) Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| BRANDON BRISKIN, on behalf of himself and those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SHOPIFY INC.; SHOPIFY (USA) INC.; and SHOPIFY PAYMENTS (USA) INC.,<br><br>Defendants. | Case No. 21-cv-06269-PJH<br><br>**SHOPIFY INC.; SHOPIFY (USA) INC.; AND SHOPIFY PAYMENTS (USA) INC.'S MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>Date: July 16, 2026<br>Time: 1:30 p.m.<br>Location: Courtroom 3, 3rd Floor<br>1301 Clay Street<br>Oakland, California<br>Judge: Hon. Phyllis J. Hamilton<br><br>Date Action Filed: August 13, 2021 |

## TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION ..... 1
STATEMENT OF ISSUES TO BE DECIDED ..... 1
MEMORANDUM OF POINTS AND AUTHORITIES ..... 1
I. INTRODUCTION ..... 1
II. FACTUAL BACKGROUND ..... 3
III. LEGAL STANDARD ..... 5
IV. ARGUMENT ..... 5
- A. All claims should be dismissed for failure to sufficiently allege Shopify's data collection practices or IABMFG's disclosures at the time of purchase. ..... 5
- B. Plaintiff's CIPA, CDAFA, invasion of privacy, and intrusion upon seclusion claims should be dismissed because there is no competent allegation that Shopify's conduct was willful or intentional. ..... 8
- C. Plaintiff's CIPA claim should be dismissed because he does not adequately plead that the communications were read or attempted to be read while "in transit." ..... 10
- D. Plaintiff's Intrusion Upon Seclusion and Constitutional Invasion of Privacy Claims Fail Because the TAC Alleges Only "Routine Commercial Behavior." ..... 13
- E. The TAC Fails to Allege Actual Damages as Required by CDAFA. ..... 16
- F. Plaintiff's UCL Claim Should be Dismissed. ..... 19
  - 1. Plaintiff Lacks Statutory Standing Under the UCL. ..... 19
  - 2. The TAC fails to allege a violation of existing law on which to base an "unlawful" practice claim. ..... 20
  - 3. The TAC fails to allege material omissions sufficient to establish a "fraudulent" practice claim. ..... 21
  - 4. The TAC fails to sufficiently allege an "unfair" practice. ..... 22

V. CONCLUSION ..... 23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abagninin v. AMVAC Chem. Corp.*,
545 F.3d 733 (9th Cir. 2008)........................................................ 5

*Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*,
744 F.3d 595 (9th Cir. 2014)........................................................ 9

*Artec Grp., Inc. v. Klimov*,
No. 15-cv-03449, 2016 WL 8223346 (N.D. Cal. Dec. 22, 2016)........................ 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................ 5, 7, 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................ 5

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022)........................................................ 8

*Briskin v. Shopify Inc.*,
135 F.4th 739 (9th Cir. 2025) (en banc)........................................................ 13

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020)........................................................ 10

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
637 F.3d 1047 (9th Cir. 2011)........................................................ 7

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014)........................................................ 19

*Clemens v. DaimlerChrysler Corp.*,
534 F.3d 1017 (9th Cir. 2008)........................................................ 19

*Coffee v. Google, LLC*,
No. 20-cv-03901, 2022 WL 94986 (N.D. Cal. Jan. 10, 2022)........................ 22

*Dart Indus. Co. v. Westwood Chem. Co.*,
649 F.2d 646 (9th Cir. 1980)........................................................ 9

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024)........................................................ 10

*Doe v. Cnty. of Santa Clara*,
No. 23-cv-04411, 2024 WL 3346257 (N.D. Cal. July 8, 2024)........................ 18

## TABLE OF AUTHORITIES
**continued**

**Page(s)**

*Doe v. Eating Recovery Ctr.*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) .......... 10, 11, 12, 13

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 18

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020).......... 16, 17, 18

*Fanni v. Northrop Grumman Corp.*,
No. CV 98-5197, 2000 WL 35905106 (C.D. Cal. Apr. 10, 2000).......... 1

*Gardiner v. Walmart Inc.*,
No. 20-cv-04618, 2021 WL 2520103 (N.D. Cal. Mar. 5, 2021).......... 21

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008).......... 5

*Gonzalez v. Planned Parenthood of L.A.*,
759 F.3d 1112 (9th Cir. 2014).......... 5

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 14

*In re Google, Inc. Privacy Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) .......... 14

*Gutierrez v. Converse Inc.*,
No. CV 23-6547, 2024 WL 3511648 (C.D. Cal. July 12, 2024) .......... 11

*Hadley v. Kellogg Sales Co.*,
243 F. Supp. 3d 1074 (N.D. Cal. 2017) .......... 22

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 15, 22

*Hazel v. Prudential Fin., Inc.*,
No. 22-cv-07465, 2023 WL 3933073 (N.D. Cal. June 9, 2023).......... 19

*Hill v. NCAA*,
7 Cal. 4th 1 (1994) .......... 15, 16

*Hodsdon v. Mars, Inc.*,
891 F.3d 857 (9th Cir. 2018).......... 19, 20, 21, 22

*Horti v. Nestlé HealthCare Nutrition, Inc.*,
No. 21-cv-09812, 2022 WL 2441560 (N.D. Cal. July 5, 2022).......... 20

## TABLE OF AUTHORITIES
**continued**

**Page(s)**

*Hubbard v. Google LLC*,
No. 19-cv-07016, 2024 WL 3302066 (N.D. Cal. July 1, 2024) ....... 15, 18

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ....... 15

*Jones v. Tonal Sys., Inc.*,
751 F. Supp. 3d 1025 (S.D. Cal. 2024) ....... 11

*Kwikset Corp. v. Super. Ct.*,
51 Cal. 4th 310 (2011) ....... 17, 19

*Leocal v. Ashcroft*,
543 U.S. 1 (2004) ....... 13

*Libman v. Apple, Inc.*,
No. 22-cv-07069, 2024 WL 4314791 (N.D. Cal. Sep. 26, 2024) ....... 20

*LiMandri v. Judkins*,
52 Cal. App. 4th 326 (1997) ....... 22

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ....... 14, 15

*M.D. v. Google LLC*,
No. 24-cv-06369, 2025 WL 2710095 (N.D. Cal. Sept. 23, 2025) ....... 6, 7

*McClung v. AddShopper, Inc.*,
No. 23-cv-01996, 2024 WL 189006 (N.D. Cal. Jan. 17, 2024) ....... 14

*McCoy v. Alphabet, Inc.*,
No. 20-cv-05427, 2021 WL 405816 (N.D. Cal. Feb. 2, 2021) ....... 14

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) ....... 19, 20

*Moore v. Centrelake Med. Grp., Inc.*,
83 Cal. App. 5th 515 (2022) ....... 17

*Morales v. City & Cnty. of San Francisco*,
603 F. Supp. 3d 841 (N.D. Cal. 2022) ....... 9

*Muha v. Experian Info. Sols., Inc.*,
106 Cal. App. 5th 199 (2024) ....... 17

*Naimi v. Starbucks Corp.*,
798 F. App'x 67 (9th Cir. 2019) ....... 20

## TABLE OF AUTHORITIES
**continued**

**Page(s)**

*Park v. Webloyalty.com, Inc.*,
685 F. App'x 589 (9th Cir. 2017) ........ 14

*People v. Ault*,
33 Cal. 4th 1250 (2004) ........ 17

*Perez v. Romantix Online, Inc.*,
No. 25-cv-02465, 2025 WL 3085786 (N.D. Cal. Oct. 27, 2025) ........ 20

*R.C. v. Sussex Publishers, LLC*,
No. 24-cv-02609, 2025 WL 948060 (N.D. Cal. Mar. 28, 2025)........ 11

*Rodriguez v. Google LLC*,
No. 20-cv-04688, 2021 WL 6621070 (N.D. Cal. Aug. 18, 2021) ........ 11

