COOLEY LLP
BENEDICT HUR (224018)
(bhur@cooley.com)
SIMONA AGNOLUCCI (246943)
(sagnolucci@cooley.com)
JOSHUA ANDERSON (312836)
(joshua.anderson@cooley.com)
TIFFANY M. LIN (321472)
(tiffany.lin@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222

Attorneys for Defendants
Shopify Inc.; Shopify (USA) Inc.; and Shopify Payments (USA) Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

BRANDON BRISKIN, on behalf of himself and those similarly situated,

Plaintiff,

v.

SHOPIFY INC.; SHOPIFY (USA) INC.; and SHOPIFY PAYMENTS (USA) INC.,

Defendants.

Case No. 21-cv-06269-PJH

**SHOPIFY INC.; SHOPIFY (USA) INC.; AND SHOPIFY PAYMENTS (USA) INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS**

Date: July 16, 2026
Time: 1:30 p.m.
Location: Courtroom 3, 3rd Floor
1301 Clay Street
Oakland, California
Judge: Hon. Phyllis J. Hamilton

Date Action Filed: August 13, 2021

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1
ARGUMENT ............................................................................................................ 1
A. The TAC still lacks adequate factual support for Shopify's data collection practices or IABMFG's disclosures at the time of Plaintiff's purchase................. 1
B. The TAC fails to allege the requisite intent for Plaintiff's CIPA, CDAFA, intrusion upon seclusion, and constitutional invasion of privacy claims................ 4
C. The TAC fails to allege a cognizable claim under CIPA § 631(a). ........................ 7
D. The TAC lacks the "highly offensive intrusion" needed to sustain his intrusion upon seclusion and invasion of privacy claims..................................... 10
E. The TAC fails to establish a requisite injury for CDAFA standing...................... 11
F. The TAC Does Not Plead a Cognizable Unfair Competition Law Claim. ........... 13
CONCLUSION .......................................................................................................... 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alvarez v. Chevron Corp.*,
656 F.3d 925 (9th Cir. 2011) ... 11, 15

*Ambriz v. Google, LLC*,
2025 WL 830450 (N.D. Cal. Feb. 10, 2025) ... 9

*Arguetta v. Walgreens Co.*,
760 F. Supp. 3d 1028 (E.D. Cal. 2024) ... 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 5

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ... 5

*Bowen v. Energizer Holdings, Inc.*,
118 F.4th 1134 (9th Cir. 2024) ... 14

*Briskin v. Shopify, Inc.*,
135 F.4th 739 (9th Cir. 2025) ... 2

*Brown v. Brita Prods. Co.*,
172 F.4th 1113 (9th Cir. 2026) ... 14

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ... 13

*Commonwealth v. Cruttenden*,
58 A.3d 95 (Penn. 2012) ... 2, 9

*Corley v. United States*,
556 U.S. 303 (2009) ... 9

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) ... 6, 7, 8, 9

*Doe v. Meta Platforms, Inc.*,
2024 WL 4375776 (N.D. Cal. Oct. 2, 2024) ... 6

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ... 11, 12

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797 (2005) ... 4

*Freeman Inv. Mgmt. Co., LLC v. Frank Russell Co.*,
729 F. App'x 590 (9th Cir. 2018) ... 3

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ... 14

## TABLE OF AUTHORITIES
**continued**

**Page(s)**

*Hill v. NCAA*, 7 Cal. 4th 1 (1994) .......... 10

*JEB Grp., Inc. v. San Jose III*, 2020 WL 2790012 (C.D. Cal. Mar. 31, 2020) .......... 12

*Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310 (2011) .......... 13

*Leocal v. Ashcroft*, 543 U.S. 1 (2004) .......... 13

*Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072 (C.D. Cal. 2023) .......... 9

*LiMandri v. Judkins*, 52 Cal. App. 4th 326 (1997) .......... 14

*M.D. v. Google LLC*, 2025 WL 2710095 (N.D. Cal. Sept. 23, 2025) .......... 3, 4

*Moore v. Centrelake Med. Grp., Inc*., 83 Cal. App. 5th 515 (2022) .......... 12

*Muha v. Experian Info. Sols., Inc*., 106 Cal. App. 5th 199 (2024) .......... 12

*Naimi v. Starbucks Corp.*, 798 F. App'x 67 (9th Cir. 2019) .......... 13, 14

*People v. Hawkins*, 98 Cal. App. 4th 1428 (2002) .......... 6

*Popa v. Microsoft Corp*., 153 F.4th 784 (9th Cir. 2025) .......... 12

*Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075 (N.D. Cal. 2025) .......... 10

*Silver v. Stripe Inc.*, 2021 WL 3191752 (N.D. Cal. July 28, 2021) .......... 14

*Smith v. Google, LLC*, 735 F. Supp. 3d 1188 (N.D. Cal. 2024) .......... 6

*Smith v. Intel Corp.*, 2025 WL 2381617 (N.D. Cal. Aug. 15, 2025) .......... 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) .......... 5

## TABLE OF AUTHORITIES
**continued**

**Page(s)**

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) .......... 12

*Wesch v. Yodlee, Inc.*, 2021 WL 6206644 (N.D. Cal. July 19, 2021) .......... 13

*Williams v. DDR Media, LLC*, 757 F. Supp. 3d 989 (N.D. Cal. 2024) .......... 8

*Williams v. What If Holdings, LLC.*, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) .......... 2, 9

*Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945 (N.D. Cal. 2024) .......... 9

**Statutes**

Cal. Civ. Code
§ 1798.150(c) .......... 14
§ 3426.7(b) .......... 12

Cal. Code Regs. tit. 11,
§ 7012(a) .......... 5
§ 7050(a)(4) .......... 11

Cal. Penal Code
§ 502(c)(1), (2) .......... 6
§ 502(e)(1) .......... 11, 13
§ 631(a) .......... *passim*

Cal. Uniform Trade Secrets Act .......... 12

COPPA .......... 14

**Other Authorities**

*Eavesdropping*, Black's Law Dictionary (12th ed. 2024) .......... 6

Fed. R. Civ. P.
8 .......... 2, 4
11, 12 .......... 4

## INTRODUCTION

Having tried (and failed) to plead a claim four times, Plaintiff's Opposition (Dkt. No. 105, "Opp.") confirms that the Third Amended Complaint (Dkt. No. 97, "TAC") collapses under the weight of its contradictory allegations. Plaintiff ignores contrary caselaw, offers arguments wholly inconsistent with either the TAC or the Second Amended Complaint (Dkt. No. 44, "SAC"), and repeatedly seeks to excuse his lack of allegations by claiming the issues present "fact disputes" that are, in reality, resolved by admissions in his own pleadings.

Seven years have elapsed since the single transaction that Plaintiff claims entitles him to advance a massive class-action suit against Shopify. He has offered four different operative complaints, and the Opposition amounts to a tryout for a fifth. But incurable flaws remain:

- The TAC lacks adequate factual support for the data collection Plaintiff supposedly experienced during his single purchase from IABMFG in 2019;
- Plaintiff still fails to allege the requisite intent—that Shopify intended to surreptitiously collect his data without consent—needed to support his CIPA, CDAFA, intrusion upon seclusion, and invasion of privacy claims;
- The TAC cannot sustain a CIPA § 631(a) claim because it confirms that Shopify's data communications were encrypted and could only be "read" after being received (*i.e.*, removed from "transit"), and processed;
- Plaintiff fails to allege the requisite offensive behavior that is necessary for his seclusion and privacy claims;
- The TAC lacks a cognizable injury that is needed to sustain a CDAFA claim; and
- Plaintiff's UCL claim fails: he lacks standing, and his liability theories are not cognizable.

The TAC should be dismissed with prejudice.

## ARGUMENT

### A. The TAC still lacks adequate factual support for Shopify's data collection practices or IABMFG's disclosures at the time of Plaintiff's purchase.

The Court's charge was clear: Plaintiff must "provide[] adequate factual support that the [data collection practices] disclosed in 2021 actually took place in 2019 as well." Order re MTD

at 6, Dkt. No. 95 ("SAC Dismissal"). The TAC instead repeats Plaintiff's backdated liability theory with two additions: (i) charges that merely establish that Shopify was an IABMFG service provider, and (ii) naked assertions that Shopify "did [the same data collection practices] in June 2019." Mot. at 6–8. The Opposition doubles down on this previously rejected narrative by advancing new arguments and attempting to lower the requisite showing. None of this satisfies Rule 8.[1]

*First*, as his principal argument that he sufficiently alleges 2019 misconduct, Plaintiff claims that "Shopify controlled the IABMFG webpages and functionality in 2019." Opp. at 4 (citing TAC ¶¶ 35–36). The new argument contradicts the TAC's *first page*, which confirms it is not Shopify, but IABMFG, that "owns and operates the websites iambecoming.com and iabmfg.com." TAC ¶ 1 n.1. The TAC also corroborates Shopify's service-provider status: it alleges that merchants "can elect to embed certain Shopify assets, such as payment forms, into their pre-existing websites," *id.* ¶ 24, and specifies that IABMFG used Shopify "for data services, including using Shopify code for checkout pages and payment forms," *id.* ¶ 35, and "to operate its checkout pages and storefronts." *Id.* ¶ 36. Neither paragraph, nor *any* TAC allegation, remotely suggests that Shopify was broadly in control of IABMFG's website.[2] And if the Opposition were correct, Shopify would be a party to the communications, not a third-party eavesdropper—entirely vitiating the TAC's liability theory. *See Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) (a party cannot wiretap its own communications); *Commonwealth v. Cruttenden*, 58 A.3d 95, 100 (Penn. 2012) (under analogous wiretapping statute, plaintiff's incorrect belief about communication-recipient's identity did not render recipient a third-party wiretapper).

*Second*, Plaintiff argues that Shopify made "admissions" confirming its 2019 data practices. Opp. at 4–5. But his claim about "Shopify's engineering blog," TAC ¶ 44, is incoherent. The blog (found at https://shopify.engineering/latest) contains hundreds of posts dating back to 2010, and

---

[1] Plaintiff's citations to the Ninth Circuit's decision, *e.g.*, Opp. at 6 n.2, 13, 15, do not rescue the TAC. The decision only concerned "personal jurisdiction[,]" not the factual or legal sufficiency of his since-amended claims. *Briskin v. Shopify, Inc.*, 135 F.4th 739, 749 (9th Cir. 2025).

