UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BRANDON BRISKIN,

Plaintiff,

v.

SHOPIFY INC., et al.,

Defendants.

Case No.  21-cv-06269-PJH

**ORDER RE DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT**

Re: Dkt. No. 101

Defendants' motion to dismiss plaintiff's third amended complaint ("TAC") came on for hearing before this court on July 16, 2026.  Plaintiff appeared through his counsel, Stephen Raab and Rajiv Thairani.  Defendants Shopify Inc, Shopify (USA) Inc., and Shopify Payments (USA) Inc. (collectively, "Shopify") appeared through their counsel, Benedict Hur, Joshua Anderson, and Robert Wu.  Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows.

**BACKGROUND**

This putative class action for invasion of privacy concerns the collection of consumer data over an online shopping platform.  Plaintiff Brandon Briskin is an Internet shopper and resident of Madera, California.  TAC ¶ 8.  Defendant Shopify Inc. is a Canadian company headquartered in Ottawa, Canada.  TAC ¶ 9.  Defendant Shopify (USA) Inc. ("Shopify USA") is a Delaware company with its principal place of business in Ottawa, Canada.  TAC ¶ 14.  Defendant Shopify Payments (USA) Inc. ("Shopify Payments") is a Delaware company with its principal place of business in Wilmington,

Delaware.  TAC ¶ 15.  Both Shopify USA and Shopify Payments are wholly owned subsidiaries of Shopify Inc.

**A.      Allegations of defendants' collection and use of consumer data**

As set forth in the court's previous order, defendants run an e-commerce platform that provides payment processing services to millions of merchants across the Internet.  TAC ¶ 24.  Defendants host merchants' websites in addition to facilitating and verifying customers' payment information.  Id.

Plaintiff alleges that defendants do not disclose to consumers their role in the transaction.  TAC, ¶ 26.  Instead, while the website and payment forms appear to the consumer to be generated by the merchant itself, in reality, it is Shopify's software that generates the payment form and collects the sensitive user information entered into it.  TAC, ¶ 26-37.  Plaintiff alleges that defendants compile consumers' sensitive information into individualized profiles that are then sold to merchants, without the consumers' consent.  TAC, ¶ 53-61.  Plaintiff further alleges that Shopify installs cookies on users' browsers to track consumers' transactions across the Shopify merchant network.  TAC ¶¶ 5, 49-52.

In June 2019, plaintiff purchased fitness apparel from IABMFG, a Shopify Inc. merchant, through IABMFG's website.  TAC ¶ 67.  Plaintiff alleges that he, like other consumers, was uninformed of defendants' involvement in the transaction, and without consent, defendants collected his sensitive private information, including full name, address, email address, credit card number, IP address, the items purchased, and geolocation.  TAC ¶¶ 2-3, 51, 94.

Plaintiff alleges that defendants hosted and rendered the cart and checkout pages for IABMFG in 2019, and further alleges that defendants "knew that IABMFG did not require plaintiff or other customers, when making a purchase, to agree to either (a) IABMFG's privacy policy or its terms or (b) Shopify's privacy policy or its terms."  TAC, ¶ 65.

Plaintiff alleges that Shopify had over one million merchants on its platform in

United States District Court
Northern District of California

2019, and that "Shopify is well aware that consumers visiting Shopify merchants' webpages are not required to view [], let alone agree to, Shopify's Terms of Service or Privacy Policy." TAC, ¶ 67. Plaintiff further alleges that "Shopify understands that it would be an obstacle to the checkout process to prominently and specifically advise consumers that Shopify will access and use their personal information," and thus "designed, managed, and operated a checkout platform that did not even allow the merchant to require specific assent to Shopify's access to and use of customers' information." Id.

## B.      Plaintiff's Claims

Plaintiff seeks to represent a class of similarly situated consumers. His proposed class definition is as follows: "All natural persons who, between August 13, 2017 and the present, submitted payment information via Shopify's software while located in California." TAC ¶ 81. The TAC brings the following claims on behalf of plaintiff and the proposed class against all three defendants, all under California law:

1. Violation of the California Invasion of Privacy Act ("CIPA"), California Penal Code § 631;

2. Invasion of Privacy Under California's Constitution;

3. Intrusion Upon Seclusion;

4. Violation of the California Computer Data Access and Fraud Act ("CDAFA"), Cal. Penal Code § 502; and

5. Violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq.

## C.      Procedural History

Plaintiff filed the original complaint on August 13, 2021, then filed a first amended complaint as of right, and then obtained leave to file a second amended complaint. See Dkt. 1, 17, 44.