*Rubke v. Capitol Bancorp Ltd.*,
551 F.3d 1156 (9th Cir. 2009)........ 5

*Ruiz v. Gap, Inc.*,
540 F. Supp. 2d 1121 (N.D. Cal. 2008) ........ 15

*In re Sequoia Benefits & Ins. Data Breach Litig.*,
No. 22-cv-08217, 2024 WL 1091195 (N.D. Cal. Feb. 22, 2024) ........ 21, 22

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) ........ 15

*Silvaco Data Sys. v. Intel Corp.*,
184 Cal. App. 4th 210 (2010)........ 17

*Silver v. Stripe Inc.*,
No. 20-cv-08196, 2021 WL 3191752 (N.D. Cal. July 28, 2021)........ 20, 21, 22

*Smith v. Intel Corp.*,
No. 23-cv-05761, 2025 WL 2381617 (N.D. Cal. Aug. 15, 2025) ........ 21, 22

*Torres v. Prudential Fin., Inc.*,
No. 22-cv-07465, 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ........ 11

*Tsering v. Meta Platforms, Inc.*,
No. 25-cv-01611, 2026 WL 89320 (N.D. Cal. Jan. 12, 2026) ........ 18

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) ........ 11

*Vestar Dev. II, LLC v. Gen. Dynamics Corp.*,
249 F.3d 958 (9th Cir. 2001)........ 17

## TABLE OF AUTHORITIES
**continued**


**Page(s)**

*Wesch v. Yodlee, Inc.*,
No. 20-cv-05991, 2021 WL 6206644 (N.D. Cal. July 19, 2021) .......... 19

*Williams v. DDR Media, LLC*,
757 F. Supp. 3d 989 (N.D. Cal. 2024) .......... 12

**Statutes**

Cal. Bus. & Prof. Code
§ 17204 .......... 19
§ 22575 .......... 21
§ 22575(a) .......... 21

Cal. Civ. Code
§ 1798.130 .......... 9
§ 1798.150(c) .......... 21

Cal. Code Regs. tit. 11, § 7050(a)(4) .......... 16

Cal. Penal Code
§ 502(c)(1) .......... 18
§ 502(c)(2) .......... 18
§ 502(e)(1) .......... 16, 18
§ 631(a) .......... *passim*

California Comprehensive Data Access & Fraud Act .......... *passim*

California Consumer Privacy Act .......... 9, 16, 20, 21

California Online Privacy Protection Act of 2003 .......... 20, 21

California Uniform Trade Secrets Act .......... 17

Unfair Competition Law .......... *passim*

**Other Authorities**

California Constitution .......... 5, 14

Fed. R. Civ. P.
8 .......... 7
11(b)(3) .......... 9
12(b)(6) .......... 1

## NOTICE OF MOTION AND MOTION

TO ALL ATTORNEYS OF RECORD: PLEASE TAKE NOTICE that the following Motion will be heard on July 16, 2026, at 1:30 PM, in Courtroom 3, 3rd Floor, of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California 94612, or a virtual courtroom, with the Honorable Phyllis J. Hamilton presiding.

Defendants Shopify Inc., Shopify (USA) Inc., and Shopify Payments (USA) Inc. (collectively "Shopify") hereby move to dismiss Plaintiff Brandon Briskin's Third Amended Complaint ("TAC") with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). The Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the renewed[1] Request for Judicial Notice ("Renewed RJN"), the Declaration of Tiffany Lin in Support of the renewed RJN and attached exhibits, all pleadings and other papers filed, and any other evidence or argument that may be presented in connection with this Motion.

## STATEMENT OF ISSUES TO BE DECIDED

Whether the TAC should be dismissed with prejudice for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiff's fourth attempt to assemble a theory of liability against Shopify fares no better than his first three. Other than a handful of self-serving amendments (that are also belied by the retained allegations), the Third Amended Complaint ("TAC") simply repackages the far-fetched claims dismissed in the Second Amended Complaint ("SAC"). The tale remains the same: Plaintiff alleges that he went online to purchase apparel from I Am Becoming ("IABMFG"), entered payment information, completed a credit card transaction, and did so believing that only IABMFG would be involved in the transaction. Plaintiff claims ignorance at the notion that online service providers, such as Shopify, or payment processors, like Stripe, may be involved in the processing

[1] Shopify submits a renewed RJN because it previously requested notice of these exhibits. Defendants' Request for Judicial Notice, Dkt. No. 84-2; *Fanni v. Northrop Grumman Corp.*, No. CV 98-5197, 2000 WL 35905106, at *7 (C.D. Cal. Apr. 10, 2000), *aff'd*, 23 F. App'x 782 (9th Cir. 2001) (denying a second RJN "as moot").

of his personal data.

But as any Internet shopper would tell you, that view is divorced from reality. The Internet is a web of interconnected systems: a website is hosted on a company's servers, built using another's tools, embedded with features from providers, transmitted via an Internet service provider, and displayed through a user's browser. And the presence of multiple parties is even more obvious to a credit card user, as any transaction contains at least six entities: the customer, his bank, the card company, the store, the store's payment processor, and the store's bank. Nevertheless, Plaintiff seeks to impose civil and criminal liability for wiretapping, hacking, and privacy violations whenever an online transaction features third parties whose role, in his view, is not disclosed clearly enough. This contention is meritless.

The TAC again stumbles on the threshold issue of competent pleading of the underlying facts. Plaintiff alleges that he completed a single transaction on the IABMFG website in 2019, but claims ignorance of what occurred until April 2021, when his lawyers employed "special software tools" and found, at that time, that IABMFG used Shopify's services. TAC ¶ 30. Plaintiff admits that, in April 2021, IABMFG's privacy policy disclosed the website's relationship with Shopify—but, conveniently, this was only after IABMFG modified its website "at some point" after 2019. *Id.* ¶ 73. Yet nothing in the TAC establishes that the April 2021 "discovery" has anything to do with what happened in 2019, when Plaintiff made his apparel purchases.

Even reaching the merits of Plaintiff's claims, each fails for a multitude of reasons. ***First***, Plaintiff's litany of torts requires a showing of intent he cannot make. Judicially noticeable documents make clear that Shopify required merchants to post a privacy policy disclosing that Shopify was processing users' data on the merchants' behalf. Plaintiff's new response to this fact—that Shopify turned a blind eye to its own policies—is undermined by a seeming concession that IABMFG altered its privacy policy to refer to Shopify.

***Second***, Plaintiff fails to raise a claim under Section 631 of the California Invasion of Privacy Act ("CIPA"). The facts he proffers (along with his garbled interpretation of Shopify's data processing systems) confirm the absence of a necessary element: that Shopify "read" the contents of his communications with IABMFG as they were in transit.

***Third***, Plaintiff's allegations, which challenge the routine operation of the internet, fail to allege the egregious breach of social norms required to support his constitutional and common law privacy claims.

***Fourth***, Plaintiff's claim under the California Comprehensive Data Access & Fraud Act ("CDAFA") fails because he cannot allege he has suffered any harm within the meaning of that statute.

***Fifth***, the lack of cognizable harm also dooms his Unfair Competition Law ("UCL") claim, which must also be dismissed for failure to establish a predicate violation.

Plaintiff has now had four opportunities to plead cognizable claims. Because any future attempts would be futile, the TAC should be dismissed with prejudice.