[2] The Opposition's "control" theory would also render nonsensical the allegations that formed the lynchpin of the SAC's "intent" theory—that Shopify gave merchants instructions on how to remove the "powered by Shopify" branding, TAC ¶ 63. Shopify's "control" would allow for unilateral implementation of the surreptitious scheme that the SAC posited.

Plaintiff fails to identify a single post containing such an admission. His failure to do so suggests either an inability to find a publication worthy of citation, or worse, a request for the Court to search on his behalf. The Court should "refuse to do this work for [him]." *Freeman Inv. Mgmt. Co., LLC v. Frank Russell Co.*, 729 F. App'x 590, 591 (9th Cir. 2018).

*Third*, Plaintiff's claim about the Shopify "privacy policy that was in effect in June 2019," TAC ¶ 44, ignores the optionality that merchants like IABMFG had for services such as data sharing and risk scoring. Notably, the activation of a Shopify Payments account was a prerequisite to receiving certain "services, including fraud and risk monitoring." Renewed RJN, Ex. B (Dkt. No. 102-3, "Shopify 2019 Privacy Policy") at 2–3. This activation also controlled the uses of customer data, such as retaining form-entered data and customizing user experiences. *Id.* at 5. Many of the alleged practices that Plaintiff challenges, *see, e.g.,* TAC ¶¶ 57 (filters that block orders), 58 (sharing risk scores), 143 (personal information collection), are subject to a merchant's election. The TAC fails to allege that IABMFG made *any* of these choices, and the optionality that Shopify provided to merchants negates Plaintiff's attempt to broadly point to the 2019 privacy policy as evidence of the specific "data sharing practices" he supposedly experienced. *M.D. v. Google LLC*, 2025 WL 2710095, at *5 (N.D. Cal. Sept. 23, 2025).

And while Plaintiff relies on certain aspects of Shopify's privacy policy, he casts other parts of it, such as Shopify's merchant requirements, as empty "boilerplate," TAC ¶ 66. But the requirements were apparently effective in this case: the TAC *concedes* that IABMFG had a privacy policy in 2019 that referenced Shopify, and that Shopify was referenced on "an archived checkout page" in 2017. *Id.* ¶ 36 (alleging that the IABMFG 2019 privacy policy "includes multiple references to Shopify and Shopify's urls").[3] Plaintiff noticeably fails to provide any detail as to *what* the policy disclosed about Shopify's practices. The Court is still left to guess whether "the privacy policy [] in 2019 was either identical to the one [he] now know[s] about in 2021 or that there was no policy at all, that it was missing, or that whatever policy there was, it was insufficient." Dec. 4, 2025 Hearing Tr. at 05:01–05:07, Dkt. No. 94. Plaintiff cannot survive dismissal by merely

---

[3] Shopify cannot locate IABMFG's 2019 privacy policy on the Wayback Machine and cannot verify Plaintiff's characterizations of it.

alleging that IABMFG used Shopify services, which may or may not have resulted in the data collection complained of, and there is no claim that IABMFG opted to enable the retention and use of Plaintiff's payment information.

Plaintiff lastly complains that requiring him to "allege more precisely [...] how [Shopify] obtained and used his specific data [...] would be a *de facto* bar to all internet privacy cases." Opp. at 5–6. Rule 8 has no relaxed standard for internet privacy cases; his burden is to provide "any non-speculative basis [] about [Shopify's] 2019 conduct." SAC Dismissal at 5 (citing *M.D.*, 2025 WL 2710095, at *5). Shopify's 2019 privacy policy demonstrates that this burden is surmountable. For example, if IABMFG opted into the services necessary to support the TAC's speculative data collection allegations, Plaintiff would have seen pre-filled payment information while making "subsequent transactions [with] other [Shopify] merchants." *See* Shopify 2019 Privacy Policy at 5; TAC ¶ 74. Yet plugging this hole would render his claims untimely: the pre-filling of payment information in subsequent transactions on new merchant websites would have put Plaintiff on notice that his information had been collected and shared. *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005). And although a plaintiff need not know who caused his injury for the clock to start ticking, *id.*, Plaintiff now alleges Shopify was disclosed in IABMFG's privacy policy when he used the website in 2019. *See* TAC ¶ 36.

Rule 8 is not a puzzle to be solved, nor is pleading a game to be played. A complaint should be a certification of facts known or believed to be true, after investigation, that support a claim for which relief may be granted. Fed. R. Civ. P. 8, 11, 12. In his fourth attempt, Plaintiff still fails to provide a coherent, consistent, and plausible statement of Shopify's 2019 conduct.

### B. The TAC fails to allege the requisite intent for Plaintiff's CIPA, CDAFA, intrusion upon seclusion, and constitutional invasion of privacy claims.

Plaintiff's CIPA, CDAFA, invasion of privacy, and intrusion upon seclusion claims require him to plausibly allege that Shopify acted with intent to commit the proscribed conduct. SAC Dismissal at 7–10. That is a high bar: because Shopify's "policies required merchants to obtain consent for Shopify's access," instances of merchant noncompliance have no bearing on the question of whether Shopify "acted with the requisite intent to violate" the law. *Id.* at 7–8. Shopify

also required that merchants *themselves* "post an up-to-date and accurate privacy policy on [their] storefronts," and provided a "privacy policy generator" to help merchants "creat[e] [their] own privacy policy[.]" Shopify 2019 Privacy Policy at 2–3.[4]

Plaintiff first claims he may allege intent "generally." Opp. at 6, 10. That only means that intent is not subject to "an elevated pleading standard"; it does not permit "conclusory allegation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 686–87 (2009) (citation omitted). Plaintiff cannot "plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." *Id.* at 687. Yet that is precisely what the TAC does.