In response to the second amended complaint, defendants moved to dismiss, and the court granted dismissal based on lack of personal jurisdiction. See Dkt. 66. Plaintiff

United States District Court
Northern District of California

3

United States District Court
Northern District of California

appealed and a panel of the Ninth Circuit affirmed.  See Dkt. 72.  Subsequently, the Ninth Circuit issued an en banc opinion reversing the court's decision re lack of personal jurisdiction and remanding the case for further proceedings.  See Dkt. 74.

After the case was remanded, defendants filed a motion to dismiss the second complaint on different grounds.  See Dkt. 84.  The court granted in part and denied in part defendants' motion, with leave to amend.  See Dkt. 95.

Plaintiff filed the now-operative third amended complaint on February 18, 2026.  See Dkt. 97.  Defendants now move to dismiss all claims.

## DISCUSSION

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint.  Ileto v. Glock Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  Under Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory.  Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).

### A.    Sufficiency of allegations

In the order dismissing the second amended complaint, the court concluded that "all of plaintiff's claims must be dismissed for want of factual support" because, while they were based on allegations of Shopify's conduct in 2019, plaintiff did not present "any non-speculative basis for his allegations about that 2019 conduct."  See Dkt. 95 at 5.  Specifically, plaintiff based the SAC's claims on Shopify's 2021 privacy policy (which disclosed the data collection), and simply made the inference that "the conduct disclosed in 2021 actually took place in 2019 as well."  Id. at 6.

Defendants argue that the TAC's new allegations "do not move the needle," and thus the court should again dismiss all claims for lack of sufficient factual allegations.  However, having reviewed the TAC, the court finds that it adds new facts that strengthen

4

the basis for plaintiff's allegations.

Specifically, plaintiff alleges that his 2019 order confirmation email came directly from Shopify and contained product images hosted by Shopify's network.  TAC, ¶ 35. Plaintiff further alleges that the page source information for IABMFG's archived checkout page and archived privacy policy page include multiple references to Shopify and Shopify URLs, "revealing that IABMFG used Shopify to operate its checkout processes and storefronts."  TAC, ¶ 36.

The TAC also adds new allegations regarding Shopify's own 2019 privacy policy, which acknowledged that "[w]e collect our merchants' customers' name, email, shipping and billing address, payment details, company name, phone number, IP address, information about orders you initiate, information about the Shopify-supported merchant stores that you visit, and information about the device and browser you use."  TAC, ¶ 44.

While the SAC relied on speculation to bridge the gap between Shopify's 2021 disclosures and its alleged conduct in 2019, the TAC's new allegations go further, presenting Shopify's own disclosures about its activities in 2019.

Shopify attempts to minimize its 2019 disclosures by arguing that merchants such as IABMFG had "optionality," i.e., the ability to opt out of such data collection.  See Dkt. 106 at 8.  However, Shopify appears to be engaging in its own speculation here, as there is no basis for the court to assess what percentage of merchants opted out of the data collection, and/or whether IABMFG itself opted out.

Plaintiff has alleged that IABMFG was associated with Shopify in 2019, and that Shopify was collecting data in 2019, and the court finds it plausible for plaintiff to allege that IABMFG was part of that data collection.  To the extent that Shopify wants more than is alleged in the TAC, it appears to be asking for evidentiary support, which is premature at this stage of the case.  Thus, to the extent Shopify's motion seeks dismissal of any claim based on the sufficiency of the allegations, that motion is DENIED.

**B.    Intent**

Defendants argue that claims 1-4 should be dismissed because plaintiff has not

United States District Court
Northern District of California

adequately alleged that Shopify's conduct was willful or intentional.  See Dkt. 101 at 15-17.

As an initial matter, the court's previous dismissal order set forth its basis for concluding that plaintiff's CIPA, CDAFA, invasion of privacy, and intrusion upon seclusion claims do indeed require a plausible allegation of intent, and the court will not repeat that analysis here.  See Dkt. 95 at 7-9.