## II. FACTUAL BACKGROUND

Once again, the TAC's narrative begins in June 2019, when Plaintiff used his iPhone's Safari browser to purchase fitness apparel from IABMFG's online storefront. TAC ¶ 68. Plaintiff avers that because IABMFG is a Shopify merchant, Shopify generated the storefront's payment form and processed user data entered into the form. *Id.* ¶¶ 10, 32. The TAC then fast-forwards nearly two years to April 2021, when Plaintiff's attorneys made a test transaction. *Id.* ¶ 33. Based solely on that test, the TAC alleges that Shopify inappropriately collected the details of Plaintiff's purchase, including his name, address, and credit card information, as it processed the *June 2019* transaction. This claim—that the data transmissions observed in April 2021 are consistent with the transmissions experienced in June 2019—rests only on speculation. Plaintiff disclaims any knowledge of, and even the ability to discover, what information may have been collected prior to the 2021 investigation. *Id.* ¶¶ 30, 79.[2]

---

[2] Plaintiff has consistently maintained, as he must, that he has no knowledge of what data collection practices occurred during his 2019 transaction. *See* Compl., ¶ 51, Dkt. No. 1 [hereinafter "Compl."] ("Plaintiff was never informed of any [data collection]. Indeed, Plaintiff did not know that Shopify was involved in the transaction at all[.]"); First Am. Compl. ¶ 53, Dkt. No. 17 [hereinafter "FAC"] (same); SAC ¶ 60, Dkt. No. 44 (same); Opp. to Mtn. to Dismiss SAC, at 2, Dkt. No. 88 [hereinafter "Opp."] (Plaintiff "had no reason to know that Shopify was involved in the transaction or that it would intercept his information."); Hearing Transcript at 09:25-10:02, Dkt. No. 94 [hereinafter "Hearing Tr."] (counsel confirming that Plaintiff "entered his information . . . with no indication that there was anyone else involved"); TAC ¶ 79, Dkt. No. 98 ("Plaintiff was unaware that Shopify engaged in any of the foregoing conduct when he purchased products from IABMFG in 2019.").

But IABMFG's privacy policy in 2021 disclosed that it would share customers' personal information, including payment information, with third parties that supported the storefront's operations. *See* Renewed RJN, Ex. A (IABMFG January 2021 Privacy Policy); *cf.* TAC ¶ 73 (Plaintiff sheepishly acknowledging that "[a]t some point . . . [IABMFG's privacy policy] page does refer to Shopify's involvement"). The policy does more than "refer" to Shopify: in a section titled "Sharing with Third Parties," IABMFG offered, upon request, to disclose a "complete and up-to-date list" of service providers with whom it shares customer data. Renewed RJN, Ex. A at 11. Despite this plain disclosure, Plaintiff maintains that Shopify "deliberately chose to hide its involvement from consumers" to make it appear that merchants "handle payments themselves." TAC ¶ 63. More glaringly, Plaintiff fails to plead *any* reason to ground his speculative insistence that IABMFG's 2021 privacy policy was somehow materially different than the one in place at the time of his purchase. *See* Hearing Tr., Dkt. 94 at 19:04–20:18 (Plaintiff's counsel confirming that, "other than what's in the complaint," he "[does not] know when [the 2021] privacy policy first started and when the link [to the privacy policy] first appeared.").

Plaintiff also alleges that Shopify tracks consumers as they browse Shopify merchant websites, and pauses or blocks "high risk" transactions. *Id.* ¶¶ 53–58. And despite disclaiming any knowledge that "Shopify engaged in any of the foregoing conduct when he purchased products from IABMFG," *id.* ¶ 79, Plaintiff breathlessly insists that Shopify used his personal information to generate "risk score[s]" that were used as he sought to purchase goods from other Shopify merchants, *id.* ¶ 53.

The crux of the TAC is that Shopify deceptively structured its relationship with merchants to harvest and profit off consumers' private information without knowledge or consent. That narrative is incompatible with Shopify's requirement that merchant websites "post an up-to-date and accurate privacy policy," disclose their use of Shopify, and "obtain consent from [] customers for the use and access of their personal information by Shopify." Renewed RJN, Ex. B at 2–3 (Shopify 2019 Privacy Policy). Notwithstanding the plethora of documents that contradict his allegations, Plaintiff maintains his desire to represent an extraordinarily broad class of "[a]ll natural persons who, between August 13, 2017 and the present, submitted payment information via

Shopify's software while located in California." TAC ¶ 81.

The TAC culminates by advancing five claims: a violation of CIPA Section 631(a) (TAC ¶¶ 89–101); invasion of privacy in violation of the California Constitution (*id.* ¶¶ 102–112); intrusion upon seclusion (*id.* ¶¶ 112–123); a violation of CDAFA Section 502 (*id.* ¶¶ 124–132); and a violation of the state's UCL (*id.* ¶¶ 133–149). Shopify now brings this instant motion to dismiss, with prejudice, all of Plaintiff's claims.

## III. LEGAL STANDARD

To survive a motion to dismiss, a plaintiff must plead facts showing that his right to relief rises above "the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice[,]" and pleadings that are "no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). A court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). Nor must a court "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014) (citations omitted). The Court's discretion to dismiss a complaint with prejudice is "particularly broad in cases such as this, where a plaintiff has previously been granted leave to amend and fails to add the requisite particularity to her claims." *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1167 (9th Cir. 2009). Dismissal without leave to amend is appropriate in light of a plaintiff's "repeated failure to cure deficiencies by previous amendment." *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008).

## IV. ARGUMENT

### A. All claims should be dismissed for failure to sufficiently allege Shopify's data collection practices or IABMFG's disclosures at the time of purchase.

Even before considering claim-specific concerns, Plaintiff stumbles on the same threshold issue that befell the SAC: he fails to plausibly show that Shopify's alleged misconduct occurred at the time of his 2019 purchase. In dismissing the SAC, this Court explained:

> [T]here is something unusual about the way that plaintiff describes his discovery of Shopify's alleged 2019 conduct. Plaintiff's account is as follows: he purchased items on the IABMFG website in June 2019, at which time Shopify's data collection was allegedly not disclosed. Then, in April 2021, plaintiff's counsel visited the IABMFG website, which disclosed Shopify's data collection. Based on that 2021 disclosure, plaintiff infers that IABMFG and Shopify must have been engaging in the same conduct in 2019, ***only without the disclosure that was present in 2021***.

Order re Defendants' Motion to Dismiss Second Amended Complaint at 5, Dkt. No. 95 [hereinafter "SAC Dismissal"] (emphasis added).

The TAC does nothing to cure this fundamental deficiency, and instead continues to peddle the "unusual" theory this Court has already deemed impermissibly speculative. Indeed, the allegations are framed exactly as they were presented in the SAC: *first,* as Plaintiff made a single purchase from IABMFG in June 2019, he was unaware of Shopify's presence. *Second*, in April 2021, when Plaintiff's counsel used "special tools" to "discover" Shopify's data collection, IABMFG "disclosed Shopify's data collection." *Third*, based on the 2021 disclosure, Plaintiff avers that Shopify engaged in the same data collection in 2019, but that IABMFG's privacy policy at the time differed from the 2021 privacy policy by failing to disclose Shopify's presence. In effect, Plaintiff asks the Court to speculate as to which elements of the 2021 transaction were present in 2019. This fragmented logic chain repeats the same error that doomed the SAC: "[P]laintiff has still not provided adequate factual support that the conduct disclosed in 2021 actually took place in 2019 as well." *Id.* at 6.

Plaintiff's new allegations do not move the needle. He claims that the "email confirmation from his 2019 order" and "page source information for an archived checkout page . . . reveal that IABMFG used Shopify to operate its checkout processes and storefronts." TAC ¶¶ 35–36. But those allegations only confirm that Shopify was a *service provider* for IABMFG in 2019; they do not lend a scintilla of support for an essential inference: that Shopify's *data collection* practices in June 2019 and April 2021 were identical. *See M.D. v. Google LLC*, No. 24-cv-06369, 2025 WL 2710095, at *5 (N.D. Cal. Sept. 23, 2025) ("Though they seek to challenge the interception of data reaching back several years, the Complaint lacks any allegations that the *data sharing practices* to

which users consented in August 2024 *were previously undertaken*." (emphases added)).[3]

Plaintiff also claims that "Shopify intercepts, accesses, processes, and uses consumers' communications in real time . . . *and it did so in June 2019*." TAC ¶ 37 (emphasis added). But that fragment is pure speculation: the sentence simply pairs the April 2021 "discovery" with an *ipse dixit* incantation to claim that Shopify's data collection was substantively the same two years earlier. That is a textbook example of an "unadorned, the-defendant-unlawfully-harmed-me accusation," and it cannot satisfy Rule 8's pleading requirements. *Iqbal*, 556 U.S. at 678.