Next, Plaintiff returns to his new argument that because "Shopify controlled the IABMFG web pages and functionality," it affirmatively knew that merchants were not obtaining consent for any policies. Opp. at 6 (citations omitted). As detailed above, the argument that Shopify "controlled" its merchants' websites is not only false, but contradicted by the TAC and prior complaints. While the TAC, *at most*, alleges that Shopify controlled checkout pages, a checkout page is not an exclusive, or even the most apparent, method of obtaining customer consent. *See* Mot. at 8. And while Plaintiff now asserts that checkout is "where merchants typically present terms," Opp. at 9, the Court need only "draw on its judicial experience and common sense" to reject that argument. *Iqbal*, 556 U.S. at 679. As any Internet user would confirm, "the most straightforward application" of assenting to policies is when "a website presents users with specified contractual terms on a pop-up screen and users must check a box explicitly stating 'I agree' in order to proceed." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022) (citation omitted). Nor is the argument credible in light of the California Consumer Privacy Act's ("CCPA") requirement that businesses "provide consumers with timely notice, *at or before the point of collection*." Cal. Code Regs. tit. 11, § 7012(a) (emphasis added).[5]

Having failed to allege even general intent, Plaintiff cannot make the required intent

---

[4] Plaintiff does not oppose Shopify's renewed RJN, but merely argues "the Court cannot judicially notice Shopify's *intent*[.]" Opp. at 9 n.3 (original emphasis). Shopify has never requested such; it seeks notice of documents the Court properly considers in evaluating the TAC's plausibility. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

[5] In any event, the TAC now alleges Shopify *was* disclosed at checkout. *See* TAC ¶ 36.

showings under CIPA and CDAFA. Under Section 631(a), "[a defendant] must do something more than just intercept the communication while it is in transit to be held liable." *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1118 (N.D. Cal. 2025). Plaintiff's reading—that a party need only engage in purposeful conduct that happens to intercept communications, Opp. at 10—ignores the *sine qua non* of eavesdropping: surreptitiousness. *Eavesdropping*, Black's Law Dictionary (12th ed. 2024) ("[t]he act of secretly listening to the private conversation of others without their consent"). That is why a passerby who incidentally overhears a conversation is not eavesdropping: there may have been a general intent to *be* at a location at a particular time, but there was nothing clandestine about the act.[6] Far from clandestine efforts, Plaintiff does not dispute that Shopify requires disclosure, and now even concedes IABMFG disclosed Shopify. IABMFG's alleged failure to make the disclosure sufficiently conspicuous for Plaintiff's liking provides no basis to infer criminal intent on Shopify's part.

Relatedly, intent under either statute "require[s] an intent to access without consent." SAC Dismissal at 9–10. CIPA's "prohibited act" is intentionally reading communications "without the consent of all parties." Cal. Penal Code § 631(a). CDAFA likewise requires knowing access "without permission." Cal. Penal Code § 502(c)(1), (2); *see People v. Hawkins*, 98 Cal. App. 4th 1428, 1438–39 (2002). Thus, Plaintiff must allege not only that Shopify intended to intercept his communications, but also that it intended to do so *without his consent*. As the Court has ruled, Shopify affirmatively *required* that merchants obtain consent for its access to customer data. SAC Dismissal at 7, 9, 10. Plaintiff's authority, meanwhile, only concerns the *receipt* of data, not this consent element. *See Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1198 (N.D. Cal. 2024) (rejecting claim that "policy documents suggest[ed] that Google did not actually *want to receive* personally identifiable information" (emphasis added)); *Doe v. Meta Platforms, Inc*., 2024 WL 4375776, at *2 (N.D. Cal. Oct. 2, 2024) (policy documents did not establish "that Meta did not *intend to receive* the [transmitted] information" (emphasis added)).

---

[6] Plaintiff's reading also renders superfluous CIPA Section 632, which already criminalizes efforts to "eavesdrop on or record" a "confidential communication" without consent. *Eating Recovery Ctr.,* 806 F. Supp. 3d at 1118.

Plaintiff lastly claims that Shopify wants him to "foreclose all potential disputes or arguments" linked to intent. Opp. at 9. Not so: his burden is to coherently allege that Shopify "acted with the requisite intent," SAC Dismissal at 8, 9, 10, notwithstanding judicially noticeable documents that confirm Shopify required merchants to disclose and obtain consent for Shopify's access. Plaintiff's attempts to meet that burden have been riddled with contradictions. The TAC's intent theory is wholly incompatible with the SAC's claims. Mot. at 9 n.4 (noting that the TAC's claim that "Shopify knew its merchants [...] did not obtain consent," contradicts the SAC's claim that "Shopify does not review its customers' websites [...] to determine whether the merchants require customers to obtain consent[.]") (citations omitted). Now, the Opposition's main "control" argument contradicts the TAC's allegations and creates new problems, like whether Shopify is even alleged to be a third party. Plaintiff cannot escape dismissal by continuously contradicting himself; under any intent theory, his claims remain futile.