The court previously granted Shopify's motion to dismiss based on the intent argument, holding that "Shopify's policies required merchants to obtain consent for Shopify's access," and further holding that any independent decision by merchants (such as IABMFG) to not obtain consent was irrelevant to Shopify's state of mind.  See Dkt. 95 at 7.

Defendants argue that the court should reach the same conclusion as before and dismiss claims 1-4 for failure to sufficiently allege that Shopify's conduct was willful or intentional.  However, the TAC does add new allegations that change the court's analysis of the 'intent' issue.

Specifically, while plaintiff's SAC previously alleged that Shopify merely "did not review" merchants' websites to confirm that the merchants were obtaining consumer consent for data collection, the TAC goes further, alleging that Shopify affirmatively "knew that IABMFG did not require plaintiff" or other customers to consent to Shopify's data collection, due to Shopify's "operation and control of the IABMFG checkout pages and logic."  See TAC, ¶ 65.  Plaintiff further alleges that "Shopify did not and does not provide an option to require customers to specifically agree to Shopify's access and use of the customers' information in order to complete a checkout."[1]  TAC, ¶ 67.

The TAC then alleges that "Shopify understands that it would be an obstacle to the

---

[1] Defendant argues that the TAC's allegations are "inconsistent" with the SAC, and should thus be treated with skepticism.  See Dkt. 101 at 16, n. 4.  However, the court does not see the allegations as inconsistent – plaintiff previously alleged that Shopify did not enforce compliance with its disclosure requirement, and now alleges that Shopify not only failed to enforce compliance, but also made compliance difficult and/or impossible. Those allegations do not necessarily contradict each other.

United States District Court
Northern District of California

checkout process to prominently and specifically advise consumers that Shopify will access and use their personal information," and thus "designed, managed, and operated a checkout platform that did not even allow the merchant to require specific assent to Shopify's access to and use of customers' information."  TAC, ¶ 67.

Plaintiff acknowledges that Shopify "gives its merchants the option to require assent to the merchants' own terms before a customer can complete an order," but neither plaintiff nor defendants have provided an answer to the question of whether IABMFG's 2019 privacy policy disclosed Shopify's data collection.  And without any information regarding IABMFG's own privacy policy in 2019, the court is left with plaintiff's allegations that (1) Shopify exerted a high degree of control over the webpages of merchants such as IABMFG, and (2) Shopify used that control to prevent merchants from requiring consumers to agree to Shopify's own privacy policy.  Those allegations, if taken as true, are sufficient to establish Shopify's intent, for pleading purposes.  If discovery reveals that IABMFG's 2019 privacy policy did indeed disclose Shopify's data collection, defendants will of course be able to seek summary judgment on the issue of intent.  But, at this stage of the case, defendants' motion to dismiss is DENIED to the extent it is based on the argument that plaintiff failed to allege intent.

**C.     Read while "in transit"**

As set forth in the court's previous order, plaintiff's CIPA claim requires a plausible allegation that the content of the relevant communications was read while "in transit." See Dkt. 95 at 10.  The SAC did not expressly allege that the communications were read in transit, and plaintiff's opposition brief argued that "the court may infer that the transmission [to Shopify] occurs in real time, but to the extent the court believes that allegations must explicitly state as much, plaintiff can easily amend to add such allegations."  See Dkt. 88 at 25, n. 9.  In dismissing plaintiff's CIPA claim, the court granted plaintiff leave to amend to allege that the communications were read "in transit." See Dkt. 95 at 11-12.

The TAC adds new allegations specifying that "Shopify intercepts, accesses,

processes, and uses consumers' communications in real time, while those communications are in transit from consumers' browsers and before they reach the intended recipient (the merchant) or are ultimately stored by Shopify."  TAC, ¶ 37.

The TAC then lays out a three-step process by which Shopify reads the communications, validates and filters the data, then further processes and distributes the data.  TAC, ¶¶ 39-42.  Plaintiff alleges that "[t]hese steps necessarily required contemporaneous access to the contents of the communications while they were in transit."  TAC, ¶ 39.  Plaintiff also alleges that "Shopify employed real-time stream processing platforms specifically designed to operate on data 'in flight' – that is, after initiation of the transmission of a user's action in a browser but before the data is committed to ultimate storage and before a version of the event data is sent or published to merchants . . . or transmitted to a payments provider."  TAC, ¶ 43; see also TAC, ¶ 39 ("Shopify has long operated and continues to operate large-scale data ingestion and processing systems designed to receive, read, and act upon incoming data streams in real time, as the data is transmitted over the network, before it is transformed and committed to storage and before the data reaches merchants, such as IABMFG.").