Notably, among the stale paragraphs that Plaintiff inserts, none detail IABMFG's privacy policy in 2019. The fact that Plaintiff seeks to use a 2021 test transaction as a basis to allege what happened almost two years earlier is itself a problem. That he does so while simultaneously choosing to ignore the 2021 privacy policy is a bridge too far. And this gap has noticeably remained unfilled over multiple iterations of Plaintiff's allegations. Indeed, the Court recently expressed that Plaintiff's position "seems to be that . . . [it] should speculate that whatever the privacy policy was in 2019 was either identical to the one you now know about in 2021 or that there was no policy at all, that it was missing, or that whatever policy there was, it was insufficient." Hearing Tr. at 05:01–05:07. The TAC requests that the Court again engage in the same speculation.

Lacking any evidentiary support for his surreptitious data collection claims at the time of his 2019 purchase, Plaintiff seeks to backdate an example of lawful and fully-disclosed data processing that occurred in 2021. But the processing discovered in 2021 supplies no factual basis for inferring that (1) Shopify's data collection or sharing practices were the same in 2019, or (2) IABMFG failed to adequately disclose that processing in 2019 even though it disclosed that processing in 2021. *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1056 (9th Cir. 2011) ("In assessing the plausibility of an inference, we 'draw on our judicial experience and common sense.'") (quoting *Iqbal*, 556 U.S. at 679, 682) (cleaned up). More than sheer

[3] In *M.D.*, it was undisputed that the website (BlueChew) used the at-issue technologies at earlier times. 2025 WL 2710095, at *4 (noting that BlueChew's policy indicated it used Google's analytics software). The court nonetheless concluded that the complaint failed to establish that the specific data sharing practices were previously in place. *Id.* at *5. This reflects the common-sense notion that technology tools can change rapidly, and so can the way websites use them.

speculation is required to state a plausible claim for relief and "unlock the doors of discovery." *Iqbal*, 556 U.S. at 678. Plaintiff has failed to meet that burden.

### B. Plaintiff's CIPA, CDAFA, invasion of privacy, and intrusion upon seclusion claims should be dismissed because there is no competent allegation that Shopify's conduct was willful or intentional.

Plaintiff's CIPA, CDAFA, invasion of privacy, and intrusion upon seclusion claims require him to plausibly allege that Shopify acted with intent to commit the proscribed conduct. SAC Dismissal at 7–10. In dismissing the SAC, this Court confirmed that "Shopify's policies required merchants to obtain consent for Shopify's access." *Id*. at 7. That fact removes from consideration any examples of a merchant's noncompliance (or compliance) with Shopify's policies, because "Shopify's state of mind is the same, regardless of what merchants like IABMFG ultimately do[.]" *Id*. Said otherwise, the onus is on Plaintiff to allege that Shopify—not its merchants—"acted with the requisite intent." *Id*. at 8.

Plaintiff's attempts to bridge this gap are unavailing. He first offers clairvoyance and intuition, claiming that "[d]ue to its operation and control of the IABMFG checkout pages and logic," Shopify knew that its merchants failed to obtain consent to its Terms & Conditions. TAC ¶ 65. Even if the premise was factually accurate, the "logic" is a non-sequitur: Plaintiff fixates on checkout pages as if they are the only means for a storefront to offer and obtain consent to Shopify's policies. *Id.* ¶¶ 64–67. To the contrary, merchants have a variety of methods to notify users of policies and practices, from placing conspicuous hyperlinks in notification emails or on the home page, to offering "specified contractual terms on a pop-up screen and [requiring] users [to] check a box . . . in order to proceed." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). Plaintiff's myopic focus on the checkout process is a repackaging of his unsuccessful allegations about Shopify's "branding." *See* SAC, Dkt. 44 at ¶¶ 1, 4. And both red herrings reflect the lack of concrete facts he has regarding Shopify's intent.

Next, in an attempt to parry the materials that undermined the SAC, Plaintiff suggests that Shopify's Terms and Conditions, which require merchants to "post an up-to-date and accurate privacy policy" and "obtain consent" for Shopify's use and access to a customer's personal information, are "boilerplate." Renewed RJN, Ex. B at 2–3; TAC ¶ 66. But there is "no reason to

denigrate the use of boiler plate . . . [as] it enhances [the contract's] clarity." *Dart Indus. Co. v. Westwood Chem. Co*., 649 F.2d 646, 648–49 (9th Cir. 1980). The policy indisputably "requires merchants to obtain consent for Shopify's access." SAC Dismissal at 7. And while Plaintiff asserts, in conclusory fashion, that "Shopify intentionally did not enforce the boilerplate language," TAC ¶ 66, that fleeting claim does not survive eight paragraphs before being seemingly undermined by subsequent allegations, *id.* ¶ 73 (conceding that IABMFG's privacy policy was changed "at some point"—assuredly before his counsel "discovered" the alleged data collection—to reference Shopify). Whether because Shopify "enforced" its policy or IABMFG decided to comply, the disclosure undermines the inference Plaintiff relies upon—that Shopify's disclosure and consent mandates are a meaningless fig leaf.

On that point, Plaintiff rehashes the same tired refrains from the SAC. He concedes that IABMFG's Privacy Policy "refer[s] to Shopify's involvement in transactions," but alleges that the policy is "an inconspicuous and dormant document, designed to provide a potential legal defense without actually notifying customers of what is happening." TAC ¶ 73. Plaintiff's position amounts to "heads-I-win, tails-you-lose." Online privacy policies are disclosure mechanisms required by California law. *See, e.g.*, Cal. Civ. Code § 1798.130 (California Consumer Privacy Act detailing required disclosures for an "online privacy policy"). It makes no sense to insinuate that standardized disclosures are offered solely for "legal compliance reasons," and simultaneously claim that compliance with California privacy laws somehow supports an inference of an intent to violate user privacy. The argument is also meritless because it speaks only to *IABMFG's* state of mind; the conclusion that Shopify must have known of a merchant's purported failure to disclose is wholly unsubstantiated, particularly in the face of Plaintiff's prior allegations[4] and judicially

---

[4] Plaintiff discards the SAC's claim that "Shopify does not review its customers' websites . . . to determine whether the merchants require customers to obtain consent," and replaces it with an inapposite allegation: "Shopify knew that its merchants . . . did not obtain consent." Redline version of Plaintiff's Third Amended Complaint at 27, Dkt. No. 98-1. While "[p]laintiffs are not necessarily prohibited from making inconsistent allegations," this "Court does not ignore the prior allegations in determining the plausibility of the current pleadings." *Morales v. City & Cnty. of San Francisco*, 603 F. Supp. 3d 841, 846 (N.D. Cal. 2022); *see also Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) ("A party cannot amend pleadings to directly contradic[t] an earlier assertion made in the same proceeding."

noticeable facts. *See Doe I v. Google LLC*, 741 F. Supp. 3d 828, 841 (N.D. Cal. 2024) (defendant's failure to prevent healthcare providers from using "tracking technologies" would not support intent against the backdrop of defendant's admonitions not to transmit sensitive data).

Plaintiff also continues to insinuate that secrecy is critical to Shopify's business model: he maintains that Shopify purposefully designed its checkout system to "conceal" its involvement in a transaction. TAC ¶¶ 59, 97. That claim is irreconcilable with the concession that Shopify's "default template" (*i.e.*, store theme) features a "powered with Shopify" disclosure. *Id.* ¶ 64. And while Plaintiff claims Shopify offered instructions for businesses that wished to remove references to Shopify, the TAC explains that the intent was not deception, but rather to allow merchants to appear sophisticated. *Id.* ¶ 63. Plaintiff's theorized scheme to defraud defies credulity.