**C. The TAC fails to allege a cognizable claim under CIPA § 631(a).**

CIPA section 631(a) limits liability to those who make efforts to read a communication while it is in transit, passing over a wire, or being sent or received within California. Cal. Penal Code § 631(a). The TAC fails to satisfy this element.

*First*, the TAC establishes that data sent to Shopify was encrypted, precluding the "reading" of a communication in transit. Mot. at 10–11. Plaintiff argues that only *some* customer data is encrypted, and that customer data entered into payment forms *could* be "read" while "in transit." Opp. at 12. But, again, the TAC contradicts this with allegations that (1) Plaintiff's connection to IABMFG was "secure [and] encrypted," *id.* ¶ 68; (2) Shopify had to "transform it into a usable format for subsequent processing," *id.* ¶ 40; and (3) Shopify had to "validate and filter the data," *id.* ¶ 41. The TAC thus confirms that communications could only be read after being removed from transit and subsequently decrypted and processed—and crucially, could not be read *while in* transit. *See Eating Recovery Ctr.*, 806 F. Supp. 3d at 1117.

Plaintiff's screenshot of the 2021 test transaction does not refute his encryption allegations. *See* TAC ¶ 33. All it suggests is that a "special software tool" could view information entered at the source of the transaction. *Id.* Nothing in the screenshot or the TAC suggests that data was

unencrypted *after a transmission was initiated*. *Id.* ¶¶ 33–34. Indeed, the screenshot acknowledges an HTTPS connection, meaning the payload must have been encrypted in transit. *See id.*[7] Despite Plaintiff's repetition of the phrase "fact issue," the only dispute is between the TAC and his Opposition—Plaintiff cannot fabricate a "fact issue" by contradicting his own pleadings. The TAC alleges an encrypted connection, rendering it impossible to read his communications in transit.

*Second*, Plaintiff's fixation on *interception* does not establish that Shopify *read* the data while the communication was in transit. Mot. at 12. CIPA's reading requirement "requires some effort at understanding the substantive meaning of the message[.]" *Williams v. DDR Media, LLC,* 757 F. Supp. 3d 989, 995 (N.D. Cal. 2024). Plaintiff does not respond to this; instead, he repeats his insistence that *everything* that Shopify does after receiving a communication constitutes "reading." Opp. at 13–14. That ignores the *three* steps the TAC confirms Shopify *must* perform, *after* data receipt, *before* it can understand a message's substantive meaning. TAC ¶¶ 40–42 (Shopify must first "transform," "validate and filter," and "process and distribute" data). Plaintiff's jamming of the term "read" into his allegations does not make them cognizable, because "initial step[s]" where "[t]he alteration of the data is an automatic step [...] do[] not involve any attempt [...] to understand the substantive meaning of the data." *Williams,* 757 F. Supp. 3d at 995; *see also Eating Recovery Ctr.*, 806 F. Supp. 3d at 1117; Mot. at 11 (technobabble does not establish that communications were "read" while "in transit").

*Third*, Plaintiff's refrain that Shopify "ignores the distinction between the intended recipient and the intercepting party," Opp. at 12, fails to effectuate the entirety of Section 631(a)'s second clause. The clause has two key components: temporality, *i.e.*, "reading" must be simultaneous with transmission; and physicality, *i.e.*, "reading" must occur "while" the communication is "passing over any wire, line, or cable" within California. Cal. Penal Code § 631(a). The TAC does not plead that a communication was *read* while being sent from California, or while IABMFG *received*

[7] The federal agency responsible for IT standards notes that "HTTPS encrypts nearly all information sent between a client and a web service," except for an IP address and the domain or subdomain of the website. *See* CIO Council, The HTTPS-Only Standard - Introduction to HTTPS, available at https://https.cio.gov/faq/#what-does-https-do (last accessed May 13, 2026). The court may take judicial notice of these facts. *Arguetta v. Walgreens Co.*, 760 F. Supp. 3d 1028, 1034 (E.D. Cal. 2024) (taking notice of facts on federal agency website).

the communication in California. Instead, Plaintiff offers a jargon-filled sequence where Shopify receives and processes communications in an unspecified location, and then those communications are read and transferred to IABMFG, with no detail on when or where this occurs. *See, e.g.*, TAC ¶ 39 (data is "transmitted over the network"). The TAC does not allege that reading occurs "while" the communication is being sent or received in California, and thus fails CIPA's temporal and physical requirements.[8] Cal. Penal Code § 631(a).

Moreover, Plaintiff's newest argument—that Shopify is the "operator" and "controller" of merchant websites—defeats his focus on an "intended recipient." Opp. at 1, 4, 6–7, 21. Assuming *arguendo* that Shopify is a website's "controller," then *Shopify* is the "intended recipient," and there can be no data "interception." If, for example, a hotel contracts with a third party to handle overnight calls, and a guest calls the third party believing it to be the hotel, no "wiretap" has occurred—the guest is speaking with the intended recipient. Plaintiff cannot have it both ways—Shopify cannot be a website "operator" without also being the "intended recipient." *See Williams*, 2022 WL 17869275, at *2; *Cruttenden*, 58 A.3d at 100. This is why courts routinely conclude there is no Section 631(a) violation where, as the Opposition claims, data is transferred to a website operator. *See, e.g.*, *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1082 (C.D. Cal. 2023).