Shopify challenges plaintiff's allegations as "technobabble," arguing that plaintiff's use of terms such as "real time" and "in flight" simply mean "that Shopify is capable of processing data quickly."  See Dkt. 101 at 18.  Shopify also challenges plaintiff's use of the terms "intercepting," "processing," and "reading," all with the purpose of undermining plaintiff's allegation that the communications are read in transit.  Id. at 18-20.

In support of its argument, Shopify urges the court to follow Doe v. Eating Recovery Center LLC, in which a court in this district concluded that the relevant communications were not actually read while "in transit."  Eating Recovery Center, 806 F.Supp.3d 1109 (N.D. Cal. 2025).  But, critically, Eating Recovery Center was decided on summary judgment, with the benefit of a full evidentiary record that showed the technical functioning of the defendant's data collection process.  While Shopify may ultimately be able to present evidence to show that its data collection occurred only after the

8

communications were no longer "in transit," they cannot do so at the pleading stage. Rather, at this stage, the court takes plaintiff's allegations as true, and thus DENIES defendants' motion to dismiss the CIPA claim on the grounds that the communications are not read while "in transit."

**D.    "Routine commercial behavior"**

In its previous dismissal order, the court rejected defendants' argument that their data collection was "routine commercial behavior" and thus not a "highly offensive" intrusion, as required to state a claim for invasion of privacy or intrusion upon seclusion. See Dkt. 95 at 13.  The court specifically cited the Ninth Circuit's en banc opinion, which concluded that Shopify's conduct went beyond the type of routine commercial behavior that would be reasonably expected, including that "Shopify surreptitiously implanted cookies that permanently remained on Briskin's device [and] tracked its physical location."  See id. (citing 135 F.4th 739, 745 (9th Cir. 2025)).

Shopify re-presents the same argument on this motion, and the court rejects it for the same reason.  To the extent Shopify's motion seeks dismissal of plaintiff's invasion of privacy claim or intrusion upon seclusion claim on the grounds that the alleged conduct is routine commercial behavior, the motion is DENIED.

**E.    Actual damages under CDAFA**

In its previous dismissal order, the court considered and rejected Shopify's argument that plaintiff had not established actual damages under CDAFA.  See Dkt. 95 at 13-15.  Shopify re-presents that argument on this motion, and adds an argument that plaintiff's CDAFA claim is superseded by California's Uniform Trade Secret Act.  See Dkt. 101 at 24, n. 7.

Neither argument leads the court to revisit its previous conclusion that plaintiff has sufficiently alleged damages under CDAFA, and thus, Shopify's motion to dismiss is DENIED on that basis.

**F.    UCL**

Shopify argues that plaintiff has no standing under the UCL, and that plaintiff

cannot establish any of the unlawful/fraudulent/unfair prongs.

The court already considered and rejected the standing argument in its previous dismissal order, and sees no need to re-address it here.  See Dkt. 95 at 15-16.

Also, to the extent that plaintiff asserts viable claims under CIPA, CDAFA, or for invasion of privacy or intrusion upon seclusion, those claims also serve as predicates for a UCL claim under the 'unlawful' prong.  Accordingly, Shopify's motion to dismiss plaintiff's UCL claim is DENIED.

**CONCLUSION**

For the reasons stated above, the court DENIES defendants' motion to dismiss. The court's rejection of defendants' various arguments does not preclude defendants from re-raising them on summary judgment based on an evidentiary record.

Defendants shall have **21 days** from the date of this order to file an answer to plaintiff's third amended complaint.

The court also sets a case management conference for **September 3, 2026**, at **10:30 a.m**.  The case management conference will be conducted over Zoom videoconference, and the parties are directed to file a joint case management statement seven (7) days before the conference.

**IT IS SO ORDERED.**

Dated: July 30, 2026

　　　　　　　　　　　　　　　　　　　_____/s/ *Phyllis J. Hamilton*_____
　　　　　　　　　　　　　　　　　　　PHYLLIS J. HAMILTON
　　　　　　　　　　　　　　　　　　　United States District Judge

United States District Court
Northern District of California