At most, Plaintiff avers that, despite their commitments to Shopify, some merchants may fail to sufficiently disclose Shopify's involvement in transactions. But allegations of merchant misconduct cannot be imputed to a vendor absent facts, lacking here, showing the vendor deliberately orchestrated such. *See Doe I*, 741 F. Supp. 3d at 841 ("[P]laintiff should not be able to get around the intent requirement by simply intoning that the source code provider intended for the clients not to follow instructions."). Plaintiff remains "all over the map on the issue of intent, and ultimately [he] fail[s] to offer a coherent narrative." *Id.* at 840. Dismissal of the CIPA, CDAFA, intrusion upon seclusion, and invasion of privacy claims with prejudice is proper.

### C. Plaintiff's CIPA claim should be dismissed because he does not adequately plead that the communications were read or attempted to be read while "in transit."

Turning to claim-specific concerns, Plaintiff first alleges a violation of the second clause of CIPA Section 631(a), which prohibits efforts to "read" the "contents" of communications while they are "in transit." *See Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020); *Doe v. Eating Recovery Ctr.*, 806 F. Supp. 3d 1109, 1117 (N.D. Cal. 2025). As with the SAC, the TAC's allegations defeat Plaintiff's claim that any "contents" are read "in transit."

***First***, the TAC offers the same facts that the Court previously relied upon in finding that

---

(quotation omitted)). The Court should consider the earlier complaint's many contrary allegations—which his counsel certified as founded in evidentiary support under Rule 11(b)(3).

Plaintiff had not alleged that Shopify read the communications while they were "in transit." His repeated claim that the data Shopify collects is encrypted in transit, TAC ¶¶ 51, 68–70, 116, necessarily defeats the "reading in transit" requirement because no entity can "read" encrypted data. *Gutierrez v. Converse Inc.*, No. CV 23-6547, 2024 WL 3511648, at *7–8 (C.D. Cal. July 12, 2024) (fact that communications were "encrypted while in transit" defeated plaintiff's claims that a website "reads or attempts to read or learn the contents of communications while they are in transit"); *see also Eating Recovery Ctr.*, 806 F. Supp. 3d at 1117; *R.C. v. Sussex Publishers, LLC*, No. 24-cv-02609, 2025 WL 948060, at *7 (N.D. Cal. Mar. 28, 2025); *Rodriguez v. Google LLC*, No. 20-cv-04688, 2021 WL 6621070, at *4 (N.D. Cal. Aug. 18, 2021).

***Second***, Plaintiff's new allegations merely reinforce that if Shopify reads the contents of communications, it does so *after receipt*, rather than while they are in transit. Plaintiff resorts to technobabble to obscure this fact, claiming Shopify processes data "in real time," "in flight," "in motion," or through "pipelines." TAC ¶¶ 41–43. In plain English, this simply means that Shopify is capable of processing data quickly. More crucially, these allegations concede that rapid data processing streams occur "as [communications] are *received*" by Shopify's systems. TAC ¶ 43 (emphasis added). Plaintiff's strained description establishes that receipt is a precursor to reading—of course, post-receipt reading is irrelevant because the communication is no longer in transit within the meaning of CIPA. *Eating Recovery Ctr.*, 806 F. Supp. 3d at 1117 (holding that the "reading" of the communication must occur in "transit from the person sending the communication to its intended recipient"); *Torres v. Prudential Fin., Inc.*, No. 22-cv-07465, 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025) (granting summary judgment for lack of evidence that defendant read contents of in-transit communications); *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023) ("'While' is the key word here.").

Plaintiff's related assertion—that processing occurs before the data "reach[es] the intended recipient" or is placed in "final storage," TAC ¶¶ 37, 42—does not displace the fact that any "reading" necessarily occurs only after the data has come to rest, not while it is in transit or passing over a wire. *See Jones v. Tonal Sys., Inc.*, 751 F. Supp. 3d 1025, 1036 (S.D. Cal. 2024) (rejecting § 631(a) claim because once a communication is received by a "destination server, a

communication becomes 'stored' and contemporaneous" interception and reading are "no longer possible."). CIPA's limitations on "reading" communications are both temporal and physical. It covers "reading" while a communication is being sent or received, or when it is "in transit" or "passing" on a wire, within the state. Cal. Penal Code § 631(a). The plain text illustrates that the statute criminalizes efforts to understand the substance of communications at the moment of sending, at the moment of receipt, or while the communication is *moving across a wire within the State of California*. Merely alleging that a Canadian company analyzed communications before providing contracted services to IABMFG is insufficient to state a CIPA § 631(a) claim.

Plaintiff's specific allegations further confirm that Shopify can only process data after receipt. He avers that the data is not in usable form when Shopify receives it—consistent with his claim that the data is encrypted. TAC ¶ 40. He then identifies a subsequent step where Shopify must validate the data to determine if it could or should be processed. *Id.* ¶ 41. Then there is another step, and only then is Shopify alleged to "interpret" the data and associate it with other information in its possession. *Id.* ¶ 42. It is only at this third point, well after receipt, that anything resembling "reading" the "contents" of a communication is alleged to occur.[5]

Critically, "intercepting" a communication while it is in transit is not the same as "reading" the contents of that communication. And similarly, "processing" an item and "reading" it are not synonymous concepts. After all, the postal service "processes" letters (*i.e.*, sorts and inspects the mail), but this does not mean it opens and reads *the content* of any letters. Consistent with that common understanding, courts in this district have refused to conclude that processes "during which the original data is formatted in a particular way, constitute[] 'reading' under CIPA" because processing "does not involve any attempt by [an alleged interceptor] to understand the substantive meaning of the data." *Williams v. DDR Media, LLC*, 757 F. Supp. 3d 989, 995 (N.D. Cal. 2024);

[5] The Court should reject Plaintiff's tactic of labeling any alleged action Shopify takes after receiving data as "reading." His allegation (TAC ¶ 40) that Shopify has to "transform [a communication] into a usable format" indicates that data is unreadable upon receipt—yet he claims, in the same sentence, that this act constitutes "read[ing] the communication in real time." He then alleges that Shopify "read" the data as it "validate[d] and filter[ed]" (*id.* ¶ 41) and used "real-time analytics" to "further process and distribute" the data (*id.* ¶ 42). These incoherent allegations demonstrate that Plaintiff is shoehorning "read" as a catch-all term, regardless of whether the content is actually intelligible to Shopify at the time of receipt.

*see also Eating Recovery Ctr.*, 806 F. Supp. 3d at 1117 ("A filtering process that simply sorts out certain data—which may be better analogized to sorting mail than to reading it—can't fairly be characterized as an effort at understanding the meaning of the communication").

Plaintiff's self-serving and inconsistent interpretations of the "reading" requirement are especially insufficient because CIPA's status as a criminal statute triggers the rule of lenity and compels a narrow construction of the "read" and "in transit" terms. *See Leocal v. Ashcroft*, 543 U.S. 1, 12 n.8 (2004). Indeed, "there is reason to question whether the Legislature intended for CIPA . . . to subject companies [] to criminal liability for using third-party software to track website activity[.]" *Eating Recovery Ctr.*, 806 F. Supp. 3d at 1118–19. The rule of lenity, which cautions against reading "any portion of CIPA [] too broadly," forecloses Plaintiff's overbroad attempts to manufacture a Section 631(a) liability theory through technobabble. *Id.*

Plaintiff's cursory attempts to establish Section 631(a) liability are unavailing. His new allegations reinforce that communications are encrypted in transit, and that after receipt, data must be de-encrypted and validated—steps that necessarily occur after communications are no longer "in transit." These claims do not establish any "reading" (let alone *while* "in transit"), and his allegations are inconsistent with how data processing technologies work in practice. Because Plaintiff fails to adequately allege this element, his CIPA claim warrants dismissal.

### D. Plaintiff's Intrusion Upon Seclusion and Constitutional Invasion of Privacy Claims Fail Because the TAC Alleges Only "Routine Commercial Behavior."