Only Shopify has offered a reading of Section 631(a) that gives "effect to all [of a statute's] provisions." *Corley v. United States*, 556 U.S. 303, 314 (2009). Even if the analysis was close, the rule of lenity counsels against Plaintiff's broad interpretation. *See Eating Recovery Ctr.*, 806 F. Supp. 3d at 1118. For myriad reasons, Plaintiff's CIPA claim cannot survive.

---

[8] This meaningfully distinguishes this dispute from Plaintiff's cited cases. In *Ambriz v. Google, LLC*, the claims concerned a system that listened into service calls as they were occurring, and provided call center employees (the "intended recipient") with transcripts of the call and "step-by-step guidance and [suggested] 'smart replies'" to customers, which obviously necessitated understanding the substantive meaning of the communication. 2025 WL 830450, at *1, *4 (N.D. Cal. Feb. 10, 2025). And the analysis in *Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945 (N.D. Cal. 2024), focused on whether the defendant *intercepted* the messages before they were received by the intended recipient—without any discussion or debate on whether the interception (1) was on a wire or (2) constituted reading. *Id.* at 954. Indeed, these cases comport with the common understanding of wiretapping: the act of intercepting and listening-in of a live communication. The TAC fails to allege this simultaneity.

### D. The TAC lacks the "highly offensive intrusion" needed to sustain his intrusion upon seclusion and invasion of privacy claims.

The TAC's new allegations, including its inconsistencies, do not support a "highly offensive" intrusion or invasion of privacy claim. Plaintiff argues that general data accumulation and the collection of "personal information" shore up his seclusion and privacy claims. They do not: numerous courts have found that the collection of wide swaths of "personal information," including social security numbers, bank account information, and geolocation data, is routine, inoffensive, and non-actionable. Mot. at 15 (collecting cases). And while Plaintiff fixates on the "critical nature" of accumulated data, the TAC fails to allege the scope of the accumulation *he* individually suffered. Instead, the TAC vaguely suggests that Shopify *may* have collected information on "subsequent transactions" with some unspecified merchants. TAC ¶ 74.

Indeed, the only authority Plaintiff offers, *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075 (N.D. Cal. 2025), underscores the insufficiency of the TAC's allegations. The *Riganian* defendant allegedly violated social norms by tracking "individuals' activity across thousands of websites," combining that information with "extensive offline records gathered over decades," and "generat[ing] uniquely identifying profiles on those individuals," through the mining of "*hundreds to thousands* of disparate online and offline sources." *Id*. at 1087 (emphasis added). This is a far cry from the misconduct that Plaintiff alleges he suffered. TAC ¶¶ 51 (cookies only track other merchant sites), 78 (vague allegation of other "transactions").

Plaintiff seeks to distinguish this case from the many others finding ordinary online data collection through cookies to be non-actionable, by pointing to the collection of financial data. But Plaintiff's own allegations suggest Shopify does no more with *that* information than facilitate payments and fraud prevention—both "legally authorized and socially beneficial" courses of conduct. *Hill v. NCAA*, 7 Cal. 4th 1, 38 (1994) ("Invasion of a privacy interest *is not a violation of the state constitutional right to privacy* if the invasion is justified by a competing interest." (emphasis added)). Indeed, the data Shopify collects is used to "assign[] 'risk scores' that merchants use to block or cancel transactions" and protect against fraudulent or deceptive acts. Opp. at 15. And while Plaintiff casts this as a "noble goal," *id.* at 24, the CCPA—California's

comprehensive privacy law—confirms the legal authorization of this justification. It expressly blesses the ***undisclosed*** use of "personal information" for exactly the purpose Plaintiff complains of—"protect[ing] against malicious, deceptive, fraudulent or illegal activity." Cal. Code Regs. tit. 11, § 7050(a)(4). There is no need for the Court to weigh the alleged intrusion against competing justifications; the Legislature has already done so in its comprehensive privacy legislation. And a plaintiff cannot deem "unfair" what the law expressly permits. *See, e.g.*, *Alvarez v. Chevron Corp.*, 656 F.3d 925, 933–34 (9th Cir. 2011) (affirming dismissal of UCL and CLRA claims challenging conduct that California's regulatory framework permitted). Unable to establish even "unfair" conduct, Plaintiff can hardly establish an egregious breach of social norms.[9]

**E. The TAC fails to establish a requisite injury for CDAFA standing.**

Standing under CDAFA is limited to those who "suffer[] damage or loss by reason of a violation" of one of the substantive provisions of the statute. Cal. Penal Code § 502(e)(1). None of Plaintiff's "damage or loss" theories are sufficient.

*First*, Plaintiff's disgorgement theory is not cognizable under CDAFA. Far from the ringing endorsement that Plaintiff suggests, Opp. at 17, the Court expressed skepticism about how to square two divergent theories on whether disgorgement constituted a sufficient injury. SAC Dismissal at 15 (explaining it was "unclear about how to square . . . two lines of cases"). Faced with a split in authority, the Court found that the Ninth Circuit's decision in *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) ("*Facebook Tracking*") was the tiebreaker.