Beyond lacking the requisite intent, Plaintiff's revised constitutional and common law privacy claims fail because the TAC alleges nothing more than routine and disclosed commercial conduct, including the use of cookies, that are part of Shopify's merchant-supporting role. The Court previously concluded that the SAC reached beyond routine behavior based on the Ninth Circuit's *en banc* opinion, which noted allegations that Shopify "surreptitiously implanted cookies that permanently remained on Briskin's device [and] tracked its physical location." SAC Dismissal at 13 (quoting *Briskin v. Shopify Inc.*, 135 F.4th 739, 745 (9th Cir. 2025) (en banc)). But in attempting to patch over other problems identified in the SAC Dismissal, the TAC's new allegations have created an unmendable hole for Plaintiff's constitutional and common law privacy

claims. Far from being "surreptitious," Plaintiff's allegations now confirm that Shopify disclosed its use of cookies in its 2019 Privacy Policy. TAC ¶ 44. And consistent with the Court's observation regarding intent, any purported failure of *IABMFG* to make a robust disclosure has no bearing on any intentional intrusion by *Shopify*. These reformed allegations warrant dismissal.[6]

Because the tests for invasion of privacy and intrusion upon seclusion are similar, courts "consider the claims together and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." SAC Dismissal at 13 (citation omitted). These elements require that an alleged invasion be "sufficiently serious in [its] nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 829 (N.D. Cal. 2020) (citation omitted). But the TAC fails to plead an "egregious breach of [] social norms." *Id.* (citation omitted); *see also Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) ("The California Constitution and the common law set a high bar for an invasion of privacy claim."). Plaintiff takes aim at two practices: the collection of certain personal information through its payment forms and cookies, and the sharing of that information with third parties (both of which, as Plaintiff admits, were disclosed in Shopify's 2019 Privacy Policy). TAC ¶¶ 2–3, 5–7, 44, 50–54, 57–58, 60, 107, 114–115.

But neither practice can objectively be considered highly offensive. Any reasonable consumer would understand that third parties are involved in credit card transactions in *any setting*. The checkout process at a grocery store no doubt involves at least six entities: the customer, the store, the store's payment processor, the credit card company, the customer's bank, and the store's bank. Engaging with a third-party payment processor (as well as the consumer's credit card

[6] The current posture is no bar to dismissal; courts routinely evaluate whether an alleged intrusion is "highly offensive" at the pleading stage, particularly when the allegations fail to rise above "routine commercial behavior." *See, e.g., Park v. Webloyalty.com, Inc.*, 685 F. App'x 589, 592 (9th Cir. 2017) ("The district court also properly dismissed Park's privacy-based claims, because Park failed to allege conduct by *defendant* constituting a serious invasion of privacy." (internal citation omitted)); *McCoy v. Alphabet, Inc.*, No. 20-cv-05427, 2021 WL 405816, at *8 (N.D. Cal. Feb. 2, 2021) (granting dismissal for "fail[ure] to adequately plead claims for invasion of privacy or intrusion upon seclusion"); *McClung v. AddShopper, Inc.*, No. 23-cv-01996, 2024 WL 189006, at *4 (N.D. Cal. Jan. 17, 2024) (same); *In re Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) (same).

company and the merchant's bank) falls squarely within the ambit of "routine commercial behavior," and any reasonable consumer, online or in-person, would expect as such. And if that were not enough, Plaintiff's new allegations confirm Shopify obtained his data pursuant to an express contract with IABMFG, and used the data to facilitate his payment and protect against fraud. *See* TAC ¶¶ 15, 44. He also alleges that Shopify clearly disclosed the alleged data collection and third-party sharing in its 2019 Privacy Policy. *Id.* ¶ 44.

Further, the TAC only vaguely hints at the information Shopify's cookies collect, and the items it *does* identify are things online consumers reasonably expect to be collected. *Id.* ¶ 51. To start, the use of cookies is itself routine and expected. *Hubbard v. Google LLC*, No. 19-cv-07016, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024) ("Contemporary internet browsing involves the collection of users' data, including by tracking users across the internet, *and a reasonable user should expect as much*." (original emphasis)). "Courts in this district have [thus] held that data collection and disclosure to third parties that is 'routine commercial behavior' is not a 'highly offensive' intrusion of privacy." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) (internal citations omitted). And the data allegedly collected by Shopify falls far short of what other courts have found, at the pleading stage, to be insufficiently sensitive. *Low*, 900 F. Supp. 2d at 1025 (URLs, page views, browsing history); *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1127–28 (N.D. Cal. 2008), *aff'd*, 380 F. App'x 689 (9th Cir. 2010) (social security numbers); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (addresses, geolocation, unique device identifier, gender, age, time zone, app usage information); *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1047 (N.D. Cal. 2025) (employment and bank account information, eligibility for credit card approval). Moreover, egregious invasions of privacy can be justified, and are thus non-actionable, if they are in furtherance of a legitimate countervailing interest. *Hill v. NCAA*, 7 Cal. 4th 1, 38 (1994).

Similarly, even as courts have found that cookies that track users across the Internet are routine, *e.g.*, *Hubbard*, 2024 WL 3302066, at *7, Plaintiff alleges something far more limited. He only claims that Shopify's cookies track users on other Shopify merchant sites. TAC ¶ 51. This reduced scope is significant: while Plaintiff vaguely states he engaged in "transactions" on other

websites, *id.* ¶ 78, his allegations show at most that Shopify could only collect limited data in a handful of instances. These details fall far short of supporting Plaintiff's suggestion that Shopify created a sprawling dossier about him. And by focusing on IABMFG, Plaintiff provides no allegations suggesting that other merchants failed to make adequate disclosures about using Shopify.

A similar issue befalls Plaintiff's allegations regarding data disclosure. He claims that Shopify sent his payment information, as one would expect, to payment processors like Stripe. TAC ¶ 74. But as explained above, it is unreasonable for any consumer to think an apparel company using a web-based storefront could process a payment without third-party involvement. Plaintiff's supposition about what *Stripe* may have "offered" to do with the data has no bearing on Shopify. *Id.* At most, Plaintiff argues that Shopify provides a ***score*** (*not* personal data) in connection with other transactions on Shopify merchant websites. *Id.* Of course, the purpose of this alleged sharing was for the salutary purpose of detecting fraud or other malicious activity. *Id.* ¶ 15; *see also Hill*, 7 Cal. 4th at 38 (egregious intrusions are non-actionable if offset by legitimate countervailing interests). Notably, the California Consumer Privacy Act's ("CCPA") implementing regulations specifically permit service providers to use and disclose information for this purpose, "even if this business purpose is not specified in the written contract required by the CCPA and [its] regulations." Cal. Code Regs. tit. 11, § 7050(a)(4).

In attempting to fix the SAC's problems, Plaintiff has pleaded himself out of cognizable constitutional and common law privacy claims. And setting aside the lack of foundation for his allegations regarding Shopify's 2019 data collection practices, what Plaintiff asserts was collected is in fact limited, routine, and in furtherance of lawful purposes. These causes of action should be dismissed with prejudice.

**E. The TAC Fails to Allege Actual Damages as Required by CDAFA.**

CDAFA affords a private right of action to those who "suffers damage or loss by reason of a violation." Cal. Penal Code § 502(e)(1). In its previous order, this Court signaled that it was "unclear about how to square . . . two lines of cases" that differ on whether a disgorgement theory satisfies CDAFA standing. SAC Dismissal at 15. It then suggested that *In re Facebook, Inc.*

*Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) [hereinafter *Facebook*] allows "plaintiffs [to] establish standing for both Article III and CDAFA purposes under a disgorgement theory." *Id.* Shopify respectfully disagrees with this reading for two reasons. *First*, *Facebook* only concerned sufficiency for Article III standing, not CDAFA-specific standing. *Second*, subsequent state appellate decisions have foreclosed the use of downstream remedies to confer standing.