Shopify, in response, submits that *Facebook Tracking* says nothing about CDAFA statutory standing. Mot. at 17. Plaintiff's response, which references dicta that merely details the parties' claims, Opp. at 17, ignores that *Facebook Tracking* exclusively concerned Article III standing. 956 F.3d at 597–98, 599. The quote Plaintiff points to—that the *Facebook Tracking* petitioner alleged "an injury sufficient to establish standing to bring their claims for CDAFA violations and California common law [claims]"—only confirms that the court was analyzing Article III standing: the

[9] Plaintiff lastly suggests that the Court cannot evaluate whether he has alleged a highly offensive intrusion. Opp. at 17 ("these are disputed questions for trial"). But courts routinely dismiss privacy claims at the pleading stage, particularly when a plaintiff fails to allege more than "routine commercial behavior." *See* Mot. at 14 n.6 (collecting cases). The same applies here.

decision combined the requisite "injury" to establish standing for each of the claims into one analysis. The court did not grapple with the differences between specific statutory standing requirements under CDAFA ("damage or loss") or the UCL ("lost money or property") and the generalized injury required to assert common-law claims.

Moreover, the Ninth Circuit itself has questioned whether *Facebook Tracking* remains good law given that its injury analysis "finds no support in *TransUnion LLC* [*v. Ramirez*, 594 U.S. 413 (2021)]." *Popa v. Microsoft Corp.*, 153 F.4th 784, 794 (9th Cir. 2025). More importantly, no California appellate court has adopted *Facebook Tracking*'s standard, and subsequent Court of Appeal decisions confirm that an interest in disgorgement cannot support even general standing. Mot. at 17. Despite Plaintiff's protestations, it does not matter that the state appellate decisions (*Muha v. Experian Info. Sols., Inc.*, 106 Cal. App. 5th 199 (2024), and *Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515 (2022)), did not feature CDAFA claims. The broad holding in both cases is that the possibility of a downstream remedy (*i.e.*, disgorgement) is insufficient, absent actual injury, to support even baseline standing. Plaintiff's articulation of CDAFA standing thus produces illogical results: it construes "damage or loss" under CDAFA to be broader than the abstract "injury" needed to support constitutional standing in California's own courts.

*Second*, Plaintiff's arguments about supersession under the California Uniform Trade Secrets Act ("CUTSA") fail. Supersession is not limited to trade secrets: the "California Court of Appeals has emphatically rejected the suggestion that CUTSA was not intended to preempt common law conversion claims based on the taking of information that, though not a trade secret, was nonetheless of value to the claimant." *JEB Grp., Inc. v. San Jose III*, 2020 WL 2790012, at *5 (C.D. Cal. Mar. 31, 2020) (cleaned up). And Plaintiff's point that CUTSA's savings clause applies because CDAFA and CIPA are criminal statutes is irrelevant. The savings clause considers the nature of the *remedy*, not the nature of the *statute*. *See* Cal. Civ. Code § 3426.7(b). Because Plaintiff seeks a civil remedy, the savings clause is inapplicable.[10] CUTSA supersedes any claim

[10] Though they are criminal statutes, CDAFA and CIPA authorize *civil* actions to obtain *civil* relief. Even so, the same criminal interpretive rules apply because courts "must interpret the statute consistently, whether [they] encounter its application in a criminal or noncriminal context[.]" *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004).

for disgorgement premised on the value of data, so it cannot be a basis for standing.

*Third*, Plaintiff's alternative standing theory,[11] that he supposedly paid a "price premium," also fails. Any "damage or loss" must *result* from unlawful data access. *See* Cal. Penal Code § 502(e)(1). The TAC (at ¶ 129) instead confirms that any "price premium" was charged by IABMFG to cover Shopify's fees, and those fees have no relation to any alleged CDAFA violation.[12] This "price premium" was allegedly factored into the prices Plaintiff saw *before* he provided payment information, so those prices cannot be the *result* of any access to data he had yet to provide. Instead of addressing these points, Plaintiff resorts to his refrain of a "factual dispute." Opp. at 19. But these arguments result from his own allegations. Plaintiff's battle is not with competing facts, but with the commonsense notion that cause must precede effect.

Plaintiff's "price premium" theory also makes no sense in light of his allegation that merchants typically present terms at checkout. *See* Opp. at 9. If Plaintiff believed he would only encounter privacy disclosures at checkout, then he cannot claim that he paid a price premium: before advancing to a checkout screen, Plaintiff had already decided to make a purchase, at a set price, without any expectation as to the service providers IABMFG had engaged.

### F. The TAC Does Not Plead a Cognizable Unfair Competition Law Claim.

Plaintiff's UCL claim fails: he not only lacks standing, but also, a cognizable theory.

***Standing***: Plaintiff fails to sufficiently establish a cognizable loss of money or property.[13] His "benefit-of-the-bargain" theory is precluded by *Hodsdon v. Mars, Inc.*, which held that a UCL omission-based theory requires a defect central to the product's function. 891 F.3d 857, 864 (9th

---

[11] Plaintiff does not address, and thus concedes, Shopify's argument that the right to control one's data cannot confer CDAFA-specific standing. Mot. at 18.

[12] This is unlike a standard "price premium" case, where, for instance, a defendant is alleged to pass off a foreign-made product as being "Made in the USA," thereby commanding a higher price. *See Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 330 (2011). Here, Plaintiff complains about services IABMFG needs to run its site, which have nothing to do with IABMFG's products. This theory is not cognizable in the UCL context, and the same should hold for CDAFA.