To start, *Facebook* is silent on the issue of CDAFA-specific standing: the Ninth Circuit's analysis was limited to the question of Article III standing, *see Facebook*, 956 F.3d at 597–98 (listing Article III requirements) and 599 ("state law can create interests that support standing *in federal courts*") (emphasis added, citations omitted). The court's discussion on disgorgement did not concern CDAFA's "actual harm" requirement, and it expressly noted this theory of standing applies where the plaintiff had suffered no loss. *Id.* at 600. Simply stated, "[c]ases are not authority for propositions not considered." *People v. Ault*, 33 Cal. 4th 1250, 1268 n.10 (2004).

Moreover, the California Courts of Appeal have issued post-*Facebook* decisions confirming that the possibility of a downstream remedy, such as disgorgement, cannot confer even general standing under state law—much less narrower conceptions of statutory standing under CDAFA. Even when "proof of actual harm is not required to recover statutory damages," statutes that allow for civil causes of action, such as CDAFA, still require that a plaintiff suffer "actual harm" to have standing in the first place. *Muha v. Experian Info. Sols., Inc.*, 106 Cal. App. 5th 199, 207–10 (2024); *see also Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 538–39 (2022). "[A] federal court is obligated to follow the decisions of the state's intermediate appellate courts" absent "convincing evidence that the state supreme court would decide differently." *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2001). In light of these subsequent state appellate authorities, a possibility for disgorgement is inadequate to support general standing—to say nothing of the narrower "actual harm" requirement under CDAFA.[7]

[7] Claims premised on the value of data also run afoul of the California Uniform Trade Secrets Act ("CUTSA"), which supersedes all non-contract state law claims seeking to recover the value of allegedly misappropriated data. *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 237 (2010), *overruled on other grounds by Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 337 (2011) (CUTSA is the "exclusive remedy" for claims falling under its terms). Supersession is not limited to trade secrets; it extends to all claims "based on the taking of information that, though not a trade

Indeed, there is ample authority finding that the right to control one's data does not constitute "actual damage or loss" under CDAFA. *Doe v. Cnty. of Santa Clara*, No. 23-cv-04411, 2024 WL 3346257, at *9 (N.D. Cal. July 8, 2024) (quoting *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021)) (collecting cases); *see also Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1081–82 (N.D. Cal. 2023) (affirming *Cottle*'s rejection of a theory based on "loss of the right to control their own data [or] the loss of the value of their data"). Nor does Plaintiff allege that Shopify's actions prevented him from independently monetizing his data. *Hubbard,* 2024 WL 3302066, at *11 ("Plaintiffs have not alleged . . . that [d]efendants' conduct inhibited [p]laintiffs' ability to participate in the market for their information."). His vague allegation that proposed class members suffered a "loss of value in their Private Information" is insufficient to establish the "actual damage or loss" that CDAFA requires. TAC ¶ 129.

Plaintiff's other loss theory, an alleged price premium, is also deficient.[8] CDAFA requires that loss or damages *result from* the unlawful hacking of a computer system. Cal. Penal Code § 502(e)(1) (conferring standing only for damage or loss "by reason of a violation"). Plaintiff instead confirms, TAC ¶ 129, that any "price premium" was "charged by IABMFG to compensate for Shopify's fees"—those fees are untethered to CDAFA violations. *See* Penal Code §§ 502(c)(1), (2) (listing violations for altering, damaging, deleting, destroying, using, taking, or copying data). He also confirms that at "some point" before April 2021, IABMFG disclosed its use of Shopify. TAC ¶ 73. That disclosure is fatal to a CDAFA claim. *Tsering v. Meta Platforms, Inc.*, No. 25-cv-01611, 2026 WL 89320, at *4 (N.D. Cal. Jan. 12, 2026) (dismissing CDAFA claim in part because privacy policies "disclose[d] that user [] data may be shared with third-part[ies.]"). And far from a "premium," the cost of Shopify's services remained the same whether the company was disclosed or not. Last, even if the theory was actionable, Plaintiff has it

---

secret, was nonetheless of value to the claimant." *Id.* at 239 n.22; *see, e.g.*, *Artec Grp., Inc. v. Klimov*, No. 15-cv-03449, 2016 WL 8223346, at *7 (N.D. Cal. Dec. 22, 2016) ("[D]istrict courts that have considered *Silvaco* have held that CUTSA supersedes claims based on the misappropriation of information that does not satisfy" CUTSA's definition of trade secrets). This issue, which *Facebook* does not address, forecloses a generalized interest in recovering the value of Plaintiff's data.

[8] The Court did not address Plaintiff's alternative theory in the SAC Dismissal.

backwards: the cost of Shopify's services would be factored into prices Plaintiff saw *before* he entered his payment information, so they could not be the *result* of unlawful access to that same information. Because none of Plaintiff's standing theories pass muster, his CDAFA claim should be dismissed with prejudice.

### F. Plaintiff's UCL Claim Should be Dismissed.

#### 1. Plaintiff Lacks Statutory Standing Under the UCL.

To establish UCL standing, a plaintiff must allege that they "lost money or property as a result of unfair competition." Cal. Bus. & Prof. Code § 17204. Plaintiff cannot meet this burden.

*First*, Plaintiff fails to plead the requisite loss of money or property: his bare allegation that Shopify obtained his personal data is insufficient to confer UCL standing. *Wesch v. Yodlee, Inc.*, No. 20-cv-05991, 2021 WL 6206644, at *4 (N.D. Cal. July 19, 2021) ("[L]ost value of a plaintiff's personal information does not constitute economic harm under the UCL." (cleaned up)); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) ("[C]ourts have consistently rejected such a broad interpretation of 'money or property'" under the UCL that includes "personal information.") (collecting cases).[9] While Plaintiff may claim that Shopify's nondisclosure amounts to misrepresentation, the Ninth Circuit has explained that omission theories require "plead[ing] that the allegedly concealed *physical* defect was *central* to the product's function." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 864 (9th Cir. 2018) (original emphasis). Plaintiff's claims do not concern the function of, or alleged defects with, the fitness apparel he purchased.

*Second*, Plaintiff has failed to allege a cognizable privacy harm. While some courts have identified three theories[10] that may confer UCL standing, Plaintiff does not adequately allege any

[9] The Court remarked that "smartphones contain so much personal information about their users that the unlawful access of that information can cause harm, even if in a non-monetary way." SAC Dismissal at 16. But "just because Plaintiffs' data is valuable in the abstract, and because [the defendant] might have made money from it, does not mean that Plaintiffs have 'lost money or property[.]'" *Hazel v. Prudential Fin., Inc.*, No. 22-cv-07465, 2023 WL 3933073, at *6 (N.D. Cal. June 9, 2023); *cf. Kwikset Corp.*, 51 Cal. 4th at 324 (the UCL's "requirement that injury be economic renders [statutory standing] substantially narrower than federal standing under article III[.]").

[10] While Shopify acknowledges this authority, it respectfully submits that the *Meta Pixel* line of cases is inconsistent with the UCL's "lost money or property" standard. As discussed above,

of them. Nowhere does he allege that the value of his personal information decreased as a result of Shopify's actions, or that his right to exclude others from using his data has diminished. SAC Dismissal at 15 (citing *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1024–25 (N.D. Cal. 2024)). And the remaining "benefit of the bargain" theory is precluded by binding Ninth Circuit precedent. In *Hodsdon*, the Ninth Circuit rejected a UCL claim premised on a company's failure to disclose an unsavory supply chain practice, because that disclosure had no effect on the product's function. 891 F.3d at 864. Plaintiff fails to allege any physical defect with IABMFG's apparel, and such defects have no relation to Shopify's data collection practices. Moreover, the TAC offers nothing to suggest that IABMFG's prices were influenced by the use of Shopify's services. Indeed, if IABMFG had *not* used Shopify's services, it almost certainly would have used another third party for hosting its storefront and processing payments.