[13] Plaintiff does not substantiate his reference to a "loss of value and control of information." Privacy harms are generally insufficient to establish UCL standing. *Wesch v. Yodlee, Inc.*, 2021 WL 6206644, at *4 (N.D. Cal. July 19, 2021); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014). And his allegations are a conclusory recitation that he suffered a "loss of value and control of [his] Private Information." TAC ¶ 98. This is insufficient. *See Naimi v. Starbucks Corp.*, 798 F. App'x 67, 70 (9th Cir. 2019).

Cir. 2018). The TAC contains no such allegations. Plaintiff also fails to show that *Hodsdon* is "inapposite": he relies on *district court* cases that cannot override the Ninth Circuit's decision. Opp. at 20–21. And his "more recent Ninth Circuit decision" is wholly consistent with *Hodsdon*. *Id.* at 21. *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134 (9th Cir. 2024), concerned an alleged omission of a central product defect: the inclusion of a carcinogen in sunscreen. *Id.* at 1141. Plaintiff's theory, which does not allege any physical defect, cannot support the requisite loss of money or property. His "bare recitation[s]" of a price premium, TAC ¶ 98, and a but-for harm, *id.* ¶¶ 75–78, 145–46, do not get him over the line. *Naimi*, 798 F. App'x at 70.

***Unlawful*:** To the extent that Plaintiff's UCL theory relies on his CIPA and CDAFA claims, those claims fail for the reasons set forth above. *See supra* Sections A-C, E. His use of COPPA as a predicate violation is incoherent: he cannot assert violations for a website that Shopify does not operate. *See* TAC at 1 n.1. Further, a COPPA violation could only occur 30 days after Plaintiff provided a "notice" of non-compliance. Opp. at 21–22. Even construing his 2021 complaint as such a notice, it could not have caused a loss of money or property in 2019. As for the CCPA, Plaintiff's casual refrain that it "does not matter whether the underlying statute provides for a cause of action," *id.* at 22, does not displace the fact that the CCPA expressly bars his claim. Cal. Civ. Code § 1798.150(c); *see Silver v. Stripe Inc.*, 2021 WL 3191752, at *7 (N.D. Cal. July 28, 2021) (the CCPA "on its face states that consumers may not use the CCPA as a basis for a private right of action *under any statute*" (emphasis added)).

***Fraudulent:*** Plaintiff's "fraudulent" UCL theory also fails because Shopify's presence has no bearing on the function of his purchased apparel. *Hodsdon*, 891 F.3d at 863; *Smith v. Intel Corp.*, 2025 WL 2381617, at *6 (N.D. Cal. Aug. 15, 2025). District courts post-*Hodsdon* typically require that a plaintiff identify *both* a material functional defect and an additional factor mandating a special duty of disclosure. *See, e.g.*, *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1085 (N.D. Cal. 2022) (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997)); Mot. at 22. And Plaintiff's only circuit authority is again consistent with *Hodsdon*. *See Brown v. Brita Prods. Co.*, 172 F.4th 1113, 1116-17, 1119 (9th Cir. 2026) (alleging physical defect with water filter that failed to remove contaminants). His authority confirms the necessity of what the TAC lacks: a material

functional defect with the product purchased.

***Unfair:*** The Opposition confirms that Plaintiff can only establish an "unfair" UCL theory by exaggerating his pleadings and ignoring the salutary purposes that favor fraud prevention. To start, Plaintiff fails to address authority dismissing "unfair" claims that overlap entirely with allegations already found insufficient under the unlawful and fraudulent prongs, as is the case here. *See* Mot. at 22 (collecting cases). The claim can be dismissed on this basis alone.

In any event, Plaintiff's cloned "unfairness" allegations fail on the merits. In claiming he satisfied the tethering test, Plaintiff argues that "establishing an actual statutory violation [is] not necessary," Opp. at 24, effectively conceding the weakness of his alleged statutory violations. Moreover, Plaintiff has constantly ignored the established policy considerations ("noble goal[s]," as he concedes, *id.*) that underpin the CCPA. Those considerations identify fraud detection as a public concern that outweighs certain privacy concerns. And this blind spot extends to Plaintiff's invocation of the balancing and *FTC* tests. *See Alvarez*, 656 F.3d at 933 ("California law unequivocally permits Defendants' conduct, therefore affording safe harbor from UCL liability.").

Beyond this, the Opposition's additional assertions exaggerate the TAC's allegations. Far from committing "surreptitious theft," Shopify took the "relatively simple[] step," Opp. at 25, of requiring merchants to disclose and obtain consent for any data collection to consumers—and it now appears IABMFG complied. *See* TAC ¶ 36. Further, Plaintiff's characterization that harm is occurring on a "massive scale," Opp. at 25, is unsupported. The harm Plaintiff alleges in the TAC amounts to possible use of his information in an amorphous number of "subsequent transactions" with other Shopify merchants—a far cry from the sweeping injury Plaintiff claims. TAC ¶ 74. That is simply insufficient to override a clearly defined public interest in fraud detection.

## CONCLUSION

Shopify respectfully requests that the Court grant this Motion and dismiss the TAC with prejudice. Plaintiff has already had seven years to think of—and four opportunities to present—*any* plausible claim against Shopify. He should not be granted a fifth.

Dated: May 27, 2026

COOLEY LLP

By: */s/ Benedict Hur*
Benedict Hur
Simona Agnolucci
Joshua Anderson
Tiffany M. Lin

Attorneys for Defendants
Shopify Inc.; Shopify (USA) Inc.; and Shopify Payments (USA) Inc.