Simply put, Plaintiff's conclusory price premium allegation is a "bare recitation" that cannot support UCL standing. *Naimi v. Starbucks Corp.*, 798 F. App'x 67, 70 (9th Cir. 2019); *see also Horti v. Nestlé HealthCare Nutrition, Inc.*, No. 21-cv-09812, 2022 WL 2441560, at *8 (N.D. Cal. July 5, 2022) (allegation that plaintiffs "suffered injury based on their payment of a 'premium price' for a product that did not work as advertised and that they would not have paid for had they known the truth" is "insufficient"); *Perez v. Romantix Online, Inc.*, No. 25-cv-02465, 2025 WL 3085786, at *4 (N.D. Cal. Oct. 27, 2025) (allegation that plaintiffs would not have purchased products had they known about defendant's practices insufficient for standing); *Libman v. Apple, Inc.*, No. 22-cv-07069, 2024 WL 4314791, at *19 (N.D. Cal. Sep. 26, 2024) (conclusory overpayment claims "untethered in any way to [p]laintiffs' experiences, are insufficient to plead damages under [] consumer protection laws.").

#### 2. The TAC fails to allege a violation of existing law on which to base an "unlawful" practice claim.

A plaintiff may also "borrow" violations of other laws to form an "unlawful" UCL claim. *Silver v. Stripe Inc.*, No. 20-cv-08196, 2021 WL 3191752, at *6 (N.D. Cal. July 28,

---

privacy harms are often too abstract to fit within the narrow "economic harm" requirement of the UCL. Regardless, federal courts sitting in diversity should not expand the scope of state law. *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008). The Court should thus follow the narrower line of cases and dismiss Plaintiff's UCL claims on standing grounds.

2021). The TAC identifies four regimes: CIPA, CDAFA, CCPA, and the California Online Privacy Protection Act of 2003 ("COPPA"). The CIPA and CDAFA claims fail for the reasons detailed above, *supra* Sections III.A–C, E; and the COPPA and CPPA theories are also futile.

COPPA liability is only triggered when a company fails to post a compliant privacy policy within 30 days after notice of noncompliance.[11] Cal. Bus. & Prof. Code § 22575. The TAC is devoid of any allegation that Shopify was ever notified of non-compliance or that it failed to act within 30 days. And COPPA only requires a website operator to publish *its own* privacy policy on *its own* website. Cal. Bus. & Prof. Code § 22575(a). No part of COPPA makes Shopify liable for IABMFG's implied failure to post the relevant policy.

Meanwhile, the CCPA cannot form the basis of an "unlawful" UCL claim because parties may not engineer a private right of action from a statute that expressly prohibits one. The CCPA "states that consumers may not use the [law] as a basis for a private right of action under any statute." *Silver*, 2021 WL 3191752, at *7; Cal. Civ. Code § 1798.150(c) ("Nothing in this title shall be interpreted to serve as the basis for a private right of action under any other law."); *see Gardiner v. Walmart Inc.*, No. 20-cv-04618, 2021 WL 2520103, at *8 (N.D. Cal. Mar. 5, 2021) (plaintiffs premising an "unlawful" claim on the CCPA failed to "allege[] a predicate violation"); *In re Sequoia Benefits & Ins. Data Breach Litig.*, No. 22-cv-08217, 2024 WL 1091195, at *8 (N.D. Cal. Feb. 22, 2024) (dismissing UCL claims in part because of the CCPA's bar on private causes).

**3. The TAC fails to allege material omissions sufficient to establish a "fraudulent" practice claim.**

The gravamen of Plaintiff's UCL claim is that Shopify engaged in "fraudulent" conduct by failing to disclose its role in his purchase of apparel on IABMFG. TAC ¶¶ 138–140. But this theory is belied by Plaintiff's new allegation, *id.* ¶ 35, that the confirmation email he received for his 2019 purchase disclosed Shopify's involvement. In any event, omissions are only actionable under the UCL if they concern "physical defects that affect the central function of the [product]." *Hodsdon*, 891 F.3d at 860; *cf. Smith v. Intel Corp.*, No. 23-cv-05761, 2025 WL

[11] Plaintiff's COPPA theory again illustrates his "heads-I-win, tails-you-lose" strategy: taken together, he suggests that either Shopify failed to publish a compliant privacy policy, or that even if it did, any mandated language is solely for "compliance reasons" and not enforced. TAC ¶ 66.

2381617, at *6 (N.D. Cal. Aug. 15, 2025) (*Hodsdon* "requires that the defect be central to the product's function, such that the product is incapable of use." (citation omitted)). Courts post-*Hodsdon* have required UCL plaintiffs to identify both a material functional defect and one of the four *LiMandri* factors.[12] *See, e.g., Hammerling*, 615 F. Supp. 3d at 1085.

And as a factual matter, Plaintiff's allegations are far more attenuated than those in *Hodsdon*. While the omission in *Hodsdon* had a connection to the product purchased (the non-disclosure concerned child labor), IABMFG's use of Shopify has no relation to the apparel Plaintiff bought. Nor would it make sense to suggest that Shopify's processing created a physical defect that made Plaintiff's clothing unwearable. *See Smith*, 2025 WL 2381617, at *6. Plaintiff's allegations instead confirm that Shopify enabled him to successfully purchase apparel he desired. TAC ¶¶ 68, 70–72. His "fraudulent" theory accordingly fails as a matter of law.

**4. The TAC fails to sufficiently allege an "unfair" practice.**

The TAC also fails to allege an "unfair" practice under either recognized standard for this type of UCL claim. The first standard "requires allegations that the challenged conduct violates a public policy that is tethered to a specific constitutional, statutory, or regulatory provision." *Silver*, 2021 WL 3191752, at *8 (cleaned up). Plaintiff does not link the challenged conduct to any policy considerations associated with constitutional, statutory, or regulatory provisions. And to the extent Plaintiff founds this "public policy" upon the statutes making up his claim under the "unlawful prong," it would still be subject to dismissal. Courts consistently dismiss "unfair" practice claims where the allegations overlap entirely with those under the unlawful and fraudulent prongs. *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104–05 (N.D. Cal. 2017) (collecting cases); *Coffee v. Google, LLC*, No. 20-cv-03901, 2022 WL 94986, at *13 (N.D. Cal. Jan. 10, 2022) (dismissing all UCL claims premised on the same allegations); *In re Sequoia Benefits & Ins. Data Breach Litig.*, 2024 WL 1091195, at *8 (dismissing UCL claim where "unfair" allegations mirrored insufficient

---

[12] "The *LiMandri* factors are: (1) the defendant is in a fiduciary relationship with the plaintiff; (2) the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) the defendant actively conceals a material fact from the plaintiff; or (4) the defendant makes partial representations but also suppresses some material facts." *Hammerling*, 615 F. Supp. 3d at 1085 (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997)).

"unlawful" prong allegations).

"The second standard involves balancing the harm to the consumer against the utility of the defendant's practice." *Silver*, 2021 WL 3191752, at *8 (cleaned up). Plaintiff likewise fails to plead facts showing that the alleged harm outweighs the utility of Shopify's practices. To the contrary, the TAC articulates numerous reasons why Shopify's data collection is sound: it enabled IABMFG to efficiently make a website and allow Plaintiff to peruse apparel, and facilitated payment processing when he found clothing he wished to purchase. *See* TAC ¶¶ 24, 27–35, 68–71. The data collection and use Plaintiff challenges serve critical payment processing, fraud prevention, and risk management functions, and the harms he alleges do not offset that utility.

## V. CONCLUSION

Plaintiff's TAC fails to state a claim upon which relief can be granted. He has already had three chances to amend his complaint, and no further amendment could cure the defects identified in this motion. Shopify respectfully requests that the Court grant this Motion and dismiss the TAC with prejudice.

Dated: March 25, 2026

COOLEY LLP

By: */s/ Benedict Hur*
Benedict Hur

Attorneys for Defendants
Shopify Inc.; Shopify (USA) Inc.; and Shopify Payments (USA) Inc.